**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION** | Civil Action No. 16-md-2687 (JLL)(JAD) (MDL No. 2687) |
| | **Return Date: December 19, 2016** |
| *This Document Relates to: Putative Class of Direct Purchaser Plaintiffs* | *(Document Filed Electronically)* |
| | *Oral Argument Requested* |

**MEMORANDUM OF LAW IN SUPPORT OF THE GCC DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Richard H. Epstein
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Fax: (973) 643-6500
repstein@sillscummis.com

Steven A. Reiss (admitted *pro hac vice*)
Adam C. Hemlock (admitted *pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*Attorneys for Defendants General Chemical Corporation, General Chemical LLC, General Chemical Performance Products, LLC, Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, and Chemtrade Solutions, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ................................................................................................................1

     A.     GCC ...........................................................................................................................1

     B.     GCC's Bankruptcy...................................................................................................2

LEGAL ARGUMENT......................................................................................................................2

     A.     Plaintiffs Are Barred From Seeking Damages for Sales Prior to
             November 10, 2003 When GCC Emerged From Chapter 11 Bankruptcy ..............3

          1.     Plaintiffs' Claims Arose Prior to the Effective Date ...................................4

          2.     Class Members Were Notified of GCC's Bankruptcy Proceeding,
              and Thus, Afforded Due Process ...............................................................5

          3.     Plaintiffs Acknowledge That GCC's Bankruptcy Discharged Their
              Claims Prior to the Effective Date...............................................................7

CONCLUSION.................................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................2

*In re Castle Home Builders, Inc.,*
  520 B.R. 98 (Bankr. N.D. Ill. 2005) .......................................................................8

*Cent. Va. Cmty. Coll. v. Katz,*
  546 U.S. 356 (2006)................................................................................................8

*In re Chalasani,*
  92 F.3d 1300 (2d Cir. 1996)....................................................................................8

*In re Chateaugay Corp.,*
  944 F.2d 997 (2d Cir. 1991)....................................................................................8

*Chemetron Corp. v. Jones,*
  72 F.3d 341 (3d Cir. 1995)......................................................................................5

*In re Grossman's Inc.,*
  607 F.3d 114 (3d Cir. 2010)..................................................................................3, 4

*In re Kara Homes, Inc.,*
  2016 WL 1128411; 2016 Bankr. LEXIS 191 (Bankr. D.N.J. Jan. 19, 2016) ...........4

*In re M. Frenville Co., Inc.,*
  744 F.2d 332 (3d Cir. 1984)....................................................................................5

*In re Penn Cent. Transp. Co.,*
  771 F.2d 762 (3d Cir. 1985)....................................................................................5

*In re U.S.H. Corp. of N.Y.,*
  223 B.R. 654 (Bankr. S.D.N.Y. 1998) .....................................................................6

*Wright v. Corning,*
  679 F.3d 101 (3d Cir. 2012)..................................................................................4, 5

*In re XO Commc'ns, Inc.,*
  301 B.R. 782 (Bankr. S.D.N.Y. 2003)......................................................................6

**Statutes**

11 U.S.C. § 101(5) .....................................................................................................3

11 U.S.C. § 101(12) ...............................................................................................................3

11 U.S.C. § 1141(d)(1)(A) ....................................................................................................3

11 U.S.C. § 1142(a) ...............................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .........................................................................................................2

## PRELIMINARY STATEMENT

Direct Purchaser Plaintiffs' claims against General Chemical Corporation and its related corporate entities for conduct prior to November 10, 2003, should be dismissed.  In 2002, GenTek, Inc. and General Chemical Corporation (together, "*GCC*") and GCC's then-existing related corporate entities filed for Chapter 11 relief in the Bankruptcy Court for the District of Delaware, which resulted in an order confirming GCC's reorganization effective November 10, 2003.  The Confirmation Order contains a crystal-clear injunction stating that claims relating to conduct prior to the Effective Date of the plan of reorganization are fully and forever barred and discharged, and that no plaintiff may pursue any such claim in any way.

Indeed, numerous Plaintiffs have previously acknowledged the force and effect of the Confirmation Order's injunction, specifically disclaiming any effort to recover damages for conduct prior to GCC's bankruptcy discharge in at least ten of the individual complaints that were filed before Plaintiffs filed the operative Consolidated Amended Complaint (the "*CAC*"), Dkt. No. 220, stating that, "[T]his complaint seeks to recover damages from GenTek and General Chemical only for GenTek's and General Chemical's post-discharge conduct, and in no way seeks to violate any orders of the Bankruptcy Court." *See, e.g., City of Rochester v. Hawkins, Inc., et al.* (Civil Action No. 15-cv-04266, Dkt. No. 1 ¶ 14 (c), Dec. 1, 2015).  Because, as Plaintiffs acknowledge, the Confirmation Order bars these claims for pre-bankruptcy damages, they fail to state a claim upon which relief can be granted.  Accordingly, this Court should dismiss them under Rule 12(b)(6).

## STATEMENT OF FACTS

### A.     GCC

As Plaintiffs allege, General Chemical Corporation was a Delaware corporation that manufactured and supplied organic and inorganic industrial chemicals, including liquid

aluminum sulfate ("*Liquid Alum*"), to municipal and industrial customers in North America. CAC ¶¶ 19, 21.  Liquid Alum is a chemical compound most commonly used as a coagulation agent in the treatment and purification of water.  CAC ¶ 2.  On January 23, 2014, GCC was acquired by Chemtrade Logistics Income Fund, a Canadian-based provider of industrial chemicals and services.  *Id.* ¶¶ 23, 25.  All Chemtrade and GCC entities named in the CAC (*i.e.*, General Chemical Corporation, General Chemical LLC, General Chemical Performance Products, LLC, Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, and Chemtrade Solutions, LLC) are referred to herein collectively as "GCC."

### B.      GCC's Bankruptcy

On October 11, 2002, GCC filed for Chapter 11 bankruptcy.  CAC ¶ 23.  As part of its bankruptcy proceedings, GCC satisfied the requirements of due process to all creditors, known and unknown, by notifying them of the April 14, 2003 date after which claims against it would be barred (the "***Bar Date***").  *See* Declaration of Richard H. Epstein (the "***Epstein Decl.***"), Ex. 1. On October 7, 2003, the Bankruptcy Court entered an order allowing GCC to emerge from bankruptcy and discharging all claims arising before the November 10, 2003 date after which the plan of reorganization would be effective (the "***Effective Date***").  *See* Epstein Decl., Ex. 2 (the "***Confirmation Order***").  The Confirmation Order extinguished Plaintiffs' ability to recover damages arising prior to the Effective Date, thus barring Plaintiffs from recovering damages arising prior to November 10, 2003.  *Id.* at 29-30.

### LEGAL ARGUMENT

The Federal Rules of Civil Procedure provide for dismissal of a complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P*. 12(b)(6).  On a motion to dismiss, the Court must take all factual allegations in a complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The Bankruptcy Code expressly states that an order

confirming a debtor's plan of reorganization "discharges the debtor from *any debt* that arose

before the date of such confirmation" (emphasis added).  11 U.S.C. § 1141(d)(1)(A).  Section

101(12) of the Bankruptcy Code defines a "debt" as liability on a "claim," which in turn is

defined in section 101(5) of the Bankruptcy Code as a "right to payment."  *See In re Grossman's*

*Inc.*, 607 F.3d 114, 122 (3d Cir. 2010).  Because black-letter bankruptcy law precludes this Court

from granting relief to Plaintiffs for those claims, they should be dismissed under Rule 12(b)(6).

> **A.** **Plaintiffs Are Barred From Seeking Damages for Sales Prior to November 10, 2003 When GCC Emerged From Chapter 11 Bankruptcy**

Plaintiffs are barred from seeking damages for any claims arising prior to GCC's

emergence from bankruptcy on November 10, 2003.  Such claims were discharged, and thus,

affirmatively enjoined by the United States Bankruptcy Court for the District of Delaware in

GCC's bankruptcy case.  Specifically, section 1141(d)(1)(A) of the Bankruptcy Code provides:

> (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, *the confirmation of a plan — (A) discharges the debtor from any debt that arose before the date of such confirmation,* and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title….

11 U.S.C. §1141(d)(1)(A).  Accordingly, the Confirmation Order states:

> [A]ll parties in interest as to the [Debtors] *are permanently enjoined from taking any of the following actions on account of claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated interest or rights against any such Persons: commencing or continuing, in any manner or in any place, any action or other proceeding; enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order;* creating, perfecting, or enforcing any lien or encumbrance; asserting a setoff against any debt, liability, or obligation due to any such Person; *or commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.*

Epstein Decl., Ex. 2 at 29-30 (emphasis added); *see also* Epstein Decl., Ex. 3 at 43 (the "***Plan of***

***Reorganization***").  The Confirmation Order also states:

> ***the Plan and its provisions shall be binding upon … any holder***
> ***of a claim against or interest in the Debtors, including all***
> ***government entities,*** whether or not the claim or interest of such
> holder is impaired under the Plan and whether or not such holder
> or entity has accepted the Plan***…. [T]he Plan and all Plan-related***
> ***documents shall apply and be enforceable notwithstanding any***
> ***otherwise applicable non-bankruptcy law.***

Confirmation Order at 27-28, 37 (emphasis added).  The Effective Date of the Plan of

Reorganization is November 10, 2003.  Epstein Decl., Ex. 4.  As a result, there can be no dispute

that the Bankruptcy Court discharged claims arising prior to Effective Date or that such Order

enjoins the pursuit of such claims irrespective of antitrust or any other substantive non-

bankruptcy law.

The Third Circuit has adopted a two-part test to determine if a specific claim has been

discharged pursuant to the Bankruptcy Code:  (1) whether the claim arose prior to confirmation

of the reorganization plan, and, if so, (2) whether due process has been afforded to the claimant

such that it is "fair" to discharge his claim.  *In re Grossman's*, 607 F.3d at 127.  Applying this

test to the claims at issue reveals that Plaintiffs' claims for GCC's conduct prior to the Effective

Date have been fully and forever discharged, and thus, Plaintiffs are enjoined from pursuing such

claims.

1.      *Plaintiffs' Claims Arose Prior to the Effective Date*

The accrual test determines whether Plaintiffs' claims arose prior to the Effective Date.

*See Wright v. Corning*, 679 F.3d 101 (3d Cir. 2012) (the accrual test applies to prepetition claims

in bankruptcy cases arising prior to 2010 (when *In re Grossman's* was decided)); *cf. In re Kara*

*Homes, Inc.*, 2016 WL 1128411, at *4; 2016 Bankr. LEXIS 191, at *11 (Bankr. D.N.J. Jan. 19,

2016) (plaintiff's "current action falls within this unique group discussed by the Third Circuit" in

*Wright* in which the accrual test applies). Under the accrual test, a claim arises when it accrues under applicable non-bankruptcy law. *See, e.g.*, *In re M. Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir. 1984), *overruled by In re Grossman's*, 607 F.3d 114.

Here, where antitrust law is at issue, a conspiracy claim accrues "when a defendant commits an act in furtherance of the conspiracy that injures the plaintiff and results in ascertainable damages." *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 766 (3d Cir. 1985), *quoting Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971), *reh'g denied*, 401 U.S. 1015 (1971). Plaintiffs allege that GCC "commit[ed] an act in furtherance of the conspiracy" with respect to the sale and distribution of Liquid Alum starting as early as 1997. Given that this was years before GCC filed for bankruptcy, it is clear that Plaintiffs' claims for ascertainable damages between 1997 and November 9, 2003 accrued prior to the Effective Date, satisfying the first prong of the Third Circuit's two-part test.

2.      *Class Members Were Notified of GCC's Bankruptcy Proceeding, and Thus, Afforded Due Process*

There is no question that the due process rights of all class members were satisfied in connection with GCC's bankruptcy. Due process requires that all creditors be given notice that is reasonably calculated to inform interested parties of the bankruptcy. Specifically, due process requires that "unknown creditors" be given notice by publication and that "known creditors" be given actual notice. *Wright*, 679 F.3d at 108; *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-46 (3d Cir. 1995). Due process does not require that actual notice be given to all of GCC's customers, but only those, if any, known to be actual creditors. And significantly, "[t]he notice requirement is not necessarily intended to advise [the claimants] of the nature of those interests," but only of the impending proceeding. *In re Penn Cent. Transp.*, 771 F.2d at 768 (the "purpose

5

of the notice requirement is to advise individuals who will be affected by the outcome of any proceeding of the impending hearing so that they can take steps to safeguard their interests").

Here, all class members received publication notice of the Bar Date by which all potential claimants, including Plaintiffs, were required to file their claims in the Bankruptcy Court.  On February 14, 2003 – more than two months before the Bar Date – GCC published notice of its Bar Date in the following *ten* newspapers across the United States and Canada:  (1) *The New York Times;* (2) *Philadelphia Inquirer;* (3) *News Journal;* (4) *Chicago Tribune;* (5) *Detroit News/Free Press;* (6) *Houston Chronicle;* (7) *Contra Costa Time;* (8) *Globe and Mail;* (9) *Toronto Star;* and (10) *The Gazette*.  *See* Epstein Decl., Ex. 5.  There is no question that Plaintiffs were unknown creditors of GCC in that their identities could not be ascertained by a "reasonably diligent" search of the company's books and records.  *In re XO Commc'ns, Inc.,* 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (holding that an unknown creditor is one that cannot be uncovered by the debtor through a "reasonably diligent" search of "the debtor's books and records" and that a "vast, open-ended investigation" to identify every "conceivable or possible creditor" is not required); *see also In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 659 (Bankr. S.D.N.Y. 1998) ("[t]he requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.").  Thus, publication notice in ten newspapers across the country and Canada was sufficient to satisfy due process.

In addition, numerous customers – including all the named Plaintiffs that were GCC customers at the time – received *actual* notice of the Bar Date and GCC's bankruptcy, meaning they were served with notice of the Bar Date in the mail.  Epstein Decl., Ex. 1.  As to these Plaintiffs, therefore, GCC went beyond what due process requires.  Accordingly, all class

members received adequate notice of the bankruptcy, sufficient to discharge all claims for damages incurred prior to November 10, 2003.

> 3.    *Plaintiffs Acknowledge That GCC's Bankruptcy Discharged Their Claims Prior to the Effective Date*

Plaintiffs' own admissions compel the conclusion that they are barred from seeking damages for claims arising prior to November 10, 2003.  In several of the individual complaints filed by Plaintiffs, they acknowledge that GCC's bankruptcy discharged all claims arising prior to the bankruptcy.  Specifically, the Plaintiffs state:  "[T]his complaint seeks to recover damages from GenTek and General Chemical only for GenTek's and General Chemical's post-discharge conduct, and in no way seeks to violate any orders of the Bankruptcy Court."  *See, e.g., City of Rochester v. Hawkins, Inc., et al.* (Civil Action No. 15-cv-04266, Dkt. No. 1 ¶ 14 (c), Dec. 1, 2015); *Metropolitan Council v. Hawkins, Inc., et al.* (Civil Action No. 15-cv-04303, Dkt. No. 1 ¶ 14 (c), Dec. 7, 2015);  *TeeMark Corp. v. Reichl, et al.* (Civil Action No. 15-cv-04438, Dkt. No. 1 ¶ 14 (c), Dec. 21, 2015); *City of Duluth v. Reichl, et al.* (Civil Action No. 15-cv-04435, Dkt. No. 1 ¶ 6 (c), Dec. 21, 2015); *City of Minneapolis v. Reichl, et al.* (Civil Action No. 15-cv-04434, Dkt. No. 1 ¶ 14 (c), Dec. 21, 2015); *Board of Water Commissioners of the City of St. Paul v. Reichl, et al.* (Civil Action No. 15-cv-04582, Dkt. No. 1 ¶ 14 (c), Dec. 29, 2015); *City of St. Cloud v. Reichl, et al.* (Civil Action No. 16-cv-00091, Dkt. No. 1 ¶ 6 (c), Jan. 15, 2016); *City of Fergus Falls v. Reichl, et al.* (Civil Action No. 16-cv-00176, Dkt. No. 1 ¶ 15 (c), Jan. 26, 2016); *City of Milwaukee v. Reichl, et al.* (Civil Action No. 16-cv-00212, Dkt. No. 1 ¶ 16 (c), Feb. 23, 2016); *Water, Light, Power & Building Commission of the City of East Grand Forks v. Hawkins, Inc., et al.* (Civil Action No. 15-cv-04350, Dkt. No. 1 ¶ 14 (c), Dec. 11, 2015); *Lake Restoration, Inc. v. Reichl, et al.* (Civil Action No. 16-cv-00582, Dkt. No. 1 ¶ 16 (c), Mar. 7,

2016).  Plaintiffs cannot now argue that they are not enjoined from seeking damages for GCC's

pre-discharge conduct.

Nor is there room for Plaintiffs to argue that the Bankruptcy Code contemplates – or even

permits – something other than the complete and unequivocal discharge that the language of the

injunction suggests.  Indeed, to do so would be to ignore the very purpose of the Bankruptcy

Code, which aims to give reorganized debtors a fresh start.  *See Cent. Va. Cmty. Coll. v. Katz*,

546 U.S. 356, 363-64 (2006) ("Critical features of every bankruptcy proceeding are the exercise

of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that

property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh

start' by releasing him, her, or it from further liability for old debts."); *In re Chalasani*, 92 F.3d

1300, 1310 (2d Cir. 1996) (noting that "an important policy goal in bankruptcy law" is that "a

debtor should obtain a fresh start in life and an opportunity to move ahead free of financial

distress as quickly as possible").  For this reason, it is well-settled that a bankruptcy discharge in

the Plan of Reorganization, as confirmed by the Confirmation Order, supersedes substantive non-

bankruptcy law.  *See* 11 U.S.C. § 1142(a) ("Notwithstanding any otherwise applicable

bankruptcy law, rule, or regulation relating to financial condition, the debtor . . . shall carry out

the plan and shall comply with any orders of the court); *In re Chateaugay Corp.*, 944 F.2d 997,

1002 (2d Cir. 1991) (section 1141 is a "bankruptcy statute that is intended to ***override*** many

provisions of law that would apply in the absence of bankruptcy – especially laws otherwise

providing creditors suing promptly with full payment of their claims") (emphasis added); *see*

*also In re Castle Home Builders, Inc.*, 520 B.R. 98, 101 (Bankr. N.D. Ill. 2005) (recognizing a

bankruptcy court's broad authority to order parties to comply with terms of a confirmed plan of

reorganization).  Indeed, the Confirmation Order expressly states that "the Plan and all Plan-

related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law." Epstein Decl., Ex. 2 at 27-28, 37.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, GCC respectfully requests that the Court dismiss Plaintiffs' Consolidated Amended Complaint for failure to state a claim upon which relief can be granted, insofar as it asserts claims or seeks damages for conduct prior to GCC's discharge in bankruptcy on November 10, 2003.

Dated: October 21, 2016

Respectfully submitted,

*s/ Richard H. Epstein*
Richard H. Epstein
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Fax: (973) 643-6500
repstein@sillscummis.com

Steven A. Reiss (admitted *pro hac vice*)
Adam C. Hemlock (admitted *pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*Attorneys for Defendants General Chemical Corporation, General Chemical LLC, General Chemical Performance Products, LLC, Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, and Chemtrade Solutions, LLC*