# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: LIQUID ALUMINUM SULFATE
ANTITRUST LITIGATION

*This Document Relates to: Putative Class of
Direct Purchaser Plaintiffs*

Civil Action No. 16-md-2687 (JLL)(JAD)
MDL No. 2687

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GEO SPECIALTY CHEMICALS, INC.'S FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS

James H. Mutchnik
Sydney L. Schneider
**KIRKLAND & ELLIS LLP**
300 N. LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000
Fax: (312) 862-2200
james.mutchnik@kirkland.com
sydney.schneider@kirkland.com

Cormac T. Connor
**KIRKLAND & ELLIS LLP**
655 15th Street, N.W., Ste 1200
Washington, DC 20005
Phone: (202) 879-5000
Fax:  (202) 879-5200
cormac.connor@kirkland.com

Robert F. Ware
Mark R. Butscha, Jr.
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH  44114
Phone:  (216) 566-5500
Fax:  (216) 566-5800
rob.ware@thompsonhine.com
mark.butscha@thompsonhine.com

*Attorneys for Defendant GEO Specialty Chemicals, Inc.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

III.    LEGAL STANDARD .......................................................................................... 4

IV.     ARGUMENT ....................................................................................................... 5

        A.    Civil Antitrust Claims are Dischargeable in Bankruptcy ........................ 5

        B.    GEO's Chapter 11 Bankruptcy Discharged All Existing Claims ........................ 6

              1.    Notice to Known and "Unknown" Creditors ................................ 7

              2.    Confirmation of GEO's Reorganization Plan and Discharge of
                    Claims ................................................................................. 8

              3.    Bankruptcy Court Retained Exclusive Jurisdiction ................................... 9

        C.    GEO Gave Proper Notice to All Known and Unknown Claimants ..................... 10

        D.    Plaintiffs' Antitrust Claim Accrued Pre-Discharge ............................... 11

        E.    Claims Discharged Regardless of Plaintiffs' Knowledge or Proof of Claim ....... 12

V.      CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acevedo v. Van Dorn Plastic Mach. Co.*,
  68 B.R. 495 (Bankr. E.D.N.Y. 1986)........................................................................ 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................... 4

*Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*,
  744 F.2d 332 (3d Cir. 1984) .................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................... 4

*Chemetron Corp. v. Jones*,
  72 F.3d 341 (3d Cir. 1995) ............................................................................... 7, 8

*Chrysler Motors Corp. v. Schneiderman*,
  940 F.2d 911 (3d Cir. 1991) ................................................................................. 10

*DePippo v. Kmart Corp.*,
  335 B.R. 290 (S.D.N.Y. 2005)............................................................................... 8

*E.I. DuPont De Nemours & Co. v. United States*,
  460 F.3d 515 (3d Cir. 2006) .................................................................................. 6

*Eisenberg Bros., Inc. v. Clear Shield Nat'l, Inc. (In re Envirodyne Indus., Inc.)*,
  214 B.R. 338 (N.D. Ill. 1997) ............................................................................... 14

*Gage v. Warren Tp. Comm. & Planning Bd. Members*,
  463 Fed. Appx. 68 (3d Cir. 2012)........................................................................... 7

*In re Amdura Corp.*,
  170 B.R. 445 (D. Colo. 1994)............................................................................... 13

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ................................................................................. 4

*In re Donald J. Trump Casino Sec. Litig.*,
  7 F.3d 357 (3rd Cir. 1993) ..................................................................................... 4

*In re Dura Automotive Systems, Inc.*,
  Case No. 06-11202 (KJC) (Bankr. D. Del. Feb. 23, 2007)....................................... 8

i

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re First Jersey Sec., Inc.*,
  180 F.3d 504 (3d Cir. 1999) ................................................................................. 6

*In re GEO Specialty Chemicals, Inc., et al.*,
  Case No. 04-19148 (MS) (Bankr. D.N.J.) ...................................................... passim

*In re Lear Corp.*,
  2012 WL 5438929 (S.D.N.Y. Nov. 5, 2012) ........................................................ 6

*In re Neff Corp.*,
  Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. May 17, 2010) ................................. 8

*In re Penn. Cent. Transp. Co.*,
  771 F.2d 762 (3d Cir. 1985) ................................................................. 5, 6, 12, 13

*In re Penn. Central Transp. Co.*,
  42 B.R. 657 (E.D. Pa. 1984),
  *aff'd* 771 F.2d 762 (3d Cir. 1985) ..................................................................... 13

*In re Prod. Plating, Inc.*,
  90 B.R. 277 (Bankr. E.D. Mich. 1988) ............................................................... 13

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) .................................................................................. 4

*In re Trump Taj Mahal Assocs.*,
  156 B.R. 928 (Bankr. D.N.J. 1993) ..................................................................... 10

*In re Visteon Corp.*,
  Case No. 09-11786 (CSS) (Bankr. D. Del. Aug. 24, 2009) ................................... 8

*In re Waterman Steamship Corp.*,
  141 B.R. 552 (Bankr. S.D.N.Y. 1992) ................................................................ 14

*In re XO Commc'ns, Inc.*,
  301 B.R. 782 (Bankr. S.D.N.Y. 2003) .................................................................. 8

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*,
  607 F.3d 114 (3d Cir. 2010) ..................................................................... 5, 6, 11

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
  304 F. 3d 223 (2d Cir 2002) ................................................................................. 2

*Matter of Reading Co.*,
  115 F.3d 1111 (3d Cir. 1997) ..................................................................... 5, 6, 13

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................. 7

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994) ...................................................................... 4

*Pioneer Investment Services Company v. Brunswick Associates LP*,
    507 U.S. 380 (1993) ................................................................................ 10

*Texaco Inv. v. Sanders (In re Texaco Inc.)*,
    182 B.R. 937 (Bankr. S.D.N.Y. 1995) .................................................... 14

*United States v. LTV Corp. (In re Chateaugay)*,
    944 F.2d 997 (2d Cir. 1991) ...................................................................... 6

*Wiatt v. Winston & Strawn LLP*,
    838 F. Supp. 2d 296 (D.N.J. 2012) .......................................................... 7

*Wright v. Owens Corning (In re Owens Corning)*,
    679 F.3d 101 (3d Cir. 2012) .................................................................... 11

**STATUTES**

1 U.S.C. § 101(5)(A) .................................................................................... 6

11 U.S.C. § 101(12) ...................................................................................... 5

11 U.S.C. § 1141(d)(1)(A) ........................................................................... 5

**OTHER AUTHORITIES**

H.R. Rep. No. 595, 95th Cong., 2d Sess. 309,
    *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963 ............................ 6

S. Rep. No. 989, 95th Cong., 2d Sess. 21-22,
    *reprinted in* 1978 U.S. Code Cong. & Ad. News 5785 ........................... 6

**RULES**

Fed. R. Bankr. P. 9006(b)(1) ...................................................................... 10

Fed. R. Civ. P. 12(b)(6) ................................................................................ 4

## I.      INTRODUCTION

Direct Purchaser Plaintiffs' ("Plaintiffs") claims against Defendant GEO Specialty Chemicals, Inc. ("GEO") should be dismissed, to the extent that any claim seeks relief relating to conduct that gave rise to claims that were discharged as part of GEO's Chapter 11 bankruptcy proceedings.  As Plaintiffs acknowledge, GEO filed for Chapter 11 bankruptcy protection on March 18, 2004 (the "Bankruptcy Case").  (8/22/16 Consol. Am. Compl. ¶31 (Dkt. 220).) During its Bankruptcy Case, GEO prepared a plan of reorganization.   (*See In re GEO Specialty Chemicals, Inc., et al.*, Case No. 04-19148 (MS) (Bankr. D.N.J.), Debtors' Third Modified Joint Plan of Reorganization Under ch. 11, tit. 11, at art. 12.10 (Dkt. 887) (hereinafter, the "Reorganization Plan") (Mutchnik Decl. Ex. 1.).)[1]  The Reorganization Plan was approved by order of the Bankruptcy Court. (*See* Order Confirming Third Modified Joint Plan of Reorganization Under ch. 11, tit. 11 (Dkt. 1014) (hereinafter, the "Confirmation Order") (Mutchnik Decl. Ex. 2.).)  Importantly, the Effective Date of the Reorganization Plan, pursuant to the Confirmation Order, was December 31, 2004.[2]

The Confirmation Order and Reorganization Plan also provided that the Bankruptcy Court would "retain exclusive jurisdiction over all matters arising out of, and related to, [GEO's] Chapter 11 Case… including, among other things, jurisdiction to:  […] hear and determine all disputes involving the existence, nature, or scope of [GEO's] discharge." (Mutchnik Decl. Ex. 1, Reorganization Plan, at art. 11.1 and 11.1(o); *see generally* Mutchnik Decl. Ex. 2, Confirmation Order.)  As a result, contemporaneously with this Motion, GEO has filed with the Bankruptcy Court a motion to reopen those proceedings and to enforce the terms of the Confirmation Order.

---

[1]   All references to Mutchnik Decl. are to the Declaration of James H. Mutchnik Filed in Support of Defendant GEO Specialty Chemicals, Inc.'s Motion to Dismiss.

[2]   Plaintiffs aver that GEO emerged from bankruptcy protection on December 20, 2004.  (Dkt. 220 at ¶ 30.)  The operative date for discharge of claims, however, is December 31, 2004.

Numerous Plaintiffs in this matter have previously acknowledged the force and effect of the Confirmation Order's injunction, specifically disclaiming any effort to recover damages for conduct prior to GEO's bankruptcy discharge in at least ten of the individual complaints that were filed before Plaintiffs filed the operative Consolidated Amended Complaint (the "Amended Complaint").  (*See, e.g., City of Rochester v. Hawkins, Inc., et al.*, Civil Action No. 15-cv-04266, Dkt. No. 1 ¶ 18(c), Dec. 1, 2015) ("[T]his complaint seeks to recover damages from GEO Specialty only for GEO Specialty's post-discharge conduct, and in no way seeks to violate any orders of the Bankruptcy Court.").)   Despite these prior acknowledgements, Plaintiffs now contend in the Amended Complaint that they are entitled to relief related to conduct that occurred prior to GEO's Chapter 11 discharge.  Respectfully, Plaintiffs are wrong.  Because the Confirmation Order bars these claims for pre-discharge damages, they fail to state a claim upon which relief can be granted.  Accordingly, this Court should dismiss them under Rule 12(b)(6).[3]

## II.   BACKGROUND

Through its Water Treatment Chemicals Division, which is based in Little Rock, Arkansas, GEO manufactures a variety of products, including the product that is the subject of the instant lawsuit, liquid aluminum sulfate ("Liquid Alum").  Liquid Alum is used primarily to treat and purify water.

GEO's Liquid Alum customers are clustered primarily in the Southeastern United States.  These customers generally fall into two categories:  a small number of pulp-and-paper manufacturers, which use Liquid Alum to clean the water that they use to make paper products; or, municipal water authorities, which use Liquid Alum to treat drinking water.  GEO typically

---

[3]   Even assuming Plaintiffs could seek damages for pre-discharge conduct (which they cannot), this Court should still dismiss Plaintiffs' claims because Plaintiffs have not sought relief in the bankruptcy court that confirmed GEO's Reorganization Plan.  *See, e.g., Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.").

sells Liquid Alum directly to its pulp-and-paper customers.  Some of GEO's municipal customers purchase Liquid Alum directly from GEO, but most purchase Liquid Alum indirectly through distributors.

In March 2004, GEO sought protection under Chapter 11 of the United States Code (the "Bankruptcy Code").  *See In re GEO Specialty Chemicals, Inc. et al.*, Case No. 04-19148 (MS) (Bankr. D.N.J.).  As discussed in greater detail below, GEO provided proper notice to all known and unknown claimants during the bankruptcy process, and, when the Bankruptcy Court approved GEO's Reorganization Plan and entered the Confirmation Order, it approved provisions that completely discharged and released all claims that accrued prior to December 31, 2004.  Furthermore, the Bankruptcy Court explicitly retained exclusive jurisdiction over all matters arising out of, and related to, GEO's Bankruptcy Case, including, among other things, jurisdiction over all disputes involving the existence, nature, or scope of GEO's discharge.  (*See* Mutchnik Decl. Ex. 1, Reorganization Plan, at art. 11.1.)

In the instant case, on August 22, 2016, the putative class of direct purchasers of Liquid Alum (the "Plaintiffs" or "DPPs") filed the Amended Complaint.  (Dkt. 220.)  Plaintiffs identify a "Class Period" lasting from "January 1, 1997 through at least February 2011," during which GEO and the other named Defendants allegedly participated in a conspiracy to violate the Sherman Act.  (*Id.* at ¶ 3.)  The Plaintiffs assert one claim for relief, namely, that the Defendants all entered into a conspiracy that violated Section 1 of the Sherman Act.  (*Id.* at ¶¶ 132-40.)  Although Plaintiffs are aware of GEO's Bankruptcy Case and, presumably, the discharge order that was entered in that Case (*see id.* at ¶ 31), Plaintiffs seek to recover damages that they allegedly suffered during the ***entire*** Class Period.  (*Id.* at ¶¶ 132–140.)

3

Contemporaneously with this Motion, GEO has moved to reopen its Bankruptcy Case, and is seeking to have the discharge order and injunction provisions enforced against Plaintiffs' claims in the instant case.  For the reasons stated herein, this Court should dismiss Plaintiffs' claims for relief to the extent that they are based on pre-discharge conduct by GEO or any of its alleged co-conspirators.

## III.   LEGAL STANDARD

A complaint must be dismissed if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff's well-pleaded facts, taken together, must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  In deciding a motion to dismiss, a district court must accept as true all of the complaint's well-pleaded facts, but may disregard "bald assertions" and "legal conclusions," which are not entitled to the presumption of truth.  *See In re Schering*, 678 F.3d at 252 (citation omitted); *see also Iqbal*, 556 U.S. at 678–79.

Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Similarly, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3rd Cir. 1993); *see In re Burlington Coat Factory*, 114 F.3d at 1426.

4

## IV.    ARGUMENT

As a result of the Reorganization Plan's discharge and injunction provisions, GEO received a full and complete discharge of all claims that existed as of December 31, 2004.  (*See generally* Mutchnik Decl. Ex. 1, Reorganization Plan at art. 12. 10; Mutchnik Decl. Ex. 2, Confirmation Order.)   GEO provided proper notice to all known and unknown potential claimants.  Plaintiffs do not dispute these facts.

Plaintiffs contend that their failure to assert claims during GEO's Bankruptcy Case should be excused.  (*See, e.g.,* Dkt. 220 at ¶ 122, *et seq.*)  Plaintiffs' contention, however, fails as a matter of law.  Regardless of whether Plaintiffs were aware of their claims at the time, and regardless of whether Plaintiffs filed proofs of claim on account of their claims, any claims that legally "accrued" (discussed below) before December 31, 2004 (the "Effective Date") were totally discharged.  *See Matter of Reading Co.*, 115 F.3d 1111, 1121-24 (3d Cir. 1997); *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 767-70 (3d Cir. 1985).  Plaintiffs cannot now recover damages for claims that were discharged by the Bankruptcy Court and any such claims—or portions of such claims— should now be dismissed.

### A.    Civil Antitrust Claims are Dischargeable in Bankruptcy

Upon confirmation of a Chapter 11 bankruptcy reorganization plan, § 1141 of the Bankruptcy Code provides for a discharge of any debt that arose before the date of confirmation. *See* 11 U.S.C. § 1141(d)(1)(A); *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 122 (3d Cir. 2010).[4]  "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(12).  A "claim" is defined broadly as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

---

[4]    Section 524 of the Bankruptcy Code provides an injunction against violations of the discharge.

legal, equitable, secured or unsecured."   11 U.S.C. § 101(5)(A).   Congress intended the

definition of "claim" to be very broad, demonstrating "Congress' intent to provide debtors with a

fresh start, an objective… 'made more feasible by maximizing the scope of a discharge.'"   *In re*

*Grossman's Inc.*, 607 F.3d 114 at 122 (quoting *United States v. LTV Corp. (In re Chateaugay)*,

944 F.2d 997, 1002 (2d Cir. 1991)).[5]   The definition of "claim" has been applied to encompass

civil antitrust claims, such that civil antitrust claims predicated on acts committed pre-discharge

are subject to a bankruptcy discharge.   *See In re Penn Cent. Transp. Co.*, 771 F.2d 762 at 766-67;

*Matter of Reading Co.*, 115 F.3d at 1122 (evaluating *Penn Central*), *abrogation on other*

*grounds recognized by E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515, 518 (3d

Cir. 2006).   Indeed, in matters involving allegations of an antitrust conspiracy that straddled a

defendant-debtor's bankruptcy case, bankruptcy courts have found the discharge to apply to

conduct that occurred before the discharge date.   *See, e.g., In re Lear Corp.*, 2012 WL 5438929,

at *2 (S.D.N.Y. Nov. 5, 2012).

### B.     GEO's Chapter 11 Bankruptcy Discharged All Existing Claims

As the Plaintiffs acknowledge in their Amended Complaint (Dkt. 220 at ¶ 31), GEO filed

for Chapter 11 bankruptcy protection on March 18, 2004 (the "Petition Date").   (*See In re GEO*

*Specialty Chemicals, Inc. et al.*, Case No. 04-19148 (MS) (Bankr. D.N.J.) (3/18/04 ch. 11

Voluntary Pet. (Dkt. 1).).   Plaintiffs have not raised any dispute that relates to the procedures

used or rulings entered in GEO's Bankruptcy Case.   Accordingly, GEO requests that the Court

take judicial notice of certain documents, described below, that are part of the public record from

---

[5]     The legislative history related to the Bankruptcy Code states that the definition of a claim is crafted to ensure
that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the
bankruptcy case.   It permits the broadest possible relief in the bankruptcy court."   H.R. Rep. No. 595, 95th
Cong., 2d Sess. 309, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6266; *see also* S. Rep. No. 989,
95th Cong., 2d Sess. 21-22, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5785, 5807-08 (same); *In re First*
*Jersey Sec., Inc.*, 180 F.3d 504, 510 (3d Cir. 1999) (recognizing legislative history and scope of definition).

6

GEO's Bankruptcy Case and which are pertinent here.  *See Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 312 (D.N.J. 2012) (noting that, when deciding motion to dismiss, court can review matters of public record in prior cases); *see also Gage v. Warren Tp. Comm. & Planning Bd. Members*, 463 Fed. Appx. 68, 71 (3d Cir. 2012) ("The District Court may take judicial notice of the record from a previous court proceeding between the parties").

        1.     <u>Notice to Known and "Unknown" Creditors</u>

During its Bankruptcy Case, GEO served and published notices of the applicable bar date for filing claims and of the terms and provisions of the Reorganization Plan, thus fulfilling its due process notice obligations to known and unknown creditors.  GEO identified and provided notice to "known" creditors.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (holding that due process requires notice reasonably calculated to apprise interested parties of the pendency of the action and to reasonably convey required information); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (finding that debtor is only required to provide notice to creditors whose claims are "reasonably ascertainable" from a review of the debtor's books and records).  GEO mailed notices of the General Claims Bar Date directly to these "known" creditors.  (*See In re GEO*, 5/22/04 Service of Notice of Meeting of Creditors (Dkt. 270).)

GEO also provided notice of the General Claims Bar Date to unknown creditors by publishing notices of the General Claims Bar Date in the July 21, 2004 editions of *The Wall Street Journal* and the *Newark Star Ledger*.[6]  (*See* Mutchnik Decl. Ex. 4, 7/26/04 Aff. Regarding Publ'n of Debtor's Notice of Bar Date (Dkt. 493).).  This type of general notice has repeatedly

---

[6]    None of the entities identified as direct purchaser plaintiffs in the Amended Complaint were GEO customers or creditors during the Class Period.  Thus, to the extent that their claims are viable, the named Plaintiffs would be regarded as "unknown" claimants for purpose of notice.

been held to satisfy due process requirements for "unknown" creditors.  *See, e.g., Chemetron*, 72

F.3d at 348 (publication in *The New York Times* and *The Wall Street Journal* sufficient); Bar

Date Motion*, In re Visteon Corp.,* Case No. 09-11786 (CSS) (Bankr. D. Del. Aug. 24, 2009)

(publication in *The Wall Street Journal*, *Automotive News*, *Detroit Free Press*, *Philadelphia*

*Inquirer* and I*ndianapolis Star* sufficient); Bar Date Order, *In re Dura Automotive Systems, Inc.*,

Case No. 06-11202 (KJC) (Bankr. D. Del. Feb. 23, 2007) (publication in *The New York Times*,

*Financial Times*, *The Wall Street Journal*, *Detroit Free Press*, and *Automotive News* sufficient);

*In re XO Commc'ns, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y. 2003) (publication in *The Wall*

*Street Journal* sufficient); *DePippo v. Kmart Corp.*, 335 B.R. 290, 297 (S.D.N.Y. 2005)

(publication in *The New York Times*, *The Wall Street Journal*, and *USA Today* sufficient); Bar

Date Motion*, In re Neff Corp.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. May 17, 2010)

(publication in *The Wall Street Journal* and *Miami Herald* sufficient).  Therefore, all of GEO's

creditors, known and unknown, had constitutionally sufficient notice of the applicable dates for

filing claims against GEO's bankruptcy estate.

2.     Confirmation of GEO's Reorganization Plan and Discharge of Claims

On December 20, 2004 (the "Confirmation Date"), the Bankruptcy Court entered the

Confirmation Order, confirming GEO's Reorganization Plan.  (*See* Mutchnik Decl. Ex. 2,

Confirmation Order.)  Notably, in doing so, Judge Morris Stern[7] determined that GEO had

provided "adequate and sufficient" notice to parties in interest (*id.* at art. C), and that the

provisions of the Reorganization Plan complied with the Bankruptcy Code.  (*Id.* at art. J.)

Pertinent here, the terms of GEO's Reorganization Plan provided for a broad settlement,

discharge and release of all "Claims" that might have been asserted against GEO and its assets,

---

[7]     Judge Stern passed away in 2014.  GEO does not yet know to whom its contemporaneously-filed motion to
reopen GEO's Bankruptcy Case will be assigned.

***whether or not a proof of claim was filed on account of such Claim***. (*See* Mutchnik Decl. Ex. 1, Reorganization Plan, at art. 12.10.) As noted above, the Effective Date of the Reorganization Plan was December 31, 2004. (*See* Mutchnik Decl. Ex. 3, 1/25/05 Aff. Regarding Service of the Notice of Confirmation Order at Ex. A.) (Dkt. 1073).)

Once it was approved, the Reorganization Plan operated not only to discharge all claims that arose prior to the Effective Date (*i.e.*, before December 31, 2004) but also prospectively to enjoin collateral attacks or future judgments that might pertain to pre-discharge claims. In particular, the Reorganization Plan provides that:

> ***As of the Effective Date***, except as provided in the Plan or in the Confirmation Order, ***all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further Claims, debts, rights, causes of action, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, or other activity of any nature that occurred prior to the Effective Date***. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all GEO Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and ***such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.***

Mutchnik Decl. Ex. 1, Reorganization Plan, at art. 12.10(b) (emphasis added).

### 3. Bankruptcy Court Retained Exclusive Jurisdiction

The Bankruptcy Court also retained "exclusive jurisdiction" over issues related to GEO's Bankruptcy Case. (*Id.* at art. 11.1.) The scope of the Bankruptcy Court's retention of exclusive jurisdiction is prospective and broad, such that, among other things, the Bankruptcy Court retained jurisdiction to:

- "hear and determine all disputes involving the existence, nature, or scope of [GEO's] discharge" (*id.* at art. 11.1(o));

- "hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan…" (*id.* at art. 11.1(g));

- "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order" (*id.* at art. 11.1(i)); and,

- "enforce all orders, judgments, injunctions, releases, exculpations, Bankruptcy Rule 2004 subpoenas, indemnifications, and rulings entered in connection with [GEO's Bankruptcy] Case" (*id.* at art. 11.1(l)).

GEO's Bankruptcy Case was closed on June 28, 2006.  (*See In re GEO*, 6/28/06 Final Decree (Dkt. 1315).)  According to GEO's bankruptcy docket and claims register, none of the proofs of claim filed in the Bankruptcy Case by any party related to antitrust allegations.

### C.    GEO Gave Proper Notice to All Known and Unknown Claimants

Assuming a debtor provides proper notice, any claims that arose before the General Claims Bar Date are presumptively barred from ever being asserted, ***unless*** a proof of claim was filed before the General Claims Bar Date or the applicable claimant can show that the failure to timely file was the result of "excusable neglect."[8]  *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 936 (Bankr. D.N.J. 1993); *see* Fed. R. Bankr. P. 9006(b)(1).  "The well-established law of [the Third] Circuit is… that bar dates for filing Proofs of Claim are strictly construed."  *In re Trump*, 156 B.R. at 936. (citing *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 912 (3d Cir. 1991)).

As described above, GEO provided actual notice to "known" creditors.  GEO also provided due process to "unknown" creditors by publishing its notices in two different newspapers.  (Mutchnik Decl. Ex. 2, Confirmation Order, at art. C. (deeming notices to have

---

[8]    The Supreme Court set four factors to guide analysis of excusable neglect:  "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Pioneer Invs. Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993).

been proper).)  Nowhere in the Amended Complaint do Plaintiffs even suggest that the notices provided as part of GEO's Bankruptcy Case were in any way deficient or improper.  Plaintiffs have not claimed and cannot now claim that their failure to file notices of their claims during GEO's Bankruptcy Case was the result of excusable neglect and, therefore, any claims that arose before the Effective Date are barred by the application of the bar date and Confirmation Order, and should be dismissed.

### D.    Plaintiffs' Antitrust Claim Accrued Pre-Discharge

Plaintiffs assert that, beginning in 1997, GEO and its co-defendants formed a conspiracy to violate the Sherman Act and, from that time until February 2011, engaged in acts that caused damages to the Plaintiffs.  (*See, e.g.*, Dkt. 220 at ¶¶ 136-39.)  *Cf. Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  Plaintiffs also allege that the antitrust conspiracy described in their Amended Complaint began in 1997 and that the Plaintiffs suffered damages starting at that time due to "artificially high and supra-competitive" prices for Liquid Alum, among other things.  (*See, e.g.*, Dkt. 220 at ¶¶ 136-39.)

At the time that GEO's Reorganization Plan was confirmed, courts in the Third Circuit determined whether a claim has accrued for the purposes of a bankruptcy discharge by analyzing whether the underlying cause of action had accrued under the standards of proof applicable to that cause of action.  *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332, 337 (3d Cir. 1984) (setting forth this rule); *see Wright v. Owens Corning (In re Owens Corning)*, 679 F.3d 101, 108 (3d Cir. 2012).[9]  Pursuant to the Supreme Court's ruling in

---

[9]    The standard used in *Frenville* was rejected and modified by the Third Circuit in 2010.  *See JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (overruling *Frenville* and setting forth pure conduct-based rule not dependent on the law of the underlying cause of action).  However, the Third Circuit later determined that, for Chapter 11 reorganization plans that were confirmed **prior to 2010**, the *Frenville* standard would continue to apply.  *Wright v. Owens Corning (In re Owens Corning)*, 679 F.3d 101, 108 (3d Cir. 2012).  As a result, the *Frenville* standard applies to the evaluation of GEO's Reorganization Plan.

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, an antitrust cause of action accrues upon the occurrence of any act by any co-conspirator that causes damage to a plaintiff.  401 U.S. at 338. Importantly, courts focus on the timing of the ***act***, not the timing of the ***damages***.  *Id.*; *see In re Penn Cent. Transp. Co.*, 771 F.2d 762, 766 (3d Cir. 1985) [hereinafter *Penn Central*] (determining that an antitrust conspiracy claim "accrues when a defendant commits an act in furtherance of the conspiracy that injures the plaintiff and results in ascertainable damages").

Plaintiffs allege that, well before the December 31, 2004 discharge date, GEO engaged in acts that caused the Plaintiffs to suffer damages.  As a result, Plaintiffs claims based on those acts had accrued before the discharge date.  Under Third Circuit law, those claims were subject to the General Claims Bar Date and comprehensive discharge provisions set forth in Article 12.10 of the Reorganization Plan.

### E. Claims Discharged Regardless of Plaintiffs' Knowledge or Proof of Claim

Plaintiffs contend that their failure to raise their claims should be excused because GEO and it co-defendants fraudulently concealed the alleged conspiracy.  (Dkt. 220 at ¶¶ 122-31.) However, two Third Circuit decisions show that Plaintiffs' fraudulent concealment allegations are irrelevant, because, as stated above, Plaintiffs' claims are deemed to have accrued at the time of the alleged act.

The first case involved plaintiffs who brought antitrust claims against a reorganized debtor subsequent to the debtor's bankruptcy, asserting that the debtor and its co-conspirators had engaged in a conspiracy to drive the plaintiffs out of business.  *See Penn Central*, 771 F.2d at 767-769.  In that case, the plaintiffs argued that they had no knowledge of their claims nor reason to know their claims existed because no damages had occurred or become manifest until after the bankruptcy case had closed.  *Id.*  The *Penn Central* court examined the nature of the antitrust claims and disagreed, holding that the claims existed at the time of the reorganization.

12

*Id.* at 769.  Consequently, even though the plaintiffs argued that they were not aware of the conspiracy until after the effective date, the *Penn Central* court held that the claims were discharged.  *Id.*

Second, in *Matter of Reading Co.*, 115 F.3d 1111 (3d Cir. 1997), the Third Circuit similarly held that civil antitrust claims predicated on acts committed pre-discharge are subject to the bankruptcy discharge order even where the actual damages did not occur until after the discharge date.  In reaching its holding, the *Reading* court evaluated the teachings of *Penn Central* and, as pertinent here, the Third Circuit distinguished antitrust claims from product liability claims or claims for contribution and indemnity that arose out of an antitrust lawsuit, finding that direct antitrust claims begin to accrue when the defendant commits an act in furtherance of the conspiracy and are thus dischargeable even if the damage has not manifested itself prior to confirmation.  *See id.*, at 1121-24.

The holdings in *Penn Central* and *Reading* are particularly apposite here because, in those cases, the plaintiffs claimed not to have learned of the conspiracy until they realized that they had suffered damages.  Here, Plaintiffs assert that they found out about the conspiracy in November 2015.  (Dkt. 220 at ¶ 123.)  To be clear, unlike the plaintiffs in *Penn Central* and *Reading*, the Plaintiffs here contend that they learned of their claims ***before*** they realized that they had suffered any purported damages.  Consistent with the Third Circuit's teachings in *Penn Central* and *Reading*, any alleged concealment by GEO or its co-defendants is irrelevant to the question of whether those claims were encompassed by GEO's bankruptcy discharge.[10]

---

[10]  Courts in this and other jurisdictions have repeatedly held that a debtor's notice of the deadline to file claims need only provide a potential claimant with notice of the need to file a claim or the date for filing a claim, ***but not the existence or nature of those claims***.  *See In re Penn. Central Transp. Co.*, 42 B.R. 657, 663 (E.D. Pa. 1984), *aff'd* 771 F.2d 762 (3d Cir. 1985); *see also Penn Cent.*, 771 F.2d at 768 ("The notice requirement is not necessarily intended to advise [claimants] of the nature of th[eir] interests."); *In re Amdura Corp.*, 170 B.R. 445, 452-53 (D. Colo. 1994); *In re Prod. Plating, Inc.*, 90 B.R. 277, 285 (Bankr. E.D. Mich. 1988) *but see Acevedo v. Van Dorn Plastic Mach. Co.*, 68 B.R. 495 (Bankr. E.D.N.Y. 1986) (holding, in opinion that appears

## V.    CONCLUSION

For the reasons stated above, to the extent that Plaintiffs' claims for relief accrued before

December 31, 2004, those claims should be dismissed.

Dated: October 21, 2016                    By:    */s/ James H. Mutchnik*
                                                  James H. Mutchnik
                                                  Sydney L. Schneider
                                                  KIRKLAND & ELLIS LLP
                                                  300 North LaSalle
                                                  Chicago, IL 60654
                                                  Telephone: (312) 862-2000
                                                  Fax: (312) 862-2200
                                                  james.mutchnik@kirkland.com
                                                  sydney.schneider@kirkland.com

                                                  Cormac T. Connor
                                                  KIRKLAND & ELLIS LLP
                                                  655 Fifteenth Street, N.W.
                                                  Washington, D.C. 20005
                                                  Telephone: (202) 879-5000
                                                  Fax: (202) 879-5200
                                                  cormac.connor@kirkland.com

                                                  Robert F. Ware
                                                  Mark R. Butscha, Jr.
                                                  THOMPSON HINE LLP
                                                  3900 Key Center Square
                                                  127 Public Square
                                                  Cleveland, OH  44114
                                                  Telephone:  (216) 566-5500
                                                  Fax:  (216) 566-5800
                                                  rob.ware@thompsonhine.com
                                                  mark.butscha@thompsonhine.com

                                   *Counsel for Defendant GEO Specialty Chemicals, Inc.*

---

not to have been followed by any other court, that debtor must notify claimant of nature of its claim); *In re Waterman Steamship Corp.*, 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992) (noting in *obiter* that claimant must be made aware of nature of claims), *vacated on other grounds*, 157 B.R. 220 (S.D.N.Y. 1993).  "The bankruptcy laws state that claims that are asserted after confirmation are discharged, there is no exception for claims that were unknown to a claimant [during the bankruptcy]."  *Eisenberg Bros., Inc. v. Clear Shield Nat'l, Inc. (In re Envirodyne Indus., Inc.)*, 214 B.R. 338, 351 (N.D. Ill. 1997); *see also Texaco Inv. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 952-53 (Bankr. S.D.N.Y. 1995) (holding that environmental claims were subject to discharge where contamination from debtor's salt water storage pits migrated to claimant's property prior to the entry of discharge, but damage caused by the migration was not evident until after the discharge).