# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
(216) 566-5500
Alan R. Lepene, Esq. (Ohio Bar # 0023276)
Robert C. Folland, Esq. (Ohio Bar # 0065728)
Sean A. Gordon, Esq. (Ohio Bar # 0074243)
-and-
RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500
Howard S. Greenberg, Esq. (HSG8559)
Stephen B. Ravin, Esq. (SR7074)
Brian L. Baker, Esq. (BB4569)
*Co-Attorneys for Debtors and Debtors-in-Possession,
GEO Specialty Chemicals, Inc. and GEO Specialty
Chemicals Limited*

| In Re: | Chapter 11 |
| GEO Specialty Chemicals, Inc., et al, | Case No.: 04-19148 (MS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: |

**THIRD MODIFIED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11,
TITLE 11, UNITED STATES CODE OF GEO SPECIALTY CHEMICALS, INC.
AND GEO SPECIALTY CHEMICALS LIMITED, DEBTORS**

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........................................................................................... 1

1.1      Abandoned Properties.......................................................................... 2
1.2      Adequate Protection Claims................................................................ 2
1.3      Administrative Claim ........................................................................... 2
1.4      Allowed ................................................................................................ 2
1.5      Bankruptcy Code.................................................................................. 2
1.6      Bankruptcy Court................................................................................. 2
1.7      Bankruptcy Rules................................................................................. 2
1.8      Bar Date(s) ........................................................................................... 3
1.9      Bondholder Unsecured Claim ............................................................. 3
1.10     Business Day......................................................................................... 3
1.11     Cash...................................................................................................... 3
1.12     Chapter 11 Case ................................................................................... 3
1.13     Citibank Secured Claim ....................................................................... 3
1.14     Claim .................................................................................................... 3
1.15     Claims Objection Deadline .................................................................. 3
1.16     Class ..................................................................................................... 3
1.17     Confirmation........................................................................................ 3
1.18     Confirmation Date................................................................................ 3
1.19     Confirmation Hearing .......................................................................... 3
1.20     Confirmation Order.............................................................................. 4
1.21     Creditor ................................................................................................ 4
1.22     Creditors Committee ............................................................................ 4
1.23     Cure ...................................................................................................... 4
1.24      Debtor(s) .............................................................................................. 4
1.25     DIP Facility.......................................................................................... 4
1.26     DIP Facility Agent ............................................................................... 4
1.27     DIP Facility Claim ............................................................................... 4
1.28     DIP Facility Lenders............................................................................ 4
1.29     Disbursing Agent ................................................................................. 4
1.30     Disclosure Statement ........................................................................... 4
1.31     Disputed ............................................................................................... 5
1.32     Distribution Date.................................................................................. 5
1.33     Distribution Record Date ..................................................................... 5
1.34     Effective Date ...................................................................................... 5
1.35     ERISA .................................................................................................. 5
1.36     Estate(s)................................................................................................ 5
1.37     Exit Facility.......................................................................................... 6
1.38     15% Senior Notes Unsecured Claim ................................................... 6
1.39     Final Order ........................................................................................... 6
1.40     General Unsecured Claim .................................................................... 6
1.41     GEO ..................................................................................................... 6
1.42     GEO 10 1/8% Notes............................................................................. 6
1.43     GEO Bondholder.................................................................................. 6

| 1.44 | GEO Cash Collateral Order | 6 |
|------|---------------------------|---|
| 1.45 | GEO Gallium | 6 |
| 1.46 | GEO Gallium Intercompany Claim | 6 |
| 1.47 | GEO Holdings | 6 |
| 1.48 | GEO Interests | 6 |
| 1.49 | GSCL | 7 |
| 1.50 | Impaired | 7 |
| 1.51 | Indemnification Obligation | 7 |
| 1.52 | Indemnification Rights | 7 |
| 1.53 | Indemnitees | 7 |
| 1.54 | Indenture | 7 |
| 1.55 | Indenture Trustee | 7 |
| 1.56 | Indenture Trustee Expenses | 7 |
| 1.57 | Insurance Coverage | 7 |
| 1.58 | Intercompany Claim | 7 |
| 1.59 | Interests | 7 |
| 1.60 | Interlogistics Secured Claim | 7 |
| 1.61 | Key Continuing Vendors | 8 |
| 1.62 | Key Continuing Vendor Election | 8 |
| 1.63 | Key Continuing Vendor Claim | 8 |
| 1.64 | Key Vendor Program Period | 8 |
| 1.65 | Key Vendors | 8 |
| 1.66 | Lien | 8 |
| 1.67 | Litigation Rights | 8 |
| 1.68 | Litigation Rights | 8 |
| 1.69 | New GEO Common Stock | 8 |
| 1.70 | New GEO Senior Executive Incentive Plan | 8 |
| 1.71 | New PIK Notes | 8 |
| 1.72 | New Securities | 8 |
| 1.73 | New Senior Credit Agreement | 9 |
| 1.74 | New Senior Notes | 9 |
| 1.75 | Non-Compensatory Damages Claim | 9 |
| 1.76 | Old GEO Common Stock | 9 |
| 1.77 | Old GEO Common Stock Warrants | 9 |
| 1.78 | Old Securities | 9 |
| 1.79 | Other Priority Claim | 9 |
| 1.80 | Other Secured Claim | 9 |
| 1.81 | PBGC | 9 |
| 1.82 | Person | 9 |
| 1.83 | Petition Date | 9 |
| 1.84 | Plan | 10 |
| 1.85 | Plan Supplement | 10 |
| 1.86 | Prepetition Secured Credit Agreement | 10 |
| 1.87 | Prepetition Secured Lender Agent | 10 |
| 1.88 | Prepetition Secured Lenders | 10 |
| 1.89 | Prepetition Secured Lender Secured Claim | 10 |

1.90     Priority Tax Claim .............................................................................. 10
1.91     Professional ...................................................................................... 10
1.92     Professional Fee Claim ..................................................................... 10
1.93     Proof of Claim ................................................................................... 10
1.94     Pro Rata ............................................................................................ 10
1.95     Reinstated ......................................................................................... 11
1.96     Reorganized Debtor(s) ...................................................................... 11
1.97     Reorganized GEO .............................................................................. 11
1.98     Reorganized GSCL ............................................................................ 11
1.99     Restructuring Transactions ............................................................... 11
1.100    Schedules ......................................................................................... 11
1.101    Secured Claim ................................................................................... 11
1.102    Substantial Contribution Claim .......................................................... 11
1.103    Unimpaired ........................................................................................ 11
1.104    Voting Deadline ................................................................................. 12

ARTICLE II JOINT TREATMENT UNDER THE PLAN ............................................... 12
2.1      Joint Treatment ................................................................................. 12

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ................................. 12
3.1      Introduction ....................................................................................... 12
3.2      Unimpaired Claims ............................................................................ 13
3.3      Impaired Claims ................................................................................ 13
3.4      Impaired Interests ............................................................................. 14

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ....................................... 14
4.1      Unclassified Claims ........................................................................... 14
4.2      Unimpaired Classes of Claims ........................................................... 15
4.3      Impaired Classes of Claims ............................................................... 16
4.4      Impaired Classes of Interests ............................................................ 19
4.5      Reservation of Rights Regarding Claims ............................................ 19

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 19
5.1      Impaired Classes of Claims and Interests Entitled to Vote ................. 19
5.2      Acceptance by an Impaired Class ...................................................... 19
5.3      Presumed Acceptances by Unimpaired Classes ................................ 19
5.4      Classes Deemed to Reject Plan ........................................................ 19
5.5      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ...... 19

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN ................................. 20
6.1      Continued Existence ......................................................................... 20
6.2      Articles of Incorporation, Code of Regulations, and/or Operating Agreement ....... 20
6.3      Restructuring Transactions ............................................................... 20
6.4      Funding ............................................................................................. 20
6.5      Cancellation of Old Securities and Agreements ................................. 20
6.6      Authorization and Issuance of New Securities .................................... 21
6.7      Senior Executive Equity Incentive Plan .............................................. 21

| | | |
|---|---|---|
| 6.8 | Directors of Reorganized Debtors | 21 |
| 6.9 | Officers of Reorganized Debtors | 21 |
| 6.10 | Revesting of Assets; Releases of Liens; Effective Date Restructurings | 21 |
| 6.11 | Indemnification of Debtors' Directors, Officers, and Employees. | 22 |
| 6.12 | Preservation of Rights of Action | 22 |
| 6.13 | Effectuating Documents; Further Transactions | 22 |
| 6.14 | Exemption From Certain Transfer Taxes | 23 |
| 6.15 | Corporate Action | 23 |

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| | | |
|---|---|---|
| | | 23 |
| 7.1 | Assumed Executory Contracts and Leases. | 23 |
| 7.2 | Payments Related to Assumption of Executory Contracts and Leases | 24 |
| 7.3 | Rejected Contracts and Leases | 24 |
| 7.4 | Rejection Damages Bar Date | 24 |
| 7.5 | Compensation and Benefit Programs | 25 |
| 7.6 | Indemnification Obligations. | 26 |
| 7.7 | Extension of Time to Assume or Reject | 27 |
| 7.8 | Claims Arising From Assumption or Rejection | 27 |

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ... 27

| | | |
|---|---|---|
| 8.1 | Distributions for Claims Allowed as of Effective Date | 27 |
| 8.2 | Interest on Claims | 27 |
| 8.3 | Designation; Distributions by Disbursing Agent. | 27 |
| 8.4 | Means of Cash Payment | 28 |
| 8.5 | Calculation of Distribution Amounts of New GEO Common Stock | 28 |
| 8.6 | Delivery of Distributions | 29 |
| 8.7 | Application of Distribution Record Date for Holders of GEO 10 1/8% Notes and Prepetition Secured Lender Secured Claims. | 29 |
| 8.8 | Surrender of GEO 10 1/8% Notes. | 30 |
| 8.9 | Withholding and Reporting Requirements | 30 |
| 8.10 | Setoffs | 31 |
| 8.11 | Prepayment | 31 |
| 8.12 | No Distribution in Excess of Allowed Amount of Claim | 31 |
| 8.13 | Allocation of Distributions | 31 |

ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO ... 31

| | | |
|---|---|---|
| 9.1 | Prosecution of Objections to Claims. | 31 |
| 9.2 | Treatment of Disputed Claims. | 32 |
| 9.3 | Distributions on Account of Disputed Claims Once They Are Allowed | 32 |

ARTICLE X CONDITIONS PRECEDENT TO AND CONSUMMATION OF THE PLAN ... 32

| | | |
|---|---|---|
| 10.1 | Conditions to Effective Date | 32 |

ARTICLE XI RETENTION OF JURISDICTION ........................................................ 33
    11.1     Scope of Retention of Jurisdiction.................................................................. 33
    11.2     Failure of the Bankruptcy Court to Exercise Jurisdiction........................... 35

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................... 35
    12.1     Professional Fee Claims; Expense Reimbursements. ............................... 35
    12.2     Administrative Claims ................................................................................. 36
    12.3     Payment of Statutory Fees ......................................................................... 36
    12.4     Modifications and Amendments ................................................................. 36
    12.5     Severability of Plan Provisions .................................................................. 36
    12.6     Successors and Assigns and Binding Effect ............................................. 36
    12.7     Compromises and Settlements ................................................................... 37
    12.8     Releases and Satisfaction of Subordination Rights ................................. 37
    12.9     Releases and Related Matters. ................................................................... 37
    12.10   Discharge of the Debtors.............................................................................. 39
    12.11   Injunction. .................................................................................................... 39
    12.12   Exculpation and Limitation of Liability. ....................................................... 40
    12.13   Term of Injunctions or Stays ....................................................................... 41
    12.14   Revocation, Withdrawal, or Non-Consummation ...................................... 41
    12.15   Plan Supplement ......................................................................................... 41
    12.16   Notices ........................................................................................................ 41
    12.17   Dissolution of Creditors Committee ........................................................... 42
    12.18   Computation of Time ................................................................................... 42
    12.19   Governing Law ............................................................................................ 42

## <u>EXHIBITS</u>

Exhibit A                    Summary of Terms of GEO's Exit Facility

Exhibit B                    Summary of Terms of New GEO Common Stock

Exhibit C                    Former Directors, Officers, and Employees Owed Indemnification
                             Release Obligations

# THIRD MODIFIED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11, TITLE 11, UNITED STATES CODE OF GEO SPECIALTY CHEMICALS, INC. AND GEO SPECIALTY CHEMICALS LIMITED, DEBTORS

## INTRODUCTION

GEO Specialty Chemicals, Inc. ("GEO"), and GEO Specialty Chemicals Limited ("GSCL"), hereby propose this joint plan of reorganization (the "Plan") for the resolution of their outstanding Claims (as defined herein) and Interests (as defined herein). Reference is made to the Disclosure Statement (as defined herein) distributed contemporaneously herewith for a discussion of the history, businesses, properties, results of operations, projections for future operations, and risk factors of the Debtors (as defined herein), a summary and analysis of the Plan, and certain related matters, including the New Securities (as defined herein) to be issued under the Plan. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code (as defined herein).

All holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein), and Article XII of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined in the Plan shall have the respective meanings given to them in Article I of the Plan. Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Whenever the context requires, defined terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

## ARTICLE I

## DEFINITIONS

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (c) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (d) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.1 "Abandoned Properties" means any properties of the Debtors that have been abandoned by Final Order of the Bankruptcy Court, under Section 554 of the Bankruptcy Code.

1.2 "Adequate Protection Claims" means rights to adequate protection arising under the GEO Cash Collateral Order.

1.3 "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, bonuses, or commissions for services rendered on or after the Petition Date, (b) Professional Fee Claims, (c) Substantial Contribution Claims, (d) all fees and charges assessed against the Estates under Section 1930 of Title 28 of the United States Code, (e) all Allowed Claims for reclamation under Section 546(c)(2)(A) of the Bankruptcy Code, (f) Cure payments for executory contracts and unexpired leases that are assumed under Section 365 of the Bankruptcy Code, and (g) DIP Facility Claims.

1.4 "Allowed" means, (a) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim that has been allowed, or adjudicated in favor of the holder by estimation or liquidation, by a Final Order, that was incurred by the Debtors in the ordinary course of business during the Chapter 11 Case and as to which there is no dispute as to the Debtors' liability, or that has become allowed by failure to object pursuant to Section 9.1 of the Plan; and (b) when used with respect to a Claim other than an Administrative Claim, such Claim or any portion thereof (i) that has been allowed, or adjudicated in favor of the holder by estimation or liquidation, by a Final Order, or (ii) as to which (x) no Proof of Claim has been filed with the Bankruptcy Court and (y) the liquidated and noncontingent amount of which is included in the Schedules, other than a Claim that is included in the Schedules at zero, in an unknown amount, or as Disputed, or (iii) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (x) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or any order of the Bankruptcy Court, or (y) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (iv) that is expressly allowed in a liquidated amount in the Plan.

1.5 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.6 "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey or such other court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

1.7 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.8     "Bar Date(s)" means the date(s) designated by the Bankruptcy Court as the last date(s) for filing Proofs of Claim against the Debtors.

1.9     "Bondholder Unsecured Claim" means any Claim arising from or relating to the GEO 10 1/8% Notes, other than any Indenture Trustee Expenses.

1.10     "Business Day" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Rule 9006(a) of the Bankruptcy Rules), on which commercial banks are open for business in New York, New York.

1.11     "Cash" means legal tender of the United States or equivalents thereof.

1.12     "Chapter 11 Case" means the jointly administered Chapter 11 cases of the Debtors filed with the Bankruptcy Court and assigned Case No. 04-19148 (MS).

1.13     "Citibank Secured Claim" means any Secured Claim of Citibank, N.A. arising under that certain International Swap Dealers Association, Inc. Master Agreement, dated as of November 16, 2001 entered into by and between Citibank, N.A. and GEO.

1.14     "Claim" means (a) the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.15     "Claims Objection Deadline" means the last day for filing objections to Claims, which day shall be (a) for all Claims other than General Unsecured Claims and Key Continuing Vendor Claims, the latest of (i) the Effective Date, (ii) sixty (60) days after the applicable Proof of Claim or request for payment of an Administrative Claim is filed, or (iii) such other date ordered by the Bankruptcy Court upon motion of the Debtors or any other party; or (b) for General Unsecured Claims and Key Continuing Vendor Claims, the latest of (i) one hundred twenty (120) days after the Effective Date, (ii) sixty (60) days after the applicable Proof of Claim is filed, or (iii) such other date ordered by the Bankruptcy Court upon motion of the Debtors or any other party.

1.16     "Class" means a category of holders of Claims or Interests, as described in Article III of the Plan.

1.17     "Confirmation" means approval of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

1.18     "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.19     "Confirmation Hearing" means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

1.20     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

1.21     "Creditor" means any Person who holds a Claim against either of the Debtors.

1.22     "Creditors Committee" means the Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Case, as reconstituted from time to time.

1.23     "Cure" means with respect to the assumption of an executory contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code, (a) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (b) the taking of such other actions as may be agreed upon by the parties or ordered by the Bankruptcy Court.

1.24     "Debtor(s)" means, individually, GEO or GSCL and, collectively, GEO and GSCL, including in their capacities as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1.25     "DIP Facility" means that certain Debtor In Possession Revolving Credit Agreement dated March 31, 2004, as such facility may be amended, supplemented or otherwise modified, among GEO, as debtor-in-possession and as borrower, the lenders party thereto from time to time (the "DIP Facility Lenders"), and Duetsche Bank Trust Company Americas, as lender and administrative agent (the "DIP Facility Agent"), for and on behalf of itself and the other DIP Facility Lenders.

1.26     "DIP Facility Agent" has the meaning given to such term in the definition of "DIP Facility" above.

1.27     "DIP Facility Claim" means a Claim arising under or as a result of the DIP Facility.

1.28     "DIP Facility Lenders" has the meaning given to such term in the definition of "DIP Facility" above.

1.29     "Disbursing Agent" means Reorganized GEO or any Person designated by Reorganized GEO, in its sole discretion, to serve as disbursing agent under the Plan.

1.30     "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared, approved and distributed in accordance with Section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules or any summary thereof approved by the Bankruptcy Court for distribution to certain Classes of Claims.

1.31    "Disputed" means, with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, a Claim:

(a)    if no Proof of Claim has been filed or deemed to have been filed by the applicable Bar Date, that has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed;

(b)    if a Proof of Claim has been filed or deemed to have been filed by the applicable Bar Date, as to which a Debtor has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order;

(c)    for which a Proof of Claim was required to be filed by the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly filed;

(d)    that is disputed in accordance with the provisions of the Plan; or

(e)    if not otherwise Allowed, as to which the applicable Claims Objection Deadline has not expired.

1.32    "Distribution Date" means (a) for any Claim other than a General Unsecured Claim or Key Continuing Vendor Claim (i) that is an Allowed Claim on the Effective Date, on or as soon as practicable after the Effective Date, but in any case no later than the first (1st) Business Day that is thirty (30) days after the Effective Date or (ii) that is not an Allowed Claim on the Effective Date, fifteen (15) calendar days after the last day of the month during which the Claim becomes an Allowed Claim; and (b) for any General Unsecured Claim or Key Continuing Vendor Claim (i) that is an Allowed Claim on the Effective Date, the first (1st) Business Day that is thirty (30) days after the Effective Date or (ii) that is not an Allowed Claim on the Effective Date, the later of (x) the first (1st) Business Day that is thirty (30) days after the Effective Date or (y) fifteen (15) calendar days after the last day of the month during which the Claim becomes an Allowed Claim.

1.33    "Distribution Record Date" means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the third (3rd) Business Day after the Confirmation Date at 5:00 p.m. prevailing Eastern time.

1.34    "Effective Date" means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 10.1 of the Plan have been satisfied, and is the date on which the Plan becomes effective.

1.35    "ERISA" has the meaning given to such term in Section 7.5(a) of the Plan.

1.36    "Estate(s)" means, individually, the estate of each Debtor in the Chapter 11 Case and, collectively, the estates of both Debtors in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

1.37    "Exit Facility" means that certain credit facility to be obtained by GEO as its exit financing, which facility has the principal terms and conditions set forth on <u>Exhibit A</u> to the Plan.

1.38    "15% Senior Note Unsecured Claim" means any Claim arising from or relating to that certain Note Purchase Agreement, dated as of August 27, 2003, pursuant to which GEO issued to Charter Oak Partners and Charter Oak Capital Partners, L.P., 15% senior notes, due February 1, 2008 in an aggregate principal amount of $6,100,000.

1.39    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any such court, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, no longer remains pending.

1.40    "General Unsecured Claim" means a Claim against GEO or GSCL that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, Other Priority Claim, Bondholder Unsecured Claim, Key Continuing Vendor Claim, GEO Gallium Intercompany Claim, Intercompany Claim, 15% Senior Note Unsecured Claim, or Non-Compensatory Damages Claim.

1.41    "GEO" means GEO Specialty Chemicals, Inc., an Ohio corporation.

1.42    "GEO 10 1/8% Notes" means the 10 1/8% Senior Subordinated Notes due 2008, series A in the aggregate principal amount of $120,000,000 issued by GEO pursuant to the Indenture.

1.43    "GEO Bondholder" means a holder of the GEO 10 1/8% Notes.

1.44    "GEO Cash Collateral Order" means the Final Order of the Bankruptcy Court: (a) authorizing, pursuant to Bankruptcy Code Sections 361, 362, 363, and Federal Rule of Bankruptcy Procedure 4001, Debtors' use of cash collateral; (b) authorizing Debtors to provide adequate protection; (c) modifying automatic stay; and (d) granting related relief, which was entered by the Bankruptcy Court on May 5, 2004, as it may be amended through the Effective Date.

1.45    "GEO Gallium" means GEO Gallium S.A., a French company and a wholly owned indirect subsidiary of GEO.

1.46    "GEO Gallium Intercompany Claim" means any Claim of GEO Gallium S.A., arising prior to the Petition Date against either of the Debtors.

1.47    "GEO Holdings" means GEO Holdings (Europe) S.A.R.L. a French company and a wholly-owned direct subsidiary of GEO.

1.48    "GEO Interests" means, collectively, all equity interests in GEO, including, without limitation, the Old GEO Common Stock, the Old GEO Common Stock Warrants, together with any warrants, conversion rights, rights of first refusal, causes of action, or other

rights, contractual or otherwise, to acquire or receive any stock or other equity ownership interests in GEO, and any contracts, subscriptions, commitments, or agreements pursuant to which a party was or could have been entitled to receive shares, securities, or other ownership interests in GEO as of the Petition Date.

1.49    "GSCL" means GEO Specialty Chemicals Limited, an Ohio limited liability company.

1.50    "Impaired" means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.51    "Indemnification Obligation" means any obligation of either of the Debtors to indemnify, reimburse, or provide contribution to a Person arising pursuant to codes of regulation, operating agreements, by-laws, articles or certificates of incorporation, contracts, or otherwise.

1.52    "Indemnification Rights" has the meaning given to such term in Section 7.6(b) of the Plan.

1.53    "Indemnitees" has the meaning given to such term in Section 7.6(b) of the Plan.

1.54    "Indenture" means that certain Indenture dated as of July 31, 1998 (as amended, supplemented or otherwise modified) between GEO, as issuer, and the Indenture Trustee, which Indenture governs all obligations arising under or in connection with the GEO 10 1/8% Notes.

1.55    "Indenture Trustee" means JP Morgan Chase (f/k/a Chase Manhattan Trust Company), as trustee, or its successor, in either case in its capacity as indenture trustee for the GEO 10 1/8% Notes.

1.56    "Indenture Trustee Expenses" means any reasonable, unpaid fees of the Indenture Trustee, and reasonable, unpaid out-of-pocket costs and expenses incurred by the Indenture Trustee including the reasonable fees and expenses incurred by counsel to the Indenture Trustee through the Effective Date, in each case, under or as a result of the Indenture.

1.57    "Insurance Coverage" has the meaning given to such term in Section 7.6(b) of the Plan.

1.58    "Intercompany Claim" means any Claim, other than a GEO Gallium Intercompany Claim, arising prior to the Petition Date against either of the Debtors by the other Debtor or by a non-Debtor subsidiary or affiliate of a Debtor, but only to the extent that such affiliate is a direct or indirect subsidiary of GEO.

1.59    "Interests" means legal, equitable, contractual, or other rights of any Person with respect to GEO Interests.

1.60    "Interlogistics Secured Claim" means any Secured Claim of Interlogistics S.A. against either GEO or GSCL.

1.61    "Key Continuing Vendors" means those Persons that the Debtors designate as Key Vendors that also make the Key Continuing Vendor Election.

1.62    "Key Continuing Vendor Election" means the election by a Key Vendor to receive treatment in Class 7 on account of its unsecured Claim and undertake the obligations set forth in Section 4.3(d) of the Plan. The Key Continuing Vendor Election may be made by submitting a ballot indicating such election in accordance with the procedures set forth in the Disclosure Statement; provided, however, that with the consent of GEO, a Key Vendor that fails to timely make the Key Continuing Vendor Election on a properly completed ballot may make the election in writing thereafter.

1.63    "Key Continuing Vendor Claim" means an unsecured Claim held by a Key Continuing Vendor.

1.64    "Key Vendor Program Period" shall have the meaning given to such term in Section 4.3(d) of the Plan.

1.65    "Key Vendors" means those parties designated on the Schedule of Key Vendors, which Schedule will be filed as an exhibit to the Disclosure Statement.

1.66    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.67    "Litigation Rights" means the claims, rights of action, suits, or proceedings whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, which are to be retained by one or both of the Reorganized Debtors pursuant to Section 6.12 of the Plan, including without limitation, claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code.

1.68    "Mechanics Lien Secured Claim" means the claim of a creditor who has duly filed and perfected a mechanics or similar lien under state law that is not subject to avoidance in accordance with the provisions of Section 546(b) of the Bankruptcy Code.

1.69    "New GEO Common Stock" means the common shares of Reorganized GEO to be issued under Section 6.6 of the Plan as of the Effective Date, as summarized on Exhibit C to the Plan.

1.70    "New GEO Senior Executive Incentive Plan" means the senior executive equity incentive plan(s) to be adopted by Reorganized GEO pursuant to Section 6.7 of the Plan, substantially in the form of such document(s) to be included in the Plan Supplement.

1.71    "New PIK Notes" means the 5% Subordinated PIK Notes to be issued under Section 4.3(b) of the Plan.

1.72    "New Securities" means collectively, the New PIK Notes, and the New GEO Common Stock.

1.73 "New Senior Credit Agreement" means the Credit Agreement to be dated as of the Effective Date, governing the New Senior Notes to be issued in connection with the Exit Facility, substantially in the form of such document to be included in the Plan Supplement.

1.74 "New Senior Notes" means the senior notes issued by Reorganized GEO on the Effective Date in connection with the Exit Facility, which senior notes shall be governed by the New Senior Credit Agreement the principal terms of which are summarized in Exhibit A to the Plan.

1.75 "Non-Compensatory Damages Claim" means any Claim against either of the Debtors, for any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including any such claim based upon, arising from, or relating to any cause of action whatsoever (including, without limitation, violation of law, personal injury, or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise).

1.76 "Old GEO Common Stock" means, collectively, (a) the shares of Class A voting common stock, par value $1.00 per share, of GEO issued and outstanding as of the Petition Date and (b) the shares of Class B non-voting common stock, par value $1.00 per share, of GEO authorized as of the Petition Date.

1.77 "Old GEO Common Stock Warrants" means the stock warrants issued by GEO and outstanding as of the Petition Date that give the holders of such warrants the right to purchase common stock of GEO.

1.78 "Old Securities" means, collectively, the Old GEO Common Stock, the Old GEO Common Stock Warrants and the GEO 10 1/8% Notes.

1.79 "Other Priority Claim" means a Claim against the Debtors entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.80 "Other Secured Claim" means a Secured Claim arising prior to the Petition Date against either of the Debtors, other than a Prepetition Secured Lender Claim or the Citibank Secured Claims.

1.81 "PBGC" has the meaning given to such term in Section 7.5(b) of the Plan.

1.82 "Person" means any individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

1.83 "Petition Date" means March 18, 2004, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Case.

9

1.84    "Plan" means this joint plan of reorganization under Chapter 11 of the Bankruptcy Code and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

1.85    "Plan Supplement" means the supplement to the Plan containing the forms of the Articles of Incorporation of Reorganized GEO, the Code of Regulations of Reorganized GEO, the Exit Facility (or term sheet therefor), the New Senior Credit Agreement, and the New GEO Senior Executive Incentive Plan.

1.86    "Prepetition Secured Credit Agreement" means that certain Amended and Restated Credit Agreement (as amended prior to the Petition Date), dated as of May 31, 2001 and (as amended prior to the Petition Date) among GEO, the Prepetition Secured Lender Agent, as administrative agent, Solomon Smith Barney, Inc., as syndication agent, U.S. Bank National Association, as documentation agent, and the lending institutions party thereto, and any related documents, agreements, and instruments between a Prepetition Secured Lender and GEO.

1.87    "Prepetition Secured Lender Agent" means Deutsche Bank Trust Company Americas (f/k/a Bankers Trust Company), as Administrative Agent for the Prepetition Secured Lenders under the Prepetition Secured Credit Agreement or any duly appointed successor Administrative Agent.

1.88    "Prepetition Secured Lenders" means the Prepetition Secured Lender Agent and the several lenders from time to time party to the Prepetition Secured Credit Agreement.

1.89    "Prepetition Secured Lender Claim" means any Secured Claim arising under the Prepetition Secured Credit Agreement as of the Petition Date.

1.90    "Priority Tax Claim" means a Claim that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.91    "Professional" means any professional employed in the Chapter 11 Case pursuant to Sections 327 or 1103 of the Bankruptcy Code, and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b) of the Bankruptcy Code.

1.92    "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

1.93    "Proof of Claim" means a proof of claim filed with the Bankruptcy Court in connection with the Chapter 11 Case.

1.94    "Pro Rata" means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless the Plan provides otherwise.

1.95 "Reinstated" means (a) leaving unaltered the legal, equitable, and contractual rights to which the holder of a Claim is entitled so as to leave such Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which the holder of such Claim is entitled.

1.96 "Reorganized Debtor(s)" means, individually, either of the reorganized Debtors or their successors and, collectively, both reorganized Debtors or their successors, on or after the Effective Date.

1.97 "Reorganized GEO" means reorganized GEO or its successor, on and after the Effective Date.

1.98 "Reorganized GSCL" means reorganized GSCL, or its successor, on and after the Effective Date.

1.99 "Restructuring Transactions" means the transactions described in Section 6.3 of the Plan.

1.100 "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed in the Bankruptcy Court by the Debtors, as amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or orders of the Bankruptcy Court.

1.101 "Secured Claim" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtors or the Reorganized Debtors and the holder of such Claim.

1.102 "Substantial Contribution Claim" means a claim for compensation or reimbursement of costs and expenses relating to services rendered in making a substantial contribution in the Chapter 11 Case pursuant to Section 503(b)(3), (4), or (5) of the Bankruptcy Code.

1.103 "Unimpaired" means, with respect to any Claim, that such Claim is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.104 "Voting Deadline" means the deadline established by the Bankruptcy Court by which the holders of Claims in Classes that are entitled to vote on the Plan must submit the ballot indicating such Claim holder's vote on the Plan, in accordance with the procedures set forth in the Disclosure Statement.

## ARTICLE II

## JOINT TREATMENT UNDER THE PLAN

2.1    Joint Treatment.  This Plan is a joint plan of reorganization, pursuant to which, except as otherwise provided in the Plan, (i) all Claims against each Estate shall be deemed to be Claims against both Estates, any Proof of Claim filed against one or both of the Debtors shall be deemed to be a single Claim filed against both Estates, and all duplicate Proofs of Claim for the same Claim filed against both Debtors shall be deemed expunged; (ii) except as otherwise provided in the Plan, no distributions under this Plan shall be made on account of Claims based upon intercompany obligations by and against the Debtors; (iii) all Claims based upon prepetition unsecured guarantees by one Debtor in favor the other Debtor (other than guarantees existing under any assumed executory contracts or unexpired leases) shall be eliminated, and no distributions under this Plan shall be made on account of Claims based upon such guarantees; and (iv) for purposes of determining the availability of the right of setoff under Section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of Section 553, prepetition debts due to either of the Debtors may be set off against the prepetition debts of the other Debtor.  Joint treatment as set forth in this Section 2.1 shall not merge or otherwise affect the separate legal existence of each Debtor, other than with respect to distribution rights under this Plan; such joint treatment shall have no effect on valid, enforceable and unavoidable Liens, except for Liens that secure a Claim that is eliminated by virtue of such joint treatment and Liens against collateral that are extinguished by virtue of such joint treatment; and such joint treatment shall not have the effect of creating a Claim in a class different from the class in which a Claim would have been placed in the absence of joint treatment.  Joint treatment as set forth in this Section 2.1 shall not affect the obligation of each of the Debtors, pursuant to Section 1930 of Title 28 of the United States Code, to pay quarterly fees to the Office of the United States Trustee until such time as a particular Chapter 11 Case is closed, dismissed or converted.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    Introduction.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such unclassified claims is set forth in Section 4.1 of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

3.2    <u>Unimpaired Claims</u>.

    Class 1:   Other Priority Claims

           Class 1 consists of all Other Priority Claims.

    Class 2:   Prepetition Secured Lender Claims

           Class 2 consists of all Prepetition Secured Lender Claims.

    Class 3:   Citibank Secured Claims

           Class 3 consists of all Citibank Secured Claims.

3.3    <u>Impaired Claims</u>.

    Class 4:   Other Secured Claims

           Class 4 consists of separate sub-Classes for each Other Secured Claim against either of the Debtors. Each sub-Class is deemed to be a separate Class for all purposes under the Bankruptcy Code, including for voting purposes.

    Class 5:   15% Senior Note Unsecured Claims

           Class 5 consists of all 15% Senior Note Unsecured Claims.

    Class 6:   Bondholder Unsecured Claims

           Class 6 consists of all Bondholder Unsecured Claims.

    Class 7:   Key Continuing Vendor Claims

           Class 7 consists of all Key Continuing Vendor Claims.

    Class 8:   General Unsecured Claims

           Class 8 consists of all General Unsecured Claims.

    Class 9:   GEO Gallium Intercompany Claims

           Class 9 consists of all GEO Gallium Intercompany Claims.

    Class 10:  Intercompany Claims

           Class 10 consists of all Intercompany Claims.

    Class 11:  Non-Compensatory Damages Claims

Class 11 consists of all Non-Compensatory Damages Claims.

3.4     Impaired Interests.

Class 12:   GEO Interests

Class 12 consists of all GEO Interests.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

4.1     Unclassified Claims.

(a)     Administrative Claims.  With respect to each Allowed Administrative Claim, except as otherwise provided for herein, and subject to the requirements of Sections 12.1 through 12.3 of the Plan, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Administrative Claim, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which the applicable Debtor and the holder of such Administrative claim shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

The DIP Facility Claims shall be deemed Allowed in their entirety for all purposes of the Plan and the Chapter 11 Case.  Each holder of an Allowed DIP Facility Claim shall receive, on the later of the Effective Date or the date on which such DIP Facility Claim becomes payable pursuant to any agreement between the Debtors and the holder of such DIP Facility Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Facility Claim, (i) Cash equal to the full amount of such Allowed DIP Facility Claim, or (ii) such different treatment as to which the Debtors and the holder of such Allowed DIP Facility Claim shall have agreed upon in writing.

The Adequate Protection Claims held by any Prepetition Secured Lenders shall be deemed satisfied in full by payments made in accordance with and pursuant to the GEO Cash Collateral Order.  Any replacement or other Liens created under such Order shall terminate and shall have no further force and effect as of the Effective Date.

(b)     Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) on, or as soon as reasonably practicable after, the later of

the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash
equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) such different
treatment as to which the applicable Debtor and such holder shall have agreed upon in
writing, or (iii) at the Reorganized Debtors' sole discretion, deferred Cash payments
having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim, over
a period not exceeding six (6) years after the date of assessment of such Allowed Priority
Tax Claim.

4.2     <u>Unimpaired Classes of Claims</u>.

(a)     <u>Class 1:  Other Priority Claims</u>.  On, or as soon as reasonably practicable
after, the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim
becomes an Allowed Other Priority Claim, or (iii) the date on which such Other Priority
Claim becomes payable pursuant to any agreement between a Debtor and the holder of
such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive,
in full satisfaction, settlement, release, and discharge of and in exchange for such
Allowed Other Priority Claim, either (A) Cash equal to the unpaid portion of such
Allowed Other Priority Claim or (B) such different treatment as to which the applicable
Debtor and such holder shall have agreed upon in writing.

(b)     <u>Class 2:  Prepetition Secured Lender Claims</u>.  The holders of Prepetition
Secured Lender Claims, in full satisfaction, settlement, release, and discharge of and in
exchange for such Prepetition Secured Lender Claims, shall receive on the Distribution
Date, through the Prepetition Secured Lender Agent, their Pro Rata share of Cash, in an
amount equal to the principal amount of such Claim plus fees and expenses permitted
under the Prepetition Secured Credit Agreement and such amount, if any, in unpaid
accrued interest as may be determined by the Bankruptcy Court.  The amount of any
unpaid accrued interest claimed by the holders of Prepetition Secured Lender Claims
shall be held in escrow pending a determination by the Bankruptcy Court of the amount
owed.

The Prepetition Secured Lenders shall receive the distributions provided for
Prepetition Secured Lender Claims in full satisfaction, settlement, release, and discharge
of and in exchange for all Claims arising under the Prepetition Secured Credit
Agreement.

(c)     <u>Class 3:  Citibank Secured Claims.</u>    The Debtors presently dispute the
Citibank Secured Claim.  At such time as a Final Order is entered determining the
amount of the Citibank Secured Claim, if any, there shall be paid to the holder of the
Citibank Secured Claim, Cash in an amount equal to the amount of such Claim as
determined by the Bankruptcy Court.

The holders of Citibank Secured Claims shall receive the distributions provided
for Citibank Secured Claims in full satisfaction, settlement, release, and discharge of and
in exchange for all Claims arising under that certain International Swap Dealers
Association Inc. Master Agreement, dated as of November 16, 2001 entered into by and
between Citibank, N.A. and GEO.

4.3    Impaired Classes of Claims.

(a)    (i) Class 4:  Other Secured Claims.  On the Effective Date, at the option of the Reorganized Debtors, either (A) the legal, equitable, and contractual rights of each holder of an Allowed Other Secured Claim shall be Reinstated in accordance with the provisions of 11 U.S.C. § 1124(2), provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order for a Claim to be considered Reinstated; (B) each holder of an Allowed Other Secured Claim shall (I) retain the Liens securing such Allowed Other Secured Claim and (II) receive deferred Cash payments totaling at least the amount of such Allowed Other Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the Estate's interest in such property; (C) the collateral securing such Allowed Other Secured Claim shall be surrendered to the holder of such Allowed Other Secured Claim; or (D) each holder of an Allowed Other Secured Claim shall be paid in full on the Effective Date.  The Debtors' failure to object to any Other Secured Claim in the Chapter 11 Case shall be without prejudice to the Debtors' or the Reorganized Debtors' right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the Other Secured Claim holder.  Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of any Debtor held with respect to an Other Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements governing such Claim until such Allowed Claim is paid in full.  Nothing in this Section 4.3(a) or elsewhere in the Plan shall preclude the Debtors or the Reorganized Debtors from challenging the validity of any alleged Lien on any asset of a Debtor or the value of the property that secures any alleged Lien.

(ii)    Subclass 4(i):  Interlogistics Secured Claim.  The holder of the Interlogistic Secured Claim shall, at the option of the Reorganized Debtors, receive the treatment specified in Section 4.3(a)(i)(A), (B), (C), or (D) above.

(iii)    Subclass 4(ii):  Mechanics Lien Secured Claims.  The holders of Mechanics Lien Secured Claims shall, at the option of the Reorganized Debtors, receive the treatment specified in Section 4.3(a)(i)(A), (B), (C), or (D) above.

(b)    Class 5:  15% Senior Note Unsecured Claims.  The 15% Senior Note Unsecured Claims shall be deemed Allowed in their entirety for all purposes of the Plan and the Chapter 11 Case.  Holders of 15% Senior Note Unsecured Claims will be issued on the Distribution Date 5% Subordinated PIK Notes in the face amount of $6,100,000.00 (the "New PIK Notes"), maturing on the sixth anniversary of the Effective Date.  The New PIK Notes will be subordinate to the prior payment in full in cash of all indebtedness for borrowed money of reorganized GEO.  Upon bankruptcy or liquidation of Reorganized GEO, the holders of the New PIK Notes will be entitled to receive only

the accreted amount of the New PIK Notes, which shall initially be a percentage of the face amount, corresponding to the implied value of the New GEO Common Stock being issued under the Plan to the holders of GEO's 10 1/8% Notes (estimated at 44%), and which accreted amount shall increase to 100% of face amount in equal installments to maturity. The New PIK Notes will not be subject to mandatory redemption, except to the extent described below. Optional redemption will be permitted but only if the full face amount of the New PIK Notes is paid, with accrued interest. The only events of default under the New PIK Notes will be a bankruptcy filing or liquidation by Reorganized GEO, or the failure to pay PIK interest when due. All exercise of remedies by the holders of the New PIK Notes will be blocked until payment in full in cash of all senior debt of Reorganized GEO.

If all or virtually all of the equity of Reorganized GEO is sold for a purchase price per share that provides as of the Effective Date holders or their respective transferees of the GEO 10 1/8% Notes with aggregate proceeds at least equal to the face amount of the GEO 10 1/8% Notes then, to the extent the New PIK Notes may be paid in full in cash at face value plus accrued interest without reducing the recovery of the GEO 10 1/8% Notes below such face amount, the New PIK Notes will become due and payable and be entitled to be paid at the time of such change of control in cash at such face value plus accrued interest.

(c)     Class 6: Bondholder Unsecured Claims. The Bondholder Unsecured Claims shall be deemed Allowed in their entirety for all purposes of the Plan and the Chapter 11 Case. Each holder of an Allowed Bondholder Unsecured Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Bondholder Unsecured Claim, shall receive on the Distribution Date its Pro Rata share of New GEO Common Stock (subject to dilution as set forth in Section 6.6(b) of the Plan) and the Reorganized Debtors shall reimburse any reasonable fees of the Indenture Trustee, and reasonable out-of-pocket costs and expenses incurred by the Indenture Trustee, including the reasonable fees and expenses incurred by counsel to the Indenture Trustee, in connection with making such distribution.

As part of the treatment of Bondholder Unsecured Claims, the Indenture Trustee Expenses shall be paid in Cash on the Effective Date by the Debtors. Upon the Effective Date, the Indenture shall be deemed cancelled as permitted by Section 1123(a)(5)(F) of the Bankruptcy Code, and the rights and obligations of the Debtors and the Indenture Trustee thereunder shall be discharged, except for the Debtors' obligation to pay, reimburse and indemnify the Indenture Trustee and the rights of the Indenture Trustee to payment thereof (including any priority or lien rights); provided, however, that the Indenture shall continue in effect for the purposes of allowing the Indenture Trustee, its agent or servicer to make the distributions to be made on account of the Bondholder Unsecured Claims under the Plan.

(d)     Class 7: Key Continuing Vendor Claims. Subject to the terms of this subsection, each Key Continuing Vendor Claim shall be Allowed in the amount set forth in the Schedule of Key Vendors attached to the Disclosure Statement as Appendix J, and only in such amount. Any other unsecured Claim that is, or otherwise could have been,

asserted by such Key Continuing Vendor shall be disallowed. Each Key Continuing Vendor shall receive payment in full of its Allowed Key Continuing Vendor Claim in twelve (12) equal monthly installments, such payments to commence on the Distribution Date and continuing on the first Business Day of each month following the month in which the Distribution Date occurs, provided, however, that if a Key Continuing Vendor is in default of its obligations under this Section 4.3(d) and has not yet cured such default at the time a payment under this Section 4.3(d) comes due, Reorganized GEO may withhold such payment until the date that the Key Continuing Vendor cures such default (at which time the payment shall be made); provided, however, that if the Key Continuing Vendor fails to cure such default within 30 days following the date of such default, such payment shall be forfeited. By making the Key Continuing Vendor Election, each Key Continuing Vendor is deemed to agree: (i) that the aggregate amount of its unsecured Claims against the Debtor is correctly set forth in the Schedule of Key Vendors filed as an Exhibit to the Disclosure Statement; and (ii) that for twelve (12) months following the Effective Date ("Key Vendor Program Period"), such Key Continuing Vendor will (A) provide Reorganized GEO the longer of (x) 30-day unsecured trade credit terms, or (y) the normal and customary terms and conditions on which the Key Continuing Vendor provided trade credit to GEO during the one-year period preceding the Petition Date (such trade credit not to be supported by letters of credit, deposits, or other credit enhancements), and (B) offer pricing to Reorganized GEO that is at least as favorable to Reorganized GEO as pricing offered by the Key Continuing Vendor to its other customers whose purchases are similar in quantity and terms of sale.

(e)     Class 8:  General Unsecured Claims. Each holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim a lump sum cash payment on the Distribution Date in an amount equal to 44% of such holder's Claim.

(f)     Class 9: GEO Gallium Intercompany Claim. The holder of the GEO Gallium Intercompany Claim shall receive, on the Distribution Date, a cash payment in an amount equal to fifty percent (50%) of the Allowed Claim, such amount to be recovered by Reorganized GEO as part of the Restructuring Transactions.

(g)     Class 10:  Intercompany Claims (other than the GEO Gallium Intercompany Claim). Subject to the Restructuring Transactions as set forth in Section 6.3(a) of the Plan, no holders of an Intercompany Claim shall receive or retain any property under the Plan on account of such Claim and all Intercompany Claims shall be discharged as of the Effective Date.

(h)     Class 11:  Non-Compensatory Damages Claims. The holders of Non-Compensatory Damages Claims shall not receive or retain any property under the Plan on account of such Claims. All Non-Compensatory Damages Claims shall be discharged as of the Effective Date.

4.4     Impaired Classes of Interests.

(a)     Class 12:  GEO Interests.  All GEO Interests of any kind, including without limitation, the Old GEO Common Stock, the Old GEO Common Stock Warrants or any warrants or other agreements to acquire the same (whether or not arising under or in connection with any employment agreement), shall be cancelled as of the Effective Date and the holders thereof shall not receive or retain any property under the Plan on account of such Interests.

4.5     Reservation of Rights Regarding Claims.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1     Impaired Classes of Claims and Interests Entitled to Vote.  Holders of Claims and Interests in each Impaired Class of Claims or Interests are entitled to vote as a Class to accept or reject the Plan, other than Classes that are deemed to reject the Plan as provided in Section 5.4 of the Plan.  Accordingly, the votes of holders of Claims in Classes 4, 5, 6, 7, 8 and 9 shall be solicited with respect to the Plan.

5.2     Acceptance by an Impaired Class.  In accordance with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

5.3     Presumed Acceptances by Unimpaired Classes.  Classes 1, 2 and 3 are Unimpaired under the Plan.  Under Section 1126(f) of the Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim holders shall not be solicited.

5.4     Classes Deemed to Reject Plan.  Holders of Claims and Interests in Classes 10, 11 and 12 are not entitled to receive or retain any property under the Plan.  Under Section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors shall request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any Exhibit, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

# ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1    Continued Existence.  The Reorganized Debtors shall continue to exist after the Effective Date as separate entities, in accordance with the applicable laws of the jurisdiction in which they are incorporated or formed.  Reorganized GEO shall continue to exist after the effective date pursuant to its Articles of Incorporation and its Code of Regulations, which were in effect prior to the Effective Date, except to the extent such Articles of Incorporation and/or Code of Regulations are amended pursuant to the Plan.  Reorganized GSCL shall continue to exist after the effective date pursuant to its Operating Agreement, which was in effect prior to the Effective Date, except to the extent such Operating Agreement is amended pursuant to the Plan.

6.2    Articles of Incorporation, Code of Regulations, and/or Operating Agreement.  The Articles of Incorporation and/or Operating Agreement, and/or Code of Regulations of each Debtor, as applicable, shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code.  The Articles of Incorporation and/or Operating Agreement, and/or Code of Regulations, as applicable, of Reorganized GEO and Reorganized GSCL shall be in substantially the forms of such documents included in the Plan Supplement.

6.3    Restructuring Transactions.  As the sole shareholder of GEO Holdings, GEO intends to cause a reorganization to occur that will ultimately result in the repatriation of cash to both GEO and GSCL and will simplify the organizational structure of the foreign subsidiaries.  GEO intends to cause GEO Gallium to reduce its share capital by buying back its own shares from its parent company GEO Holdings.  GEO Holdings intends use the cash it receives to repay existing indebtedness it owes to GSCL.   A prudent amount of cash will be retained in GEO Gallium after the share capital reduction.  Substantially contemporaneously with these transactions, the corporate form of GEO Gallium will be converted from a Société Anonyme to a Société par Actions Simplifiée.  The effect of this conversion will be to reduce the number of nominee shareholders of GEO Gallium and thus simplify the mechanics of annual meetings and other administrative procedures.

6.4    Funding.  On the Effective Date, the Exit Facility, as evidenced by the New Senior Credit Agreement and New Senior Notes, and all other documents, instruments, and agreements to be entered into, delivered, or confirmed thereunder or in connection therewith on the Effective Date, shall become effective. The new promissory notes issued pursuant to the New Senior Credit Agreement and all obligations under the New Senior Credit Agreement and related documents shall be repaid as set forth in the New Senior Credit Agreement and related documents.

6.5    Cancellation of Old Securities and Agreements.  On the Effective Date, except as otherwise provided for herein, (a) the Old Securities and any other note, bond, or indenture evidencing or creating any indebtedness or obligation of either Debtor shall be cancelled, and (b) the obligations of the Debtors under any agreements, indentures, or certificates of

designations governing the Old Securities and any other note, bond, or indenture evidencing or creating any indebtedness or obligation of any Debtor shall be discharged; provided, however, that the GEO 10 1/8% Notes and the Indenture shall continue in effect solely for the purposes of (i) allowing holders of the GEO 10 1/8% Notes to receive their distributions hereunder, (ii) allowing the Indenture Trustee to make distributions on account of the GEO 10 1/8% Notes, and (iii) preserving the rights of the Indenture Trustee and Liens with respect to the Indenture Trustee Expenses.

6.6     Authorization and Issuance of New Securities.

(a)     Reorganized GEO shall (i) authorize on the Effective Date all shares of New GEO Common Stock necessary to consummate the transactions contemplated herein; (ii) issue on the applicable Distribution Dates shares of New GEO Common Stock representing 76% of the fully diluted shares of New GEO Common Stock to the holders of Claims entitled thereto; (iii) issue on the Effective Date shares of New GEO Common Stock representing 15% of the fully diluted shares of New GEO Common Stock to the holders of the New Senior Notes; and (iv) reserve for issuance shares of New GEO Common Stock representing 9% of the fully diluted shares of New GEO Common Stock to satisfy the required distributions of the options granted under the New GEO Senior Executive Incentive Plan.

(b)     The New GEO Common Stock issued under the Plan shall be subject to dilution based upon (i) the issuance of New GEO Common Stock issued pursuant to the New GEO Senior Executive Incentive Plan as set forth in Section 6.7 of the Plan and (ii) any other shares of New GEO Common Stock issued post-emergence.

(c)     The New Securities to be issued and distributed pursuant to the Plan shall be issued in exchange for or principally in exchange for Allowed Claims in such Classes and shall be exempt from registration under applicable securities laws pursuant to Section 1145 of the Bankruptcy Code or other applicable exemption.

6.7     Senior Executive Equity Incentive Plan.  On the Effective Date, Reorganized GEO shall be authorized and directed to establish and implement the New GEO Senior Executive Incentive Plan, substantially in the form included in the Plan Supplement.

6.8     Directors of Reorganized Debtors.  The initial board of directors of Reorganized GEO shall be comprised of George P. Ahearn, three (3) individuals to be selected by the Creditors Committee and three (3) individuals to be selected by the holders of the New Senior Notes.

6.9     Officers of Reorganized Debtors.  George P. Ahearn and William P. Eckman shall serve initially in the same capacities after the Effective Date for Reorganized GEO as prior to the Effective Date, until replaced or removed in accordance with the Articles of Incorporation and Code of Regulations of Reorganized GEO and their respective employment agreements.

6.10    Revesting of Assets; Releases of Liens; Effective Date Restructurings.  Except as otherwise provided herein, the property of each Debtor's Estate, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to

the Plan shall re-vest in the applicable Debtor on the Effective Date. Thereafter, each Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all such property of each Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan or the Confirmation Order.

6.11   <u>Indemnification of Debtors' Directors, Officers, and Employees</u>.

(a)   Upon the Effective Date, the Articles of Incorporation, Code of Regulations and Operating Agreement, as applicable, of Reorganized GEO and Reorganized GSCL shall, if necessary, be amended so that they contain provisions that (i) eliminate the personal liability of the Debtors' former, present, and future directors and officers for monetary damages resulting from breaches of their fiduciary duties (other than for willful misconduct or gross negligence) and (ii) require such Reorganized Debtors, subject to appropriate procedures, to indemnify those of the Debtors' directors, officers, and other key employees (as such key employees are identified by the chief executive officer of the Reorganized Debtors) serving immediately following the Effective Date for all claims and actions (other than for willful misconduct or gross negligence), including, without limitation, for pre-Effective Date acts and omissions.

(b)   On or as of the Effective Date, the Reorganized Debtor shall enter into separate written agreements providing for the indemnification of each Person who is a director, officer, or member of management of such Reorganized Debtor as of the Effective Date for all claims and actions (other than for willful misconduct or gross negligence), including, without limitation, for pre-effective date acts and omissions.

6.12   <u>Preservation of Rights of Action</u>.  Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, on the Effective Date, each Debtor or Reorganized Debtor shall retain all of its respective Litigation Rights that such Debtor or Reorganized Debtor may hold against any Person.  Each Debtor or Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all such Litigation Rights. Each Debtor or Reorganized Debtor or its respective successor(s) may pursue such retained Litigation Rights as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights in accordance with applicable law and consistent with the terms of the Plan.  On the Effective Date, the Reorganized Debtors shall succeed to all of the rights, privileges and immunities of the Debtors, including, without limitation, the attorney-client privilege and the time periods in which any claims may be brought under Sections 108 and 546 of the Bankruptcy Code or otherwise.

6.13   <u>Effectuating Documents; Further Transactions</u>.  The chief executive officer, the president, the chief financial officer, or any other appropriate officer of GEO or managing member of GSCL, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and

conditions of the Plan. The secretary or assistant secretary of GEO, or any applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

6.14     Exemption From Certain Transfer Taxes.  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or any other Person pursuant to the Plan in the United States, including any Liens granted by the Debtors to secure the Exit Facility and the New Senior Notes, shall not be taxed under any law imposing a stamp tax or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement.

6.15     Corporate Action.  On the Effective Date, the adoption and/or filing of the Articles of Incorporation of Reorganized GEO and the Code of Regulations of Reorganized GEO, the appointment of directors and officers of Reorganized GEO, the adoption of the New GEO Senior Executive Incentive Plan, and all actions contemplated hereby shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, and any corporate action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the shareholders or directors of the Debtors or Reorganized Debtors.  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the board of directors or managing member of the Reorganized Debtors are authorized and directed to issue execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors without the need for any required approvals, authorizations or consents except for express consents required under this Plan.  Without limiting the foregoing, the New GEO Senior Executive Incentive Plan shall be deemed to have been unanimously approved by the stockholders of GEO pursuant to the Ohio Revised Code.

# ARTICLE VII

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumed Executory Contracts and Leases.

(a)     Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party unless such contract or lease (i) was previously assumed or rejected by such Debtor, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition filed by a Debtor on or before the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365(a) of the Bankruptcy Code approving the contract and lease assumptions described above, as of the Effective Date.

(b)     Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, operations at, or occupancy of real property shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

(c)     To the extent that any executory contract or unexpired lease to which one of the Debtors is a party is contributed to another entity, such executory contract or unexpired lease shall be deemed assumed and assigned to such entity on the Effective Date, unless such contract or lease (i) was previously rejected by such Debtor, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of any pending motion to make any other contrary disposition on or before the Confirmation Date.

7.2     <u>Payments Related to Assumption of Executory Contracts and Leases</u>.  Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor party to the contract or lease or the assignee of such Debtor party assuming such contract or lease, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute; provided, however, that not less than two (2) business days prior to Confirmation, the Debtors shall be authorized to reject any executory contract or unexpired lease to the extent the Debtors, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders assumption of such executory contract or unexpired lease unfavorable to the Debtors' Estates.

7.3     <u>Rejected Contracts and Leases</u>.  The Debtors reserve the right, at any time up to two (2) business days prior to Confirmation, except as otherwise specifically provided herein, to seek to reject any executory contract or unexpired lease to which any Debtor is a party and to file a motion requesting authorization for the rejection of any such executory contract or unexpired lease. Any executory contracts or unexpired leases that expire by their terms prior to the Effective Date are deemed to be rejected, unless previously assumed or otherwise disposed of by the Debtors.

7.4     <u>Rejection Damages Bar Date</u>.  If the rejection by a Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a Proof of Claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors and counsel to the Creditors Committee, within

thirty (30) days after entry of the order authorizing the rejection of such executory contract or
unexpired lease. The foregoing applies only to Claims arising from the rejection of an executory
contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall
have been evidenced by a Proof of Claim filed by earlier applicable Bar Dates or shall be barred
and unenforceable.

### 7.5    Compensation and Benefit Programs

(a)      Except to the extent an employee compensation or benefit program of
either of the Debtors (i) has been previously assumed or rejected by an order of the
Bankruptcy Court on or before the Confirmation Date, or (ii) is the subject of a pending
motion to reject filed by a Debtor on or before the Confirmation Date, or (iii) has been
previously terminated, or (iv) has been provided for in subsection (d) of this Section 7.5,
all employee compensation and benefit programs of the Debtors, including all pension
and retirement plans (including, without limitation, each of the Debtors' supplemental
executive retirement plans, health and welfare plans, and pension plans within the
meaning of Title IV of the Employee Retirement Income Security Act of 1974, as
amended) ("ERISA") and all programs subject to Sections 1114 and 1129(a)(13) of the
Bankruptcy Code, entered into before or after the Petition Date and not since terminated,
shall be deemed to be, and shall be treated as though they are, executory contracts that are
assumed under the Plan. Nothing contained herein shall be deemed to modify the existing
terms of such employee compensation and benefit programs, including, without
limitation, the Debtors' and the Reorganized Debtors' rights of termination and
amendment thereunder.

(b)      Subject to the rights of the Debtors and the Reorganized Debtors to
terminate or amend as provided for in Section 7.5(a) of the Plan, the Reorganized Debtors
shall continue after the Effective Date all of their defined benefit pension plans covered
by Title IV of ERISA, 29 U.S.C. §§ 1301-1461. As part of the continuation of the defined
benefit pension plans, subject to any such termination or amendment, the Reorganized
Debtors shall meet the minimum funding standards under ERISA and the Internal
Revenue Code, pay all insurance premiums owed to the Pension Benefit Guaranty
Corporation (the "PBGC"), and administer and operate the defined benefit pension plans
in accordance with their terms and ERISA. Nothing in this Plan is intended to release or
discharge any statutory liability or obligation of the Debtors or the Reorganized Debtors
with respect to the PBGC or the defined benefit pension plans. Neither the PBGC nor any
of the defined benefit pension plans shall be enjoined or precluded from enforcing such
liability as a result of the Plan.

(c)      The Final Order under 11 U.S.C. §§ 105(a) and 363(b)(1) Approving and
Authorizing Key Employee Retention Program, Including Assumption of Certain Key
Employment Agreements dated May 21, 2004 is incorporated herein by reference. All
rights, claims, interests, entitlements, and obligations of the Debtors under such Final
Order and under the GEO Key Employee Retention Plan (as defined therein) approved by
such Final Order shall continue in full force and effect.

(d)     In accordance with the authority provided by the Final Order Under 11 U.S.C. §§ 105(a) and 507(a) Authorizing the Debtors to Pay Prepetition Wages, Compensation and Employee Benefits Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code dated March 18, 2004, the Debtors shall, in the ordinary course of business, pay all valid prepetition claims, assessments and premiums arising under its workers' compensation program(s).

7.6     Indemnification Obligations.

(a)     In addition to Indemnification Obligations that are contained in contracts that are assumed by the Debtors and as set for the in Section 7.5(b) of the Plan, Indemnification Obligations owed to any present Professionals retained by the Debtors pursuant to Sections 327 or 328 of the Bankruptcy Code shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Section 365 of the Bankruptcy Code under the Plan. All other Indemnification Obligations shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order (unless assumed or rejected by another Final Order).

(b)     In satisfaction and compromise of the rights of all present and former directors, officers and employees of the Debtors (the "Indemnitees") who are entitled to assert against the Debtors any Indemnification Obligation in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitees' service (other than for willful misconduct or gross negligence) with, for, or on behalf of the Debtors (the "Indemnification Rights"): (i) all Indemnification Rights shall be released and discharged as of the Effective Date except for those Indemnification Rights held by any Indemnitee that serves as a director, officer or employee of the Reorganized Debtors immediately following the Effective Date together with any Indemnification Rights held by any Indemnitee on account of events occurring on or after the Petition Date (the "Continuing Indemnification Rights") (which shall remain in full force and effect to the fullest extent allowed by law or contract on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Chapter 11 Case); (ii) the Debtors or the Reorganized Debtors covenant to maintain directors' and officers' insurance providing coverage for those Indemnitees currently covered by such policies for a period of two years after the Effective Date, shall maintain tail coverage under policies in existence as of the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any claims demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for or on behalf of the Debtors in at least the scope and amount as currently maintained by the Debtors (the "Insurance Coverage") and hereby further indemnify such Indemnitees without Continuing Indemnification Rights solely to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy; (iii) the insurers who issue the Insurance Coverage are authorized to pay any professional fees and expenses incurred in connection with any action relating to any Indemnification Rights and Continuing Indemnification Rights; and (iv) the Debtors or the Reorganized Debtors hereby

26

indemnify Indemnitees with Continuing Indemnification Rights and agree to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy.

7.7    Extension of Time to Assume or Reject.  Notwithstanding anything set forth in Article VII of the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the Debtors' right to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed assumption provided for in Section 7.1(a) of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

7.8    Claims Arising From Assumption or Rejection.  All Allowed Claims arising from the assumption of any executory contract or unexpired lease shall be treated as Administrative Claims pursuant to Section 4.1(a) of this Plan; all Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as General Unsecured Claims pursuant to Section 4.3(e) of this Plan unless otherwise ordered by Final Order of the Bankruptcy Court; and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

8.1    Distributions for Claims Allowed as of Effective Date.  Except as otherwise provided herein or as ordered by the Bankruptcy Court, all distributions to holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Section 9.3 of the Plan. The Debtors shall have the right, in their discretion, to accelerate any Distribution Date occurring after the Effective Date if the facts and circumstances so warrant.

8.2    Interest on Claims.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-Petition Date interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

8.3    Designation; Distributions by Disbursing Agent.

(a)    Reorganized GEO may, in its sole discretion, designate the Person to serve as the Disbursing Agent under the Plan, and shall file a written notice of such designation at least five (5) days before the Confirmation Hearing.

(b)     Unless otherwise provided herein, the Disbursing Agent shall make all distributions required to be made on the respective Distribution Date under the Plan.

(c)     The Indenture Trustee shall make distributions on account of the Bondholder Unsecured Claims in accordance with the terms of the Indenture, subject to the terms of the Plan.

(d)     If the Disbursing Agent is an independent third party designated by Reorganized GEO to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services from Reorganized GEO on terms acceptable to Reorganized GEO. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

8.4     <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan shall be in United States dollars, by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

For purposes of effectuating distributions under the Plan, any claim asserted in foreign currency shall be converted to United States dollars pursuant to the published exchange rate in effect on the Petition Date.

8.5     <u>Calculation of Distribution Amounts of New GEO Common Stock</u>.  No fractional shares of New GEO Common Stock shall be issued or distributed under the Plan. Each Person entitled to receive New GEO Common Stock shall receive the total number of whole shares of New GEO Common Stock to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of shares of New GEO Common Stock, the actual distribution of shares of such stock shall be rounded to the next higher or lower whole number as follows: (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number. Notwithstanding the foregoing, whenever rounding to the next lower whole number would result in such Person receiving zero shares of New GEO Common Stock, such Person shall receive one (1) share of New GEO Common Stock. If two or more Persons are entitled to equal fractional entitlements and the aggregate amount of New GEO Common Stock that would otherwise be issued to such Persons with respect to such fractional entitlements as a result of such rounding exceeds the number of whole shares that remain to be allocated, the Disbursing Agent shall allocate the remaining whole shares to such holders by random lot or such other impartial method as the Disbursing Agent deems fair. Upon the allocation of all of the whole shares authorized under the Plan, all remaining fractional portions of the entitlements shall be cancelled and shall be of no further force and effect. The Disbursing Agent shall have the right to carry forward to subsequent distributions any applicable credits or debits arising from the rounding described in this <u>Section 8.5</u>.

28

8.6 <u>Delivery of Distributions</u>. Distributions to holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of filing of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) in the case of an Prepetition Secured Lender Claim, to the Prepetition Secured Lender Agent, or (e) in the case of the holder of a Bondholder Unsecured Claim, distributions shall be sent to the Indenture Trustee. Distributions on account of Prepetition Secured Lender Claims shall be deemed complete upon delivery of such distributions to the Prepetition Secured Lender Agent. Distributions on account of Bondholder Unsecured Claims shall be deemed complete upon delivery of such distributions to the Indenture Trustee. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Unless otherwise agreed between the Reorganized Debtors and the Disbursing Agent, amounts in respect of undeliverable distributions made by the Disbursing Agent shall be returned to the Reorganized Debtors until such distributions are claimed. All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Distribution Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claims of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. In the event of a timely claim for an unclaimed distribution, the Reorganized Debtors shall deliver the applicable unclaimed property to the Disbursing Agent for distribution pursuant to the Plan. Nothing contained in the Plan shall require any Debtor, any Reorganized Debtor, any Disbursing Agent, the Prepetition Secured Lender Agent or the Indenture Trustee to attempt to locate any holder of an Allowed Claim.

8.7 <u>Application of Distribution Record Date for Holders of GEO 10 1/8% Notes and Prepetition Secured Lender Secured Claims</u>.

(a) <u>GEO 10 1/8% Notes</u>. At the close of business on the applicable Distribution Record Date, the transfer ledgers for the GEO 10 1/8% Notes shall be closed, and there shall be no further changes in the record holders of such Old Securities. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustee, and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of GEO 10 1/8% Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

(b) <u>Prepetition Secured Lender Claims</u>. At the close of business on the applicable Distribution Record Date, the register maintained by the Prepetition Secured Lender Agent shall be closed and there shall be no further changes in the listed holders of the Prepetition Secured Lender Claims. The Reorganized Debtors, the Disbursing Agent,

the Prepetition Secured Lender Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Prepetition Secured Lender Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the register as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

8.8     Surrender of GEO 10 1/8% Notes.

(a)     GEO 10 1/8% Notes.  Except as provided in Section 8.8(b) of the Plan for lost, stolen, mutilated, or destroyed GEO 10 1/8% Notes, each holder of an Allowed Claim evidenced by a GEO 10 1/8% Note shall tender such GEO 10 1/8% Note to the Indenture Trustee in accordance with the terms of the Indenture as promptly as practicable following the Effective Date.

(b)     Lost, Stolen, Mutilated, or Destroyed GEO 10 1/8% Notes.  In addition to any requirements under the Indenture, any holder of a Claim evidenced by a GEO 10 1/8% Note that has been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such GEO 10 1/8% Note, deliver to the Indenture Trustee for such GEO 10 1/8% Note (i) evidence satisfactory to the Indenture Trustee of the loss, theft, mutilation, or destruction of such GEO 10 1/8% Note and (ii) such indemnity as may be required by such Indenture Trustee to hold the Indenture Trustee and the Reorganized Debtors harmless from any damages, liabilities, or costs incurred in treating such individual as a holder of the GEO 10 1/8% Note that has been lost, stolen, mutilated, or destroyed.  Upon compliance with this Section 8.8(b) by a holder of a Claim evidenced by a GEO 10 1/8% Note, such holder shall, for all purposes under the Plan, be deemed to have surrendered its GEO 10 1/8% Note.

(c)     Failure to Surrender GEO 10 1/8% Notes.  Any holder of a GEO 10 1/8% Note that fails to surrender or be deemed to have surrendered such GEO 10 1/8% Note before the second (2nd) anniversary of the Distribution Date shall have its Claim for a distribution on account of such GEO 10 1/8% Note discharged and shall be forever barred from asserting any such Claim against any Reorganized Debtor or their respective property.

8.9     Withholding and Reporting Requirements.  In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, (b) each holder of an Allowed Claim agrees to provide the Disbursing Agent with

such information (e.g., taxpayer identification number) as the Disbursing Agent deems appropriate to fulfill its information reporting and withholding obligations, and (c) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such tax obligations. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 8.6 of the Plan.

8.10    Setoffs.  The Reorganized Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder.

8.11    Prepayment.  Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

8.12    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (excluding payments on account of interest due and payable from and after the Effective Date pursuant to the Plan).

8.13    Allocation of Distributions.  All distributions received under the Plan by holders of Claims shall be deemed to be allocated first to the principal amount of such Claim as determined for United States federal income tax purposes and then to accrued interest, if any, with respect to such Claim.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

9.1    Prosecution of Objections to Claims.

(a)    Objections to Claims.  All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Deadline. If an objection has not been filed to a Proof of Claim or a scheduled Claim by the Claims Objection Deadline, the Claim to which the Proof of Claim or scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been allowed earlier. The Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim

pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether any such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanisms.

(b)     Authority to Prosecute Objections.  After the Effective Date, only the Reorganized Debtors shall have the authority to file objections to Claims and to settle, compromise, withdraw, or litigate to judgment objections to Claims, including Claims for reclamation under Section 546(c) of the Bankruptcy Code. The Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

9.2     Treatment of Disputed Claims.

(a)     Disputed Claims.  Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of a Disputed Claim or any portion thereof until such Claim becomes an Allowed Claim.

9.3     Distributions on Account of Disputed Claims Once They Are Allowed.  The Disbursing Agent shall, on the applicable Distribution Dates, make distributions on account of any Disputed Claim that has become an Allowed Claim. Such distributions shall be made pursuant to the provisions of the Plan governing the applicable Class. Such distributions shall be based upon the cumulative distributions that would have been made to the holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

## ARTICLE X

## CONDITIONS PRECEDENT TO AND CONSUMMATION OF THE PLAN

10.1     Conditions to Effective Date.  The following conditions precedent must be satisfied or waived on or prior to the Effective Date:

(a)     the Confirmation Order shall have been entered, and shall, among other things:

(i)     provide that the Debtors and the Reorganized Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases,

indentures, and other agreements or documents created in connection with the Plan;

(ii) approve the Exit Facility;

(iii) authorize the issuance of the New Securities; and

(iv) provide that notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan;

(b) the Confirmation Order shall not then be stayed, vacated, or reversed;

(c) the Articles of Incorporation of Reorganized GEO, the Code of Regulations of Reorganized GEO, the New Senior Notes, the New Senior Notes Credit Agreement and any and all related documents agreements and instruments shall, to the extent any of such documents contemplates execution by one or more persons, have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived;

(d) the Reorganized Debtors shall have arranged for credit availability under the Exit Facility in amount, form, and substance acceptable to the Debtors;

(e) all material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

(f) all material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1 <u>Scope of Retention of Jurisdiction</u>. Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b) hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 327, 328, 330, 331, 503(b),

1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)     hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)     effectuate performance of and payments under the provisions of the Plan;

(e)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Litigation Rights;

(f)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, provided, however, that any dispute arising under or in connection with the New Securities shall be determined in accordance with the governing law designated by the applicable document;

(h)     consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)     hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)     enforce all orders, judgments, injunctions, releases, exculpations, Bankruptcy Rule 2004 subpoenas, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(m) except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(n) hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(o) hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q) enter a final decree closing the Chapter 11 Case.

11.2 <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in <u>Section 11.1</u> of the Plan, the provisions of this <u>Article XI</u> shall have no effect upon and shall not control, prohibit, or limit the exercise of any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## <u>MISCELLANEOUS PROVISIONS</u>

12.1 <u>Professional Fee Claims; Expense Reimbursements</u>.

(a) All final requests for payment of Professional Fee Claims pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code and Substantial Contribution Claims under Section 503(b)(3), (4), or (5) of the Bankruptcy Code must be filed and served on the Reorganized Debtors, their counsel, and other necessary parties-in-interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such requests for payment must be filed and served on the Reorganized Debtors, their counsel, and the requesting Professional or other Person no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served. Subject to allowance of final fee applications, the Debtors shall, on the Effective Date, pay professional fees incurred for the period prior to the Effective Date in accordance with the procedures set forth in the Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant to 11 U.S.C Sections 105(a) and 331 entered in this case on April 7, 2004.

(b) Each Reorganized Debtor may, without application to or approval by the Bankruptcy Court, pay reasonable professional fees and expenses in connection with services rendered to it after the Effective Date.

12.2 <u>Administrative Claims</u>. All requests for payment of an Administrative Claim (other than as set forth in <u>Sections 4.1(a)</u> and <u>12.1</u> and this <u>Section 12.2</u> of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtors no later than forty-five (45) days after the Effective Date. Unless the Debtors object to an Administrative Claim within sixty (60) days after receipt, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by a Debtor in the ordinary course of business.

12.3 <u>Payment of Statutory Fees</u>. All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Reorganized Debtors. The obligation of each of the Debtors to pay quarterly fees to the Office of the United States Trustee pursuant to Section 1930 of Title 28 of the United States Code shall continue until such time as the particular Chapter 11 case is closed, dismissed or converted.

12.4 <u>Modifications and Amendments</u>. The Debtors may alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

12.5 <u>Severability of Plan Provisions</u>. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of either Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6 <u>Successors and Assigns and Binding Effect</u>. The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the Reorganized Debtors and all other parties-in-interest in the Chapter 11 Case.

     12.7   <u>Compromises and Settlements</u>. From and after the Effective Date, the Reorganized Debtors may compromise and settle various Claims against them and/or Litigation Rights and other claims that they may have against other Persons without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them and Litigation Rights or other claims that they may have against other Persons.

     12.8   <u>Releases and Satisfaction of Subordination Rights</u>. All Claims against the Debtors and all rights and claims between or among the holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the distributions under, described in, contemplated by, and/or implemented in <u>Sections 4.1, 4.2, and/or 4.3</u> of the Plan. Distributions under, described in, contemplated by, and/or implemented by the Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

     12.9   <u>Releases and Related Matters</u>.

         (a)   <u>Releases by Debtors</u>. As of the Effective Date, for good and valuable consideration, the receipt and adequacy of which are hereby confirmed, the Debtors, the Reorganized Debtors and any Person seeking to exercise the rights of the Debtors' Estate, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than for willful misconduct or gross negligence) in connection with or related to the debtors, the Chapter 11 Case, or the Plan (other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents entered into and/or delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence arising or occurring on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Case, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against (i) any of the other Debtors and either of the Debtors' non-Debtor subsidiaries, (ii) the Prepetition Secured Lenders, the Prepetition Secured Lender Agent, the Creditors Committee (but not its members in their individual capacities), and the Indenture Trustee, (iii) any of the directors, officers, employees (except as limited hereinbelow), and advisors, attorneys, and other professionals retained by the Debtors, the Debtors' subsidiaries, the Prepetition Secured Lenders, the Prepetition Secured Lender Agent, the Creditors Committee (but not its members in their individual capacities), and the Indenture Trustee serving immediately prior to the Effective Date, and (iv) those of Debtors' directors, officers, and employees designated on <u>Exhibit C</u>, but specifically excluding any Person identified in clauses (i) through (iv) above who has, on or before the Effective Date, asserted any

Claim (other than a Proof of Claim as to which the Debtors have not made any objection on or before the applicable Objection Deadline) or initiated any suit, action or similar proceeding against the Debtors that has not been waived by such Person in its entirety on or prior to the Effective Date; provided, however, that nothing in this <u>Section 12.9(a)</u> shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any employee (other than any director or officer) that is based upon an alleged breach of a confidentiality, noncompete or any other contractual or fiduciary obligation (including, without limitation, those arising under the GEO Key Employee Retention Plan) owed to the Debtors or the Reorganized Debtors.

       (b)    <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, for good and valuable consideration, the receipt and adequacy of which are hereby confirmed, each holder of a Claim that affirmatively votes in favor of the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against (i) the Debtors' non-Debtor subsidiaries, (ii) the Prepetition Secured Lenders, the Prepetition Secured Lender Agent, the Creditors Committee (but not its members in their individual capacities), the Indenture Trustee and their respective present agents or professionals, and (iii) any of the directors, officers, and employees of the Debtors serving immediately prior to the Effective Date, those of Debtors' directors, officers and employees designated on <u>Exhibit C</u>, and either of the Debtors' present agents or professionals (including any professionals retained by the Debtors) (the Persons identified in clauses (i) through (iii) collectively, the "Claimholder Releasees") in connection with or related to the Debtors, the Chapter 11 Case, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents entered into and/or delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence arising or occurring on or prior to the Effective Date in any way relating to the Debtors or the Reorganized Debtors, the Chapter 11 Case, or the Plan; provided, however, that nothing in this <u>Section 12.9(b)</u> or in this Plan shall release (A) any Person (other than the Debtors) from any contractual obligation owed to the holder of a Claim, including without limitation, obligations under promissory notes, guarantees, or similar instruments, whether related to the Debtors or otherwise, and (B) Thompson Hine LLP from any claims that may be asserted by Charter Oak Partners and/or Charter Oak Capital Partners, L.P.

       Each of the Claimholder Releasees shall be deemed to forever release, waive, and discharge any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever arising or occurring on or prior to the Effective Date in any way relating to the Debtors or the Reorganized Debtors, the Chapter 11 Case, or the Plan, against each holder of a Claim that affirmatively votes in favor of the Plan.

38

12.10   <u>Discharge of the Debtors</u>.

(a)     Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims.  Upon the Effective Date, the Debtors, and each of them, shall (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (C) the holder of a Claim based upon such debt accepted the Plan, and (ii) terminate all GEO Interests.

(b)     As of the Effective Date, except as provided in the Plan or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further Claims, debts, rights, causes of action, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all GEO Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

(c)     Nothing in this <u>Section 12.10</u> shall release, discharge, or preclude any Claim that has not arisen as of the Effective Date that the United States Environmental Protection Agency or any state environmental agency may have against the Debtors or any remedies of the United States Environmental Protection Agency or any state environmental protection agency that are not within the definition of "claim" as set forth in Section 101(5) of the Bankruptcy Code.

(d)     The discharge of the Debtors pursuant to the Plan is not intended to limit in any way the Debtors' insurance coverage or to deprive any third party of any rights to such coverage that may otherwise exist.

12.11   <u>Injunction</u>.

(a)     Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtors, the

Reorganized Debtors, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights, (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or the Reorganized Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(b)     As of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to <u>Sections 12.8</u>, <u>12.9</u>, <u>or 12.12</u> of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated Interests or rights, (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(c)     Without limiting the effect of the foregoing upon any Person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this <u>Section 12.11</u>.

12.12   <u>Exculpation and Limitation of Liability</u>.

(a)     None of the Debtors, the Reorganized Debtors or their respective subsidiaries, the Creditors Committee, the Prepetition Secured Lenders, the Prepetition Secured Lender Agent, the Indenture Trustee or any of their respective present or former members, officers, directors, employees, advisors, professionals and agents, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)     Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action against any Debtor, any Reorganized Debtor, any of its subsidiaries, the Creditors Committee, the Prepetition Secured Lenders, the Prepetition Secured Lender Agent or the Indenture Trustee or any of their respective present or former members, officers, directors, employees, advisors, professionals and agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.

12.13   <u>Term of Injunctions or Stays</u>.  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

12.14   <u>Revocation, Withdrawal, or Non-Consummation</u>.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, either Debtor or any other Person, (ii) prejudice in any manner the rights of either Debtor or any Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

12.15   <u>Plan Supplement</u>.  The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the date of the commencement of the Confirmation Hearing. Upon such filing, all documents included in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request to the Debtors in accordance with <u>Section 12.16</u> of the Plan.

12.16   <u>Notices</u>.  Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor or a Reorganized Debtor under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

GEO SPECIALTY CHEMICALS, INC.
401 South Earl Avenue, Suite 3A
Lafayette, IN 47904
Attn:  William P. Eckman
Telephone:  (765) 448-9412
Fax:  (765) 448-6796

with copies to:

THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Telephone: (216) 566-5500
Fax:  (216) 566-5800
Attn:  Alan R. Lepene, Esq.
         Robert C. Folland, Esq.

-and-

RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 226-1500
Fax:  (973) 226-6888
Attn:  Howard S. Greenberg, Esq.
         Stephen B. Ravin, Esq.


12.17   Dissolution of Creditors Committee.  On the Effective Date, the Creditors Committee shall dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case. The Professionals retained by the Creditors Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except as may be necessary to file final requests for payment pursuant to Section 12.1(a) of the Plan, and respond to any inquiries or objections and attend hearings on final fee applications.

12.18   Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.19   Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of New Jersey shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed and/or delivered in connection with the Plan and (b) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof.

Dated:  November 22, 2004
Newark, New Jersey

GEO Specialty Chemicals, Inc.
By:  /s/ William P. Eckman
Title:  Executive Vice President and Chief
Financial Officer

GEO Specialty Chemicals Limited
By:  /s/ GEO Specialty Chemicals, Inc.
Title:  Sole Member
Acting by:  /s/ William P. Eckman
Title: Executive Vice President and
Chief Financial Officer

THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
(216) 566-5500
Alan R. Lepene, Esq. (Ohio Bar #0023276)
Robert C. Folland, Esq. (Ohio Bar #0065728)
Sean A. Gordon, Esq. (Ohio Bar #0074243)

 -and-

RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 226-1500
Howard S. Greenberg, Esq. (HSG8559)
Stephen B. Ravin, Esq. (SR7074)
Brian L. Baker, Esq. (BB4569)

Co-Attorneys for Debtors and Debtors in
Possession, GEO Specialty Chemicals, Inc.
and GEO Specialty Chemicals Limited

43