## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br>*16-md-2687 (JLL) (JAD) (MDL 2687)*<br>*16-cv-2873 (JLL) (JAD)* | Civil Action No. 16-md-2687 (JLL)(JAD)<br>(MDL No. 2687)<br><br>**Return Date: March 20, 2017**<br><br>***(Document Filed Electronically)***<br><br>***Oral Argument Requested*** |

## MEMORANDUM OF LAW IN SUPPORT OF THE GCC DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Richard H. Epstein
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Fax: (973) 643-6500
repstein@sillscummis.com

Steven A. Reiss (admitted *pro hac vice*)
Adam C. Hemlock (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*Attorneys for Defendants General Chemical Corporation, General Chemical Performance Products, LLC, General Chemical, LLC, GenTek Inc., Chemtrade Logistics Income Fund, Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, and Chemtrade Solutions LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ..........................................................................................1

    A.    GCC and Its Bankruptcy .................................................................1

LEGAL ARGUMENT ................................................................................................2

    A.    Plaintiffs Are Barred From Seeking Damages for Sales Prior to November 10, 2003 When GCC Emerged From Chapter 11 Bankruptcy ..................................................................................3

        1.    Plaintiffs' Claims Arose Prior to the Effective Date .................4

        2.    Class Members Were Notified of GCC's Bankruptcy Proceeding, and Thus, Afforded Due Process ...........................4

    B.    GCC's Joint and Several Liability Was Discharged by the Bankruptcy Court ..........................................................................5

CONCLUSION ............................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................2

*In re Benjamin Coal Co.,*
  978 F.2d 823 (3d Cir. 1992) ...................................................................................7

*In re Grossman's, Inc.,*
  607 F.3d 114 (3d Cir. 2010) ...................................................................................3

*In re M. Frenville Co.,*
  744 F.2d 332 (3d Cir. 1984), *overruled by In re Grossman's, Inc.,*
  607 F.3d 114 (3d Cir. 2010) ...................................................................................4

*In re Penn Cent. Transp. Co.,*
  771 F.2d 762 (3d Cir. 1985) ...................................................................................4

*Kleen Products LLC v. International Paper,*
  306 F.R.D. 585 (N.D. Ill. 2015), *aff'd,* 831 F.3d 919 (7th Cir.
  2016) ...................................................................................................................7, 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  401 U.S. 321, *reh'g denied,* 401 U.S. 1015 (1971) ................................................4

**STATUTES**

11 U.S.C. § 101(5) ......................................................................................................3

11 U.S.C. § 101(12) ....................................................................................................3

11 U.S.C. § 523 ...........................................................................................................6

11 U.S.C. § 1141(d)(1)(A) ......................................................................................3, 6

11 U.S.C. § 1141(d)(2) ...........................................................................................3, 6

**RULES**

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 2, 3

## PRELIMINARY STATEMENT

Indirect Purchaser Plaintiffs' claims against General Chemical Corporation and its related corporate entities for conduct prior to November 10, 2003 must be dismissed. In 2002, GenTek Inc. and General Chemical Corporation (together, and with other related entities, "*GCC*") and GCC's then-existing related corporate entities filed for Chapter 11 relief in the Bankruptcy Court for the District of Delaware, which resulted in an order confirming GCC's reorganization effective November 10, 2003. The Confirmation Order contains a crystal-clear injunction stating that claims relating to conduct prior to the Effective Date of the plan of reorganization are fully and forever barred and discharged, and that no plaintiff may pursue any such claim in any way. Because the Confirmation Order bars these claims for pre-bankruptcy damages, they fail to state a claim upon which relief can be granted. Accordingly, this Court should dismiss them under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS

### A.   GCC and Its Bankruptcy

Plaintiffs' allegations as to the corporate structure and bankruptcy of the GCC entities named in the Consolidated Class Action Complaint (the "*CCAC*") (*i.e.*, General Chemical Corporation, General Chemical Performance Products, LLC, General Chemical, LLC, GenTek Inc., Chemtrade Logistics Income Fund, Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade

Chemicals US LLC, and Chemtrade Solutions LLC, individually and together, "**GCC**") are similar to those of other complaints currently pending before the Court and need not be restated here. As part of its bankruptcy proceedings, GCC satisfied the requirements of due process to all creditors, known and unknown, by notifying them of the April 14, 2003 date after which claims against it would be barred (the "**Bar Date**"). *See* Declaration of Richard H. Epstein (the "***Epstein Decl.***"), Ex. 1. On October 7, 2003, the Bankruptcy Court entered an order allowing GCC to emerge from bankruptcy and discharging all claims arising before the November 10, 2003 date after which the plan of reorganization would be effective (the "***Effective Date***"). *See* Epstein Decl., Ex. 2 (the "***Confirmation Order***"). The Confirmation Order extinguished Plaintiffs' ability to recover damages arising prior to the Effective Date, thus barring Plaintiffs from recovering damages arising prior to November 10, 2003. *Id.* at 29-30.

## LEGAL ARGUMENT

The Federal Rules of Civil Procedure provide for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the Court must take all factual allegations in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Bankruptcy Code expressly states that an order confirming a debtor's plan of reorganization "discharges the debtor from *any debt* that arose before the date of

such confirmation." 11 U.S.C. § 1141(d)(1)(A) (emphasis added). Section 101(12) of the Bankruptcy Code defines a "debt" as liability on a "claim," which in turn is defined in section 101(5) of the Bankruptcy Code as a "right to payment." *See In re Grossman's, Inc.*, 607 F.3d 114, 122 (3d Cir. 2010). Because black-letter bankruptcy law precludes this Court from granting relief to Plaintiffs for those claims, they should be dismissed under Rule 12(b)(6).

### A. Plaintiffs Are Barred From Seeking Damages for Sales Prior to November 10, 2003 When GCC Emerged From Chapter 11 Bankruptcy

In its Memorandum of Law in Support of the GCC Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), ECF No. 244 (the "***DPP Moving Brief***"), in the related action brought on behalf of a putative class of direct purchaser plaintiffs, GCC explained in detail why the Plaintiffs in that matter are barred from seeking damages for any claims arising prior to GCC's emergence from bankruptcy on November 10, 2003. Such claims were discharged and affirmatively enjoined by the United States Bankruptcy Court for the District of Delaware in GCC's bankruptcy case. *See generally* DPP Moving Brief.

Applying the Third Circuit's two-part accrual test, *see In re Grossman's, Inc.*, 607 F.3d at 127, to the claims at issue confirms that Plaintiffs' claims for GCC's conduct prior to the Effective Date have been fully and forever discharged, and thus, Plaintiffs are enjoined from pursuing such claims.

3

### 1. *Plaintiffs' Claims Arose Prior to the Effective Date*

Under the accrual test, a claim arises when it accrues under applicable non-bankruptcy law. *See, e.g.*, *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir. 1984), *overruled by In re Grossman's, Inc.*, 607 F.3d 114 (3d Cir. 2010). Many of Plaintiffs' claims accrued, like an antitrust claim, "when a defendant commit[ted] an act in furtherance of the conspiracy that injures the plaintiff and results in ascertainable damages." *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 766 (3d Cir. 1985) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, *reh'g denied*, 401 U.S. 1015 (1971)). Plaintiffs allege that GCC committed an act in furtherance of the conspiracy with respect to the sale and distribution of Liquid Alum starting as early as 1997. CCAC ¶¶ 86-87. Given that this was years before GCC filed for bankruptcy, the Plaintiffs' claims that accrued in 1997 and seek damages between then and November 9, 2003 accrued prior to the Effective Date, satisfying the first prong of the Third Circuit's two-part test.

### 2. *Class Members Were Notified of GCC's Bankruptcy Proceeding, and Thus, Afforded Due Process*

For the same reasons that GCC set forth in the DPP Moving Brief, the due process rights of all class members that these Plaintiffs purport to represent were satisfied in connection with GCC's bankruptcy. *See* DPP Moving Brief at 5-7.

Here, all class members received publication notice of the Bar Date by which all potential claimants, including Plaintiffs, were required to file their claims

in the Bankruptcy Court. On February 14, 2003 – more than two months before the Bar Date – GCC published notice of its Bar Date in *ten* newspapers across the United States and Canada. *See id.* at 6. This publication notice in ten newspapers across the country and Canada was sufficient to satisfy due process. *Id*.

In addition, numerous claimants – including the city of Homestead, Florida, one of the named Plaintiffs here – received ***actual*** notice of the Bar Date and GCC's bankruptcy, meaning they were served with notice of the Bar Date in the mail. Epstein Decl., Ex. 1. As to these class members, GCC went beyond what due process requires. Accordingly, all class members received adequate notice of the bankruptcy, sufficient to discharge all claims for damages incurred prior to November 10, 2003.

### B. GCC's Joint and Several Liability Was Discharged by the Bankruptcy Court

There is no sound basis for Plaintiffs' allegation that, notwithstanding the bankruptcy discharge, GCC may be held "jointly and severally liable for all damages resulting from the conspiracy during the entire Class Period . . . includ[ing] damages incurred by the Plaintiffs and the Class prior to [GCC's] discharge from bankruptcy." *See* CCAC ¶ 24(c). There is no support in the Bankruptcy Code for the conclusion that GCC's ***individual*** liability, but not its ***joint and several*** liability, has been discharged.

Section 1141(d)(1)(A) of the Bankruptcy Code expressly states that the order confirming a debtor's plan of reorganization "discharges the debtor from *any debt* that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A) (emphasis added). This language is clear and unambiguous; it does not distinguish between types of debt or liability. Where Congress intended to allow exceptions to the discharge, it expressly included those exceptions in the Bankruptcy Code. *See* 11 U.S.C. §§ 523, 1141(d)(2) (identifying exceptions to discharge in chapter 7 and 11 cases). No exception exists for joint and several liability and there is no reason for the Court to manufacture one here.

Further, holding a debtor jointly and severally liable for its co-conspirator's pre-discharge conduct would be at odds with the very purpose of the Bankruptcy Code, which aims to give reorganized debtors a fresh start. *See* DPP Moving Brief at 8. For this reason, it is well-settled that a bankruptcy discharge in the Plan of Reorganization, as confirmed by the Confirmation Order, supersedes substantive non-bankruptcy law. *See id.* at 8-9. Indeed, the Confirmation Order expressly states that "the Plan and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law." Epstein Decl., Ex. 2 at 27-28, 37. There is simply no basis for the artificial distinction between individual liability and joint and several liability that Plaintiffs rely upon. *See In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992) (holding that administrative

claim in a Chapter 7 bankruptcy was discharged where "the discharge of all existing claims, including administrative claims, upon confirmation of a Chapter 11 plan [was] unambiguous both in the Bankruptcy Code and in [the debtor's] own reorganization plan").

The one case to decide this question in the antitrust context, *Kleen Products LLC v. International Paper*, 306 F.R.D. 585 (N.D. Ill. 2015), *aff'd*, 831 F.3d 919 (7th Cir. 2016), was decided under the Sherman Act, did not take account of fundamental bankruptcy law, and is not binding on the District of New Jersey. Although the court concluded that the debtor in that case may be held jointly and severally liable for its co-conspirators' conduct prior to its own bankruptcy, the court provided virtually no support for the distinction it made between the debtor's own liability – which the court recognized was discharged – and its joint and several liability as a co-conspirator. *Id.* at 608. The court's sole rationale was that the debtor had re-joined the conspiracy after its bankruptcy, and thus, was liable for sales made by its competitors prior to the debtor's bankruptcy. *Id.* at 608-09. But this conflicts with the Bankruptcy Code, well-established case law providing that discharge overrides non-bankruptcy substantive law, and GCC's Plan of Reorganization, which expressly trumps non-bankruptcy substantive law. And Plaintiffs have no support (other than *Kleen*) for their contention that this established law should be overridden. Accordingly, the Court should dismiss

7

Plaintiffs' claims to the extent they seek to hold GCC jointly and severally liable for conduct arising prior to November 10, 2003.

## CONCLUSION

For the foregoing reasons, GCC respectfully requests that the Court dismiss Plaintiffs' Consolidated Amended Complaint for failure to state a claim upon which relief can be granted, insofar as it asserts claims or seeks damages for conduct prior to GCC's discharge in bankruptcy on November 10, 2003.

Dated: December 22, 2016

Respectfully submitted,

*s/ Richard H. Epstein*
Richard H. Epstein
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Phone: (973) 643-7000
Fax: (973) 643-6500
repstein@sillscummis.com

Steven A. Reiss (admitted *pro hac vice*)
Adam C. Hemlock (admitted *pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*Attorneys for Defendants General Chemical Corporation, General Chemical Performance Products, LLC, General Chemical, LLC, GenTek Inc., Chemtrade Logistics Income Fund, Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, and Chemtrade Solutions LLC*

9