NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No.: 16-md-2687 (JLL)<br><br>**OPINION** |
| *This Document Relates to: City of Greensboro, North Carolina v. American Securities, LLC, et al.*; Civ. Action No. 17-6674 | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants American Securities, LLC, Matthew LeBaron, and Scott Wolff's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 551-552). All Plaintiffs have collectively opposed Defendants' Motion (ECF No. 584), to which Defendants have not replied. The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Motions to Dismiss.

## I. BACKGROUND[1]

The Court has set forth, at length, the factual and procedural background as it pertains to this Multidistrict Litigation in its Opinion dated July 20, 2017. (ECF No. 405 at 1-24). Accordingly, the Court need not restate, and hereby incorporates, same herein. Thus, the Court

---

[1] This background is derived from City of Greensboro, North Carolina's Complaint against Defendant American ("Compl."), which was docketed in Civ. Action No. 17-6674. (ECF No. 1). The Court must accept the allegations therein as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

will only set forth the relevant factual and procedural background as it pertains to these specific Defendants and their Motion to Dismiss.

As the parties are aware, this case involves a substance known as Liquid Aluminum Sulfate ("Alum"). (Id. at 8-9). It is alleged that the various Defendants in this case illegally "colluded to fix the price of Alum and/or allocate customers thereby restraining free trade." (Id. at 9). Accordingly, the various direct purchaser, indirect purchaser, and individual plaintiffs brought a myriad of actions seeking to recover damages for, *inter alia*, violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (*See generally* id.; *see also* Compl.).

Defendant American "is a private equity firm based in New York, New York" and is a duly formed limited liability company under New York law. (Compl. ¶ 11). At some point in 2009, and through 2014, Defendant American owned Defendant GenChem.[2] (Id. ¶ 12). During this same time period, Defendant "LeBaron was a Managing Director of [Defendant] American Securities." (Id. ¶ 15). Defendant LeBaron joined Defendant American in 1999. (Id.). Also throughout this time period, and through present, Defendant Wolff was, and remains, "a Managing Director of [Defendant] American Securities." (Id. ¶ 16). Defendant Wolff joined Defendant American in 2003. (Id.).

Generally, the allegations of this specific Complaint mirror those the Court has discussed previously. Indeed, the Complaint sets forth allegations regarding the Alum industry and market, including the fact that the Alum market has been consolidated over the years and the fact that there is a lack of substitutes for Alum, as well as a general description of what Alum is. (Id. ¶¶ 53-71).

---

[2] Defendant GenChem is comprised of the following entities: 1) General Chemical Corporation; 2) General Chemical LLC; and 3) General Chemical Performance Products LLC. (Compl. ¶ 17). These entities shall collectively be referred to herein as "Defendant GenChem."

2

Additionally, the subject Complaint also discusses the various other defendants, and their role in the alleged conspiracy. (Id. ¶¶ 17-41, 45-52, 72-81). The Complaint even includes the same and/or nearly identical specific instances of bid coordination and/or customer allocation. (Id. ¶¶ 82-112). Finally, Plaintiff includes a history and explanation of the conspiracy, which is identical to the previous complaints. (Id. ¶¶ 125-44). Hence, once again, a full recitation of these facts is unnecessary.

The allegations that are unique to this specific Complaint revolve around these three Defendants. According to Plaintiffs, Defendants American, LeBaron, and Wolff were "intimately involved with the water chemical business of [Defendant] GenChem, including reviewing and authorizing significant Alum bids and overseeing its announced intent to 'optimize' Alum prices within the market, *i.e.* increase them." (Id. ¶ 113). Plaintiff asserts that, after Defendant American acquired Defendant GenChem, Defendant American required that all bids over a certain amount made by Defendant GenChem be approved by Defendant American. (Id. ¶ 114). Thus, Plaintiff alleges that "[o]ften the price approved by [Defendant] American Securities was determined by whether [Defendant] GenChem was submitting a bid for one of its incumbent accounts that, in accordance with the conspiracy, [Defendant] GenChem was predestined to 'win,' or whether [Defendant] GenChem would be submitting an intentionally losing 'throw-away' bid in furtherance of the conspiracy." (Id.).

Further, Defendant American "requested monthly reports" so that it could monitor the conspiracy. (Id. ¶ 115). Plaintiff asserts that these reports allowed Defendants to "track whether bids were won by the 'incumbent' manufacturer – *i.e.*, the heart of the conspiracy – or whether a challenger had won an Alum bid." (Id.). Said reports were also allegedly designed to track

whether other members of the conspiracy were acting in a manner that was consistent with the price rigging, bid fixing, and customer allocation scheme. (Id.).

Plaintiff provides numerous specific examples of Defendants' involvement in the alleged conspiracy. "For example, in 2010, [Defendant] LeBaron ... asked [Defendant] GenChem executives to confirm that [Defendant] GenChem would not seek to bid against incumbent competitors for certain large accounts." (Id. ¶ 117). Defendant LeBaron allegedly "sought to ensure that bids submitted by [Defendant] GenChem conveyed the correct signals by distinguishing bid amounts for accounts at which [Defendnat] GenChem was the historical incumbent and those that were historically supplied by a co-conspirator." (Id. ¶ 118). This specific Complaint is laden with additional examples of Defendants' alleged involvement in the purported conspiracy. (Id. ¶¶ 119-124).

## II. **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead

to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

Against the aforementioned factual background, Plaintiff brought this action asserting a single claim for violation of Section 1 of the Sherman Act. (Id. ¶¶ 145-48). Defendants now move to dismiss, advancing two arguments in favor of dismissal. (ECF No. 552 ("Def. Mov. Br.") at 8-20). First, Defendants assert that their ownership of Defendant GenChem alone cannot serve as a basis for liability. (Id. at 6-7). Additionally, Defendants argue that the Complaint "fails to plausibly suggest the existence of an agreement to restrain trade involving" them. (Id. at 7-16). Both of these arguments turn on the sufficiency of the allegations in Plaintiff's Complaint. Accordingly, the Court addresses both jointly herein.

Section 1 of the Sherman Act provides that:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $ 100,000,000 if a corporation, or, if any other person, $ 1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

5

15 U.S.C. § 1. The Third Circuit has explained that there are four essential elements of a § 1 violation:

> (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action.

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997). Moreover, "[b]ecause § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy,' '[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" *Twombly*, 550 U.S. at 553. As a result, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556.

The Court finds that Plaintiff's Complaint satisfies the above standard and therefore states a *prima facie* cause of action for violation of Section 1 of the Sherman Act. As was the case with the previous complaints this Court has examined, Plaintiff's Complaint contains all the requisite allegations to survive a motion to dismiss. Specifically, Plaintiff has alleged that Defendants acted in concert to restrain free trade in the Alum market by way of bid rigging and customer allocation. (Compl. ¶¶ 72-75). This was accomplished via "inter-conspirator meetings and communication" between all defendants, including Defendants herein. (Id. ¶¶ 76-81). Also, as noted above, Plaintiff points to "specific instances of bid coordinating" by all defendants. (Id. ¶¶ 82-105).

Plaintiff also alleges that all defendants engaged in "widespread anomalous bidding behavior." (Id. ¶¶ 106-10). Furthermore, Plaintiff asserts that all defendants engaged in "policing and enforcement efforts" in order to assure that the conspiracy was maintained. (Id. ¶¶ 111-12). Plaintiff claims that this conduct caused the price of Alum to be artificially increased nationwide, which produced an anti-competitive result that was felt throughout the country. (Id. ¶¶ 125-29). Moreover, Plaintiff alleges that all defendants' conduct was illegal in violation of Section 1 of the Sherman Act. (Id. ¶¶ 10, 44, 80, 134, 138). Finally, Plaintiff asserts it was monetarily damaged by being forced to buy Alum at an artificially inflated price. (Id. ¶¶ 10, 23, 47, 147, 151-53).

Additionally, it is important to note that Plaintiff makes the same allegations as all other plaintiffs in this case regarding all defendants, but also makes specific allegations with regards to Defendants herein. As discussed above, Plaintiff lists specific instances of Defendants' involvement in the conspiracy. (Id. ¶¶ 113-24). The majority of the examples occurred in 2010, which is approximately one year after Defendants purchased Defendant GenChem. (Id. ¶¶ 116-24).

Therein, Plaintiff lists more than sufficient allegations to support a claim for violation of Section 1 of the Sherman Act. Plaintiff claims that Defendants, in concert with the other defendants, engaged in conduct that was specifically designed to negatively impact the Alum market for their own benefit. (Id. ¶¶ 117, 121-24). Once again, Plaintiff alleges that this conduct was illegal and did in fact cause the price of Alum to become artificially inflated and Defendants themselves damaged Plaintiff by causing it to purchase Alum at an artificially inflated price. (Id. ¶¶ 10, 23, 47, 117, 121-24, 147, 151-53). Therefore, the Court is satisfied that Plaintiff has pled a

*prima facie* cause of action for violation of Section 1 of the Sherman Act against Defendants herein.

Having resolved the argument that pertains to the sufficiency of the allegations, the Court turns its attention to Defendants' second argument. There, Defendants argue that their mere ownership of Defendant GenChem is insufficient to subject them to liability for Defendant GenChem's alleged antitrust conduct. (Def. Mov. Br. at 6-7). This argument fails for two reasons. First, such an argument seems to be more appropriate for the summary judgment phase of the case and not the motion to dismiss phase, as this Court must accept all the facts in Plaintiff's Complaint as true at this juncture. *See Alston*, 585 F.3d at 758.

More importantly, Plaintiff's Complaint contains sufficient allegations that, if found to be true by a jury, would potentially subject Defendants to liability for their involvement in the alleged conspiracy. Indeed, as Plaintiff correctly notes "[a] complaint states a claim against a parent where the parent itself is plausibly alleged to have joined the conspiracy." (ECF No. 584 ("Pl. Opp. Br.") at 9) (citing *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 747 (E.D. Pa. 2011)) (additional citations omitted). The aforementioned allegations are more than sufficient to "plausibly suggest that each Defendant participated in the alleged conspiracy." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008). Accordingly, the Court does not find Defendants' argument persuasive at this juncture. Defendants are welcome to renew this argument should discovery tend to show otherwise. However, at this juncture, the Court must deny Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss (ECF Nos. 551-552) Plaintiff's Complaint is hereby denied. An appropriate Order accompanies this Opinion.

DATED: February 15, 2018

JOSE L. LINARES
Chief Judge, United States District Court