# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

In Re: LIQUID ALUMINUM SULFATE
ANTITRUST LITIGATION

Civil Action No. 16-md-2687 (JLL) (JAD)

## SETTLEMENT AGREEMENT BETWEEN INDIRECT PURCHASER CLASS PLAINTIFFS AND DEFENDANTS GEO SPECIALTY CHEMICALS, INC., KENNETH A. GHAZEY AND BRIAN C. STEPPIG

THIS SETTLEMENT AGREEMENT is made and entered into as of the 15th day of June 2018 by and between on the one hand: Plaintiffs City of Homestead, Florida, and City of Creston Water Works Department (collectively, "Indirect Purchaser Class Plaintiffs"), individually and on behalf of the putative Indirect Purchaser Settlement Class; and on the other hand Defendant GEO Specialty Chemicals Inc. ("GEO"), Kenneth A. Ghazey ("Ghazey") and Brian C. Steppig ("Steppig") (collectively the "GEO Settling Parties"). The Indirect Purchaser Class Plaintiffs, Indirect Purchaser Settlement Class, and the GEO Settling Parties are referred to collectively as the "Parties" and individually as a "Party."[1] This Agreement does not release any claims of the Indirect Purchaser Class Plaintiffs and the other members of the Indirect Purchaser Settlement Class against any Non-Settling Defendant.

WHEREAS, Indirect Purchaser Class Plaintiffs (on behalf of themselves and as representatives of the putative class of similarly-situated persons) allege in the Consolidated Proceedings, as defined below, among other things, that the GEO Settling Parties participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – to allocate territories and/or not to compete for each other's historical business by rigging bids, allocating

---

[1]  All terms with initial capitalization shall have the meanings set forth in Paragraph 1 below or as otherwise defined herein.

customers, and fixing, stabilizing, and maintaining the price of liquid aluminum sulfate ("Alum") sold in the United States from January 1, 1997 through February 28, 2011;

WHEREAS, Interim IPP Lead Counsel has been appointed by the Court to represent, on an interim basis, the putative class of Indirect Purchasers;

WHEREAS, the GEO Settling Parties acknowledge that it is appropriate, solely as part of this Settlement, and subject to Final Judgment, to stipulate to the certification of the Indirect Purchaser Settlement Class, as defined below, and that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied here;

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted in the Consolidated Proceedings by Indirect Purchaser Class Plaintiffs against the GEO Settling Parties for participating in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – to allocate territories and/or not to compete for each other's historical business by rigging bids, allocating customers, and fixing, stabilizing, and maintaining the price of Alum sold in the United States from January 1, 1997 through February 28, 2011;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, as defined below, and this Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, Indirect Purchaser Class Plaintiffs have concluded, after preliminary discovery and investigation of the facts and after considering the circumstances of the Class Action and the applicable law, as well as the value of the GEO Settling Parties' cooperation to the Indirect Purchaser Class Plaintiffs in seeking relief in the Class Action, that it is in the best interests of Indirect Purchaser Class Plaintiffs to enter into this Agreement with the GEO Settling Parties to avoid the uncertainties of further complex litigation, and to obtain the benefits

described herein for the Indirect Purchaser Settlement Class, and, further, that this Settlement (as defined below) is fair, reasonable, adequate, and in the best interests of Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class;

WHEREAS, the GEO Settling Parties wish to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the Indirect Purchaser Class Action and Indirect Purchaser Settlement Class Member claims be settled and compromised, and dismissed on the merits with prejudice as to the GEO Settling Parties, subject to Court approval:

1. Definitions: The following terms shall have the following meanings for purposes of this Agreement.

   a. "Agreement" means this Settlement Agreement Between Indirect Purchaser Class Plaintiffs and Defendants GEO Specialty Chemicals, Inc., Kenneth A. Ghazey and Brian C. Steppig.

   b. "Bankruptcy Appeal" means that certain appeal taken by GEO of the Opinion entered by the Bankruptcy Court on December 4, 2017.

   c. "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey with jurisdiction over the GEO Bankruptcy Case.

   d. "Case Contribution Award" means compensation for Indirect Purchaser Class Plaintiffs for their time and effort undertaken in the Class Action.

   e. "Class Action" or "Indirect Purchaser Class Action" means *City of Homestead Florida v. General Chemical Corporation, Inc.*, *et. al.*, 2:33-

cv-02873-JLL-JAD and *City of Creston Waterworks Department v. General Chemical Corporation, Inc., et. al.*, 2:16-cv-04037-JLL-JAD both putative class actions filed by Indirect Purchaser Class Plaintiffs in the Consolidated Proceedings.

f.      "Consolidated Proceedings" means the consolidated proceedings entitled, *In re: Liquid Aluminum Sulfate Antitrust Litigation*, No. 16-md-2687 (JLL) (JAD), pending in the United States District Court for the District of New Jersey and any Indirect Purchaser claim or complaint filed in or transferred to these proceedings.

g.      "Court" means the United States District Court for the District of New Jersey.

h.      "Defendants" mean the Defendants in the Consolidated Proceedings.

i.       "Execution Date" means the date all Parties to this Agreement sign the Agreement.

j.      "Final Approval" means an order and judgment by the Court which finally approves this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses with prejudice the GEO Settling Parties from the Indirect Purchaser Class Action.

k.      "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied:

  i.      Final Approval; and

  ii.     Either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2)

Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

l.      "GEO Bankruptcy Case" means that certain chapter 11 case, Case No. 04-19148-RG, commenced in the Bankruptcy Court.

m.      "GEO Released Parties" means the GEO Settling Parties, the GEO Settling Parties' heirs or executors, and GEO's current and former, direct and indirect parents, subsidiaries, affiliates, insurers, directors, officers, shareholders, and employees, other than Alex Avraamides, who shall not be deemed a Party to or a third-party beneficiary of this Agreement, and who is in no way released from any claims asserted by Indirect Purchasers in the Consolidated Proceedings.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the GEO Released Parties.

n.      "Indirect Purchaser" or "Indirect Purchasers" means all persons or entities that purchased Alum in the Indirect Purchaser States indirectly from a Defendant or a co-conspirator and not for resale from January 1, 1997 to February 28, 2011.

o.      "Indirect Purchaser Settlement Class Member" means any person or entity that is a member of the Indirect Purchaser Settlement Class.

p.     "Indirect Purchaser Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of the GEO Settling Parties for the benefit of the Indirect Purchaser Settlement Class.

q.     "Indirect Purchaser Escrow Agreement" means that certain agreement by and among GEO, a bank designated to hold the Indirect Purchaser Escrow Account, and Indirect Purchaser Class Plaintiffs (by and through Interim IPP Lead Counsel) pursuant to which the Indirect Purchaser Escrow Account is established and funded for the benefit of the Indirect Purchaser Settlement Class, including Indirect Purchaser Class Plaintiffs.

r.     "Indirect Purchaser Settlement Class" means all Indirect Purchasers, including the Indirect Purchaser Class Plaintiffs. This also means certain additional plaintiffs that filed their own suit in the Consolidated Proceedings (identified in Exhibit A) that purchased Alum in the Indirect Purchaser States indirectly from a Defendant or co-conspirator from January 1, 1997 through February 28, 2011 ("Direct Action Indirect Purchaser Settlement Class Members"). To the extent the Direct Action Indirect Purchaser Settlement Class Members also made direct purchases of Alum from GEO, such direct purchases are not subject to this Agreement. The Direct Action Indirect Purchaser Settlement Class Members may participate in this Settlement, and will be subject to and bound by this Agreement, only to the extent of their indirect purchases of Alum from GEO. Excluded from the Indirect Purchaser Settlement Class

are 1) Defendants and co-conspirators and their respective parents, subsidiaries, and affiliates, and 2) any Indirect Purchasers who timely and validly elect to be excluded from the Indirect Purchaser Settlement Class.

s.  "Indirect Purchaser States" means Alabama, Arkansas, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

t.  "Interim IPP Lead Counsel" means Jay B. Shapiro of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Marvin A. Miller of Miller Law LLC, as appointed by the Court to represent the putative class of Indirect Purchasers on an interim basis.

u.  "Non-Settling Defendant" means any Defendant in the Consolidated Proceedings, including any Defendants that may be added at a later date, other than the GEO Settling Parties.

v.  "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Indirect Purchaser Class Notices, as defined below, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated

with assisting members of the Indirect Purchaser Settlement Class, processing claims, escrowing funds, and issuing and mailing payments.

w.     "Preliminary Approval" means a finding by the Court to preliminarily approve this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23.

x.     "Released Claims" shall have the meaning set forth in Paragraph 15 of this Agreement.

y.     "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Indirect Purchaser Settlement Class and all Indirect Purchaser Settlement Class Members, including the Indirect Purchaser Class Plaintiffs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; their assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, the following: (1) any Releasing Party's subdivisions (political or otherwise, including, but not

limited to, municipalities, counties, parishes, villages, unincorporated districts and hospital districts), public entities, public instrumentalities and public education institutions; and (2) persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this settlement.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

z.      "Settlement" means the settlement of the Indirect Purchaser Class Action with respect to the GEO Released Parties, as set forth in this Agreement.

aa.     "Settlement Administrator" means A.B. Data, Ltd., the firm retained to disseminate the Indirect Purchaser Class Notices and administer the Settlement, subject to approval of the Court.

bb.     "Settlement Class Period" means January 1, 1997 through February 28, 2011.  However, to the extent the Class Period, as that term is defined in the Indirect Purchaser Class Action, is expanded, the definition of Settlement Class Period will also expand to the same time period, if such expansion is approved by the Court prior to Final Approval.

cc.     "Settlement Funds" means the payments required to be made by GEO pursuant to this Agreement, including any interest accrued on such payments.

2.      The Parties' Efforts to Effectuate this Settlement.  The Parties agree to support entry of Final Approval, including through the conclusion of any appeal, motion

for re-argument, motion for rehearing, petition for a writ of certiorari or other writ.

3. <u>Settlement Announcement and Litigation Standstill</u>.  Upon execution of this Agreement, the Parties shall inform the Court and Non-Settling Defendants that the Parties have executed this Agreement.  Upon execution of this Agreement, the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class, through Interim IPP Lead Counsel, shall use their best efforts to cease all litigation activities related to the pursuit of claims against the GEO Released Parties in the Consolidated Proceedings (except as permitted in Paragraph 9 of this Agreement) (the "Litigation Standstill").  Indirect Purchaser Class Plaintiffs and GEO shall also inform the Bankruptcy Court that the parties have executed a settlement agreement.   GEO shall request a stay of the Bankruptcy Appeal pending Final Judgment.

4. <u>Motions for Preliminary Approval</u>.  As soon as practicable, and in no event later than June 29, 2018, unless otherwise extended by written agreement of the Parties, Indirect Purchaser Class Plaintiffs, through Interim IPP Lead Counsel, shall submit to the Court a motion for Preliminary Approval of this Agreement, seeking certification of the Indirect Purchaser Settlement Class for settlement purposes.   The Preliminary Approval motion shall include:  (a) the proposed definition of the class for settlement purposes; (b) a proposed form of, method for, and date of dissemination of notice; (c) a proposed schedule for the filing of any motion for fees and expenses, the filing of a motion to approve finally this Agreement, and a final fairness hearing; and (d) a proposed form of order

preliminarily approving this Agreement and certifying the Indirect Purchaser Settlement Class for settlement purposes.   The text of the items referred to in clauses (a) through (d) above shall be proposed by Indirect Purchaser Class Plaintiffs, through Interim IPP Lead Counsel, subject to the agreement of the GEO Settling Parties, which agreement shall not be unreasonably withheld.   The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of this Agreement and certification of the Indirect Purchaser Settlement Class.

5.   <u>Indirect Purchaser Class Notices</u>.   After Preliminary Approval, and subject to approval by the Court of the means for dissemination of notice of this Settlement ("Indirect Purchaser Class Notice"):

    a.   As set forth in Paragraph 9 below, GEO shall use its best efforts to provide the names and addresses of all known Indirect Purchasers during the Settlement Class Period.

    b.   Indirect Purchaser Class Notice shall be provided in accordance with a notice plan which shall be submitted to the Court for approval in connection with the motion for Preliminary Approval.

    c.   After Final Judgment has been obtained, and GEO's right of rescission under Paragraph 18 cannot be exercised or has been waived, and with Court approval, all Notice and Administrative Costs, including without limitation, costs and expenses associated with the Indirect Purchaser Escrow Account, and the costs and expenses for filing of tax returns and payment of taxes, will be paid out of the Settlement Funds as specified in

the Indirect Purchaser Escrow Agreement.   All expenses and costs incurred by the Indirect Purchaser Class Plaintiffs and Interim IPP Lead Counsel shall be reimbursed and indemnified solely out of the Settlement Funds, as provided by an order of the Court.  The GEO Released Parties and GEO Settling Parties shall not be liable for any costs, fees, or expenses of any of Indirect Purchaser Class Plaintiffs' and Interim IPP Lead Counsel's attorneys, experts, advisors, agents, or representatives. All such costs, fees, and expenses shall be paid out of the Settlement Funds.

6.     Motion for Final Approval and Entry of Final Judgment.  If the Court grants Preliminary Approval of this Agreement and certifies the Indirect Purchaser Settlement Class, Indirect Purchaser Class Plaintiffs, through Interim IPP Lead Counsel, shall – in accordance with the schedule set forth in the Court's Preliminary Approval – submit to the Court a separate motion for Final Approval of this Agreement by the Court, the text of which shall be proposed by Interim IPP Lead Counsel, subject to the agreement of the GEO Settling Parties, which agreement shall not be unreasonably withheld.  The motion for Final Approval shall seek entry of an order and Final Judgment:

a.     finally approving the Settlement as being a fair, reasonable, and adequate settlement for the Indirect Purchaser Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the execution of the Settlement pursuant to the terms and conditions set forth in this Agreement;

b.　　subject to Paragraph 10, dismissing the Indirect Purchaser Class Action, with prejudice as to the GEO Released Parties;

c.　　subject to Paragraph 10, discharging and releasing the GEO Released Parties from all Released Claims;

d.　　reserving continuing and exclusive jurisdiction over the Settlement for all purposes — including its administration and execution and disputes that may arise concerning the GEO Settling Parties' cooperation (as set forth in Paragraph 9 of this Agreement); and

e.　　determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the GEO Released Parties shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement and Final Judgment.  Within ten (10) days after the occurrence of Final Judgment, the Direct Action Indirect Purchaser Settlement Class Members and the GEO Settling Parties will file a stipulation of dismissal of the Direct Action Indirect Purchaser Settlement Class Members' claims against the GEO Released Parties, with prejudice.

7.　　<u>Escrow Account</u>.  The Indirect Purchaser Escrow Account will be established and shall be administered by Interim IPP Lead Counsel for the Indirect Purchaser Class Plaintiffs and Indirect Purchaser Settlement Class under the Court's continuing supervision and control pursuant to the Indirect Purchaser Escrow Agreement.  No disbursements of funds from the Indirect Purchaser Escrow Account will occur without order of the Court.

8.      <u>Settlement Consideration</u>.  Subject to the provisions hereof, and in consideration of the release of Released Claims, GEO agrees to pay, on behalf of itself and the GEO Settling Parties, the total amounts set forth in this Paragraph 8.   No additional payments will be made to the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class.   The Settlement Funds represent all sums owed and payable by GEO and/or the GEO Released Parties pursuant to this Agreement, including payment of damages, attorneys' fees, incentive fees, notice costs, costs of administration and costs of any kind.   The Parties agree and acknowledge that none of the Settlement Funds paid by or on behalf of GEO under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.  As provided herein, GEO will (a) cause the payments in Paragraph 8(a) and 8(b) to be made into the Indirect Purchaser Escrow Account, (b) provide additional consideration as set forth in Paragraph 8(c), and (c) provide cooperation (as set forth in Paragraph 9 of this Agreement).

a.      **Initial Payment**.  GEO shall use its best efforts to cause its insurers to pay $801,074 directly into the Indirect Purchaser Escrow Account within thirty (30) days of Final Judgment. GEO shall also pay $898,926 into the Indirect Purchaser Escrow Account (collectively, the "First Installment"). If either GEO or GEO's insurers for any reason do not timely make the above-referenced payment, such non-payment shall constitute a material breach of this Agreement pursuant to Paragraph 10 below.

b.      **Additional Payment**.   GEO shall make one additional payment of $1,675,000 that shall be paid into the Indirect Purchaser Escrow Account

14

on or before the first anniversary of the First Installment.  The Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class agree not to oppose receiving this payment before the first anniversary of the First Installment, if GEO chooses to make payment before that date.  If GEO for any reason does not timely make the above-referenced payment, such non-payment shall constitute a material breach of this Agreement, justifying termination of the Agreement pursuant to Paragraph 10 below.

c.    **GEO Marketing Effort and Sale Proceeds**.  GEO will undertake a marketing process for a sale of all or substantially all of its equity interests, a merger of GEO and another entity, or a sale of all or substantially all of its assets (collectively, a "Sale") that will commence no later than thirty (30) days after entry of Final Judgment.  The marketing process will be conducted by a nationally-recognized investment banking firm selected by GEO and reasonably acceptable to the Indirect Purchaser Class Plaintiffs.  Interim IPP Lead Counsel will be afforded reasonable information rights regarding the status of the marketing effort, subject to Interim IPP Lead Counsel agreeing to a confidentiality agreement.  If this marketing process is successful, upon the closing of the Sale, the Indirect Purchaser Settlement Class shall be entitled to receive from GEO additional compensation pursuant to an equity value formula set forth in Exhibit B, up to $1,000,000. If the conditions for such payment are met and GEO for any reason does not timely make the above-referenced payment, such non-payment shall constitute a material breach of this

Agreement, justifying termination of the Agreement pursuant to Paragraph 10 below.

d.     **EBITDA-Based Payments.**   In the event that, prior to the closing of a Sale, GEO's EBITDA in any of fiscal years 2018, 2019 or 2020 is at least 250% above the Mid-Point Estimate (as hereafter defined), the Indirect Purchaser Settlement Class shall be entitled to payment of 25% of such excess up to $1,000,000 in the aggregate.   Any such distributions shall be credited against the $1,000,000 set forth in Paragraph 8(c) herein.   The term "Mid-Point Estimate" means the mid-point of projections of EBITDA for each of the years 2018, 2019 and 2020 prepared by GEO and by the financial advisor(s) retained by the Indirect Purchaser Class Plaintiffs.   GEO and the Indirect Purchaser Class Plaintiffs shall work in good faith to share information in order to permit the retained financial advisor(s) to finalize their projections. If the conditions for such payment are met and GEO for any reason does not timely make the above-referenced payment, such non-payment shall constitute a material breach of this Agreement, justifying termination of the Agreement pursuant to Paragraph 10 below.

e.     **Shareholder Dividends**.   In the event that GEO makes any distributions to its shareholders, in their capacities as such (collectively, "Shareholder Distributions"), prior to the closing of the Sale, the Indirect Purchaser Settlement Class shall be entitled to a pro rata share of such distributions as if such distributions were proceeds of a Sale.   Any such distributions

shall be credited against the $1,000,000 set forth in Paragraph 8(c) herein. For the avoidance of doubt, payments of interest, fees and expenses required to be paid under credit facilities to which GEO is a party are not Shareholder Distributions. If the conditions for such payment are met and GEO for any reason does not timely make the above-referenced payment, such non-payment shall constitute a material breach of this Agreement, justifying termination of the Agreement pursuant to Paragraph 10 below.

f.   **Allocation of Sale Proceeds, EBITDA-Based Payments, and Shareholder Dividends to the Indirect Purchaser Settlement Class**.  To the extent any payments are made by GEO pursuant to subparagraph 8(c), (d), or (e), any such payments made for the benefit of the Indirect Purchaser Settlement Class shall be held in the Indirect Purchaser Escrow Account for payment of relevant expenses such as Indirect Purchaser Class Notice and for distribution to the Indirect Purchaser Settlement Class.

9.   <u>Cooperation</u>.  The GEO Settling Parties shall provide cooperation to the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class through Interim IPP Lead Counsel pursuant to the terms of this Paragraph. GEO will use its best efforts to obtain Ghazey's and Steppig's cooperation. Ghazey's failure to provide any of the cooperation enumerated in this Paragraph 9 does not amount to a material breach of this Agreement. Steppig's failure to provide any of the cooperation enumerated in this Paragraph 9—including any failure to provide testimony consistent with the attorney proffer provided to Interim IPP Counsel on

June 12, 2018—will not amount to a material breach of this Agreement by GEO or Ghazey, but will be deemed a material breach of this Agreement by Steppig. But for the cooperation enumerated in this Paragraph 9, all litigation activities related to the pursuit of claims by Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class against the GEO Settling Parties in the Consolidated Proceedings are subject to the Litigation Standstill set forth in Paragraph 3. All cooperation shall be coordinated with the Direct Purchaser Class Plaintiffs and Direct Action Direct Purchaser Class Members through Interim DPP Lead Counsel, as those terms are defined the Settlement Agreement Between Direct Purchaser Class Plaintiffs and Defendants GEO Specialty Chemicals, Inc., Kenneth A. Ghazey and Brian C. Steppig, in such a manner so that all unnecessary duplication and expense is avoided. Specifically, interviews and depositions will be conducted jointly by Interim DPP Lead Counsel and Interim IPP Lead Counsel. Notwithstanding any other provision in this Agreement, the Parties to this Agreement may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest, the joint defense privilege and/or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Agreement. Any documents, declarations, affidavits, deposition testimony and information provided by the GEO Settling Parties pursuant to this provision shall be covered by the Stipulated Protective Order in place in the Consolidated Proceedings. None of the

cooperation provisions are intended to, nor do they, waive any such privilege or protection.

a.   **Preliminary Approval**.   The Parties agree to cooperate to the extent reasonably necessary in connection with Interim IPP Lead Counsel's preparation of the motion for Preliminary Approval and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

b.   **Data for Class Notice.**   Within thirty (30) days after the Execution Date, GEO shall supply to Interim IPP Lead Counsel at GEO's expense and in such form as kept in the regular course of business (electronic format if available) the names and addresses of known Indirect Purchasers that purchased Alum during the Settlement Class Period, or confirm that it has provided such information previously.

c.   **Production of Documents**.   The GEO Settling Parties agree to complete production of documents, as agreed by the Parties through meet and confers as of the Execution Date, related to the Indirect Purchaser Class Plaintiffs First Requests for Production (dated March 31, 2017).  The GEO Settling Parties are not obligated to produce a privilege log for any documents withheld on the basis of the attorney-client or attorney work product privilege.   Any documents produced pursuant to this Agreement shall be subject to the terms set forth in the Stipulated Protective Order in the Consolidated Proceedings.   In the event of a disagreement between the Parties to this Agreement regarding the scope, burden, relevance or

permissibility of any such requests, the Parties will seek resolution of such disputes from the Court.

d.   **Proffers on Data**.  The GEO Settling Parties shall provide informational proffers or written responses to questions raised by Interim IPP Lead Counsel concerning the transactional data GEO has produced as of the Execution Date, including how to use and understand any data produced by GEO.

e.   **Responding to Requests from Indirect Purchasers.**  Counsel for GEO shall use reasonable best efforts to respond to reasonable requests for information from Interim IPP Lead Counsel and/or their experts for the purpose of assisting with the pursuit of claims against any Non-Settling Defendant in the Coordinated Proceedings.

f.   **Other Reasonable Cooperation Efforts**.  The GEO Settling Parties further agree as follows:

**Interviews with Interim IPP Lead Counsel:**

i.   In the case of Steppig, he shall submit to an interview with Interim IPP Lead Counsel and Interim DPP Lead Counsel, not to exceed eight (8) hours, during which he shall provide answers to all questions to the best of his ability from Interim IPP Lead Counsel regarding his respective knowledge of the sale, distribution, pricing, bidding or marketing of Alum including, but not limited to, any and all anti-competitive activity on behalf of GEO or any of GEO's competitors (including, but not limited to, the other entities and persons named as Defendants in the Consolidated Proceedings) in connection with the sale,

distribution, pricing, bidding or marketing of Alum.  The interview shall take place within sixty (60) days from Preliminary Approval, at a time and place mutually agreed upon by the Parties.

ii.     In the case of GEO, it shall use its best efforts to make available up to two (2) additional current or former officers or employees of GEO ("GEO Cooperating Employees") as may be requested in good faith by Interim IPP Lead Counsel and Interim DPP Lead Counsel for an interview with Interim IPP Lead Counsel and Interim DPP Lead Counsel, not to exceed eight (8) hours, during which the GEO Cooperating Employees shall provide answers to all questions to the best of their ability from Interim IPP Lead Counsel regarding their respective knowledge of the sale, distribution, pricing, bidding or marketing of Alum including, but not limited to, any and all anti-competitive activity on behalf of GEO or any of GEO's competitors (including, but not limited to, the other entities and persons named as Defendants in the Consolidated Proceedings) in connection with the sale, distribution, pricing, bidding or marketing of Alum.  The interviews shall take place within sixty (60) days from Preliminary Approval, at a time and place mutually agreed upon by the Parties.

**Providing of Declarations**

iii.    Steppig and the GEO Cooperating Employees shall, as reasonably requested by Interim IPP Lead Counsel, provide to Interim IPP Lead Counsel declarations and/or affidavits in connection with class certification motions, summary

21

judgment motions, Daubert motions, the authentication of GEO documents, or in connection with other motions or proceedings in the Consolidated Proceedings.

**Providing of Deposition Testimony**

iv.    Steppig and the GEO Cooperating Employees shall, during the period the Court permits depositions in the Consolidated Proceedings, make themselves available for a deposition and provide deposition testimony in the Consolidated Proceedings without the need for a subpoena. The Parties agree to cooperate in the scheduling of any such depositions.  GEO shall also use commercially reasonable efforts to assist Interim IPP Lead Counsel in arranging the deposition of any other former officers and employees of GEO, during the period the Court permits depositions in the Consolidated Proceedings, without the need for a subpoena.

**Appearance at Trial**

v.    Steppig and the GEO Cooperating Employees shall, as reasonably requested by Interim IPP Lead Counsel, make themselves available for testimony at trial without the need for a subpoena.  GEO shall also use commercially reasonable efforts to assist Interim IPP Lead Counsel in arranging for the appearance of former officers and employees of GEO at trial.  Interim IPP Lead Counsel shall reimburse the testifying witness for his or her reasonable out of pocket travel, lodging and meal expenses incurred in connection with such testimony at trial.

Other than as specifically set forth above, each Party shall be responsible for its own expenses, including legal fees, in connection with the cooperation obligations outlined above.

10.     <u>Material Breach and Reservation of Rights</u>.  The GEO Settling Parties agree that a material breach of this Agreement will have occurred if any of the GEO Settling Parties default under the terms of this Agreement, including as to GEO's obligations to provide the Settlement Funds (as set forth in Paragraph 8 of this Agreement) and the GEO Settling Parties' obligations to cooperate (as set forth and as qualified in Paragraph 9 of this Agreement).    In the event the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class claim that any of the GEO Settling Parties have violated any material provision of this Agreement, the GEO Settling Parties have the right to dispute such claim by the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class. In the event the Court finds such a material breach occurred, as to the breaching party or parties only, the Indirect Purchaser Class Plaintiffs shall have the unilateral right in their sole discretion to terminate this Agreement, in which event this Agreement shall be voided and shall be of no force or effect, the Releases set forth in Paragraphs 15 and 16 shall have no force or effect, any dismissal with prejudice of the Indirect Purchaser Class Action or Final Judgment shall be of no force or effect, and the Indirect Purchaser Class Plaintiffs (on behalf of the Indirect Purchaser Settlement Class) and the Indirect Purchaser Settlement Class Members shall be entitled to file a motion to reinstate and assert the full amount of the Indirect Purchaser Settlement Class Members' claims against the breaching

party or parties only as if they had never been dismissed or compromised, reduced only by the value of any consideration actually received, and with all statutes of limitations deemed tolled during the period between dismissal and reinstatement, and without the need to re-file their complaints or re-serve any Party with process. If for some reason the Court does not permit the reinstatement and reassertion of such claims as set forth in the preceding sentence, nothing in this Agreement shall be deemed to preclude the Indirect Purchaser Plaintiffs from enforcing any other rights they have under this Agreement including, but not limited to, enforcing their rights to any payments under this Agreement. If GEO defaults under the Agreement and commences a proceeding under Title 11 of the United States Code (a "GEO Bankruptcy"), GEO reserves its right to dispute its liability to the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class. Nothing in this Agreement shall limit any argument or claim the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class could assert in a GEO Bankruptcy. Additionally, the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class agree that a material breach of this Agreement will have occurred if the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class default under the terms of this Agreement. In the event that any of the GEO Settling Parties claim that the Indirect Purchaser Class Plaintiffs or the Indirect Purchaser Settlement Class have violated any material provision of this Agreement, the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class have the right to dispute such claim of breach. In the event the Court finds such a material breach occurred, the GEO

Settling Party or Parties who have asserted such a breach shall have the unilateral right in its/their sole discretion to terminate this Agreement.   All rights, claims and defenses of the GEO Settling Parties and the Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class are otherwise reserved.

11.   <u>GEO Bankruptcy Sale</u>.  In the event that a GEO Bankruptcy case is commenced in order to effect a Sale, the Parties will use their best efforts to effectuate the performance of this Agreement in connection with the GEO Bankruptcy.

12.   <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Funds as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.   In addition, Interim IPP Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 12, including the relation-back election (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim IPP Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.   Interim IPP Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with

respect to the Settlement Funds (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).   Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Funds shall be paid out of the Settlement Funds.   GEO shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

13.   <u>Distribution of Settlement Funds to Settlement Class</u>.

    a.    Members of the Indirect Purchaser Settlement Class who have not timely and validly excluded themselves from the Class Action, shall be entitled solely to the Settlement Funds for settlement and satisfaction against the GEO Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the GEO Released Parties.   Except as provided by order of the Court, no Indirect Purchaser Settlement Class Member shall have any interest in the Settlement Funds or any portion thereof.   Indirect Purchaser Class Plaintiffs, the Indirect Purchaser Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Funds for all expenses including, but not limited to, the costs of notice of the Settlement to the Indirect Purchaser Settlement Class.   The GEO Released Parties and GEO Settling Parties shall not be liable for any costs, fees, or expenses of any of Indirect Purchaser Class Plaintiffs' or the Indirect Purchaser Settlement Class's respective attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the

Settlement Funds.  If the Court grants Final Approval of this Agreement pursuant to the provisions of Paragraph 6, and GEO's right of rescission under Paragraph 18 cannot be exercised or has been waived, Indirect Purchaser Class Plaintiffs, with Court approval, may use the Settlement Funds to pay such costs and expenses for the litigation of the Class Action as set forth in this Paragraph.

14.   <u>No Objection to Fee Request or Case Contribution Awards</u>.  The GEO Settling Parties shall not take any position with respect to Indirect Purchaser Class Plaintiffs' application for attorneys' fees, up to a maximum of 33.3% of the total consideration made available to the Indirect Purchaser Settlement Class, and for reimbursement of costs and expenses.  In addition, the GEO Settling Parties shall not oppose any request for Case Contribution Awards to Indirect Purchaser Class Plaintiffs.  The procedure for and the grant or denial or allowance by the Court of attorneys' fees, reimbursement of costs and expenses and Case Contribution Awards are considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the applications for attorneys' fees, reimbursement of costs and expenses and Case Contribution Awards, or any appeal from any order relating thereto or the reverse or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment approving the Agreement and the Settlement.

15.   <u>Release</u>.  Upon Final Judgment and in consideration of payment of the Settlement Funds into the Indirect Purchaser Escrow Account, and for other valuable

consideration, and provided that the GEO Settling Parties have not breached any of their material obligations under this Agreement, and provided that this Agreement has not been terminated, the GEO Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Indirect Purchaser Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of Final Judgment, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to the facts and circumstances alleged in the Consolidated Proceedings ("Released Claims"), provided however, that nothing herein shall release claims involving or arising out of: (i)  any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Alum; or (ii) any purchase of Alum by a member of the Indirect Purchaser Class that was not an indirect purchase. In other words, to the extent any Indirect Purchaser also made a purchase of Alum directly from Geo or any of the other Defendants in the Consolidated Proceedings, any claims arising out of that direct purchase are not released herein. During the period after the expiration of the deadline for

28

submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties shall be preliminarily enjoined and barred from asserting any Released Claims against the GEO Released Parties.  The GEO Settling Parties further agree that they will not file any suit against the Releasing Parties and their current and former, direct and indirect, parents, subsidiaries, affiliates, directors, officers, shareholders, and employees arising out of or relating to the Released Claims.  The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment.  Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the GEO Released Parties arising out of or relating to the Released Claims.

16.     Further Release.  In addition to the provisions of Paragraph 15, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 15, but each Releasing Party hereby expressly waives and fully, finally, and

forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 15, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

17.     Reservation of Claims.  The Parties intend by this Agreement to release only the GEO Released Parties with respect to the Released Claims.   The Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, or corporation whatsoever, including, but not limited to the Non-Settling Defendants.  The release set forth in Paragraphs 15 and 16 above is not intended to and shall not release any claims other than the Released Claims.  The sales of Alum by GEO in the Indirect Purchaser States from January 1, 1997 through February 28, 2011 shall remain in the cases against the Non-Settling Defendants in the Consolidated Proceedings as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Consolidated Proceedings or other persons or entities other than the GEO Released Parties.

18.     Opt-Out Protection.  In the event that Indirect Purchasers representing a specified portion of relevant transactions during the Settlement Class Period timely opt-out, then GEO shall have the unilateral right in its sole discretion to terminate the

Agreement as set forth in Exhibit C, which shall, with the approval of the Court, be filed under seal or *in camera,* and publicly only if the Court so directs.

19.   <u>Dismissal of Bankruptcy Appeal</u>.   Within ten (10) business days of Final Judgment, GEO shall dismiss with prejudice the Bankruptcy Appeal.

20.   <u>Effect of Disapproval and Rescission</u>.   If the Court does not certify the Indirect Purchaser Settlement Class as defined in this Agreement, or if the Court does not approve this Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 6, or if any judgment approving this Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(k) of this Agreement, or if GEO rescinds the Agreement pursuant to Paragraph 10 or 18, then this Agreement may be cancelled and terminated:

a.   By GEO with respect Paragraph 10 or 18, or

b.   Otherwise by GEO or Indirect Purchaser Class Plaintiffs on behalf of the Indirect Purchaser Settlement Class.   If cancelled and terminated, this Agreement shall become null and void, the Settlement Funds, net of expended or incurred escrow fees and taxes as well as amounts expended or incurred for Indirect Purchaser Class Notice (and associated claims forms) pursuant to approval by the Court, shall be returned to GEO within ten (10) days of such termination, the Parties shall be returned to their respective positions in the Consolidated Proceedings as if this Agreement had never been entered into without prejudice to any claims, rights or defenses of the Parties, and the Release (set forth in Paragraphs 15 and 16)

shall be voided and shall be of no force or effect, any dismissal with prejudice of the Indirect Purchaser Class Action or Final Judgment shall be of no force or effect, and the Indirect Purchaser Class Plaintiffs (on behalf of the Indirect Purchaser Settlement Class) shall be entitled have any Final Judgment vacated and have their respective claims alleged in their complaints reinstated as if they had never been dismissed or compromised, with all statutes of limitation deemed tolled between the time of dismissal and re-instatement, and without the need to re-serve any Party with process. The Parties and the Indirect Purchaser Settlement Class expressly reserve all of their rights if Final Judgment is not entered in accordance with the terms of this Agreement.

21.     <u>Consent to Jurisdiction</u>.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement.  Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraph 15 or 16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 15 or 16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement.  In the event that the provisions of Paragraph 15 or 16 are asserted by any GEO Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such GEO Released Party

shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court.   Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

22.    <u>Class Action Fairness Act.</u>   GEO, at its sole expense, shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

23.    <u>Costs Relating to Administration</u>.   Subject to Paragraph 20 above, the GEO Settling Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

24.    <u>Binding Effect</u>.   This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Indirect Purchaser Settlement Class Members, the Releasing Parties, and the GEO Released Parties.   Without limiting the generality of the foregoing, upon certification of the Indirect Purchaser Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Indirect Purchaser Class Plaintiffs shall be binding upon all Indirect Purchaser Settlement Class Members and Releasing Parties who have not validly excluded themselves from the Indirect Purchaser

Settlement Class; and upon Final Approval, each and every covenant and agreement herein shall be binding upon all Direct Action Indirect Purchaser Settlement Class Members (as confirmed by each Direct Action Indirect Purchaser Settlement Class Member by signing Exhibit D).

25.   <u>Authorization to Enter this Agreement</u>.

a.   The undersigned representatives of the GEO Settling Parties covenant and represent that each such representative is fully authorized to enter into and to execute this Agreement on behalf of the GEO Settling Parties.

b.   Interim IPP Lead Counsel represents that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Indirect Purchaser Class Plaintiffs and putative Indirect Purchaser Settlement Class and have been authorized by City of Creston Water Works Department to execute this settlement agreement but this Settlement Agreement remains subject to approval and authorization from the City of Homestead, FL.

c.   The Parties further acknowledge that this Agreement represents the entire agreement by and between them and that each makes no other representation or warranty upon which the other can rely other than as stated herein.

26.   <u>Notices</u>.  All notices under this Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed, if directed to

Indirect Purchaser Class Plaintiffs, Indirect Purchaser Settlement Class, or any

Indirect Purchaser Settlement Class Member, to:


Jay B. Shapiro                                          Marvin A. Miller
Stearns Weaver Miller Weissler Alhadeff                 Miller Law LLC
& Sitterson, P.A.                                       115 S. LaSalle Street, Suite 2910,
Museum Tower                                            Chicago, IL 60603
150 West Flagler Street, Suite 2200
Miami, FL 33130


    if directed to GEO, to:

    James H. Mutchnik
    Kirkland & Ellis LLP
    300 North LaSalle
    Chicago, IL 60654

    Robert F. Ware
    Thompson Hine
    3900 Key Center
    127 Public Square
    Cleveland, Ohio 44114

    if directed to Ghazey, to:

    Nicholas Theodorou
    Foley Hoag LLP
    155 Seaport Blvd.
    Boston, MA 02210

    Robert F. Ware
    Thompson Hine
    3900 Key Center
    127 Public Square
    Cleveland, Ohio 44114

    if directed to Steppig, to:

    J. Bruce Maffeo
    Cozen O'Connor
    45 Broadway Atrium, Suite 1600
    New York, NY 10006

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

27.   <u>No Admission</u>.  Whether or not Final Judgment is entered or this Agreement is terminated, the Parties expressly agree that this Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the GEO Released Parties.  Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408 in any instance where it would otherwise apply.

28.   <u>No Third-Party Beneficiaries</u>.  No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a GEO Released Party, Indirect Purchaser Class Plaintiff, Indirect Purchaser Settlement Class Member, Direct Action Indirect Purchaser Settlement Class Member, or Interim IPP Lead Counsel (on behalf of the Indirect Purchaser Settlement Class and with respect to fees and disbursements to be paid from the Settlement Funds pursuant to Court order).

29.   <u>No Party is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

30. <u>Choice of Law</u>.   All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of New Jersey, without regard to its choice of law or conflict of laws principles.

31. <u>Amendment and Waiver</u>.  This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.  This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement.  Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

32. <u>Execution in Counterparts.</u>  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

33.   <u>Integrated Agreement</u>.  This Agreement comprises the entire agreement between the Parties and the terms of this Agreement are contractual and are not a mere recital.  The Parties agree that this Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Agreement not in writing and signed by the Parties.

34.   <u>Voluntary Settlement</u>.  The Parties agree that this Agreement and the Settlement were negotiated in good faith by the Parties and reflect a Settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Agreement on the date first above written.

_James H. Mutchnik /cv_                    Date: June __15__, 2018

James H. Mutchnik
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

_Counsel for GEO_

_____       Date: June _____, 2018

Nicholas Theodorou
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

_Counsel for Ken Ghazey_

_____       Date: June _____, 2018

J. Bruce Maffeo
Cozen O'Connor
45 Broadway Atrium, Suite 1600
New York, NY 10006

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

_Counsel for Brian Steppig_

_____                    Date: June _____, 2018

James H. Mutchnik
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for GEO*

*Nicholas C. Theodorou*                            Date: June 8, 2018
_____

Nicholas Theodorou
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for Ken Ghazey*

_____                    Date: June _____, 2018

J. Bruce Maffeo
Cozen O'Connor
45 Broadway Atrium, Suite 1600
New York, NY 10006

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for Brian Steppig*

_____          Date: June _____, 2018

James H. Mutchnik
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for GEO*

_____          Date: June _____, 2018

Nicholas Theodorou
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for Ken Ghazey*

_____          Date: June __7__, 2018

J. Bruce Maffeo
Cozen O'Connor
45 Broadway Atrium, Suite 1600
New York, NY 10006

Robert F. Ware
Thompson Hine
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

*Counsel for Brian Steppig*

_(signature)_ for Marvin A. Miller      Date: June ___15___, 2018

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603


_____      Date: June _____, 2018

Jay Shapiro
Stearns Weaver Miller
150 West Flagler Street, Suite 2200
Miami, FL 33130

*Counsel for Indirect Purchaser Plaintiffs*

_____                Date: June _____, 2018

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603


_____                Date: June 15, 2018

Jay Shapiro
Stearns Weaver Miller
150 West Flagler Street, Suite 2200
Miami, FL 33130

*Counsel for Indirect Purchaser Plaintiffs*

EXHIBIT A

| Plaintiffs | Court | Case Number | Date Filed |
|---|---|---|---|
| American Eagle Paper Mills | DNJ | 2:15-cv-08142 | 11/18/2015 |
| Amrex Chemical Company | DNJ | 2:15-cv-08227 | 11/23/2015 |
| Aqua Pennsylvania Inc., Aqua Ohio Inc. | DNJ | 2:16-cv-01331 | 3/9/2016 |
| Bay County, Florida | DNJ | 2:16-cv-00648 | 2/5/2016 |
| Board of Water Commissioners of the City of Saint Paul, Minnesota (a/k/a Saint Paul Regional Water Services) | DMN | 0:15-cv-04582, 2:16-cv-00844 (DNJ) | 12/29/2015 |
| Borough of Phoenixville | DNJ | 2:16-cv-00582 | 2/2/2016 |
| City of Akron, Ohio | ND OH | 5:18-cv-00991-JRA | 4/30/2018 |
| City of Bloomington, Indiana | DNJ | 2:16-cv-01503 | 3/17/2016 |
| City of Charlotte | DNJ | 2:15-cv-08755 | 12/18/2015 |
| City of Duluth | DMN | 0:15-cv-04435, 2:16-cv-00834 (DNJ) | 12/21/2015 |
| City of East Moline | EDPA | 2:15-cv-06638 | 12/15/2015 |
| City of Fergus Falls, Minnesota, City of Arcadia, Wisconsin, Utility Commission | DMN | 0:16-cv-00176, 2:16-cv-00849 (DNJ) | 1/26/2016 |
| City of Grand Marais | DMN | 0-16-cv-00171, 2:16-cv-00848 (DNJ) | 1/26/2016 |
| City of Lorain | DNJ | 2:16-cv-00453 | 1/26/2015 |
| City of Mattoon | EDPA | 2:16-cv-00319 2:16-cv-00870 (DNJ) | 1/26/2016 |
| City of Mesa | DAZ | 2:16-cv-00673 2:16-cv-01712 (DNJ) | 3/10/2016 |
| City of Milwaukee | EDWI | 2:16-cv-00212, 2:16-cv-01386 (DNJ) | 2/23/2016 |
| City of Minneapolis | DMN | 0:15-cv-04434, 2:16-cv-00833 (DNJ) | 12/21/2015 |
| City of Moulton, Alabama, individually and as successor in interest of Moulton Water Works Board | NDAL | 5:16-cv-00866 2:16-cv-03379-JLL-JAD (DNJ) | 5/26/2016 |
| City of Phenix City | DNJ | 2:16-cv-01116 | 2/26/2016 |
| City of Phoenix | DAZ | 2:16-cv-01906 2:16-cv-04257-JLL-JAD (DNJ) | 6/13/2016 |
| City of Scottsdale | DAZ | 2:16-cv-00577, 2:16-cv-01579 (DNJ) | 3/2/2016 |
| City of Shreveport | DLA | 5:16-cv-01038 2:16-cv-04679 (DNJ) | 7/14/2016 |
| City of St. Cloud, Minnesota | DMN | 0:16-cv-00091, 2:16-cv-00846 (DNJ) | 1/15/2016 |
| City of Stockton, CA | E.D. CA | 2:17-cv-01775 2:17-cv-06956-JLL-JAD (DNJ) | 8/24/2017 |
| East Valley Water District | EDPA | 2:15-cv-06799 | 12/24/2015 |
| Environmental Research and Design Inc. | EDPA | 2:15-cv-06421 2:16-cv-00735 (DNJ) | 12/3/2015 |
| Hackettstown Municipal Utilities Authority | DNJ | 3:16-cv-01022 | 2/23/2016 |
| Interstate Chemical Co., Inc. | DNJ | 2:16-cv-00009 | 1/4/2016 |
| Jefferson County, Alabama | NDAL | 2:16-cv-00777 2:16-cv-03228 (DNJ) | 5/11/2016 |
| Lake Restoration Inc. | DMN | 0:16-cv-00582 2:16-cv-01581 (DNJ) | 3/7/2016 |
| Metropolitan Council | DMN | 0:15-cv-04303 2:16-cv-00734 (DNJ) | 12/7/2015 |
| Oakland County, Michigan | DNJ | 2:15-cv-08198 | 11/20/2015 |

EXHIBIT B—Indirect Purchaser Settlement Class

1. This "Exhibit B—Indirect Purchaser Settlement Class" sets forth the equity compensation formula to be used to determine amounts payable from proceeds of a "Sale" (as that term is defined in Paragraph 8(c) of the Settlement Agreement).

2. Upon any Sale of GEO, a portion of the "Net Proceeds," in varying percentages for each Tranche of Net Proceeds as determined from the following table, will be paid (in cash and/or in such form of non-cash consideration as may make up the Net Proceeds) to the Indirect Purchaser Settlement Class (the "IPSC"), subject to the overall cap on the dollar value of Net Proceeds to be paid to the IPSC that is set forth in Section 3 below.

| Tranche | Value of Net Proceeds in Tranche | Percentage of Tranche Payable to IPSC |
|---|---|---|
| One | From $0 and up to $200,000,000 | 0.307918% |
| Two | Above $200,000,000 million and up to $250,000,000 | 0.322581% |
| Three | Above $250,000,000 and up to $300,000,000 | 0.337243% |
| Four | Above $300,000,000 and up to $1,000,000,000 | 0.351906% |

3. The maximum dollar value of the portion of Net Proceeds to be paid to the IPSC is $1,000,000 (the "IPSC Maximum Share"). The following table sets forth the maximum dollar value of Net Proceeds from each of Tranches One through Four that will be payable to the IPSC:

| Tranche | Value of Net Proceeds In Tranche | Maximum Tranche Value | Maximum Value to IPSC |
|---|---|---|---|
| One | From $0 and up to $200,000,000 | $200,000,000 | $615,836 |
| Two | Above $200,000,000 and up to $250,000,000 | $50,000,000 | $161,290 |
| Three | Above $250,000,000 and up to $300,000,000 | $50,000,000 | $168,621 |
| Four | Above $300,000,000 and up to $1,000,000,000 | $700,000,000 | $54,253 |
| | | IPSC Maximum Share (All Tranches): | $1,000,000 |

If before the closing of a Sale, the IPSC receives payments based on GEO's EBITDA in any of fiscal years 2018, 2019 or 2020, as contemplated in Paragraph 8(d) of the Settlement Agreement ("EBITDA-Based Payments"), the aggregate amount of any such EBITDA-

Based Payments so received will be credited against the portion of Net Proceeds, if any, otherwise payable to the IPSC under this Exhibit B up to the amount of the EBITDA-Based Payments so received.

If before the closing of a Sale, the IPSC receives payments based on "Shareholder Distributions" by GEO, as contemplated by Paragraph 8(e) of the Settlement Agreement ("Shareholder Distribution Payments"), the aggregate amount of any such Shareholder Distribution Payments so received will be credited against the portion of Net Proceeds, if any, otherwise payable to the IPSC under this Exhibit B up to the amount of the Shareholder Distribution Payments so received.

4.   For purposes of this Exhibit B, the following terms have the meanings given to them below:

"Charter Oak Notes" means the two 5% subordinated promissory notes issued by GEO on December 31, 2004, to Charter Oak Partners and Charter Oak Capital Partners, L.P., respectively.

"GEO Second Lien Notes" means GEO's Floating Rate Senior Secured Second Lien Convertible Notes due 2025.

"GEO Shareholders" means all holders of GEO Shares.

"GEO Shares" means all of GEO's shares, including GEO's common shares, without par value (which constitute the only class of shares provided for in GEO's current Amended and Restated Articles of Incorporation), and any other class or classes of shares that may be issued by GEO from time to time.

"Net Proceeds" (a) means $0, if and only if Pre-Conversion Net Proceeds is less than $1, and (b) in all other instances, means a dollar amount equal to the dollar amount of Post-Deemed Conversion Net Proceeds.

"Post-Deemed Conversion Net Proceeds," as to any Sale, means (a) the aggregate amount of cash consideration, plus (b) the aggregate fair market value of any non-cash consideration that would be received by GEO Shareholders in respect of all GEO Shares (assuming, for purposes of this definition, the conversion of all GEO Second Lien Notes into GEO Shares) in connection with the Sale (whether as proceeds from the purchase, redemption or surrender of GEO Shares, liquidation distributions with respect to GEO Shares, or otherwise) but for the payment of (x) the portion of the cash and/or non-cash consideration payable to the IPSC in the amounts provided for in this Exhibit B, and (y) those portions of that cash and/or non-cash consideration payable to other parties, in the amounts provided for in similar exhibits to other settlement agreements, each of which is between the respective other party and GEO and is entered into on the same date as the Settlement Agreement to which this Exhibit B is attached.

Post-Deemed Conversion Net Proceeds will be determined in good faith by GEO, after consultation with IPSC, to give effect to the Settlement Agreement after satisfaction by GEO of (i) all obligations owing on account of GEO's funded debt obligations (other than GEO Second Lien Notes), (ii) all amounts due under the Charter Oak Notes, (iii) severance compensation payable to GEO executives,

(iv) payments to be made under GEO's incentive plans in connection with the closing of the Sale, (v) any amounts payable to the government as a fine or penalty in connection with GEO's June 2016 plea agreement, (vi) cash payments required to be made to any plaintiff under any settlement agreement entered into between GEO and any such plaintiffs (other than any such payments that are payable only upon the occurrence of a Sale and are to be made pursuant to this Exhibit B or constitute a payment referenced in clause (y) of the foregoing definition of "Post-Deemed Conversion Net Proceeds"), (vii) transaction fees and expenses incurred in connection with the Sale, (viii) entity level federal, state or local taxes related to the Sale, and (ix) any other obligation of GEO that is required to be satisfied before GEO Shareholders receive proceeds from the Sale.

"Pre-Conversion Net Proceeds," as to any Sale, means (a) the aggregate amount of cash consideration, plus (b) the aggregate fair market value of any non-cash consideration that would be received by GEO Shareholders in respect of all GEO Shares in connection with the Sale (whether as proceeds from the purchase, redemption or surrender of GEO Shares, liquidation distributions with respect to GEO Shares, or otherwise) but for the payment of (x) the portion of the cash and/or non-cash consideration payable to the IPSC in the amounts provided for in this Exhibit B, and (y) those portions of that cash and/or non-cash consideration payable to other parties, in the amounts provided for in similar exhibits to other settlement agreements, each of which is between the respective other party and GEO and is entered into on the same date as the Settlement Agreement to which this Exhibit B is attached.

Pre-Conversion Net Proceeds will be determined in good faith by GEO, after consultation with IPSC, to give effect to the Settlement Agreement after satisfaction by GEO of (i) all obligations owing on account of GEO's funded debt obligations (including, without limitation, GEO Second Lien Notes, but without the payment of any makewhole amount that may be due thereunder), (ii) all amounts due under the Charter Oak Notes, (iii) severance compensation payable to GEO executives, (iv) payments to be made under GEO's incentive plans in connection with the closing of the Sale, (v) any amounts payable to the government as a fine or penalty in connection with GEO's June 2016 plea agreement, (vi) cash payments required to be made to any plaintiff under any settlement agreement entered into between GEO and any such plaintiffs (other than any such payments that are payable only upon the occurrence of a Sale and are to be made pursuant to this Exhibit B or constitute a payment referenced in clause (y) of the foregoing definition of "Pre-Conversion Net Proceeds"), (vii) transaction fees and expenses incurred in connection with the Sale, (viii) entity level federal, state or local taxes related to the Sale, and (ix) any other obligation of GEO that is required to be satisfied before GEO Shareholders receive proceeds from the Sale.

**EXHIBIT C FILED UNDER SEAL FOR IN CAMERA REVIEW PURSUANT TO TERMS OF SETTLEMENT AGREEMENT**

**EXHIBIT D**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (JLL) (JAD) |

<u>**RIDER FOR DIRECT ACTION INDIRECT PURCHASER SETTLEMENT CLASS
MEMBERS**</u>

Pursuant to the Settlement Agreement Between Indirect Purchaser Class Plaintiffs and

Defendants GEO Specialty Chemicals, Inc., Kenneth A. Ghazey and Brian C. Steppig (the

"Agreement"), _____ is a Direct Action Indirect Purchaser Settlement

Class Member, as defined in the Agreement, and agrees to the terms of the Agreement. As

specified in the Agreement, _____ has agreed to be treated as a

member of the Indirect Purchaser Settlement Class for purposes of the Agreement and consents

to Interim IPP Lead Counsel, as defined in the Agreement, acting on its behalf for the purposes

of this Agreement. _____ also agrees to file a stipulation of dismissal

of its claims against the GEO Released Parties, with prejudice within ten (10) days of Final

Judgment, as defined in the Agreement.


Signature: _____

Name: _____

Date: _____


*Counsel for* _____