# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (JLL) (JAD) |

---

## INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

---

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle St., Suite 2910
Chicago, IL  60603
(312) 332-3400

Jay B. Shapiro
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A
150 West Flagler Street, Suite 2200
Miami, FL  33130
(305) 789-3229

*Interim IPP Co-Lead Counsel*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................3

   A.  IPP's Claims and Procedural History ...........................................................3

   B.  IPPs' Settlement Negotiations With The GEO Settling Parties.....................4

   C.  The Material Terms of The Proposed Settlement ..........................................6

      1.  Class Benefits.......................................................................................6
         a.  Monetary Relief ........................................................................6
         b.  Cooperation................................................................................6

      2.  The Release ...........................................................................................7

THE IPP SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL ....7

   A.  The IPP Settlement Is The Product Of Extensive Arms'-Length Negotiations By Experienced Class Counsel.........................................................................9

   B.  Considerations of The Factors Relevant To Final Approval Also Support Preliminary Approval .................................................................................11

THE PROPOSED IPP CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES...................................................................................................15

   A.  The Settlement Class Satisfies the 23(a) Standards........................................16

      1.  Numerosity...........................................................................................17

      2.  Commonality........................................................................................17

      3.  Typicality .............................................................................................18

      4.  Adequacy .............................................................................................19

   B.  The Settlement Class Satisfies the 23(b)(3) Standards ...................................19

      1.  Predominance.......................................................................................20

   C.  Interim Lead IPP Counsel Meet The Requirements For Appointment Under Rule 23(g) .........................................................................................21

THE COURT SHOULD APPROVE THE FORM AND PLAN FOR NOTICE TO THE IPP SETTLEMENT ................................................................................................................21

    A.  The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation ..................................................................................22

    B.  The Proposed Method Of Distributing Class Notice Provides The Best Notice Practicable Under The Circumstances ..................................................................22

        1.  Notice to Government Regulators ........................................................23

THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT ADMINISTRATOR ..............................................................................................................24

THE COURT SHOULD APPROVE THE PROPOSED SCHEDULE FOR FINAL APPROVAL ................................................................................................................24

CONCLUSION ..............................................................................................................26

# TABLE OF AUTHORITIES

Cases ................................................................................................................. Page(s)

*Amchem Prod. Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .............................................. 16, 20

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ............................................................................................. 18

*Block v. RBS Citizens, Nat'l Ass'n, Inc.*,
   2016 WL 8201853 (D.N.J. Dec. 12, 2016) ........................................................................ 2

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 11

*Cullen v. Whitman Medical Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) ....................................................................................... 15

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ............................................................................................... 8

*Elite Sportswear Prod., Inc. v. New York Life Ins. Co.*,
   2006 WL 3052703 (E.D. Pa. Oct. 24, 2006), ................................................................... 22

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985) .................................................................................... 11

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) ........................................................................ 17, 18, 19, 20

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................................................. 12

*In re Aetna UCR Litig.*,
   2013 WL 4697994 (D.N.J. Aug. 30, 2013) ............................................................... 8, 9, 10

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) .......................................................................................... 14

*In re Automotive Refinishing Paint Antitrust Litig.*,
   2004 WL 1068807 (E.D. Pa. May 11, 2004) ..................................................................... 8

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................... 9

i

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ................................................................. 15

*In re Elec. Carbon Prods. Antitrust Litig.*,
    447 F. Supp. 2d 389 (D.N.J. 2006) ................................................................. 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ........................................................................... 9, 12

*In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*,
    296 F.R.D. 351 (E.D. Pa. 2013) ................................................................. 17, 19

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ........................................................................... 20

*In re Johnson & Johnson Derivative Litig.*,
    900 F. Supp. 2d 467 (D.N.J. 2012) ................................................................. 14

*In re K-Dur Antitrust Litig.*,
    2008 WL 2699390 (D.N.J. Apr. 14, 2008) ...................................................... 17

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010) ...................................................... 12, 13

*In re Nat. Football Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ....................................................................... 15, 16

*In re OSB Antitrust Litig.*,
    2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) .................................................... 17

*In re Philips/Magnavox Television Litig.*,
    2012 WL 1677244 (D.N.J. May 14, 2012) ...................................................... 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ..................................................................... 11

 *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283, 311 (3d Cir. 1998) ............................................................... 11, 21

*In re Prudential Ins. Co. of Am.*,
    No. CIV. A. 95-4704, 1999 WL 496491 (D.N.J. May 6, 1999) ......................... 11

*In re Safety Components Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ............................................................... 14, 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..............................................................................Passim

*In re Warner Comms. Secs. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986) ................................ 15

*Jones v. Commerce Bancorp Inc.*,
  2007 WL 2085357 (D.N.J. July 16, 2007) ............................................................... 8

*Lenahan v. Sears, Roebuck & Co.*,
  2006 WL 2085282 (D.N.J. Jul. 24, 2006), aff'd, 266 F. App'x 114 (3d. Cir. 2008) ............... 9

*Merck & Co. v. Louisiana Wholesale Drug Co.*,
  570 U.S. 913, 133 S. Ct. 2849, 186 L. Ed. 2d 904 (2013) ..................................................... 17

*Mylan Pharm., Inc. v. Warner Chillcott Pub. Co.*,
  2014 WL 631031 (E.D. Pa. Feb. 18, 2014) ................................................................. 17, 19

*Sheinberg v. Sorensen*,
  2016 WL 3381242 (D.N.J. June 14, 2016) ......................................................................... 13

Singleton v. First Student Mgmt. LLC,
  2014 WL 3865853 (D.N.J. Aug. 6, 2014) .................................................................. 11, 13

*Smith v. Professional Billing & Management Services, Inc.*,
  2007 WL 4191749 (D.N.J. Nov. 21, 2007) ........................................................................ 8

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ............................................................................................. 17

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ............................................................................................. 20

*Upsher-Smith Labs., Inc. v. Louisiana Wholesale Drug Co.*,
  570 U.S. 913, 133 S. Ct. 2849 (2013) ............................................................................. 17

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ......................................................................................... 10

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002) ......................................................................................... 17

**Statutes**

28 U.S.C. § 1715 ............................................................................................................. 24, 26

**Rules**

F.R.C.P. 23 ................................................................................................................Passim

**Other Authorities**

2 Newberg on Class Actions § 8.32 at 8-109 .......................................................... 21

Indirect Purchaser Plaintiffs ("IPPs"), on behalf of themselves and the Indirect Purchaser Settlement Class (defined below), submit this memorandum in support of Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlement And Certification of Settlement Class (the "Motion").

## INTRODUCTION

After over two years of heavily contested litigation, extensive discovery, and vigorous, arms'-length settlement negotiations—including a final mediation session directly managed by this Court—Plaintiffs City of Homestead, Florida and City of Creston Water Works Department (collectively, "Indirect Purchaser Class Plaintiffs" or "IPPs"), individually and on behalf of the Indirect Purchaser Settlement Class have, through the efforts of the Court-appointed interim co-lead counsel for indirect purchasers Marvin A. Miller and Jay B. Shapiro ("Interim IPP Lead Counsel") successfully negotiated and entered into a class action settlement agreement (the "IPP Settlement") with Defendants GEO Specialty Chemicals, Inc. ("GEO"), Kenneth A. Ghazey ("Ghazey"), and Brian C. Steppig ("Steppig") (collectively, "GEO Settling Parties").

Among other benefits, the IPP Settlement requires GEO to pay up to $4,375,000 million to the Indirect Purchaser Settlement Class and requires each of the GEO Settling Parties to cooperate with the IPPs in their continued prosecution of this action against the remaining defendants in this consolidated action.[1] *See* Joint Declaration of Marvin A. Miller and Jay B. Shapiro In Support of Preliminary Approval ("Joint Decl.") at ¶ 3.

---

[1] The remaining defendants in this consolidated proceeding include: General Chemical Corporation,  General Chemical Performance Products, LLC, General Chemical LLC, GenTek Inc., Chemtrade Logistics Income Fund, Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade Chemicals US, LLC, Chemtrade Solutions, LLC (collectively, "GenChem"); C&S Chemicals, Inc.; USALCO, LLC; Kemira Chemicals, Inc.; Southern Ionics, Inc.; American Securities, Inc. Frank A. Reichl, Vincent J. Opalewski, Alex Avraamides, Amita Gupta, and Milton Sundbeck (collectively, the "Non-Settling Defendants").

As explained in detail below, Interim IPP Lead Counsel believe the proposed settlement is an outstanding result for the Indirect Purchaser Settlement Class, as the cash component represents a substantial recovery of the Indirect Purchaser Settlement Class's single damages from the settling defendant.  Pursuant to Federal Rule of Civil Procedure 23, IPPs request that the Court: (1) grant preliminary approval of the IPP Settlement; (2) certify the proposed Indirect Purchaser Settlement Class; (3) appoint named Plaintiffs City of Homestead, Florida ("Homestead") and City of Creston Water Works Department ("Creston") as class representatives of the Indirect Purchaser Settlement Class; (4) appoint Interim IPP Lead Counsel as co-lead class counsel for the Indirect Purchaser Settlement Class; (5) approve the form of notice ("Notice Form") and plan of notice ("Notice Plan") to the IPP Settlement Class[2]; (6) approve the proposed settlement administrator; and (7) enter an appropriate case management schedule concerning: (i) notice to the Indirect Purchaser Settlement Class of the IPP Settlement, including opt-out and objection deadlines, (ii) IPPs' motion for attorneys' fees, reimbursement of litigation expenses, and incentive awards to named plaintiffs, and (iii) the scheduling of a final fairness hearing.

The IPP Settlement, the Indirect Purchaser Settlement Class, and Notice Form and Notice Plan all easily qualify for approval. *Block v. RBS Citizens, Nat'l Ass'n, Inc.,* No. 115CV01524, 2016 WL 8201853, at *4 (D.N.J. Dec. 12, 2016) (Preliminary approval "is granted unless a proposed settlement is obviously deficient."). The IPP Settlement—negotiated at arms' length by experienced counsel for both the Indirect Purchaser Settlement Class and the GEO Settling Parties and after substantial discovery efforts, significant motion practice, extensive analysis of GEO's financial condition and, ultimately, Court-supervised mediation—is an excellent result for the

---

[2]      A copy of the Form Notice is attached as Exhibit 4 to the Declaration of Linda V. Young ("Young Decl.") attached to the Motion.  A copy of the Notice Plan is attached as Exhibit 2 to the Young Decl.

Indirect Purchaser Settlement Class, especially considering the poor financial condition of GEO, the GEO Settling Parties' obligations to cooperate with the IPPs' continued prosecution of its claims against the Non-Settling Defendants under the terms of the IPP Settlement, and the fact that all of the Non-Settling Defendants continue to face the prospect of joint and several liability. The Indirect Purchaser Settlement Class is the type of settlement class commonly certified in this Circuit in antitrust cases. *See e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). The proposed Notice Form and Notice Plan to the IPP Class constitutes the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c).

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Warfarin*, 391 F.3d at 535. The IPP Settlement serves this interest admirably. The Court should enter the Proposed Order attached the Motion, as more fully explained below.

## BACKGROUND

### A.  IPPs' Claims and Procedural History

Plaintiff, City of Homestead, filed the first indirect purchaser class action complaint on May 20, 2016. Joint Decl., ¶ [4].  Creston's filed its indirect purchaser class action complaint on July 5, 2016. *Id.*  After the Court appointed Lead IPP Counsel, these two complaints were superseded by the indirect purchaser plaintiff's consolidated class action complaint filed in this consolidated proceeding, (the "CCAC") on October 17, 2016. *Id.*, ¶ *Id.*, ¶ 6. The Indirect Purchaser Settlement Class includes thousands of geographically dispersed entities and persons who indirectly purchased or paid for in the Class States, not for resale, liquid aluminum sulfate ("Alum") from the GEO Settling Parties, the Non-Settling Defendants, or their unnamed co-conspirators from January 1, 1997 through February 28, 2011.

3

IPPs allege that the GEO Settling Parties and the Non-Settling Defendants (collectively, the "Defendants") colluded to fix the price of Alum and/or allocate customers thereby unlawfully restraining free trade.  Joint Decl., ¶ 7. IPPs allege that the Defendants carried out their unlawful conspiracy by rigging bids and agreeing stay away from each other's respective markets and customers.  *Id*., ¶ 8. IPPs allege that the Defendants were able to carry out this conspiracy because Alum is a commodity and because the nature of the Alum market makes it extremely susceptible to collusion. *Id*., ¶ 9. IPPs further allege that during the relevant period prices for Alum increased despite stable or declining demand for the product. *Id*., ¶ 10.

IPPs claim that the conspiracy began in 1997, when GEO and another Defendant agreed to stop fighting for each other's customers. Joint Decl., ¶ 11. Later, other entities joined the conspiracy. *Id*., ¶ 12. To date, three of the Defendants, including GEO, have pled guilty to participating in the conspiracy.  *Id*., ¶ 13.

On December 22, 2016, GEO and other Defendants moved to dismiss the CCAC.  *Id*., ¶ 14.  On July 20, 2017, the Court denied GEO's motion to dismiss.  *Id*., ¶ 15.

GEO also filed an unsuccessful motion in United States Bankruptcy Court for the Northern District of New Jersey seeking to limit its potential exposure in this case. Joint Decl., ¶ 14.  This second motion remains pending on appeal before this Court. *Id.*, ¶ 17.

**B.  IPPs' Settlement Negotiations With The GEO Settling Parties**

IPPs settlement negotiations with the GEO Settling Parties were, at all times, vigorous discussions in which each counsel represented their clients' interests zealously.  Joint Decl., ¶ 18. Preliminary settlement negotiations with GEO began in July 2016, when Interim IPP Lead Counsel met in person for hours with GEO's counsel. *Id.*¶ 19. At that meeting, and during the next several months, the parties engaged in extensive, arms'-length discussions about the potential for settlement considering the applicable facts and law concerning liability and damages, as well as

4

GEO's financial condition and its outlook as a going concern. *Id.* ¶ 20. In the course of these protracted discussions, GEO produced hundreds of pages of documents concerning its current and forecasted financial condition, which were carefully examined by IPP Lead Counsel and sophisticated bankruptcy counsel in order to evaluate GEO's current financial condition and prospects. *Id.* ¶ 21. Despite many months of considerable effort, however, the parties did not settle. *Id.* ¶ 22.

Then, in May 2017, after several months in which settlement negotiations had reached at a stand-still, Interim IPP Lead Counsel, along with Lead Counsel for the Direct Purchaser Plaintiffs, participated in a formal mediation with counsel for GEO and Ghazey in a continued attempt at reach a compromise. Joint Decl. ¶ 23. That mediation was conducted by a well-known and respected neutral mediator. *Id.* ¶ 24. Despite all efforts and a willingness to achieve resolution, no settlement was reached during the mediation session, or as a result of follow-up efforts by the mediator. *Id.* ¶ 25.

The parties persisted to seek a resolution and continued to engage in follow-up discussions and negotiations without the assistance of the mediator. Joint Decl., ¶ 26. Ultimately, those efforts culminated in a multi-hour settlement conference in June 2018, which was directly managed and supervised by this Court, and which resulted in an agreement to settle all IPP claims against GEO, Ghazey and Steppig. *Id.* ¶ 27.

The IPP Settlement includes the payment by GEO of up to $4,375,000 million in cash to the Indirect Purchaser Settlement Class. Joint Decl. ¶ 29. Because of GEO's financial condition, a substantial portion of the cash ($3,375,000) will be paid in two installments and up to $1,000,000 is contingent upon the sale of GEO or its assets. The formula and methodology to determine how the final sale contingent installment is calculated is set forth in Exhibit B to the IPP Settlement. *Id.*

¶ 30.  The formula and methodology to determine how the final installment is calculated is set forth in Exhibit B to the Settlement Agreement.  *Id*. Important for IPPs' continued prosecution of their claims against the Non-Settling Defendants is GEO's agreement to assist the IPPs by making certain GEO employees available for in-person interviews with Interim IPP Lead Counsel, to authenticate documents, and to provide truthful declarations, deposition and trial testimony. *Id*. ¶ 31. In addition, as part of the settlement, Steppig has individually agreed to cooperate with IPPs to prosecute the claims against the Non-Settling Defendants by, *inter alia*, providing a proffer to Interim IPP Lead Counsel regarding certain critical facts that are relevant to IPPs claims that are contained in internal GEO documents which Steppig prepared while employed at GEO. Steppig has also agreed to sit for in-person interviews with Interim IPP Lead Counsel, to authenticate documents, and to provide truthful declarations, deposition and trial testimony. *Id*, ¶ 32.

### C.  The Material Terms of The Proposed Settlement

#### 1)  Class Benefits

##### a)  Monetary Relief

The IPP Settlement provides for up to $4,375,000 million in settlement funds.  Joint Decl.¶ 30.  To avoid piecemeal notice costs which could lead to confusion and will needlessly increase costs to the Indirect Purchaser Settlement Class, IPPs intend to defer distribution of the funds to members of the Indirect Purchaser Settlement Class to either the conclusion of the case, or at an earlier time if IPP Counsel believe it is economically efficient to do so.  *Id*, ¶ 33.  While IPP Counsel may seek Court approval for reimbursement of expenses, IPPs will not make any payments or distributions to members of the Indirect Purchaser Settlement Class without Court approval.  *Id*, ¶ 34.

##### b)  Cooperation

A critical component of the IPP Settlement is the GEO Settling Parties' agreement to provide valuable cooperation to IPPs that will undoubtedly aid in the prosecution of this lawsuit against the Non-Settling Parties.  Joint Decl.¶ 36.  The full extent of this cooperation is set forth in more detail in ¶ [9] of the IPP Settlement (Joint Decl., Ex. A) and consists of, among other things: (1) assisting in the effectuation and implementation of the terms and conditions of the IPP Settlement; (2) providing the names and addresses of known indirect purchasers of Alum during the Class Period; (3) providing information proffers or written responses to questions raised by Interim IPP Lead Counsel concerning the transactional data GEO has produced; (4) responding to reasonable requests for information from Interim IPP Lead Counsel for the purpose of assisting with the pursuit of claims against the Non-Settling Defendants in this action; (5) submitting to interviews conducted by IPP Lead Counsel; and (6) providing truthful declarations and testimony in IPPs' prosecution of their claims against the Non-Settling Defendants.. *Id*, ¶ 37.

### 2)  The Release

If the IPP Settlement becomes final, all members of the Indirect Purchaser Settlement Class who do not opt out of the IPP Settlement will release the GEO Settling Parties from all claims arising out of the facts alleged in the CCAC in exchange for the consideration provided in the IPP Settlement Agreement.  Joint Decl.¶ 38. The release does not affect IPPs' claims against anyone other than the GEO Settling Parties or with respect to any purchaser of Alum by a member of the Indirect Purchaser Settlement Class that was not an indirect purchaser. *Id*, ¶ 39.

## THE IPP SETTLEMENT SATISFIES THE
## CRITERIA FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  It is well established in the Third Circuit that the settlement of

class action litigation is favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010) ("Settlement Agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Judicial review of a proposed class action settlement consists of a two-step process. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *In re Aetna UCR Litig.*, No. CIV.A. 07-3541, 2013 WL 4697994, at *10 (D.N.J. Aug. 30, 2013); *Jones v. Commerce Bancorp Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement prior to directing that notice be given to members of the settlement class.").

Preliminary approval does not require a court to reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *In re Automotive Refinishing Paint Antitrust Litig.*, MDL. No. 1426, 2004 WL 1068807, at *1-2 (E.D. Pa. May 11, 2004). Moreover, in considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to examine extensively the merits of the settlement. *See Smith v. Professional Billing & Management Services, Inc.*, No. 06-4453JEI, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."); *Aetna UCR. Litig.*, 2013 WL

4697994, at *10 (preliminary approval is granted "unless a proposed settlement is obviously deficient").

An initial "presumption of fairness" for the settlement is established if the court finds that: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001) (internal citations and quotations omitted); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

A court is not required at the preliminary approval stage to determine whether it will ultimately approve the settlement. As set forth in detail below, the Settlement more than satisfies the liberal standard for preliminary approval.

### A. The IPP Settlement Is The Product Of Extensive Arms'-Length Negotiations By Experienced Class Counsel

The IPP Settlement is the result of extensive arms'-length negotiations undertaken in good faith by highly experienced plaintiff and defense counsel. Joint Decl., ¶40. The negotiations involved multiple face-to-face meetings, a mediation, and a Court-led settlement conference. *See supra*, Section II.B; *See Aetna UCR Litig.*, 2013 WL 4697994, at *11 ("sessions with a respected and experienced mediator, gave counsel on both sides ample opportunity to adequately assess the strengths of their respective positions and facilitated serious and informed negotiations"); *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *14 (D.N.J. Jul. 24, 2006), *aff'd*, 266 F. App'x 114 (3d Cir. 2008) (rigorous mediation and negotiation processes "gave the parties ample opportunity to assess the relative strengths and weaknesses of their claims"). Before a settlement was reached, the IPPs requested and received detailed information from GEO concerning its current and projected financial condition and potentially applicable insurance

coverage. *Id.* ¶ 41.   Still further, the IPP Settlement was only reached after the IPPs had the opportunity to conduct a thorough review of Defendants' document productions, consisting of over 5,000,000 pages of documents.  *Id.*, ¶ 42; *In re Philips/Magnavox Television Litig.*, No. 09-3072, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("[w]here this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent"). *In re Aetna UCR Litig.*, No. 07-3541, 2013 WL 4697994 (D.N.J. Aug. 30, 2013).

Throughout every stage in the mediation, negotiation, and Court-led settlement conference process, the parties weighed the strengths and weaknesses of IPPs' claims and the GEO Settling Parties' defenses, including consideration of, among other issues, liability, causation, and damages. Joint Decl., ¶ 43.  The parties engaged in intensive bargaining over the merits and value of Plaintiffs' claims. *Id.*, ¶ 44.   Interim IPP Lead Counsel enlisted the assistance of very experienced bankruptcy counsel who specialize in evaluating the financial condition of troubled companies like GEO in order to weigh the risks of settling with GEO or forcing it to re-enter bankruptcy proceedings (again), which Interim IPP Lead Counsel concluded was extremely likely if GEO was not able to resolve its exposure in these consolidated cases by way of settlement. *Id.*, ¶ 45.  Because of the extensive, arms'-length bargaining involved, there is no issue (or even a suggestion) that there is any collusive aspect to the proposed Settlement. Balancing the risks and resources, the proposed cash settlement is a fair, reasonable, and adequate result. *Id.*, ¶ 46.

Moreover, Interim Lead IPP Counsel are each highly experienced antitrust attorneys who have served as lead class counsel in numerous complex antitrust actions, having collectively resolved class cases amounting to billions of dollars during their respective careers. Joint Decl., ¶ 47. Their judgment that the settlement is fair and reasonable is entitled to considerable weight. *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class

Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283 (3d Cir. 1998), *and enforcement granted sub nom. In re Prudential Ins. Co. of Am.,* No. CIV. A. 95-4704, 1999 WL 496491 (D.N.J. May 6, 1999), *and enforcement granted,* No. CIV. 95-4704 (DRD), 2006 WL 1479024 (D.N.J. May 26, 2006), *aff'd,* 232 F. App'x 161 (3d Cir. 2007), *and enforcement granted,* No. 95-4704 DRD, 2007 WL 2885814 (D.N.J. Sept. 27, 2007) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998). Courts have explicitly deferred to the judgment of experienced counsel who have conducted arm's-length negotiations in approving class action settlements. *See, e.g.*, *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("the professional judgment of counsel involved in the litigation is entitled to significant weight").

Interim IPP Lead Counsel strongly recommend approval of the IPP Settlement, which is fully supported by the Indirect Purchaser Class Plaintiffs—Creston. Formal approval is required by the City of Homestead and that is expected in the near future. Joint Decl., ¶¶ 49-50.

## B. Considerations of The Factors Relevant To Final Approval Also Support Preliminary Approval

While consideration of the requirements for final approval is not required at this stage, "it is important to consider the final approval factors [at the preliminary approval] stage in order to identify any issues that could impede [final approval]." *Singleton v. First Student Mgmt. LLC*, No. 13-1744, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). Those factors are:

1) the complexity, expense and likely duration of the litigation;

2) the reaction of the class to the settlement;

11

3)  stage of the proceedings and the amount of discovery completed;

4)  risks of establishing liability;

5)  risks of establishing damages;

6)  risks of maintaining the class action through the trial;

7)  ability of the defendants to withstand a greater judgment;

8)  the range of reasonableness of the settlement fund in light of the best possible recovery; and

9)  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). All of the relevant factors here militate in favor of the Settlement.

The first *Girsh* factor—the complexity, expense and likely duration of the litigation—supports approval here. This case has been litigated for over two years. Indeed, given the stage of the litigation, and the fact that there is likely to be an appeal of any final judgment, this case, absent settlement, is unlikely to conclude for at least several more years during which GEO's financial condition may deteriorate further and available insurance proceeds will continue to be depleted defending claims in this action.  Joint Decl., ¶¶ 50-53.

Because the IPP Settlement has not yet been presented to the Indirect Purchaser Settlement Class, the second *Girsh* factor (reaction of the Class to the settlement), is not ripe for consideration, although IPPs believe the IPP Settlement to be an excellent result for the Indirect Purchaser Settlement Class.  Joint Decl., ¶ 49.

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813). "[U]nder

this factor the Court considers whether the amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'" *Id.* at *29 (alteration in original).

This factor weighs heavily in favor of approval here. The IPP Settlement was only reached after the IPPs had the opportunity to conduct a targeted review of the document productions in this case, consisting of over 5,000,000 documents.  Joint Decl., ¶42.   The IPPs have also examined GEO's current and forecasted financial condition, as well as all known and applicable insurance policies in order to maximize the amount of funds available for settlement.  Joint Decl., ¶ 51; *Sheinberg v. Sorensen*, No. 00-6041, 2016 WL 3381242, at *7 (D.N.J. June 14, 2016) (recognizing the role of "meaningful discovery" in evaluating and arriving at a proper settlement amount) (quoting *In re Elec. Carbon Prods. Antitrust Litig.,* 447 F. Supp. 2d 389, 400 (D.N.J. 2006)).

The fourth, fifth and sixth *Girsh* factors (risks of establishing liability, damages and maintaining the class action through trial) are appropriately considered together for purposes of preliminary approval. *Singleton*, 2014 WL 3865853, at *6. While the case is strong, there are significant risks of establishing liability, damages and maintaining the class action through trial to the Class. *See* Joint Decl., ¶ 52.

Not the least of these risks was the risk of GEO re-filing for bankruptcy protection if this settlement was not reached, which GEO's counsel represented was highly probable if GEO was not able to resolve its exposure in this case by way of settlement.  Joint Decl., ¶ 54.  As the Court knows from presiding over GEO's criminal case, GEO was able to negotiate a relatively lenient fine as part of its guilty plea because of its extremely precarious financial condition. *Id*, ¶ 55.  And even then, GEO was able to further secure the Government's and Court's permission to pay that reduced fine in yearly installments, in part, because of that tenuous financial condition. *Id.*,  After

13

extensively analyzing thousands of pages of GEO's financial statements and other documents reflecting GEO's current financial condition, and after analyzing GEO current secured debt structure and other debt obligations with the assistance of experienced and skilled bankruptcy counsel, IPP Lead Counsel lead counsel concluded that the settlement achieved here was a preferable outcome for the IPP class as compared to prospect of filing and pursuing a general unsecured claim in any bankruptcy proceeding initiated by GEO. *Id*., ¶ 56.

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538. Relevant to this inquiry is whether the "settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484-85 (D.N.J. 2012) (alteration in original) (quoting *In re Safety Components Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2001)

Based on the analysis of GEO's individual indirect sales of Alum, the monetary recovery from GEO represents a substantial recovery of the IPPs' single damages. Joint Decl., ¶ 57. Given GEO's current and projected financial condition, combined with the fact that GEO also faces claims brought on behalf of a class of Direct Purchaser Plaintiffs and also direct action plaintiffs, the IPP Settlement best ensures that the IPPs recover the maximum amount possible while positioning themselves to best avoid their recovery being wiped out as a result of GEO's liabilities forcing it seek bankruptcy protection. Joint Decl., ¶ 58; *See, e.g., In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) (Defendant funded class action settlement via Chapter 11 reorganization. "Without the bankruptcy, Defendant would likely be forced to liquidate, and

14

thus unable to compensate successful plaintiffs.  Thus, Defendants' inability to withstand greater judgment evidences of the fairness the settlement."); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d at 92 (Defendant's bankruptcy "applies severe restraints on the possible range of discovery" and further litigation would have reduced limits of "wasting" D&O policy); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) ("The legal and factual difficulties inherent in this type of case, together with the unpredictability of a lengthy trial, the appellate process that would follow a victory for plaintiffs at trial, and the ultimate virtual certainty of defendants' insolvency were plaintiffs to have succeeded at each of these levels make the fairness of the settlement readily apparent."). When weighed against the time, expense and potential risk of further litigation, including an adverse ruling on summary judgment or *Daubert* motions, or losing at the class certification stage, or at trial, the IPP Settlement is a reasonable compromise that gives members of the Indirect Purchaser Settlement Class certain recovery and the GEO Settling Parties' cooperation in IPPs' continued prosecution of their claims against the remaining Defendants who currently all face the prospect of joint and several liability. Joint Decl., ¶ 59; *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000), *aff'd sub nom, In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (quoting *In re Warner Comms. Secs. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986).

## THE PROPOSED IPP CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Where, as here, the Court has not yet certified a class, it should "make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *In re Nat. Football Players Concussion Injury Litig.*, 775 F.3d 570,

582 (3d Cir. 2014) (citations omitted; emphasis in original). This "*preliminary* analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation." *Id.* In certifying a settlement class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *see also* Fed. R. Civ. P. 23(b)(3)(D).

> Here, IPPs seek certification of the following Indirect Purchaser Settlement Class:

> All persons or entities that purchased liquid aluminum sulfate in Alabama, Arkansas, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin indirectly from a Defendant or a co-Conspirator and not for resale from January 1, 1997 through February 28, 2011.

Joint Decl., ¶ 60 (citing IPP Settlement, ¶ [1.r]).

The proposed settlement class easily satisfies the standards of Fed. R. Civ. P. 23(a) and 23(b)(3).

**A.  The Settlement Class Satisfies the 23(a) Standards**

Fed. R. Civ. P. 23(a) requires the parties moving for class certification to show the following:

1) Numerosity—i.e., that the class is so numerous that joinder of all members is impracticable;

2) Commonality—i.e., that there are questions of law or fact common to the class;

3) Typicality—i.e., that the claims or defenses of the representative parties are typical of the claims or defenses of the class;

4) Adequacy—i.e., that the representative parties will fairly and adequately protect the interests of the class.

*In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, 296 F.R.D. 351, 360 (E.D. Pa. 2013) (citing F.R.C.P. 23(a)).

### 1)   Numerosity

Numerosity "requires a finding that the putative class is 'so numerous that joinder of all members is impracticable.'" *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439-440 (E.D. Pa. 2008). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001).

While IPPs cannot state the exact number of class members, it is easily in the thousands, if not tens or hundreds of thousands which or who are geographically dispersed among the States identified in the Class definition. Joint Decl., ¶ 61.  Numerosity is easily satisfied.

### 2)   Commonality

"To satisfy the commonality requirement, the purported class's claims must depend upon a common contention . . . . capable of class wide resolution." *Mylan Pharm., Inc. v. Warner Chillcott Pub. Co.*, No. 12-3824, 2014 WL 631031, at *2 (E.D. Pa. Feb. 18, 2014). Courts in this Circuit have found the commonality requirement easily met in antitrust cases.  *See, e.g., In re K-Dur Antitrust Litig.*, No. CIV. A. 01-1652 JAG, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008), *subsequently aff'd,* 686 F.3d 197 (3d Cir. 2012), *cert. granted, judgment vacated sub nom. Merck & Co. v. Louisiana Wholesale Drug Co.*, 570 U.S. 913, 133 S. Ct. 2849, 186 L. Ed. 2d 904 (2013), and *cert. granted, judgment vacated sub nom. Upsher-Smith Labs., Inc. v. Louisiana Wholesale Drug Co.*, 570 U.S. 913, 133 S. Ct. 2849 (2013), and *reinstatement granted,* No. 10-2077, 2013 WL 5180857 (3d Cir. Sept. 9, 2013); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002) (holding that conspiracy to restrain trade is subject to common proof); *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007).

17

The same is true here.  IPPs' allegations focus primarily on the illegality of the conduct of Defendants—an issue that, by definition, does not vary for any class member. Joint Decl., ¶ 62. Moreover, all Indirect Purchaser Settlement Class Members share the following legal and/or factual questions:

- whether Defendants and their co-conspirators conspired to fix prices, rig bids, and allocate customers of Alum sold in the United States;

- the duration and extent of the alleged conspiracy;

- the identity of the conspirators;

- the effect of the conspiracy on the prices of Alum sold in the United States during the Settlement Class Period;

- whether Defendants engaged in fraudulent concealment;

- whether the alleged conspiracy violated the Sherman Act, § 1; and

- the nature and extent of damages to which Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class are entitled.

Joint Decl., ¶ 63.  The commonality requirement is accordingly satisfied.

### 3)  Typicality

To evaluate typicality, "the Court must inquire 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Gates*, 248 F.R.D. at 440 (quoting *Beck v. Maximus, Inc*., 457 F.3d 291, 295-296 (3d Cir. 2006)). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal 'theory.'" *Id.* (citations omitted). The "typicality requirement is designed to align the interests of the class and the class representatives

so that the latter will work to benefit the entire class through the pursuit of their own goals." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998).

Here, "[t]he named Plaintiffs allege on behalf of the Class and themselves the same manner of injury from the same course of conduct and assert on their own behalf the same legal theory that they assert for the Class. Any probable factual differences relate to damages rather than to liability." *Mylan*, 2014 WL 631031, at *3. Indeed, "[t]he claims of the class representatives are virtually identical to those of the class members." *Gates*, 248 F.R.D. at 441. "[T]hus the interests of the class representatives are aligned with those of the class members," satisfying the typicality requirement. *Id.*

### 4) Adequacy

The "adequacy of representation" prong requires that the "class representatives do not have interests antagonistic to the class and that class counsel are sufficiently skilled and experienced to litigate the case." *Imprelis*, 296 F.R.D. at 361. Here, "[a]ll Class Members seek to prove Defendants' alleged anticompetitive conduct, and to recover overcharge damages." *Mylan*, 2014 WL 631031, at *3. Proposed class representatives have precisely the same goal. Thus, the class representatives' "interests do not conflict with the interests of absent members of the Class," and they are adequate. *Id.* Moreover, as previously discussed, Interim Lead IPP Counsel are well-experienced, qualified, and sufficiently skilled to litigate the case. Therefore, the final 23(a) factor weighs in favor of conditionally certifying a settlement class.

### B. The Settlement Class Satisfies the 23(b)(3) Standards

IPPs seek certification of the Indirect Purchaser Settlement Class pursuant to Rule 23(b)(3). "In order to certify an opt-out class under Rule 23(b)(3), the Court must make two additional findings: predominance and superiority." *Gates*, 248 F.R.D. at 442. Plaintiffs show both here.

### 1) Predominance

19

Predominance exists when "[i]ssues common to the class . . . predominate over individual issues." *Gates*, 248 F.R.D. at 442-443. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625.

The Third Circuit has, on at least three occasions, rejected predominance-based challenges to antitrust settlement classes. *Sullivan*, 667 F.3d at 299; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 285 (3d Cir. 2009); *Warfarin*, 391 F.3d at 529. Two of these involved certification of multi-state indirect purchaser classes similar to the one proposed here. *Sullivan*, 667 F.3d at 297; *Warfarin*, 391 F.3d at 529. In each of these cases, it has done so on grounds identically present in this case: because the defendants' "asserted price-fixing and monopolization conduct lies at the core of plaintiffs' claims, as do the common injuries which all class members suffered as a result." *Sullivan*, 667 F.3d at 300 (citing *Insurance Brokerage* and *Warfarin*). Here, as in *Sullivan*, "each class member shares a similar *legal* question arising from whether [Defendants] engaged in a broad conspiracy" and the "plaintiffs likewise share common factual questions as to whether [Defendants] 'acted in concert to artificially fix, maintain, and stabilize prices'" of Alum. *Id.* (citations omitted). These questions are common to all class members, lie at the center of IPPs' claims, and predominate over any individual issues.

### 2) Superiority

The superiority requirement "'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Warfarin*, 391 F.3d at 533-534. In this matter, the other available method of adjudication is individual suits challenging Defendants' conduct through multiple cases—or no cases at all, given

that the small purchases of many class members would make such cases economically inefficient. A single class action is therefore not just the superior alternative, but likely the only alternative. As such, the final requirement of 23(b)(3) is satisfied, and this Court should preliminarily certify the IPP Class.

### C.  Interim Lead IPP Counsel Meet The Requirements For Appointment Under Rule 23(g)

The Court is familiar with the qualifications of Interim IPP Lead Counsel.  On June 9, 2016, Plaintiffs' counsel moved this Court to be appointed Interim Class Counsel and set forth their credentials in detail. ECF No. 180. After reviewing the experience and qualifications, the Court appointed Marvin A. Miller and Jay B. Shapiro Interim Class Counsel.  ECF No. 211.  Since that appointment, Interim IPP Lead Counsel has demonstrated the tenacity and zealous advocacy required to advance this complex class action and to achieve the all cash benefits for the Class. Therefore, IPPs request that the Court appoint them as IPP Class Counsel.

### THE COURT SHOULD APPROVE THE FORM
### AND PLAN FOR NOTICE TO THE IPP SETTLEMENT CLASS

Prior to final approval, F.R.C.P. 23(c)(2) and 23(e) requires that the Court authorize the content of notice of the preliminary certification, settlement, and final approval hearing, as well as the manner in which the parties propose to distribute that notice. "The Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 327 (citing 2 *Newberg on Class Actions* § 8.32 at 8-109).

### A.  The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation

Rules 23(c)(2) and 23(e) govern the contents of notice, and require it adequately inform class members of the terms of the settlement, *see* F.R.C.P. 23(e), as well as "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." F.R.C.P. 23(c)(2).

Working with Lynda Young, a notice expert with A. B. Data, Ltd., IPP Counsel have formulated a robust Notice Plan to inform the Class of this Settlement.  Joint Decl., ¶ 64.  IPPs' proposed Form Notice complies with these requirements. It informs members of the IPP Class of the material terms of the IPP Settlement, including both the relief it provides and the releases that will apply to class members. *Id.*, ¶ 65.  It further describes the nature of the action, the definitions of the settlement class, and the availability of, and procedures for, objecting or opting out of the IPP Settlement. *Id.*, ¶ 66. It fully informs members of the IPP Class of all the matters required by F.R.C.P. 23(c)(2) and 23(e), and is therefore adequate. As such, this Court should approve the content of the Form Notice.

**B.  The Proposed Method Of Distributing Class Notice Provides The Best Notice Practicable Under The Circumstances**

A plan for distributing notice is satisfactory when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elite Sportswear Prod., Inc. v. New York Life Ins. Co*., No. Civ. A. 05-CV-5181, 2006 WL 3052703 (E.D. Pa. Oct. 24, 2006), *aff'd*, 270 F. App'x 153 (3d Cir. 2008). This does not require direct individual notice: indeed, in *Warfarin*, the Third Circuit affirmed a district court's approval of a plan of notice for an indirect purchaser class action

22

consisting of "publishing summary notice in publications likely to be read by consumer claimants along with a call-center and a website with information and downloadable forms." *Warfarin*, 391 F.3d at 536 ("[E]ven in the absence of any individual notice via direct mail in this matter, we are satisfied that the District Court acted within its discretion in determining that 'reasonable effort' was made here to provide 'the best notice practicable under the circumstances.'").

Here, the Notice Plan exceeds that approved in *Warfarin*. IPPs have selected a respected and qualified notice and settlement claims administrator—A.B. Data, Ltd. ("A.B. Data")—to provide notice to the IPP Class. Joint Decl., ¶ 67. Together with A.B. Data, IPPs have developed an extensive, targeted Notice Plan that is more than adequate. Highlights of this plan include:

- direct-mail notice *via* email to potential class members in the following industries: waste and water treatment facilities; golf course superintendents and sports field management; textile production facilities; poultry producers; and pulp and paper manufacturing facilities;

- publication notice consisting of multi-week banner advertisements on the websites of the following national trade publications: Municipal Sewer & Water (www.mswmag.com), Treatment Plant Operator (www.tpomag.com); Waste & Water Digest (www.wwdmag.com); Athletic Turf (www.athleticturf.net); Golf Course Management (www.gcmonline.com); Textile World (textileworld.com); Poultry Times (www.poultrytimes.com); Pulp & Paper Week (www.risinfo.com/product/ppi-pulp-paper-week/); and Technical Association of Pulp & Paper Industry (www.tappi.org);

- publication notice in *The Wall Street Journal*; and

- dissemination of a news release *via* Business Wire to more than 10,000 newsrooms, including print, broadcast, and digital media, across the United States, as well as to trade publications of the following relevant trade industries: Construction & Property: Architecture; Construction & Property: Landscape; Construction & Property: Urban Planning; Energy: Utilities; Environment; Manufacturing: Chemicals/Plastics; Manufacturing: Packaging; Manufacturing: Textiles; Natural Resources: Agriculture; Natural Resources: Forest Products; Natural Resource: Other; Public Policy Government: State/Local.

Joint Decl., ¶ 68. The Court should approval IPPs' Notice Plan.

### 3)  Notice To Government Regulators

The Class Action Fairness Act, 28 U.S.C. § 1715, requires notice of the proposed settlement to be served on appropriate State and Federal officials. Pursuant to the settlement agreement, GEO will provide such notice. Joint Decl., ¶ 69 (citing IPP Settlement, ¶ [22]).

### THE COURT SHOULD APPROVE
### THE PROPOSED SETTLEMENT ADMINISTRATOR

IPPs request that the Court appoint A.B. Data as the settlement administrator.  A.B. Data is highly regarded and frequently handles claims administration for settlements of large, complex antitrust cases.  Interim IPP Lead Counsel has worked with A.B. Data in other similar cases.  Joint Decl., ¶ 67.

Under Interim IPP Lead Counsel's supervision, A.B. Data will oversee implementation of the Notice Plan and administration of the IPP Settlement, including processing claims and distributions to the valid claims submitted by members of the Indirect Purchaser Settlement Class.

### THE COURT SHOULD APPROVE THE PROPOSED SCHEDULE FOR FINAL
### APPROVAL.

IPPs propose the following schedule for completing the process for final approval of the IPP Settlement:

| EVENT | PROPOSED TIMING |
|---|---|
| direct-mail notice *via* email to potential class members in the following industries: waste and water treatment facilities; golf course superintendents and sports field management; textile production facilities; poultry producers; and pulp and paper manufacturing facilities as *per* Preliminary Approval Order, ¶ []. | Beginning no later than 20 business days after the date of entry of the Preliminary Approval Order (the "Notice Date") |
| publication notice consisting of multi-week banner advertisements on the websites of the following national trade publications:  Municipal Sewer & | As soon as practicable after the Notice Date |

| | |
|---|---|
| Water (www.mswmag.com), Treatment Plant Operator (www.tpomag.com); Waste & Water Digest (www.wwdmag.com); Athletic Turf (www.athleticturf.net); Golf Course Management (www.gcmonline.com); Textile World (textileworld.com); Poultry Times (www.poultrytimes.com); Pulp & Paper Week (www.risinfo.com/product/ppi-pulp-paper-week/); and Technical Association of Pulp & Paper Industry (www.tappi.org) as per Preliminary Approval Order, ¶ []; | |
| Publication notice in *The Wall Street Journal* as *per* Preliminary Approval Order, ¶ []; | As soon as practicable after the Notice Date |
| dissemination of a news release *via* Business Wire to more than 10,000 newsrooms, including print, broadcast, and digital media, across the United States, as well as to trade publications of the following relevant trade industries: Construction & Property: Architecture; Construction & Property: Landscape; Construction & Property: Urban Planning; Energy: Utilities; Environment; Manufacturing: Chemicals/Plastics; Manufacturing: Packaging; Manufacturing: Textiles; Natural Resources: Agriculture; Natural Resources: Forest Products; Natural Resource: Other; Public Policy Government: State/Local as per Preliminary Approval Order, ¶ []; | As soon as practicable after the Notice Date |
| Filing of opening briefs and materials in support of final approval of Settlement, Plan of Allocation and Interim IPP Lead Counsels' expense application (Preliminary Approval Order, ¶ []) | No later than 60 calendar days of the date of entry of the Preliminary Approval Order |
| Requesting Exclusion from the Settlement Class (Preliminary Approval Order, ¶ []) | No later than 75 calendar days from the date of entry of the Preliminary Approval Order |
| Objecting to the Settlement, Plan of Allocation and/or IPP Lead Counsels' application for reimbursement of expenses (Preliminary Approval Order, ¶ []) | No later than 75 calendar days from the date of entry of the Preliminary Approval Order |

| Filing of reply briefs (Preliminary Approval Order, ¶ []) | No later than 7 calendar days prior to the Fairness Hearing |
|---|---|
| Fairness Hearing (Preliminary Approval Order, ¶ []) | No earlier than 110 calendar days from the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

This schedule, comparable to timelines approved and used successfully in similar cases, is fair to members of the Indirect Purchaser Settlement Class. It allows ample time for class members to consider the IPP Settlement and the forthcoming request for attorneys' fees, reimbursement of expenses, incentive awards awarded to Homestead and Creston before the deadline for either opting out of the class or submitting an objection to the IPP Settlement. Specifically, members of the Indirect Purchaser Settlement Class will have 75 days from the Notice Program to request exclusion or otherwise object to the IPP Settlement. And as noted herein, the notice will, *inter alia*, explain the Settlement, inform class members of Interim IPP Lead Counsels' intentions with respect to moving for attorneys' fees, expenses and incentive awards, and direct class members as to how they can get more information or answers to any questions they may have. In addition, the schedule allows the full statutory period for GEO to serve Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

## CONCLUSION

For the foregoing reasons, the IPPs respectfully request that the Court enter the Proposed Order granting preliminary approval of the settlement and certification of the settlement class.

Dated: June 29, 2018                                        Respectfully submitted,

                                                            Indirect Purchaser Plaintiffs

s/*Marvin A. Miller*

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400

s/*Jay B. Shapiro*

Jay B. Shapiro
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3229

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2018, I caused the foregoing to be filed electronically via the Court's CM/ECF system, which will send electronic notification of filing to the registered participants as identified on the Notice of Electronic Filing (NEF). The foregoing document is also available for viewing and downloading from the ECF system.

<u>s/ <i>Marvin A. Miller</i>    </u>
Marvin A. Miller
