UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (JLL) (JAD) |

**JOINT DECLARATION OF MARVIN A. MILLER
AND JAY B. SHAPIRO IN SUPPORT OF PRELIMINARY APPROVAL
OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

1. We make this declaration in support of the Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement and Certification of Settlement Class (the "Motion").

2. We have personal knowledge of the facts stated in this Declaration and if called as a witness, we could and would testify competently to them.

3. Through considerable effort, we have successfully negotiated and entered into a class action Settlement Agreement with Defendants GEO Specialty Chemicals, Inc. ("GEO"), Kenneth A. Ghazey ("Ghazey"), and Brian C. Steppig ("Steppig") (collectively, the "GEO Settling Parties") (the "IPP Settlement"), which is attached to the Motion.

**RELEVANT BACKGROUND**

4. On May 20, 2016, we filed the first indirect purchaser plaintiff class action in this District, *City of Homestead, Florida v. General Chemical Corp., et al.*, 2:16-cv-02873-JLL-JAD, ECF No. 1 (the "Homestead Complaint"). Subsequently, on July 5, 2016, an additional indirect purchaser class complaint was filed in this District by the City of Creston Water Works Department. *City of Creston Water Works Dept. v. General Chemical Corp., et al.*, 2:16-cv-04037-JLL-JAD, ECF No. 1 (the "Creston Complaint").

5. This Court appointed us to serve as Interim Co-Lead Counsel for the Indirect Purchaser Class in the above-captioned action. ECF. No. 211.

6. After the Court appointed us Interim Lead IPP Counsel, the Homestead

Complaint and Creston Complaint were superseded by the filing in this consolidated proceeding of the indirect purchaser plaintiffs' consolidated class action complaint on October 17, 2016 (the "CCAC"). ECF No. 242.

7.  In the CCAC, IPPs allege that the GEO Settling Parties and General Chemical Corporation, General Chemical Performance Products, LLC, General Chemical LLC, GenTek Inc., Chemtrade Logistics Income Fund, Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade Chemicals US, LLC, Chemtrade Solutions, LLC (collectively, "GenChem"); C&S Chemicals, Inc.; USALCO, LLC; Kemira Chemicals, Inc.; Southern Ionics, Inc.; American Securities, Inc. Frank A. Reichl, Vincent J. Opalewski, Alex Avraamides, Amita Gupta, and Milton Sundbeck (collectively, the "Non-Settling Defendants") colluded to fix the price of Alum and/or allocate customers thereby unlawfully restraining free trade. CCAC ¶ 192.

8.  IPPs allege that the GEO Settling Parties and the Non-Settling Defendants (collectively the "Defendants") carried out this the unlawful conspiracy by rigging bids and agreeing stay away from each other's respective markets and customers. *Id*., ¶ 89.

9.  IPPs allege that the Defendants were able to carry out this conspiracy because Alum is a commodity and because the nature of the Alum market makes it extremely susceptible to collusion. *Id*., ¶ 57.

10. IPPs further allege that during the relevant period prices for Alum increased despite stable or declining demand for the product. *Id*., ¶ 68.

11. IPPs claim that the conspiracy began in 1997 when GEO and another defendant agreed to stop fighting for each other's customers. *Id*., ¶ 87.

12. Later, other entities joined the conspiracy. *Id*., ¶ 88.

13. To date, three of the Defendants, including GEO, have pled guilty to participating in the conspiracy.

14. On December 22, 2016, GEO and other Defendants moved to dismiss the CCAC. ECF Nos. 304 and 306

15. On July 30, 2017, the Court denied GEO's motion to dismiss. ECF No. 405.

16. GEO also filed an unsuccessful motion in United States Bankruptcy Court for the Northern District of New Jersey seeking to limit its potential exposure in this case. *See* ECF No. 1320 in Case No. 04-bk-19148 in the United States Bankruptcy Court for the District of New Jersey.

17. This second motion remains pending on appeal before this Court., *See* Case No. 17-133383-JLL(D.N.J.), ECF Nos. 1, 5, and 11.

## SETTLEMENT NEGOTIATIONS

18. The IPPs' settlement negotiations with the GEO Settling Parties were vigorous discussions in which each counsel represented their clients' interests zealously.

19. Preliminary settlement negotiations with GEO began in July 2016 when we met with GEO's counsel.

20. At that meeting, and during the next several months, the parties engaged in extensive, arms'-length discussions about the potential for settlement considering the applicable facts and law concerning liability and damages, as well as GEO's financial condition and outlook as a going concern.

21. In the course of these protracted discussions, GEO produced hundreds of pages of documents concerning its current and forecasted financial condition, which were carefully examined by us and sophisticated bankruptcy counsel in order to evaluate GEO's current financial condition and prospects.

22. Despite many months of considerable effort, however, the parties did not settle.

23. Then, in May 2017, after several months in which settlement negotiations had reached at a stand-still, we participated in a formal mediation with counsel for GEO and Ghazey in a continued attempt at reach a compromise.

24. That mediation was conducted by a well-known and respected neutral mediator.

25. Despite all efforts and a willingness to achieve resolution, no settlement was reached during the mediation session, or as a result of follow-up efforts by the mediator.

26. The parties persisted to seek a resolution and continued to engage in follow-up

negotiations without the assistance of the mediator.

27. Ultimately, those efforts culminated in a multi-hour settlement conference in June 2018, which was directly managed and supervised by this Court, and which resulted in an agreement to settle all IPP claims against GEO, Ghazey, and Steppig.

## THE IPP SETTLEMENT

28. On June 15, 2018, the parties signed the IPP Settlement.

29. The settlement includes the payment by GEO of up to $4,375,000 million in cash to the Indirect Purchaser Settlement Class.

30. Because of GEO's financial condition, a substantial portion of the cash ($3,375,000) will be paid in two installments and up to $1,000,000 is contingent upon the sale of GEO or its assets. The formula and methodology to determine how the final sale contingent installment is calculated is set forth in Exhibit B to the IPP Settlement.

31. Important for IPPs' continued prosecution of their claims against the Non-Settling Defendants is GEO's agreement to assist the IPPs by making certain GEO employees available for in-person interviews with IPP Lead Counsel, to authenticate documents, and to provide truthful declarations, deposition and trial testimony.

32. In addition, as part of the IPP Settlement, Steppig has individually agreed to cooperate with IPPs to prosecute the claims against the Non-Settling Defendants by, *inter alia*, providing a proffer to Interim IPP Lead Counsel regarding certain critical facts that are relevant to IPPs claims that are contained in internal GEO documents which Steppig prepared while employed at GEO. Steppig has also agreed to sit for in-person interviews with Interim IPP Lead Counsel to authenticate documents, and to provide truthful declarations, deposition and trial testimony.

33. The full extent of this cooperation is set forth in more detail in ¶ 9 of the IPP Settlement and consists of, among other things: (1) assisting in the effectuation and implementation of the terms and conditions of the IPP Settlement; (2) providing the names and addresses of known indirect purchasers of Alum during the Class Period; (3) providing

information proffers or written responses to questions raised by Interim IPP Lead Counsel concerning the transactional data GEO has produced; (4) responding to reasonable requests for information from Interim IPP Lead Counsel for the purpose of assisting with the pursuit of claims against the Non-Settling Defendants in this action; (5) submitting to interviews conducted by IPP Lead Counsel; and (6) providing truthful declarations and testimony in IPPs' prosecution of their claims against the Non-Settling Defendants. IPP Settlement, ¶ 9.

34.     To avoid piecemeal notice costs which could lead to confusion and will needlessly increase costs to the Class, IPPs intend to defer distribution of the funds to members of the Indirect Purchaser Settlement Class to either the conclusion of the case, or at an earlier time, if Interim IPP Lead Counsel believe it is economically efficient to do so.

35.     While Interim IPP Lead Counsel may seek Court approval for reimbursement of expenses, IPPs will not make any payments or distributions to members of the Indirect Purchaser Settlement Class without Court approval.

36.     None of the Settlement Funds will revert to any of the GEO Settling Defendants unless this Court disapproves the IPP Settlement.

37.     A critical component of the IPP Settlement is the GEO Settling Parties' agreement to provide valuable cooperation to IPPs that will undoubtedly aid in the prosecution of this lawsuit against the Non-Settling Parties.

38.     If the IPP Settlement becomes final, all members of the Indirect Purchaser Settlement Class who do not opt out of the IPP Settlement will release the GEO Settling Parties from all claims arising out of the facts alleged in the CCAC in exchange for the consideration provided in the IPP Settlement Agreement. IPP Settlement, ¶ 15.

39.     The release does not affect IPPs' claims against anyone other than the GEO Settling Parties or with respect to any purchase of Alum by a member of the Indirect Purchaser Settlement Class that was not an indirect purchaser. *Id*

## ADDITIONAL FACTS RELEVANT TO *GIRSH* FACTORS

40. The IPP Settlement is the result of extensive arms'-length negotiations undertaken in good faith by highly experienced plaintiff and defense counsel.

41. Before the IPP Settlement was reached, the IPPs requested and received detailed information from GEO concerning its current and projected financial condition and potentially applicable insurance coverage.

42. The IPP Settlement was only reached after the IPPs had the opportunity to conduct a targeted review of the document productions in this case, consisting of over 5,000,000 documents.

43. Throughout every stage in the mediation, negotiation, and Court-led settlement conference process, the parties weighed the strengths and weaknesses of IPPs' claims and the GEO Settling Parties' defenses, including consideration of, among other issues, liability, causation, and damages.

44. The parties engaged in intensive bargaining over the merits and value of Plaintiffs' claims.

45. Interim IPP Lead Counsel enlisted the assistance of very experienced bankruptcy counsel, who specialize in evaluating the financial condition of troubled companies like GEO in order to weigh the risks of settling with GEO or forcing it to re-enter bankruptcy proceedings (again), which Interim IPP Lead Counsel concluded was extremely likelyif GEO was not able to resolve its exposure in these consolidated cases by way of settlement.

46. Because of the extensive, arms'-length bargaining involved, there is no issue (or even a suggestion) that there is any collusive aspect to the proposed IPP Settlement. Balancing the risks and resources, the proposed settlement, is a fair, reasonable, and adequate result.

47. The undersigned are each highly experienced antitrust attorneys who have served as lead class counsel in numerous complex antitrust actions, having collectively resolved class cases amounting to billions of dollars during our respective careers.

48. Based upon our extensive experience, we strongly recommend approval of the

IPP Settlement.

49. The IPP Settlement is fully supported by Creston. Formal approval by the City Council for the City of Homestead is required and should be granted shortly after this filing.

50. Given the stage of the litigation, and the fact that there is likely to be an appeal of any final judgment, this case, absent settlement, is unlikely to conclude for at least several more years during which GEO's financial condition may deteriorate further and available insurance proceeds will continue to be depleted through continued litigation.

51. The IPP Settlement was only reached after conducting extensive discovery. IPPs conducted targeted searches of the documents produced in this case. They have also examined GEO's current and forecasted financial condition, as well as all known and applicable insurance policies in order to maximize the amount of funds available for settlement.

52. Based upon our collective, extensive, and relevant experience, while we believe the IPP case to be strong, there remain significant risks of establishing liability, damages and maintaining a class action on behalf of indirect purchaser plaintiffs through trial.

53. Here, given GEO's current and projected financial condition, combined with the fact that GEO also faces claims brought on behalf of a class of Direct Purchaser Plaintiffs and also direct action plaintiffs, the IPP Settlement best ensures that the IPPs recover the maximum amount possible while positioning themselves to best avoid their recovery being wiped out as a result of GEO's liabilities forcing it seek bankruptcy protection.

54. When weighed against the time, expense and potential risk of further litigation, including an adverse ruling on summary judgment or *Daubert*, or losing at trial, or at the class certification stage, together with the fact that GEO's counsel represented that GEO re-filing for bankruptcy protection was highly probable if GEO was not able to resolve its exposure in this case by way of settlement, the IPP Settlement is a reasonable compromise that gives members of the Indirect Purchaser Settlement Class certain recovery and the GEO Settling Parties' cooperation in IPPs' continued prosecution of their claims against the remaining Defendants who currently all face the prospect of joint and several liability.

55. GEO was able to negotiate a relatively lenient fine as part of its guilty pleas because of its extremely precarious financial condition. And even then, GEO was able to further secure the Government's and Court's permission to pay that reduced fine in yearly installments, in part, because of that tenuous financial condition.

56. After extensively analyzing thousands of pages of GEO's financial statements and other documents reflecting GEO's current financial condition, and after analyzing GEO current secured debt structure and other debt obligations with the assistance of experienced and skilled bankruptcy counsel, the undersigned concluded that the settlement achieved here was a preferable outcome for the IPP Class as compared to prospect of filing and pursuing a general unsecured claim in any bankruptcy proceeding initiated by GEO.

57. Based on the analysis of GEO's individual indirect sales of Alum, the monetary recovery from GEO represents a substantial recovery of the IPPs' single damages.

58. Given GEO's current and projected financial condition, combined with the fact that GEO also faces claims brought on behalf of a class of Direct Purchaser Class Plaintiffs and also direct action plaintiffs, the IPP Settlement best ensures that the IPPs recover the maximum amount possible while positioning themselves to best avoid their recovery being wiped out as a result of GEO's liabilities forcing it seek bankruptcy protection.

59. When weighed against the time, expense and potential risk of further litigation, including an adverse ruling on summary judgment or *Daubert* motions, or losing at the class certification stage, or at trial, the IPP Settlement is a reasonable compromise that gives members of the Indirect Purchaser Settlement Class certain recovery and the GEO Settling Parties' cooperation in IPPs' continued prosecution of their claims against the remaining Defendants who currently all face the prospect of joint and several liability.

**FACTS PERTAINING TO PRELIMINARY APPROVAL OF THE SETTLEMENT CLASS**

60. IPPs seek certification of the following Indirect Purchaser Settlement Class:

> All persons or entities that purchased liquid aluminum sulfate in Alabama, Arkansas, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin indirectly from a Defendant or a co-Conspirator and not for resale from January 1, 1997 through February 28, 2011.

IPP Settlement, ¶ 1.r.

61. While IPPs cannot state the exact number of Indirect Purchase Settlement Class Members, it is easily in the thousands, if not tens or hundreds of thousands which or who are geographically dispersed among the States listed in definition of the Class above.

62. IPPs' allegations in the CCAC focus primarily on the illegality of the conduct of Defendants—an issue that, by definition, does not vary for any class member.

63. All Indirect Purchaser Settlement Class Members share the following legal and/or factual questions:

- whether Defendants and their co-conspirators conspired to fix prices, rig bids, and allocate customers of Alum sold in the United States;

- the duration and extent of the alleged conspiracy;

- the identity of the conspirators;

- the effect of the conspiracy on the prices of Alum sold in the United States during the Settlement Class Period;

- whether Defendants engaged in fraudulent concealment;

- whether the alleged conspiracy violated the Sherman Act, § 1; and

- the nature and extent of damages to which Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class are entitled.

64. Working with Lynda Young, a notice expert with A. B. Data, Ltd ("A.B. Data"), IPP Counsel have formulated a robust notice plan ("Notice Plan") to inform the Class of the IPP Settlement. A copy of the Form Notice (defined below) is attached as Exhibit 4 to the Declaration of Linda V. Young ("Young Decl."), which is attached to the Motion. A copy of the

Notice Plan is attached as Exhibit 2 to Young Decl.

65. The form notice ("Form Notice") informs members of the IPP Class of the material terms of the IPP Settlement, including both the relief it provides and the releases that will apply to class members. Young Decl., Ex. 4, ¶ 4.

66. It further describes the nature of the action, the definitions of the settlement class, and the availability of, and procedures for, objecting or opting out of the IPP Settlement. *Id*., Proposed Class and ¶ ¶ 2,3, and 6-17.

67. As to the Notice Plan, IPPs have selected a respected and qualified notice and settlement claims administrator—A.B. Data—to provide notice to the IPP Class. Young Decl. IPP Lead Counsel has worked with A. B. Data in other similar cases.

68. The Notice Plan includes:

- direct-mail notice *via* email to potential class members in the following industries: waste and water treatment facilities; golf course superintendents and sports field management; textile production facilities; poultry producers; and pulp and paper manufacturing facilities;

- publication notice consisting of multi-week banner advertisements on the websites of the following national trade publications: Municipal Sewer & Water (www.mswmag.com), Treatment Plant Operator (www.tpomag.com); Waste & Water Digest (www.wwdmag.com); Athletic Turf (www.athleticturf.net); Golf Course Management (www.gcmonline.com); Textile World (textileworld.com); Poultry Times (www.poultrytimes.com); Pulp & Paper Week (www.risinfo.com/product/ppi-pulp-paper-week/); and Technical Association of Pulp & Paper Industry (www.tappi.org);

- publication notice in *The Wall Street Journal*; and

- dissemination of a news release *via* Business Wire to more than 10,000 newsrooms, including print, broadcast, and digital media, across the United States, as well as to trade publications of the following relevant trade industries: Construction & Property: Architecture; Construction & Property: Landscape; Construction & Property: Urban Planning; Energy: Utilities; Environment; Manufacturing: Chemicals/Plastics; Manufacturing: Packaging; Manufacturing: Textiles; Natural Resources: Agriculture; Natural Resources: Forest Products; Natural Resource: Other; Public Policy Government: State/Local.

Young Decl., Ex. 2 at pp. 4-10.

69. Pursuant to the IPP Settlement Agreement, GEO is contractually obligated to

serve notice of the settlement on appropriate State and Federal officials. IPP Settlement, ¶ 22.

Pursuant to the laws of the United States and under the penalties of perjury, the foregoing is true and this Joint Declaration is Executed in Chicago, IL and Miami, Fl. respectively, this 29 day of June, 2018.

| | |
|---|---|
| /s/ *Marvin A. Miller* | /s/ *Jay B. Shapiro* |
| Marvin A. Miller | Jay B. Shapiro |