**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In Re Liquid Aluminum Sulfate Antitrust Litigation* | Case No. 16-md-2687 (JLL) (JAD) |

### <u>DECLARATION OF LINDA V. YOUNG</u>

**STATE OF WISCONSIN**   )
                          ) **ss.**
**MILWAUKEE COUNTY**   )

1.      I, Linda V. Young, being duly sworn, certify as follows:

2.      I am the Vice President, Media with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data").

3.      I submit this Affidavit at the request of Plaintiffs' Counsel in connection with *In re Liquid Aluminum Sulfate Antitrust Litigation* (Case No. 16-md-2687) (the "Action"), pending in the United States District Court for the District of New Jersey.

4.      This Affidavit is based upon my personal knowledge of and upon information provided by Counsel, A.B. Data staff members and associated media publishers. The information is of a type reasonably relied upon in the fields of media, advertising, and communications.

5.      As the Vice President, Media for the Class Action division of A.B. Data, Ltd., I provide a broad range of services, including market research and analysis, creative development, print and digital media negotiating and buying, advertising, and marketing planning. My curriculum vitae is attached as Exhibit 1.

6.      I have developed and directed some of the largest and most complex national notification programs in the United States[1].

7.      The scope of my work includes notification programs in antitrust litigation, securities settlements, and consumer, ERISA, and insurance settlements. I have developed or consulted on hundreds of notification programs, placing millions of dollars in media notice. My background and expertise are set forth in further detail in paragraph 35, below.

8.      A.B. Data has also been appointed as notice, claims, and/or settlement administrator in thousands of high-volume antitrust, consumer, insurance, ERISA, securities, and wage and hour cases, administering some of the largest and most complex class action settlements of all time, involving all aspects of media, direct, and third-party notice programs, data management, claims administration, and settlement fund distribution. A profile of A.B. Data's background and capabilities is detailed beginning in paragraph 36, below.

9.      The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

10.     A.B. Data was retained to design and implement the Proposed Class Action Notice Program ("Notice Program") in this litigation. I submit this Declaration to describe the elements of the Proposed Notice Program and how it will meet the requirements of the Federal Rules of Civil Procedure ("Rule") 23 and due process to the class members. The Proposed Notice Program is included as Exhibit 2.

---

[1] Attorneys for whom I have developed and directed such national notification programs include the following: Antitrust attorneys: Marvin A. Miller, Miller Law LLC, David M. Buckner, Buckner + Miles; Jill Abrams, Assistant Attorney General, Vermont Office of the Attorney General; Dan Drachler, Zwerling, Schachter & Zwerling, LLP; Eric Fastiff, Lieff Cabraser Heimann & Bernstein LLP. Other attorneys: Anthony Paronich, Broderick & Paronich, P.C.; Nicole M. Zeiss, Labaton Sucharow LLP; Francis A. Bottini, Jr., Bottini & Bottini, Inc.; Paul J. Geller, Robbins Geller Rudman & Dowd LLP; and John Lowther, Doyle Lowther, LLP.

## Notice Program Overview

The objective of the Notice Program is to provide adequate Notice of the proposed partial Settlement to potential Class Members. The Class for this Notice Program has been defined as follows:

> All persons or entities in Alabama, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who indirectly purchased liquid aluminum sulfate, not for resale, which was manufactured, produced or supplied by Defendants or their unnamed co-conspirators from January 1997 through February 28, 2011.

11.     Excluded from the Class are Defendants, their co-conspirators, whether or not named in this Complaint, and their representatives, parents, subsidiaries and affiliates, and all federal governmental entities.

12.     The Proposed Notice Program is designed to reach the greatest practicable number of Class Members and ensure that they will have the opportunity to be exposed to see, review, and understand their legal rights in this litigation.

13.     As detailed below, in my opinion, the Proposed Notice Program represents the best notice practicable under the circumstances.

## Proposed Notice Program

14.     Although each case is unique, the methods and tools used in developing this Notice Program have been employed in many other court-approved notice plans.

**Media Notice Target Audience**

15.     To develop the target audience, we researched liquid aluminum sulfate ("Alum") and its uses to develop a target audience of potential Class Members. This information also assisted in determining the most appropriate media vehicles that would best target potential Class Members and provide them with the opportunity to see and respond to the Notice. It has been determined that Alum, a chemical coagulant, is used in several industrial, manufacturing, public works, landscape management, and farming processes:

- To treat drinking and waste water;

- To alter the pH of soil;

- To clarify and to control algae growth in lakes, ponds and other water features;

- To fix dyes to textiles;

- As a litter amendment for ammonia control in poultry houses; and

- In the manufacturing of pulp and paper.

Based on the industry and business information described above, the Proposed Notice Program will deliver an efficient and effective plan for reaching unidentified Class Members and entities.

16.     The Proposed Program includes a combination of national print media, targeted national trade websites and their communication to subscribers, and direct notice via email.

**Media Placement Summary**

17.     Direct mail Notice via email will be sent to potential Class Members in the following industries:

- Water and waste treatment facilities;

- Golf course superintendents and sports field management;

- Textile production facilities;

- Poultry producers; and

- Pulp and paper manufacturing facilities.

The email will include the Summary Notice which has the legal rights of all Class Members, the steps they must take to join the Class, a link to the case specific website and the toll-free telephone number of the case specific call center.

18.     A.B. Data will cause a true and correct copy of the Summary Notice to be published in the *Wall Street Journal* to reach professionals and executives in manufacturing facilities, sports management and water and waste treatment facilities.

19.     A.B. Data will place print ads containing the Summary Notice in the following trade publications targeting professionals in a variety of industries that purchase Alum.

- *Municipal Sewer & Water;*

- *Treatment Plant Operator;*

- *Water & Waste Digest;*

- *Athletic Turf;*

- *Golf Course Management;*

- *Textile World;*

- *Poultry Times;*

- *Pulp & Paper Week* (digital e-newsletter); and

- *TAAPI* (Technical Association of Pulp & Paper Industry).

## Digital Media

20.     Banner ads will be run on the following national trade publication websites for 30 days reaching professionals in the target industries.

- https://www.mswmag.com/ (*Municipal Sewer & Water*);

- https://www.tpomag.com/ (*Treatment Plant Operator*);

- https://www.wwdmag.com/ (*Water & Waste Digest*);

- http://athleticturf.net/ (*Athletic Turf*);

- http://gcmonline.com/ (*Golf Course Management*);

- http://www.textileworld.com/ (*Textile World*); and

- http://www.poultrytimes.com/ (*Poultry Times*).

## Earned Media

21.     A news release regarding the case will be distributed via Business Wire distribution service to announce the proposed partial Settlement to more than 10,000 newsrooms across the United States, including those in print, broadcast, and digital media. It will also be distributed to trade publications relevant to the manufacturing and waste water fields.

## Form and Content of Notices

22.     As provided by Plaintiffs' Counsel, attached as Exhibit 3 is a copy of the Proposed Summary Notice for this litigation. The Long-Form Notice, attached as Exhibit 4, will be available on the case website. The Notices effectively communicate information about the lawsuit. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." A.B. Data applies the plain-language requirement

in drafting notices for all class action cases.

23.     The Proposed Summary Notice effectively communicates, in clear, concise, plain language, information about the Notice of partial Settlement, including the name of the Action, the purpose of the Notice, the definition of the Class, the names of the Plaintiffs and Defendants, the jurisdiction, and key hearing and filing dates.

24.     Additionally, the Summary Notice provides substantial information, including the specific instructions Class Members must follow to properly exercise their rights and direct potential Class Members to the case website and toll-free telephone number via which they can obtain additional background information about the issues in the Action.

25.     The Long-Form Notice will be available on the case website. It will include background information about issues in the Action and details about the case, along with an in-depth explanation of Class Members' rights and options. Both Notices are designed to encourage readership and understanding in a well-organized and reader-friendly format. A.B. Data's team of executives, professional proofreaders, and graphic design specialists will ensure that the Notice documents are in plain language, meet the requirements of due process, and are clear, concise, accurate, and easy to understand.

26.     The banner ads will provide a visual element, along with brief attention-generating copy to quickly capture the attention of potential Class Members. The ads will inform them of the case, incite them to click for further information, and take them directly to the case website, where they will find important Court documents, deadlines and can file a claim.

**<u>Effectiveness of Notice Program</u>**

27.     It is my opinion that the foregoing constitutes an effective Notice Program for this Class for Notice of partial Settlement.

28.     As a Notice Program that primarily targets entities and consumers which have purchased a product used in large quantities by manufacturers, water/waste treatment centers, agriculture and sports facilities, data to quantify the reach of this program is not available through traditional media resources, such as MRI and comScore that provide accredited media research. Based on the trade-media resources for the target industries, some of which state that they deliver, in the words of one such source, "80% of all companies in the water supply and wastewater system industry," A.B. Data believes the Proposed Notice Program delivers at a minimum 80% reach to the potential Class members and satisfies Rule 23 requirements and due process. The number of exposure opportunities to the Notice information is adequate and reasonable under the circumstances. The overall Notice Program adheres to the standards employed by the courts for such programs to effectively reach members of national classes primarily comprised of business entities. The Notice Program, as designed, fully complies with best practices of the industry, Rule 23 of the Federal Rules of Civil Procedure, and due process requirements.

## Website

29.     In addition to posting case-related documents on A.B. Data's own website and providing the documents to the relevant law firms for posting on their websites, A.B. Data will publish a case-specific website. A.B. Data will develop this secure website, generate strategic search-engine placements and rankings, and implement, host, and maintain this website, one where potential Class Members will have access to relevant case information and updates, key documents, and applicable deadlines. Pixels will be placed on the website to ensure accurate optimization.

30.     This official website will be easy to navigate and will contain detailed information and features, including the following:

- A downloadable Notice;

- Background information;

- Contact information;

- Frequently asked questions and their answers;

- Court documents;

- Links to important information;

- Other key documents;

- Site promotion through registration with search engines;

- 24-hour monitoring and support; and

- Detailed traffic reporting.

31.     A.B. Data will also update the website with regard to applicable developments in the case.

**<u>Toll-Free Phone Line</u>**

32.    A.B. Data's call center, which operates 24/7, contains state-of-the-art telecommunications systems designed to meet the requirements of any administration project as well as to maximize the financial and service goals of the administration.

33.    A.B. Data will establish and maintain a case-specific toll-free telephone number to support the administration with live operators during business hours. Our goal is to have all calls received during business hours answered within 20 seconds. Messages received after business hours will be returned the following business day. Services will specifically include the following:

    a.  Inbound toll-free line;

    b.  Interactive voice response system;

    c.  Live operators during business hours;

    d.  Call scripts developed by our experts and approved by Counsel;

    e.  Detailed reporting; and

    f.  Superior customer service.

34.    A.B. Data's call center is managed by full-time staff members familiar with the specific details of this case. Our skilled customer service representatives will be trained using case-specific materials and resources and will employ telephone scripts created by our attorneys and approved by Counsel. A.B. Data's quality assurance and control procedures will ensure the transmission of clear and accurate information to potential Class Members in a courteous and professional manner.

## <u>Relevant Experience – Linda Young</u>

35.     I have developed or consulted on hundreds of notification programs, placing millions of dollars in media notice. Selected cases include the following:

a     **Antitrust Settlements Notice Programs:** *In re Polyurethane Foam Antitrust Litigation*, MDL Docket No. 2196 (United States District Court, Northern District of Ohio); *In re Warfarin Sodium Antitrust Litigation*, MDL No. 98-1232 (SLR), United States District Court, District of Delaware; *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-MDL-1317, United States District Court, Southern District of Florida; *In re: Cardizem CD Antitrust Litigation*, 99-MD-1278, United States District Court, Eastern District of Michigan; *In re: Pennsylvania Baycol Third-Party Payor Litigation*, September Term, 2001, Case No. 001874, Court of Common Pleas, Philadelphia County, South Carolina; *In re: Remeron Antitrust Litigation*, 03-CV- 00085, United States District Court, District of New Jersey; *In re: Relafen Antitrust Litigation*, 01-12239-WGY, United States District Court, District of Massachusetts; *In re: Buspirone Antitrust*, 01-MD-01413, United States District Court, Southern District of New York; *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation,* Docket No. 2:02cv442, United States District Court, Eastern District of Virginia; *Cipro Cases I and II*, Judicial Council Coordination Proceedings Nos. 4154 and 4220, Superior Court of the State of California, County of San Diego; *In Re: Potash Antitrust Litigation (II)*, Case No. 1:08-CV-6910, in the United States District Court for the Northern District of Illinois; *In re: Optiver Commodities Litigation*, Case No. 1:08-cv-06842-LAP, United States District Court, Southern District of New York; *In re: Rough Rice Commodity Litigation*, Case No. 11-cv-00618, United States District Court, Northern District of Illinois; *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Futures Action)*, 10-cv-3617 (WHP) ("Futures Action"), United States District Court,

Southern District of New York; and *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Physical Action)*, 10- cv-3617 (WHP) ("Physical Action"), United States District Court, Southern District of New York; *Mahoney v. Endo Health Solutions, Inc., et al.*, Case No. 15-cv-9841 (DLC)*,* United States District Court, Southern District of New York; *State of New York, et al. v. Cephalon, Inc., et al.*, Civil Action No. 16-cv-01833, United States District Court, Eastern District of Pennsylvania;

      b.  **Securities Settlements Notice Programs:** *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), United States District Court, Southern District of New York; *High Tide Harry's, Inc. v. Waste Management Inc. of Florida*, 05-CA-009441, 9th Judicial Circuit, State of Florida; *In re: Campbell Soup Co. Securities Litigation*, 00-152-JEI, United States District Court, District of New Jersey; *Abrams v. Van Kampen Funds, Inc.*, 01-C-7538, United States District Court, Northern District of Illinois; *Stevelman v. Alias Research, Inc.*, 591-CV-00682 (EBB), United States District Court, District of Connecticut; *In re: Nuko Information Systems, Inc.,* C-97-20471 EAI, United States District Court, Northern District of California; *In Re: General Electric Co. Securities Litigation*, Civ. No. 09-CIV-1951 (DLC) ECF CASE, United States District Court, Southern District of New York; *In Re: PAR Pharmaceutical Securities Litigation*, Master File No. 2:06-03226 (ES) (SCM), United States District Court, District of New Jersey; *In Re: ING Groep, N.V. ERISA Litigation*, Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia; *In Re: Fannie Mae 2008 Securities Litigation*, Case No. 08-CV-7831, United States District Court, Southern District of New York; *In Re: Massey Energy Co. Securities Litigation*, Civil Action No. 5:10-cv-00689-ICB, United States District Court, Southern District of West Virginia; and

      c.  **Consumer Settlements Notice Programs:** *Picant v. Premier Cruise Lines*, 96-

06932-CA-FN, 18th Judicial Circuit, State of Florida; *In Re: Benzion v. Vivint, Inc.*, Case No. 12-cv-61826-WJZ, United States District Court, Southern District of Florida; and *In Re: ADT Security Services, Inc.*, Case No. 1:11-cv-1925, United States District Court, Northeastern District of Illinois.

### Relevant Experience – A.B. Data, Ltd.

36.     Additionally, A.B. Data and its staff have developed and implemented notice plans in numerous antitrust cases, including *In re: Marine Hose Antitrust Litigation*, 08-MDL-1888, United States District Court, Southern District of Florida; *Ace Marine Rigging v. Virginia Harbor Services, Inc.,* SA-CV-11-00436, United States District Court, Central District of California; *In re: Iowa Ready-Mix Concrete Antitrust Litigation*, 5:10-CV-004038-MWB, United States District Court, Northern District of Iowa; *In re Ready-Mixed Concrete Antitrust Litigation*, Case No. 1:05-cv-00979-SEB-JMS, United States District Court, Southern District of Indiana; *In re Potash Antitrust Litigation (II)*, Case No. 1:08-CV-6910, United States District Court, Northern District of Illinois; and *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11 MDL 2262 (NRB), United States District Court, Southern District of New York (Exchange- Based Action).

37. A.B. Data has also been appointed as Notice, Claims, and/or Settlement Administrator in hundreds of high-volume consumer, civil rights, insurance, antitrust, ERISA, securities, and wage and hour cases, administering some of the largest and most complex class action settlements of all time, involving all aspects of media, direct, and third- party notice programs, data management, claims administration, and settlement fund distribution.

38.     A.B. Data served as one of the principal Notice Administrators in *In re Holocaust Victim Assets Litigation*, United States District Court, Eastern District of New York, Case No.

CV-96-4849, Phase I and Phase III ("HVAP"), with a settlement amount of $1.2 billion.

A.B. Data designed, analyzed, and implemented notice, document management systems and/or claims administration, and processing in the matter. As a court-appointed Notice Administrator, A.B. Data played a key role in the worldwide Phase I Notice that resulted in collection of more than 500,000 initial questionnaires. In Phase III, A.B. Data delivered notice to over 10,000 Jewish communities in 109 countries and administered international help and call centers. In Phase I and Phase III, A.B. Data's staff personally assisted more than 100,000 potential claimants with completion of the initial questionnaires and claim forms. A.B. Data was in charge of the claims-management process and the submission of all claims.

39.     In addition, A.B. Data created a class-appropriate notice targeting Romani (Gypsies) in 48 countries and directed hundreds of staff to communicate orally and directly with Romani communities and individuals. A.B. Data notified more than two million people, and as designated by the International Organization for Migration ("IOM"), directly assisted more than 22,000 Romani in 17 countries of Central and Eastern Europe with claim completion. A.B. Data was in charge of managing the claims for submission for the Special Master in Geneva, Switzerland.

40.     In the German Forced Labour Compensation Program ("GFLCP"), as designated by the Special Master, IOM, A.B. Data located more than 43,000 Romani survivors in 17 countries of Central and Eastern Europe who were potentially eligible for humanitarian aid. A.B. Data created a comprehensive database for GFLCP/HVAP and directly assisted more than 11,000 Romani in eight European countries with claim completion. A.B. Data was in charge of managing the claims for submission for the Special Master in Geneva, Switzerland.

41.     The International Commission on Holocaust Era Insurance Claims (**"ICHEIC"**) assigned A.B. Data to conduct a domestic and worldwide outreach program resulting in over 72,000 claims. A.B. Data launched and coordinated international help, call, and mail-distribution centers, provided direct assistance with claim completion, and consulted to ICHEIC in various areas, including multilingual data and database management, postal issues, and historical and geographical matters that directly influenced the eligibilitycriteria.

42.     More recently, in February 2011, A.B. Data was appointed the Administrative Director of Project HEART (Holocaust Era Asset Restitution Taskforce) to spearhead all efforts to provide the essential tools, strategy, and information designed to ultimately enable the Government of Israel and its partners to secure a measure of justice for eligible Jewish victims and their heirs.

43.     Since February 2011, Project HEART has become one of the most comprehensive multilingual notice campaigns ever designed, implemented, and undertaken, covering 137 countries and including the use of paid media, earned media, direct-mail notice, Internet notice, organizational outreach, and targeted outreach, as well as a video message displayed every half hour on an electronic billboard over Times Square in New York.

44.     As part of its efforts, A.B. Data launched a multilingual, interactive website with several million hits since April 2011, established a 24-hour call center using 13 languages, distributed more than 500,000 documents to potentially eligible families of Holocaust victims

handled over 80,000 calls, conducted archival research, and created the most comprehensive online repository in history, listing more than 1.5 million looted Holocaust-era properties. In addition, A.B. Data reached out to over 15,000 nongovernmental organizations that were engaged in the project, assisted thousands of Holocaust victims and their heirs with their claims, established an active social media campaign, held numerous press conferences, participated in dozens of radio programs, and processed tens of thousands of claims.

45.     Additional high-profile cases in which A.B. Data has effectuated successful notice campaigns include: the following: *Wyatt v. El Paso Corporation* ($285-million settlement); *In re Massey Energy Co. Securities Litigation* ($265-million settlement); *In re Fannie Mae 2008 Securities Litigation* ($170-million settlement); *In re Symbol Technologies, Inc. Securities Litigation* ($139-million settlement); *In re Lehman Brothers Equity/Debt Securities Litigation* ($120-million settlement); *In re Lernout & Hauspie Securities Litigation* ($120.5-million settlement); *Perez v. Rent-A-Center, Inc.* ($109-million settlement); *In re Reliant Securities Litigation* ($75-million settlement); *In re Ready-Mixed Concrete Antitrust Litigation* ($50-million settlement); *In re General Electric Company Securities Litigation* ($40-million settlement); *In re Marsh ERISA Litigation* ($35-million settlement); *Carlson v. State of Alaska, Commercial Fisheries Entry Commission* ($33.5-million settlement); and *In re Marine Hose Antitrust Litigation* ($21.7-million settlement).

*46.*     A.B. Data has further orchestrated dozens of other Notice Programs, all of which were court-approved, including but not limited to *Bauman v. Superior Financial Corporation*, Civ. Action No. 4-01-CV-00756 GH, United States District Court, Eastern District of Arkansas, Western Division; *In re Visionamerica, Inc. Securities Litigation*, Master File No. 3-00-0279, United States District Court, Middle District of Tennessee, Nashville Division; *In re Andrx*

*Corporation, Inc. & Taztia XT Securities Litigation*, Case No. 02-60410-CIV-UNGARO-BENAGES, United States District Court, Southern District of Florida; *In re Supervalu, Inc. Securities Litigation*, Civil Action No. 02-CV-1738 (JNE/JGL), United States District Court, District of Minnesota; *Stockholders v. Rayovac Corporation*, Civil Action No. 02-Cv-0308, United States District Court, Western District of Wisconsin; *In re: Tyson Foods, Inc. Securities Litigation*, Civil Action No. 01-425-SLR, United States District Court, District of Delaware; *Rupp v. Thompson*, File No. C5-03-347, State of Minnesota District Court, County of Lyon, Fifth Judicial District; *In re Pacific Gateway, Inc.*, *Securities Litigation*, Master File No. C-00-1211-PJH, United States District Court, Northern District of California; *In re: Nx Networks Securities Litigation*, Case No. 00-CV-11850 (JLT), United States District Court, District of Massachusetts; *In re International Business Machines Corp. Securities Litigation*, Civ. No. 1:05-cv-6279-AKH, United States District Court, Southern District of New York; *In re Viisage Technology, Inc. Securities Litigation*, Civil Action No. 05-cv-10438-MLW, United States District Court, District of Massachusetts; *Adams v. Crown Auto Dealerships, Inc.*, Case No. 8:04-CV-0323-T-27-MSS, United States District Court, Middle District of Florida, Tampa Division; *Martin v. Foster Wheeler Energy Corporation*, Civil Action No. 3:06-CV-0878, United States District Court, Middle District of Pennsylvania; *In re Bisys Securities Litigation*, Civil Action No. 04-CV-3840 (JSR), United States District Court, Southern District of New York; *In re Motive, Inc. Securities Litigation*, Civil Action No. A-05-CV-923-LY and *Adair v. Motive*, Case No. A-06-CA-017-LY, United States District Court, Western District of Texas; *In re Reliant Securities Litigation*, Civil Action No. H-02-1810 (Consolidated), United States District Court, Southern District of Texas, Houston Division; *In re Renaissance Re Holdings Ltd. Securities Litigation*, Master File No. 1:05-CV-06764-WHP, United States District Court, Southern District of New York; *In re*

*Suprema Specialties Securities Litigation*, Master File No. 02-168 (WHW), United States District Court, District of New Jersey; *In re: CP Ships Ltd. Securities Litigation*, Case No. 8:05-MD-1656-T-27 TBM, United States District Court, Middle District of Florida; *Mantzouris v. Scarritt Motor Group*, Case No. 8:03-CV-0015-T-30-MSS, United States District Court, Middle District of Florida; *Croxall v. Courtesy Group*, Case No. 03-6201, Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil Division; *Cotton v. Ferman Management Services Corporation et al.*, Case No. 02-08115, Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, Civil Division; *FW Transportation, Inc. v. Associates Commercial Corporation*, Case No. C200000084, District Court of Johnson County, Texas, 18th Judicial District; *Hess v. Oriole Homes Corporation*, Case No. CA 02-13794-AA, Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida; *Alakayak v. All Alaskan Seafoods, Inc.*, Case No. 3AN-95-4676 CIV, Superior Court of the State of Alaska, Third Judicial District at Anchorage; *Family Open MRI, Incorporated, as Assignee of Martha Pulido v. Direct General Insurance Company*, Civ. Action No. 03-4175, Div. G, Tampa, Hillsborough County, Florida; *Hill v. American Medical Security Life Insurance Company and Taxpayers Network, Inc*., Civ. Action No. W-06 CA 322, United States District Court, Western District of Texas; *Parker v. American Medical Security Group and United Wisconsin Life Insurance Company*, No. 04-1-1980-42, Superior Court of Cobb County, State of Georgia; *Fray-Witzer v. Metropolitan Antiques, LLC*, Civil Action No. 02-5827, Superior Court Department of the Trial Court, Suffolk Division, Business Litigation Session; *In re Vonage Initial Public Offering (IPO) Securities Litigation*, Docket No. 07-CV-177 (FLW/LHG), United States District Court, District of New Jersey; *Yingling v. eBay, Inc*., No. C-09-01733 JW (PVT), United States District Court, Northern District of California; *In re Enterprise Wage and Hour Employment*

*Practices Litigation*, MDL No. 2056, United States District Court, Western District of Pennsylvania; *Milford & Ford Associates, Inc. v. Cell-Tek*, *LLC*, C.A. No. 1:09-CV-11261-DPW, United States District Court, District of Massachusetts; *Sokoloski v. Stewart Title Guaranty Company*, Case No. 3:08 cv 236 (AWT), United States District Court, District of Connecticut; *In re RBC Dain Rauscher Overtime Litigation*, Master File: 06-03093 JRT-FLN, United States Court, District of Minnesota; *Fray-Witzer v. Olde Stone Land Survey Company*, C.A. No. 2008-04175, Commonwealth of Massachusetts, Superior Court; *Black v. Metso et al.*, 3:05-CV-1951, United States District Court, Middle District of Pennsylvania; *Ramirez v. Greenpoint Mortgage Funding, Inc.*, Case No. 08-CV-00369 TEH, United States District Court, Northern District of California; *Pereira v. Footlocker, Inc.*, Civil Action No. 07-CV-2157-JCJ, United States District Court, Eastern District of Pennsylvania; *Valuepoint Partners, Inc. v. ICN Pharmaceuticals, Inc.*, Case No. SACV 03-989 DOC (ANx), United States District Court, Central District of California; *Overby v. Tyco International Ltd.*, Case No. 02-CV-1357-B, United States District Court, District of New Hampshire; *In re Take-Two Interactive Securities Litigation*, No. 1:06-cv-00803-RJS, United States District Court, Southern District of New York; *Mayer v. Administrative Committee of the Smurfit-Stone Container Corporation Retirement Plans*, Case No. 1:09-cv-02984, United States District Court, Northern District of Illinois; *D. Michael Collins and Milford & Ford Associates, Inc. v. ACS, Inc.*, Civil Action No. 1:10-CV-11912-RGS, United States District Court, District of Massachusetts; and *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*, Case No. 12-cv-61826-WJZ, United States District Court, Southern District of Florida.

**Resources and Capacity**

47.     A.B. Data is an industry leader in full-service class action notice and settlement administration. Our Notice Programs are known worldwide for their efficiency, effectiveness, affordability, and compliance with Federal Rule of Civil Procedure 23 and due process requirements. We are a recognized expert in carrying out customized Notice Programs in a cost-efficient manner that substantially improves the efficacy of these programs.

48.     Skillful negotiations for paid media placement are paramount in order to maximize the value of paid media. A.B. Data has a long-lasting and well-established network of publisher and digital media contacts, which allow it to orchestrate targeted print placements within the chosen timelines at the lowest possible costs.

49.     Founded in 1981, A.B. Data has earned an international reputation for expertly managing the complexities of class action administration in consumer, securities, ERISA, antitrust, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. A.B. Data's work in all aspects of class action administration has been perfected by decades of experience. Dedicated professionals deliver A.B. Data's all-inclusive services, working in partnership with counsel to administer the notice and settlement programs effectively and efficiently, regardless of size or scope. A.B. Data is the fastest-growing company in its industry, with several billion dollars of settlements currently in various stages of administration.

50.     Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, or printing and distributing millions of checks, A.B. Data matches its human talent and technology to the specific needs of each administration.

51.     A.B. Data offers resources and capacity that enable it capable of expertly administering any class action notice and/or settlement program. A.B. Data offers the highest

level of security and has the in-house capacity to mail four million personalized pieces every 24 hours. A.B. Data's 170,000-square-foot Mail Distribution Center, with its own on-site United States Postal Service ("USPS") substation, is one of America's largest and most advanced facilities. In addition, A.B. Data has been entrusted to Magnetic Ink Character Recognition- (MICR-) print and mail more than twenty million checks in one year alone and has the capacity to print and mail more than one million checks in a day.

## Conclusion

52.     It is my opinion, based on my experience and expertise, that the reach of the target audience and the number of exposure opportunities to the Notice information are adequate and reasonable. In my opinion, the Proposed Notice Program is designed to effectively reach potential class members' attention, and provide them with the information necessary to understand their rights and options. In my opinion, the Notices themselves comply with the plain language requirement of Rule 23. This Proposed Notice Program conforms to the standards employed by A.B. Data in notification programs designed to reach unidentified potential Class Members of settlement groups or Classes that are national in scope and reach narrowly defined entities and demographic targets. In my opinion, the Proposed Notice Program satisfies the requirements of Rule 23 and due process.

I declare under penalty of perjury that the foregoing is true and correct.

Linda V. Young

# EXHIBIT 1

# LINDA V. YOUNG

**Linda.Young@abdata.com**

<u>**EXPERIENCE**</u>

<u>**A.B. Data, Ltd., Milwaukee, WI**</u>

Vice President, Media

Lead the A.B. Data Class Action Administration media team in research, development, and implementation of media notice plans for settlements and other class action administrations. Cases include the following:

**Antitrust Settlements Notice Programs:** *In re Polyurethane Foam Antitrust Litigation*, MDL Docket No. 2196 (United States District Court, Northern District of Ohio); *In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation*, MDL No. 1508, United States District Court, Southern District of New York; *In re Warfarin Sodium Antitrust Litigation*, MDL No. 98-1232 (SLR), United States District Court, District of Delaware; *Blevins v. Wyeth-Ayerst Laboratories, Inc. and American Home Products Corp.*, Case No. 324380, Superior Court of California for the County of San Francisco; *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-MDL-1317, United States District Court, Southern District of Florida; *In re: Cardizem CD Antitrust Litigation*, 99-MD-1278, United States District Court, Eastern District of Michigan; *In re High Pressure Laminate Antitrust Litigation*, Civil Action No. 00C-1989 and Related Cases, Second Circuit Court for Davidson County, Tennessee, 20th Judicial District at Nashville; *In re: Pennsylvania Baycol Third-Party Payor Litigation*, September Term, 2001, Case No. 001874, Court of Common Pleas, Philadelphia County, South Carolina; *In re Remeron End-Payor Antitrust Litigation*, Master File No. 02-CV-2007 (FSH), United States District Court, District of New Jersey; *In re: Relafen Antitrust Litigation*, 01-12239-WGY, United States District Court, District of Massachusetts; *In re: Buspirone Antitrust*, 01-MD-01413, United States District Court, Southern District of New York; *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation,* Docket No.2:02cv442, United States District Court, Eastern District of Virginia; *Cipro Cases I and II*, Judicial Council Coordination Proceedings Nos. 4154 and 4220, Superior Court of the State of California, County of San Diego; *In Re: Potash Antitrust Litigation (II)*, Case No. 1:08-CV-6910, in the United States District Court for the Northern District of Illinois; *In re: Optiver Commodities Litigation*, Case No. 1:08-cv-06842-LAP, United States District Court, Southern District of New York; *In re: Rough Rice Commodity Litigation*, Case No. 11-cv-00618, United States District Court, Northern District of Illinois; *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Futures Action)*, 10-cv-3617 (WHP) ("Futures Action"), United States District Court, Southern District of New York; and *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Physical Action)*,10-cv-

3617 (WHP) ("Physical Action"), United States District Court, Southern District of New York; *Kamakahi and Levy v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*, Case No. 3:11-CV-1781 JCS, United States District Court, Northern District of California; *Mahoney v. Endo Health Solutions, Inc., et al.*, Case No. 15-cv-9841 (DLC), United States District Court, Southern District of New York; *State of New York, et al. v. Cephalon, Inc., et al.*, Civil Action No. 16-cv-01833, United States District Court, Eastern District of Pennsylvania;

**Securities Settlements Notice Programs:** *In re Berkshire Realty Company, Inc. Shareholder Litigation*, C.A. No. 17242, Court of Chancery for the State of Delaware in and for New Castle County; *Lipson v. Simon et al.*, CV 98 4573 (TCP), United States District Court, Eastern District of New York; *In re: Service Corporation International*, Civil Action H-99-280, United States District Court, Southern District of Texas; *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), United States District Court, Southern District of New York; *High Tide Harry's, Inc. v. Waste Management Inc. of Florida*, 05-CA-009441, 9th Judicial Circuit, State of Florida; *In re: Campbell Soup Co. Securities Litigation*, 00-152-JEI, United States District Court, District of New Jersey; *Abrams v. Van Kampen Funds, Inc.*, 01-C-7538, United States District Court, Northern District of Illinois; *In re Seitel, Inc. Securities Litigation*, Civil Action No. 02-1566, United States District Court, Southern District of Texas; *Stevelman v. Alias Research, Inc.*, 591-CV-00682 (EBB), United States District Court, District of Connecticut; *In re Phoenix Leasing Limited Partnership Litigation*, Case No. 173739, Superior Court of the State of California, County of Marin; *In re: Nuko Information Systems, Inc.,* C-97-20471 EAI, United States District Court, Northern District of California; *In re PriceSmart Securities Litigation*, Master File No. 03-Cv-2260-JAH – (BLM), United States District Court, Southern District of California; *In Re: General Electric Co. Securities Litigation*, Civ. No. 09-CIV-1951 (DLC) ECF CASE, United States District Court, Southern District of New York; *In Re: PAR Pharmaceutical Securities Litigation*, Master File No. 2:06-03226 (ES) (SCM), United States District Court, District of New Jersey; *In Re: ING Groep, N.V. ERISA Litigation*, Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia; *In Re: Fannie Mae 2008 Securities Litigation*, Case No. 08-CV-7831, United States District Court, Southern District of New York; *In Re: Massey Energy Co. Securities Litigation*, Civil Action No. 5:10-cv-00689-ICB, United States District Court, Southern District of West Virginia; *In re 2014 Avon Products, Inc. ERISA Litigation*, United States District Court, Southern District of New York; *In re BioScrip, Inc. Securities Litigation*, Civil Action No. 13-cv-6922-AJN, United States District Court, Southern District of New York; *In re BP plc Securities Litigation*, No. 4:10-md-02185, United States District Court, Southern District of Texas; *The Department of the Treasury of the State of New Jersey and Its Division of Investment v. Cliffs Natural Resources Inc. et al.*, Case No. 1:14-cv-1031, United States District Court, Northern District of Ohio; *Laydon v. Mizuho Bank, Ltd., et al.,* No. 12-cv-3419 (GBD) and *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.*, No. 15-cv-5844 (GBD), United States District Court, Southern District of New York; *Sullivan et al. v. Barclays plc, et al.*, No. 13-cv-02811 (PKC), United States District Court, for the Southern District of New York; *In re Eastman Kodak ERISA Litigation*, Master File No. 6:12-CV-06051-

DGL, United States District Court, Western District of New York; *In re NII Holdings, Inc. Securities Litigation*, Civ. No. 1:14-cv-00227-LMB-JFA, United States District Court, Eastern District of Virginia; *In re Nu Skin Enterprises, Inc., Securities Litigation*, Master File No. 2:14-cv-00033-JNP-BCW, United States District Court, District of Utah; *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc. et al.*, Civil No. 12-3070 (JNE/HB), United States District Court, District of Minnesota; *In re TIBCO Software Inc. Stockholders Litigation*, Consolidated C.A. No. 10319-CB, Court of Chancery, State of Delaware; and

**Consumer Settlements Notice Programs:** *Picant v. Premier Cruise Lines*, 96-06932-CA-FN, 18th Judicial Circuit, State of Florida; *McParland and Picking v. Keystone Health Plan Central, Inc.*, Civil Action No. 98-SU-00770-01, Court of Common Pleas, York County, Pennsylvania; *Smith v. American Family Mutual Automobile Insurance Co.*, No. 00-CV-211554, Circuit Court of Jackson County, Missouri; *Duncan v. The Unity Life and Accident Insurance Association, et al.*, Civil Action No. 00-CIV-7621, United States District Court, Southern District of New York; *Duncan v. Columbian Protective Association of Binghamton, New York, and Columbian Mutual Life Insurance Company*, Case No. 00 CIV. 7236 (JGK), United States District Court, Southern District of New York; *Watkins, as Executrix of the Estate of Hines, and as Beneficiary of the Adult Whole Life Industrial Policy of Hines, v. Columbian Mutual Life Insurance Company, a Subsidiary of Columbian Financial Group, and Golden Eagle Mutual Life Insurance Corporation*, Case No. 03 CIV. 8620 (JGK), United States District Court, Southern District of New York; *In Re: Benzion v. Vivint, Inc.*, Case No. 12-cv-61826-WJZ, United States District Court, Southern District of Florida; *In Re: ADT Security Services, Inc.*, Case No. 1:11-cv-1925, United States District Court, Northeastern District of Illinois; *The State of Illinois v. Au Optronics Corporation et al.*, No. 10 CH 34472, Circuit Court of Cook County, Illinois; *State of Washington v. AU Optronics Corporation, et al.*, No. 10-2-29164-4 SEA, King County Superior Court, Washington; *Mey vs. Interstate National Dealer Services, Inc. et al.*, Case No. 1:14-cv-01846-ELR, United States District Court, Northern District of Georgia; *Estakhrian et al. v. Obenstine, et al.*, Case No. CV11-3480-FMO (CWx), Nevada District Court; *Krakauer v. DISH Network,L.L.C.*, Civil Action No. 14-cv-333, United States District Court, Middle District of North Carolina; *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR, United States District Court, Northern District of California; *Lyons, et al., v. Litton Loan Servicing, LP, et al.*, Case No. 13-cv-00513, United States District Court, Southern District of New York; *Katz et al. v. Live Nation, Inc. et al.*, Civil Action No. 1:09-cv-003740-MLC-DEA, United States District Court, District of New Jersey; and *Bergman et al. v. DAP Products Inc. et al.*, Case No. 14-cv-03205-RDB, United States District Court, District of Maryland.

## Mile Marker Zero, LLC, Greenville, SC

Principal

Directed the development of marketing and advertising plans for national and local clients, including the following:

- **Complete Claim Solutions, Inc.**
  - o Developed media recommendations and implemented newspaper, magazine, and press release notice programs with budgets ranging from $500 to as high as $2 million for third-party-payor settlements, including settlements regarding Terazosin Hydrochloride (Hytrin), Coumadin-Warfarin, Augmentin, Cardizem, Remeron, Relafen, Buspar, and Taxol.
  - o Developed and implemented media plans for securities settlements in cases involving such firms as Morgan Stanley, First Central Financial, Waste Management, Campbell Soup, Van Kampen, Alias Research, and Nuko Information Systems. Some plans included running newspaper ads in more than 50 city newspapers over a single two-week period.
  - o Developed media recommendations and implemented newspaper and magazine advertising campaigns on both regional and national levels for consumer and insurance settlements in cases involving such firms as Premier Cruise Lines and Unity Life Insurance Company.

Mile Marker Zero worked with Complete Claim Solutions, Inc., for six years as its sole media planning and buying partner. Mile Marker Zero developed and implemented national and international print and earned media notice programs to support the notification of consumers and third-party payors in cases such as the following:

- Coumadin-Warfarin
- Hytrin
- Cardizem
- Buspar
- Nuko
- Columbian Mutual Life
- Freeport-McMoRan Sulphur, Inc.
- Relafen
- Remeron
- Service Corporation International
- Premarin

- Taxol
- Waste Management
- Campbell Soup
- Alias Research
- Augmentin
- Keystone Health Plan
- Seitel, Inc. Securities

- 3M-Scotch
- Baycol
- SmartForce, PLC

- PriceSmart

- Van Kampen
- Unity Life Insurance Co.
- Premier Cruise Lines
- MedCo
- Berkshire Realty
- Platinol
- Transaction System Architects
- Eaton Vance Corp.
- Cipro
- American Family Mutual Automobile Insurance Co.
- Morgan Stanley

Exhibit 1
Linda V. Young CV

- **The Arthritis Foundation** – the largest U.S. not-for-profit organization that
  supports research regarding more than 100 types of arthritis and related conditions.
  o Wrote and produced national sponsorship programs to generate financial support for
    the Foundation.
  o Wrote and produced collateral materials to support national Foundation events such as
    *Joints in Motion* and the *Arthritis Walk.*

- **Papa Murphy's Pizza** – the fifth-largest pizza chain in the U.S., with over 1,000 units in the
  U.S. and Canada.
  o Developed and implemented grand opening advertising plans for more than 50 stores in
    40 cities.
  o Utilized direct mail, local newspapers, outdoor/billboard advertising, and local radio to
    promote grand opening activities.

- **FIERO** (Fire Industry Equipment Research Organization) – national fire services
  association.
  o Developed collateral material and advertising campaign to generate awareness of
    association and to announce its annual symposium on fire station design and
    safety. Symposium exceeded FIERO goals by hosting more than 500 fire-fighting
    support personnel. FIERO also saw a 25% increase in membership during this
    period.

- **TeamPoint Systems, Inc.** – a global software company with over 20,000 users.
  o Directed graphic design, writing, and development of company
    website, www.teampointsystems.com, which received over 8,000 visits
    monthly.
  o Produced brochures, signage, and promotional materials for attendance at the national
    SITEK convention.
  o Interviewed TeamPoint customers and wrote case studies about their successful use of
    TeamPoint's products. After putting the case studies on the website, visit time lengthened
    from an average of three minutes to more than eight minutes per visit. Sales also
    increased by 45% and have risen steadily.

## <u>Denny's Corporation, Spartanburg, SC</u>

Senior National Advertising Manager

- Partnered with Brand Marketing Director of major worldwide restaurant chain in the
  development of new product promotions and determined all marketing materials needed to
  support business initiatives and ensure message consistency; directed five national U.S.
  advertising agencies and one Canadian agency in development and implementation of
  advertising and media strategies, objectives, and tactics. Ensured that all advertising
  reinforced brand positioning and marketing mission.

Exhibit 4
Linda V. Young CV

**The Coca-Cola Company, Atlanta, GA**

Advertising Services Manager

- Presented and reinforced general market, African-American, and Hispanic brand strategies, objectives, and positioning for both carbonated soft drinks and noncarbonated beverages to company's bottler system and local agencies; developed local vendor promotions with bottlers and agencies that strengthened brand positioning and increased case volume, including development of POP materials, merchandising displays, and broadcast creative advertising.

**McCann Erickson, Atlanta, GA**

Media Supervisor

- Supervised six advertising professionals in media planning and buying for travel, B2B, consumer retail, and consumer packaged goods accounts.

**EDUCATION**

- Bachelor of Business Administration, University of North Dakota.

# EXHIBIT 2

**Exhibit 2**



A.B. Data, Ltd.

Class Action Administration Company

600 A.B. Data Drive
Milwaukee, WI 53217

# Proposed Notice Program

_____

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687
(JLL) (JAD)
United States District Court for the District of New Jersey

June 29, 2018

# PROPOSED NOTICE PROGRAM

## Case Background

This Proposed Notice Program is submitted by A.B. Data, Ltd. ("A.B. Data") in connection with *In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687 (JLL) (JAD), a case before the United States District Court for the District of New Jersey. This document outlines the efforts that will be made to provide notice to the Class.

As stated in Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, "individual notice to all members who can be identified through reasonable effort" is the best notice option, either by email notice to individuals or entities or direct mailed notice. For those individuals and entities not reached through direct Notice or are unidentified potential Class Members, a paid-media Notice Program is necessary to reach them.

Because direct notice in this case will not reach all potential Class Members, a paid-media Notice Program targeting unidentified Class Members is necessary.

## Class Definition

The Class for this Notice Program has been defined as follow:

> All persons or entities in Alabama, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who indirectly purchased liquid aluminum sulfate, not for resale, which was manufactured, produced or supplied by Defendants or their unnamed co-conspirators from January 1997 through February 28, 2011.

> Excluded from the Class are Defendants, their co-conspirators, whether or not named in this Complaint, and their representatives, parents, subsidiaries and affiliates, and all federal governmental entities.

Although the exact number of Class Members is not yet known with certainty, based on the nature of the trade and commerce involved by potential Class Members, the Plaintiff reasonably believes that the Class could number in the thousands. Joinder of all Class Members is impracticable. Class Members are also geographically dispersed throughout the United States.


(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential

## Program Components

This document summarizes the recommended notice program for the class action regarding Indirect Purchasers of Liquid Aluminum Sulfate or "Alum." This proposed program is consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and with due process. The methods and tools used in developing this Notice program have been employed in many other court-approved notice programs.

To reach unidentifiable Class Members and those not reached through direct Notice, A.B. Data recommends the use of paid and earned media. Paid-media advertising is guaranteed to appear. Paid media also allow for limited control of the content, timing, and positioning of the message. Newspapers, magazines, television, radio, out-of-home media, and the internet—among other sources—offer paid-media opportunities.

A.B. Data recommends national, targeted paid-media notice consisting of print and digital media that will reach the Class Members concerned. Each of the following elements is detailed further in this document.

- Direct email notice to Class Members;
- National targeted trade websites;
- National targeted print trade publications; and
- General-market business publication

## Target Audience

A.B. Data researched Alum and its uses to develop a target audience of potential Class Members. This information also assisted in determining the most appropriate media vehicles that would best target potential Class Members and provide them with the opportunity to see and respond to the Notice. It has been determined that Alum, a chemical coagulant, is used in several industrial, manufacturing, public works, landscape management, and farming processes:

- To treat drinking and waste water;
- To alter the pH of soil;
- To clarify and to control algae growth in lakes, ponds and other water features;
- To fix dyes to textiles;
- As a litter amendment for ammonia control in poultry houses; and
- In the manufacturing of pulp and paper

3


(JAD)

Based on the industry and business information described above, the proposed Notice program will deliver an efficient and effective plan for reaching unidentified Class Members and entities.

**Media Placement Summary**

A variety of print and digital media placements are recommended to deliver the message about the partial Settlement to potential Class Members and other concerned persons and entities. The following print publications and digital media are recommended. Summaries of the audience reached, editorial focus, and recommended media tactics for each publication and digital media source follow.

**Direct Email**

Direct-mail notice via email will be sent to potential Class Members in the following industries:

- Waste and water treatment facilities;
- Golf course superintendents and sports field management;
- Textile production facilities;
- Poultry producers; and
- Pulp and paper manufacturing facilities

The email will include the Summary Notice which has the legal rights of all Class Members, the steps they must take to join the Class, the address of the case-specific website and the toll-free telephone number of the case-specific call center.

4



(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential

**National Trade Publications/Websites**



| Publication name/website | *Municipal Sewer & Water*; https://www.mswmag.com/ |
|---|---|
| Media Tactics: | One-half page print ad; home page fixed position banner ad for 30 days |
| Publishing Frequency | Monthly |
| Audience: | Average monthly circulation of 36,579 subscribers who work in storm and water systems for municipal, public works, and government services, or private contractors affiliated with this field |
| Digital Statistics | 44,826 average unique monthly viewers who spend an average 2:03 minutes on the website for each session |
| Editorial Focus: | A skill enrichment journal edited for professionals at the city, county, state and special district level responsible for sanitary, storm and water system maintenance professionals, and how-to articles focus on practical daily concerns of the readers and website visitors |



| Publication name/website | *Treatment Plant Operator*; https://www.tpomag.com/ |
|---|---|
| Media Tactics: | One-half page print ad; home page fixed position banner ad for 30 days |
| Publishing Frequency | Monthly |
| Audience: | Average monthly circulation of 71,825 subscribers who work in wastewater or water treatment plants for municipal, commercial, or industrial centers; 80% of readers recommend, specify or purchase products for the facility |
| Digital Statistics | 85,218 average unique monthly visitors who spend an average 2:32 minutes on the website for each session |
| Editorial Focus: | Delivers information on the water quality profession, including wastewater treatment, pollution concerns, applied technology, operations, government relations, environmental management, groundwater, hazardous wastes and new products associated with the field |


(JAD)



| Publication name/website | Water & Waste Digest; https://www.wwdmag.com/ |
|---|---|
| Media Tactics: | One-half page print ad; banner ad campaign for 30 days |
| Publishing Frequency | Monthly |
| Audience: | Average monthly circulation of 80,069 subscribers who work in the field of water supply and wastewater systems. They are primarily involved with municipal, private, or industrial waste water treatment centers. 90% of readers recommend, specify or purchase products for the facility, with 54.4% specifically responsible for chemical purchases. |
| Digital Statistics | 39,000 average unique monthly visitors; 8,000 subscribers receive the magazine digitally each month |
| Editorial Focus: | Provide comprehensive content that covers timely news, waste and wastewater industry trends, technical solutions and best practices. The editorial connects industry decision-makers and solution providers. |



| Publication name/website | Athletic Turf; http://athleticturf.net/ |
|---|---|
| Media Tactics: | One-half page print ad; banner ad for 30 days |
| Publishing Frequency | Monthly |
| Audience: | Executives, managers and other professionals of school fields, college fields and complexes, golf courses, parks and recreation facilities |
| Digital Statistics | 63,480 average unique monthly visitors |
| Editorial Focus: | Provides industry news, product innovations, practical and technical information and business management solutions for baseball, football, soccer fields, landscaping, and parks and recreation |

6



*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential



| Publication name/website | *Golf Course Management*; http://gcmonline.com/ |
|---|---|
| Media Tactics: | One-half page print ad; banner ad for 30 days |
| Publishing Frequency | Monthly |
| Audience: | The Official Publication of the Golf Course Superintendents Association with a monthly circulation of more than 23,000 representing over 15,000 US golf facilities; 95% of readers are involved in the purchasing of chemicals for their course |
| Digital Statistics | 63,480 average unique monthly visitors |
| Editorial Focus: | Provides authoritative "how-to," career-oriented, technical and trend information by industry experts, researchers and golf course superintendents, and monthly columns on turf management and efficient water use |



| Publication name/website | *Textile World*; http://www.textileworld.com/ |
|---|---|
| Media Tactics: | One-half page print ad; banner ad for 30 days |
| Publishing Frequency | Bimonthly |
| Audience: | Circulation of 12,062 with an audience of 35,000; 78% of audience states they are key decision makers and involved with purchasing and the manufacturing process |
| Digital Statistics | 20,580 average monthly unique visitors |
| Editorial Focus: | Delivers authoritative information and industry news to textile executive and management level professionals; content focus is on fiber production, yarn and fabric formation, dyeing and finishing, non-wovens, apparel, home furnishings and industrial fabric production |

7



**Poultry Times**
*Since 1954, the nation's only poultry industry newspaper*

| Publication name/website | *Poultry Times*; http://www.poultrytimes.com/ |
|---|---|
| Media Tactics: | One-half page print ad; banner ad for 30 days |
| Publishing Frequency | Biweekly |
| Audience: | Circulation of 13,000 primarily reaches producers in the broilers, turkeys and eggs segments of this industry ranging from individual small family farms to large commercial producers and breeders |
| Digital Statistics | Not available |
| Editorial Focus: | Current business news and research within the poultry industry, including feed mills, hatcheries, and production; news articles report on research, technical development, and current trends in production, marketing and pricing |



| Publication name/website | *Pulp & Paper Week; https://www.risiinfo.com/product/ppi-pulp-paper-week/* |
|---|---|
| Media Tactics: | One-half page ad to run 4 consecutive weeks in digital enewsletter |
| Publishing Frequency | Weekly |
| Audience: | Circulation of 25,000 subscribers reaches senior management, decision makers and influencers in the pulp, paper packaging, wood products, biomass, tissue, non-wovens and timber/forestry industries |
| Digital Statistics | Average 30,000 unique monthly visitors that spend an average 8.4 minutes on the website |
| Editorial Focus: | News and information on the global forest products industry to keep management abreast of price changes, the latest forecasting and analysis along with mill intelligence |

8


(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation*, Case No. 16-md-2687(JLL)

Proprietary and confidential



| Publication name/website | *Paper 360; www.tappi.org* <br> Technical Association of Pulp & Paper Industry |
|---|---|
| Media Tactics: | One-half page b&w; 30 day banner ad campaign |
| Publishing Frequency | Bimonthly |
| Audience: | North American circulation of 31,585 subscribers targeting senior management, decision makers and influencers in the pulp, paper packaging, wood products, tissue, non-wovens and timber/forestry industries |
| Digital Statistics | Average 13,402 unique monthly visitors that spend an average 3.0 minutes on the website |
| Editorial Focus: | The official publication for TAPPI, Paper 360 is edited for the pulp and paper community. It is a professional source of knowledge for critical issues in management, technology and networking. Each issue includes comprehensive news analysis, research summaries, and industry perspectives. |

**General Market Business Media**

# THE WALL STREET JOURNAL.

The Summary Notice will be placed in *The Wall Street Journal* to reach professionals, executives and purchasing agents of end-user businesses and government entities that purchase Alum. With a daily circulation of 1.4 million, and readership over 2 million, *The Wall Street Journal* delivers up-to-date breaking news around the world, with in-depth analysis and insights to enlighten, educate and inspire readers.

9



(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential

## Earned Media

In addition to the notice efforts involving print publications and digital media, A.B. Data will disseminate a news release via Business Wire distribution service to announce the partial Settlement. This news release will be distributed via Business Wire to more than 10,000 newsrooms, including print, broadcast, and digital media, across the United States. It will also be distributed to trade publications relevant to this field. Some of the trade industries that will receive the news story include:

- Construction & Property: Architecture
- Energy: Utilities
- Manufacturing: Packaging
- Natural Resources: Forest Products

- Construction & Property: Landscape
- Environment
- Manufacturing: Textiles
- Natural Resources: Other

- Construction & Property: Urban Planning
- Manufacturing: Chemicals/Plastics
- Natural Resources: Agriculture
- Public Policy Government: State/Local



(JAD)

## Notice Design Strategies

The Federal Rules of Civil Procedure require notices in class action cases to be written in "plain, easily understood language." This process will be utilized in developing the Long-Form Notice and Short-Form Summary Notice for this case. A.B. Data is committed to adhering to the easily-understood-language requirement of Rule 23(c)(2) and Rule 23(b)(3).

The plain-language Publication Notice developed for this program will be designed to be easily seen by potential Class Members with a large, bold headline. The plain, easily understood language in the text of the Notice will allow potential Class Members the opportunity to read it at their leisure, and ensure they understand the subject of the case, the steps they must take to join the Class, and the legal rights of all Class Members.

Each printed Publication Notice will prominently display a case website address, a toll-free telephone number, and a mailing address so that potential Class Members may review the detailed Notice and other information available regarding the case.

The online banner ads will be designed to alert potential Class Members and entities about the case. The ads will each include a link to the case website so that potential Class Members may click on it and go directly to the website for case information. A.B. Data strongly recommends including product or usage photos as part of the digital banner ads to increase awareness, generate interest, and increase the click-through rate to the website.

11


(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential

**Due Process**

The Notice Program summarized in this document is similar to those that courts have approved and are recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. As a Notice Program that primarily targets government, industrial and agricultural entities that have purchased Alum (a chemical used in their industry), data to quantify the reach of this program are not available through traditional media resources, such as MRI[1], that provide accredited media research. Based on the trade-media resources within these fields that purchase large quantities of Alum, they confirm that their audiences are decision makers and influencers on chemical purchases in their respective industries and delivers significant coverage of those in the field. A.B. Data believes that the proposed Notice Program delivers a reach of at least 80% of the Class and satisfies due process and the Rule 23 requirements.

---

[1] Mediamark's Survey of the American Consumer is the country's largest, most comprehensive and most reliable consumer and media and product/service usage database. Data from Mediamark's Survey of the American Consumer, conducted continuously since 1979, are used in the majority of media and marketing plans written in the United States. The firm's multidimensional database is the largest and most reliable source for integrated media planning. About 450 U.S. advertising agencies, including 90 of the top 100, subscribe to Mediamark Research, as does A.B. Data; more than 200 national marketers access the Mediamark database. GfK MRI offers the most detailed and representative picture of U.S. demographics and lifestyles, including information on usage of nearly 6,000 product and service brands across 550 categories, the magazines and newspapers audiences read, the websites they look at, the television programs they watch, and the radio stations they listen to. MRI has been accredited by the Media Ratings Council ("MRC") since 1988. MRC requires its members to disclose all the methodological aspects, meet MRC standards for rating research, and submit to MRC-designed audits.


(JAD)

*In re: Liquid Aluminum Sulfate Antitrust Litigation,* Case No. 16-md-2687(JLL)

Proprietary and confidential

# EXHIBIT 3

**If You Purchased Liquid Aluminum Sulfate**
**From January 1, 1997 Through February 28, 2011,**
**You Could Be Affected By A Proposed Class Action Settlement**

*Please read this entire Notice carefully. Partial settlements of the lawsuit may affect your rights.*

A partial settlement in a lawsuit pending in the United States District Court for the District of New Jersey ("the Court") against the following Defendants, General Chemical Corporation; General Chemical Performance Products, LLC; General Chemical LLC, GenTek Inc., Chemtrade Logistics Income Fund; Chemtrade Logistics Inc., Chemtrade Chemicals Corporation; and Chemtrade Chemicals US, LLC.; Chemtrade Solutions, LLC; C&S Chemicals, Inc., USALCO, LLC, Kemira Chemicals, Inc., Southern Ionics, Inc., GEO Specialty Chemicals, Inc., Frank A. Reichl, Vincent J. Opalewski, Alex Avraamides, Amita Gupta, Milton Sundbeck, Kenneth A. Ghazey, Brian C. Steppig, American Securities LLC, Matthew Lebaron, and Scott Wolff. Plaintiffs in the lawsuit claim that Defendants hurt competition and violated state antitrust, consumer protection, and other laws by allocating customers and markets and fixing the price of Liquid Aluminum Sulfate ("Alum"), thereby causing indirect purchasers to pay too much for Alum. Defendants deny any wrongdoing.

A Settlement has been reached with Defendant GEO Specialty Chemicals Inc. ("GEO"), Kenneth A. Ghazey ("Ghazey") and Brian C. Steppig (the "GEO Settling Parties"). The lawsuit will continue against the other Defendants (collectively, "Non-Settling Defendants").

**WHO IS INCLUDED IN THE CLASS?** The Indirect Purchaser Settlement Class consists of all persons or entities in AL, AR, AZ, CA, CO, DC, FL, HI, IL, IA, KS, ME, MA, MI, MN, MS, NE, NV, NH, NM, NY, NC, ND, Puerto Rico, OR, RI, SC, SD, TN, UT, VT, WV, and WI that purchased liquid aluminum sulfate, not for resale, which was manufactured, produced or supplied by Defendants or their unnamed co-conspirators from January 1, 1997 through February 28, 2011. Excluded from the Class are Defendants, co-conspirators and their respective parents, subsidiaries, and affiliates.

**WHAT DOES THE SETTLEMENT PROVIDE?** GEO and the Settling Parties agreed to pay into an Escrow Account the sum of up to $4,375,000 (the "Settlement Funds") as follows. GEO shall use its best efforts to cause its insurers to pay $801,074 directly into the Indirect Purchaser Escrow Account within thirty (30) days of Final Judgment. GEO shall also pay $898,926 into the Indirect Purchaser Escrow Account (collectively, the "First Installment"). GEO shall make one additional payment of $1,675,000 that shall be paid into the Indirect Purchaser Escrow Account on or before the first anniversary of the First Installment. GEO will undertake a marketing process for a sale of all or substantially all of its equity interests, a merger of GEO and another entity, or a sale of all or substantially all of its assets (collectively, a "Sale") that will commence no later than thirty (30) days after entry of Final Judgment. If this marketing process is successful, upon the closing of the Sale, the Indirect Purchaser Settlement Class shall be entitled to receive from GEO additional compensation pursuant to an equity value formula up to $1,000,000.

At this time, Interim IPP Lead Counsel are not seeking attorneys' fees in connection with this Settlement. Interim IPP Lead Counsel intends to ask for reimbursement of certain of their out of pocket expenses incurred so far in this litigation, including expert witness expenses incurred to date, as well as service awards for the class representatives of up to $insert] each from the Settlement Fund in recognition of their efforts to date on behalf of the Class. At a later date, Interim IPP Lead Counsel may seek up to one-third of the aggregate of funds achieved for the Class, and from any future recovery that may occur in this Class Action against the Non-Settling Defendants.

**HOW DO I RECEIVE A PAYMENT FROM THE SETTLEMENT?** No money will be distributed yet. The Interim IPP Lead Counsel will continue to pursue the lawsuit against the Non-Settling Defendants. All Settlement Funds that remain after payment of the Court-ordered attorneys' fees, incentive awards, costs, and expenses will be distributed at the conclusion of the lawsuit or as ordered by the Court.

You may visit the website www.LiquidAluminumSulfate.com for updates on the status of the lawsuit.

**WHAT ARE YOUR OPTIONS?** If you wish to remain an Indirect Purchaser Settlement Class Member, you need not take any action at this time. You will give up your right to sue the GEO Settling Parties for the claims that the Settlement with them will resolve. If you want to keep the right to sue or continue to sue the GEO Settling Parties about the legal issues in this case, then you must exclude yourself from the Class. **If you exclude yourself from the Indirect Purchaser Settlement Class, you will not get any payment from the Settlement.** To exclude yourself, you must send a letter to the Settlement Administrator, **postmarked no later than_____, 2018**. You may also comment on or object to the proposed Settlement. Your objections must be **filed no later than_____, 2018.** Details on how to request exclusion, comment, or object to the Settlement are available on the Settlement website, www.LiquidAluminumSulfate.com.

**WHO REPRESENTS ME?** The Court appointed Jay B. Shapiro of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. and Marvin A. Miller of Miller Law LLC as Interim IPP Lead Counsel l to represent the Indirect Purchaser Settlement Class. on an interim basis and for purposes of the Settlement If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court will hold a final fairness hearing to decide whether to approve the terms of the Settlement at __:__ _.m. on_____, 2018, at the Martin Luther King, Jr. Building & U.S. Courthouse, 50 Walnut Street, Newark, New Jersey 07101. If there are objections, the Court will consider them but may still approve the Settlement. You may appear at the hearing, but you are not required to do so. The hearing may be rescheduled without notice to the Class, so if you plan to attend, please periodically check the Settlement website for any updates.

**This notice is only a summary. For more information, please visit the Settlement website, www.LiquidAluminumSulfate.com or call 1-8XX-XXX-XXXX**

# EXHIBIT 4

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

**NOTICE OF CLASS ACTION AND OF PROPOSED PARTIAL END-PAYOR SETTLEMENTS**

**If you purchased liquid aluminum sulfate,
the partial settlement of a class action lawsuit may affect your rights.**

*This Notice is being provided by Order of the U.S. District Court.
It is not a solicitation from a lawyer. You are not being sued.*

A lawsuit is pending in the United States District Court for the District of New Jersey ("the Court") against the following Defendants, General Chemical Corporation; General Chemical Performance Products, LLC; General Chemical LLC, GenTek Inc., Chemtrade Logistics Income Fund; Chemtrade Logistics Inc., Chemtrade Chemicals Corporation; American Securities, and Chemtrade Chemicals US, LLC.; Chemtrade Solutions, LLC; C&S Chemicals, Inc., USALCO, LLC, Kemira Chemicals, Inc., Southern Ionics, Inc., GEO Specialty Chemicals, Inc., Frank A. Reichl, Vincent J. Opalewski, Alex Avraamides, Amita Gupta, Milton Sundbeck, Kenneth A. Ghazey, Brian C. Steppig, American Securities LLC, Matthew Lebaron, and Scott Wolff.

Plaintiffs City of Homestead, Florida and City of Creston Water Works Department (the "Indirect Purchaser Class Plaintiffs") in the lawsuit claim that Defendants hurt competition and violated the antitrust, consumer protection, and other laws of certain states and territories by allocating customers and markets and fixing the price of liquid aluminum sulfate, thereby causing indirect purchasers to pay too much for liquid aluminum sulfate ("Alum") in those states and territories. Defendants deny any wrongdoing.

A Settlement has been reached between the Indirect Purchaser Class Plaintiffs and Defendant GEO Specialty Chemicals Inc. ("GEO"), Kenneth A. Ghazey ("Ghazey") and Brian C. Steppig ("Steppig") (collectively, the "GEO Settling Parties") (the "Settlement Agreement"). The lawsuit will continue against the other Defendants (collectively, "Non-Settling Defendants").

**PROPOSED CLASS**

This Notice (the "Partial Settlement Notice") provides notice of the proposed settlement with the GEO Settling Parties on behalf of the members of the Indirect Purchaser Settlement Class (defined below). As described below, if you are a member of the Indirect Purchaser Settlement Class, you may object to the respective partial settlement. At this time The Indirect Purchaser Settlement Class is defined as:

All persons or entities in Alabama, Arkansas, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Indirect Purchaser States"), who indirectly purchased Alum, not for resale, which was manufactured, produced or supplied by Defendants or their unnamed co-conspirators from January 1, 1997 through February 28, 2011.

Excluded from the Class are Defendants and co-conspirators and their respective parents, subsidiaries, and affiliates

The Settlement described in this Notice pertains only to **indirect** purchasers of Alum. There is another lawsuit pending in the same Court that was brought on behalf of direct purchasers, which are entities that purchased Alum directly from a Defendant. The direct purchasers have also reached a settlement with the

GEO Settling Parties. Information about the indirect purchaser settlement can be found by visiting the website www.LiquidAluminum Sulfate.com.

You may be a member of the Indirect Purchaser Settlement Class if, during the period from January 1, 1997 through February 28, 2011 (the "Class Period"):

As a Consumer, you indirectly purchased or paid for some or all of the purchase price for Alum (*e.g.*, you purchased Alum from distributors or from direct purchasers) which was manufactured, sold or supplied by Defendants or their unnamed co-conspirators.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | This option allows you to exclude yourself from the Indirect Purchaser Settlement Class and instead file a lawsuit against the GEO Settling Parties that asserts claims related to the allegations or claims in this case. The exclusion deadline is_____, 2018. Please consult www.LiquidAluminumSulfate.com for any updates on deadlines. |
| **OBJECT TO THE SETTLEMENT** | Do not exclude yourself. Write to the Court and explain what you do not like about the Settlement. The objection deadline is_____, 2018. Please consult www.LiquidAluminumSulfate.com for any updates on deadlines. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. Your notice of intention to appear at the Final Approval Hearing must be postmarked no later than_____, 2018. Please consult www.LiquidAluminumSulfate .com for any updates on deadlines. |
| **DO NOTHING** | Give up rights to be part of any other lawsuit that asserts claims related to the allegations or claims against the GEO Settling Parties in this case. |

**THESE RIGHTS AND OPTIONS AND THE DEADLINES TO
EXERCISE THEM ARE EXPLAINED IN THIS NOTICE.**

**TABLE OF CONTENTS**

BASIC INFORMATION ABOUT THE LAWSUIT AND SETTLEMENTS.......................................................... 3
   1. Why did I get this Notice? ................................................................................................ 3
   2. What is the lawsuit about? ................................................................................................ 3
   3. What is the current status of the lawsuit? ........................................................................ 3
   4. What does the Settlement provide?................................................................................... 3
   5. What are members of the Indirect Purchase Settlement Class giving up in exchange for the Settlement?.4
DETERMINING IF YOU ARE A MEMBER OF THE CLASS ............................................................... 5
   6. I purchased or paid for liquid aluminum sulfate; how do I know if I am a member of the Class?............ 5
YOUR SETTLEMENT OPTIONS AS A MEMBER OF THE CLASS ................................................... 6
   8. How much money can I get?............................................................................................. 6
   9. When will I get a payment? .............................................................................................. 6
   10. What are my options as a member of the Indirect Puchaser Settlment Class? .......................... 6
   11. What does it mean to object?............................................................................................. 6
   12. How do I object to the proposed Settlement? ................................................................... 6
EXCLUDING YOURSELF FROM THE SETTLEMENT.................................................................... 7
   13. What does it mean to request to be excluded from the Indirect Purchaser Settlement Class?.................. 7
   14. How do I get out of the Settlement? (Excluding yourself.) ...................................................... 7

15. What is the legal significance of excluding myself?..................................................................... 8
16. If I don't exclude myself, can I sue later?................................................................................... 8
17. What's the difference between objecting and excluding myself from the Settlement?............................. 8
IF YOU DO NOTHING .................................................................................................................. 8
18. What happens if I do nothing at all? ......................................................................................... 8
THE LAWYERS REPRESENTING YOU ........................................................................................... 8
19. As a member of the Indirect Purchaser Settlement Class, do I have a lawyer representing my interests in
    this Class Action and the Settlement? ...................................................................................... 8
20. How will the lawyers be compensated? Will the named Plaintiffs receive an incentive award? .............. 8
21. Should I get my own lawyer? .................................................................................................. 9
THE COURT'S FINAL APPROVAL HEARING ................................................................................... 9
22. When and where will the Court determine whether to approve the Settlements? ................................. 9
23. Do I have to attend the Final Approval Hearing? ........................................................................ 9
24. May I speak at the Final Approval Hearing? .............................................................................. 9
GETTING MORE INFORMATION.................................................................................................... 9
25. Where do I get more information?............................................................................................ 9

---

| BASIC INFORMATION ABOUT THE LAWSUIT AND SETTLEMENTS |
|---|

**1.  Why did I get this Notice?**

You received this Notice because you requested it or records indicate that you may be a member of the Indirect Purchaser Settlement Class. A Settlement has been reached with the GEO Settling Parties. The lawsuit against the Non-Settling Defendants is currently ongoing. All GEO Settling Parties deny any wrongdoing. You are not being sued. This Notice describes the lawsuit, the Settlement of this case against the GEO Settling Parties, and the rights and options you have now.

**2.  What is the lawsuit about?**

The lawsuit is about the price of liquid aluminum sulfate and whether its manufacturers conspired to fix, stabilize or maintain its price and allocate customers for the product.

The GEO Settling Parties deny these claims.

**3.  What is the current status of the lawsuit?**

Plaintiffs have agreed to a Settlement with the GEO Settling Parties. The lawsuit is currently pending in the United States District Court for the District of New Jersey before United States District Judge Jose Linares. The case name is *In re Liquid Aluminum Sulfate Liquid Aluminum Sulfate Antitrust Litigation*, and the civil action number is 16-md-2687-. The Court has set a Final Fairness Hearing for the proposed Settlement on_____, 2018 at _:00 p.m. eastern time. Please consult www.LiquidAluminumSulfate.com for any updates on deadlines.

**4.  What does the Settlement provide?**

***The GEO Settling Parties agreed to pay into an Escrow Account the sum of up to $4,375,000 as follows:***

    a.    Initial Payment. GEO shall use its best efforts to cause its insurers to pay $801,074 directly into the Indirect Purchaser Escrow Account within thirty (30) days of Final Judgment. GEO shall also pay $898,926 into the Indirect Purchaser Escrow Account (collectively, the "First Installment"). If either GEO or GEO's insurers for any reason do not timely make the above-referenced payments, such non-payment shall constitute a material breach of this Agreement pursuant to Paragraph 10 below.

b. Additional Payment. GEO shall make one additional payment of $1,675,000 that shall be paid into the Indirect Purchaser Escrow Account on or before the first anniversary of the First Installment. The Indirect Purchaser Class Plaintiffs and the Indirect Purchaser Settlement Class agree not to oppose receiving this payment before the first anniversary of the First Installment, if GEO chooses to make payment before that date. If GEO for any reason does not timely make the above-referenced payments, such non-payment shall constitute a material breach of the Settlement Agreement, justifying termination of the Agreement [as set forth] pursuant to Paragraph 10 of the Settlement Agreement.

c. GEO Marketing Effort and Sale Proceeds. GEO will undertake a marketing process for a sale of all or substantially all of its equity interests, a merger of GEO and another entity, or a sale of all or substantially all of its assets (collectively, a "Sale") that will commence no later than thirty (30) days after entry of Final Judgment. The marketing process will be conducted by a nationally-recognized investment banking firm selected by GEO and reasonably acceptable to the Indirect Purchaser Class Plaintiffs. Interim IPP Lead Counsel will be afforded reasonable information rights regarding the status of the marketing effort, subject to Interim IPP Lead Counsel agreeing to a confidentiality agreement. If this marketing process is successful, upon the closing of the Sale, the Indirect Purchaser Settlement Class shall be entitled to receive from GEO additional compensation pursuant to an equity value formula up to $1,000,000.

**5. What are members of the Indirect Purchaser Settlement Class giving up in exchange for the Settlement?**

In exchange for the Settlement, members of the Indirect Purchaser Settlement Class will agree to a "Release of Claims" against the GEO Settling Parties as follows:

Upon Final Judgment and in consideration of payment of the Settlement Funds into the Indirect Purchaser Escrow Account, and for other valuable consideration, and provided that the GEO Settling Parties have not breached any of their material obligations under the Settlement Agreement, and provided that the Settlement Agreement has not been terminated, the GEO Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Indirect Purchaser Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of Final Judgment, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to the facts and circumstances alleged in the Consolidated Proceedings ("Released Claims"), provided however, that nothing herein shall release claims involving or arising out of: (i) any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Alum; or (ii) any purchase of Alum by a member of the Indirect Purchaser Settlement Class that was not an indirect purchase. In other words, to the extent any Indirect Purchaser also made a purchase of Alum directly from Geo or any of the other Defendants in the Consolidated Proceedings, any claims arising out of that direct purchase are not released herein. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties shall be preliminarily enjoined and barred from asserting any Released Claims against the GEO Released Parties. The GEO Settling Parties further agree that they will not file any suit against the Releasing Parties and their current and former, direct and indirect, parents,

subsidiaries, affiliates, directors, officers, shareholders, and employees arising out of or relating to the Released Claims. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the GEO Released Parties arising out of or relating to the Released Claims.

In addition to the provisions of Paragraph 15, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> **CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 15 of the Settlement Agreement, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 15 of the Settlement Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

The Settlement Agreement, available at www.LiquidAluminum Sulfate.com fully describes the Settlement and the Released Claims. If you have any questions, you can talk with the lawyers listed in Question 19 for free, or you can, of course, talk with your own lawyer if you have questions about what this means.

## DETERMINING IF YOU ARE A MEMBER OF THE CLASS

**6.   I am a person or entity who purchased or paid for liquid aluminum sulfate; how do I know if I am a member of the Class?**

You may be a member of the Indirect Purchaser Settlement Class if:

- From January 1, 1997 through February 28, 2011, in the Class States you indirectly purchased or paid for some or all of the purchase price, not for resale, of liquid aluminum sulfate manufactured or sold by the GEO Settling Parties.

- The following are *NOT* members of the Class:

  Defendants and co-conspirators and their respective parents, subsidiaries, and affiliates.

**YOUR SETTLEMENT OPTIONS AS A MEMBER OF THE CLASS**

**7.    How much money can I get?**

At this time, it is unknown how much each eligible Class Member that submits a valid claim will receive. Payments will be based on a number of factors, including the number of valid claims filed by all eligible Class Members and the dollar value of each eligible Class Member's purchase(s) in proportion to the total claims filed. No matter how many claims are filed, no money will be returned to the GEO Settling Parties once the Court finally approves the Settlement. And no additional money will be paid by GEO Settling Parties to the Indirect Purchaser Settlement Class. To receive a payment, you will need to file a valid claim form before the claims period ends. The claims period has not yet begun. A Notice about the claims process will be provided at a later date as ordered by the Court.

**8.    When will I get a payment?**

No money will be distributed yet. The lawyers for the Plaintiffs will continue to pursue the lawsuit against the Non-Settling Defendants. All Settlement Funds that remain after payment of the Court-ordered attorneys' fees, incentive awards, costs, and expenses will be distributed at the conclusion of the lawsuit or as ordered by the Court.

**9.    What are my options as a member of the Class?**

If you are a member of the Indirect Purchaser Settlement Class, you can choose to do nothing, exclude yourself from the Indirect Purchaser Settlement Class, or object to the Settlement.

**10.    What does it mean to object?**

Objecting is telling the Court that you don't like something about the proposed Settlement. You can give reasons why you think the Court should not approve the Settlement. The Court will consider your views before making a decision.

**11.    How do I object to the proposed Settlement?**

To object, you must prepare and sign a written objection that includes: (1) the case name and number ("*In re Liquid Aluminum Sulfate Antitrust Litigation,* Civil Action No. 16-md-2687"); (2) your full name, current address, and telephone number; (3) a written statement of your objections and the specific reasons for each; (4) any supporting papers, evidence, or documents; (5) a statement of whether you intend to appear and present your objections at the Fairness Hearing (see Question 20); and (7) your signature. You must file your objection with the  Court  no later than_____, 2018, and mail copies to Class Counsel and Defense Counsel postmarked by_____, 2018.

| COURT | CLASS COUNSEL |
|---|---|
| The Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room 4015, Newark, NJ 07101 | Jay B. Shapiro<br>Steams Weaver Miller Weissler Alhadeff & Sitterson, P.A.<br>Museum Tower<br>150 West Flagler Street, Suite 2200<br>Miami, FL 33130<br><br>Marvin A. Miller<br>Miller Law LLC<br>115 S. LaSalle Street, Suite 2910 |

| | Chicago, IL 60603 |
|---|---|
| **DEFENSE COUNSEL** | |
| James H. Mutchnik<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL 60654<br><br>Robert F. Ware<br>Thompson Hine<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114<br><br>Nicholas Theodorou<br>Foley Hoag LLP<br>155 Seaport Blvd.<br>Boston, MA 02210<br><br>J. Bruce Maffeo<br>Cozen O'Connor<br>45 Broadway Atrium, Suite 1600<br>New York, NY 10006 | |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**12.   What does it mean to request to be excluded from the Indirect Purchaser Settlement Class?**

If you do not want to be part of the Settlement and you want to keep your right to sue the GEO Settling Parties relating to the allegations in *In re Liquid Aluminum Sulfate Antitrust Litigation,* Civil Action No. 16-md-2687 concerning the alleged anticompetitive conduct, then you must take steps to remove yourself from the Indirect Purchaser Settlement Class. This is called excluding yourself, or "opting out" of the Indirect Purchaser Settlement Class. If you exclude yourself, you will not receive any payment or anything else from the Settlement.

**13.   How do I get out of one the Settlement? (Excluding yourself.)**

To exclude yourself from the Settlement, you must send a letter by mail saying that you wish to be excluded from the Indirect Purchaser Settlement Class in *In re Liquid Aluminum Sulfate Antitrust Litigation,* Civil Action No. 16-md-2687. You must include your name, address, telephone number, and signature. You cannot exclude yourself on the telephone or by email. You must mail your Request for Exclusion, postmarked no later than ,2018, to:

In re Liquid Aluminum Sulfate Antitrust Litigation (Indirect Purchaser Action)
EXCLUSIONS
P.O. Box 173001
Milwaukee, WI  53217

**14.    What is the legal significance of excluding myself?**

If you exclude yourself, you will not be legally bound by the Settlement with the Indirect Purchaser Settlement Class from which you exclude yourself. You may be able to sue the GEO Settling Parties in the future.

**15.    If I don't exclude myself, can I sue later?**

No. Unless you exclude yourself, you give up the right to sue the GEO Settling Parties for the claims that the Settlement with them resolve. You must exclude yourself from the Indirect Purchase Settlement Class to be able to bring your own, separate lawsuit(s) against the GEO Settling Parties. Remember, the exclusion deadline is , 2018.

**16.    What's the difference between objecting and excluding myself from the Settlement?**

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you stay in the Indirect Purchaser Settlement Class. In contrast, excluding yourself is telling the Court that you do not want to be part of the Indirect Purchaser Settlement Class. If you exclude yourself from the Indirect Purchaser Settlement Class, you have no basis to object to the Settlement because the action no longer affects you with regard to the Indirect Purchaser Settlement Class.

| IF YOU DO NOTHING |
|:---:|

**17.    What happens if I do nothing at all?**

If you do nothing, and the Court approves the Settlement, you will be bound by its terms. Unless you exclude yourself, you will not be able to file a lawsuit or be part of any other lawsuit asserting claims against the GEO Settling Parties concerning or relating to the claims and factual allegations that were or could have been raised in this action. The complete Settlement Agreement is available at www.LiquidAluminum Sulfate.com and more specifically describe the Released Claims at Paragraph 15 of the Settlement Agreement.

| THE LAWYERS REPRESENTING YOU |
|:---:|

**18.    As a member of the Class, do I have a lawyer representing my interests in this Class Action and the Settlement?**

Yes. The Court has appointed lawyers to represent you and other Class Members. These lawyers  are called Class Counsel. You will not be charged individually for these lawyers. They will ask the Court to approve an award for expenses in connection with the Liquid Aluminum Sulfate Antitrust Litigation. The following lawyers represent the Indirect Purchaser Settlement Class:

| COUNSEL FOR THE CLASS | |
|---|---|
| Jay B. Shapiro<br>Steams Weaver Miller Weissler Alhadeff & Sitterson, P.A.<br>Museum Tower<br>150 West Flagler Street, Suite 2200<br>Miami, FL 33130 | Marvin A. Miller<br>Miller Law LLC<br>115 S. LaSalle Street, Suite 2910<br>Chicago, IL 60603 |

**19.    How will the lawyers be compensated? Will the named Plaintiffs receive an incentive award?**

Class Counsel, at this time, are not seeking attorneys' fees in connection with this Settlement. Class Counsel may ask for reimbursement of expenses. Class Counsel may also ask the Court to award service awards for the class representatives of up to $ _ each from the Settlement Fund in recognition of their efforts to date on behalf of the Class.

Class Counsel may seek up to one-third of the aggregate of funds achieved for the Class, any future recovery that may occur in this Class Action against the Non-Settling Defendants. They also may ask for reasonable additional incentive awards for the named Plaintiffs from any future recovery that may occur in this Class Action against the Non-Settling Defendants.

**20.   Should I get my own lawyer?**

You do not need to hire your own lawyer, but if you hire a lawyer to speak for you or appear in Court, your lawyer must file a Notice of Appearance. If you hire your own lawyer, you will have to pay for that lawyer on your own.

| THE COURT'S FINAL APPROVAL HEARING |
|---|

**21.   When and where will the Court determine whether to approve the Settlement?**

The Final Approval Hearing will be on_____, 2018 at_:00_.m. eastern time before Judge Jose L. Linares, The Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room_, Newark, NJ 07101 At this Hearing, the Court will consider whether the proposed Settlement and all of its terms are fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the Hearing (see Question 24). At or after the Hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

The time and date of the Hearing is subject to change. Please visit www.Liquid Aluminum Sulfate.com for updates.

**22.   Do I have to attend the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. So long as you file your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but that is not required.

**23.   May I speak at the Final Approval Hearing?**

Yes. You may ask the Court to speak at the Final Approval Hearing. To do so, you must include a Notice of Intent to Appear at the Fairness Hearing with your objection (see Question 12). You must provide copies of any documents you intend to rely upon, including the names and addresses of any witnesses who will appear at the Fairness Hearing, and the name of any counsel representing you as an objector. Ultimately, the Court will decide who will be allowed to speak at the Fairness Hearing.

| GETTING MORE INFORMATION |
|---|

**24.   Where do I get more information?**

This Notice contains a summary of relevant court papers. Complete copies of public pleadings, Court rulings, and other filings are available for review and copying at the Clerk's office. The address is: The Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room 4015, Newark, NJ 07101.

Judge Jose L. Linares for the United States District Court for the District of New Jersey is overseeing the Class Action. You can also review relevant Decisions and Orders online at <mark>www.Liquid Aluminum Sulfate.com</mark>.

Additional information about the Class Action and proposed Settlement is available on the case website at <mark>www.Liquid Aluminum Sulfate.com</mark>, or you can call the Settlement Administrator toll-free at 1-800-332-7414. *Please do not contact the Court or Judge Linares*.

**For more information, call the Settlement Administrator at 1-800-332-7414, or go to <mark>www.Liquid Aluminum Sulfate.com</mark>.**

DATED: June 29, 2018                     BY ORDER OF THE UNITED STATES DISTRICT COURT
                                         DISTRICT OF NEW JERSEY