# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (MCA) (JAD) |

---

### IPP LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS, AND INCORPORATED MEMORANDUM OF LAW

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603

Jay B. Shapiro
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL 33130

*IPP Co-Lead Counsel*

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   PROCEDURAL BACKGROUND ............................................................................. 3

III.  THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED ................................................... 5

      A.   The Common Fund Doctrine Applies to the Settlements ...................................... 6

      B.   Fees Should Be Based on a Percentage of the Common Fund .............................. 6

      C.   The Requested Fee is Reasonable. ........................................................................ 6

           1)   The Size of the Fund Created and Number of Persons Benefited ............ 8

           2)   Awards in Similar Cases ......................................................................... 9

           3)   The Amount of Time Devoted to the Case, and the Risk of
                Nonpayment Undertaken by IPP Counsel ............................................... 12

           4)   The Skill and Efficiency of the Attorneys Involved .............................. 17

           5)   The Complexity and Duration of the Litigation ...................................... 18

           6)   The Absence of Objections to the Fee Request to Date .......................... 19

           7)   Benefits Attributable to Others, including Government Agencies ......... 20

           8)   The Percentage Fee that Would Have Been Negotiated Had the
                Case Been Subject to a Private Contingent Fee Agreement ................... 22

           9)   Innovative Terms of Settlements ............................................................ 23

      D.   IPP Counsel Should Be Reimbursed For Their Out-Of-Pocket Expenses .......... 24

      E.   The Court's Order On Fees Should Account For Settlement Proceeds
           Received After Entry Of The Final Order ........................................................... 25

IV.   THE COURT SHOULD APPROVE INCENTIVE AWARDS TO THE
      INDIRECT PURCHASER CLASS PLAINTIFFS .................................................. 26

V.    CONCLUSION ....................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..................................................................24

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) ..............................................................13

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................13

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)............................................................................13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................6

*Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.)*,
  513 F.Supp.2d 322 (E.D. Pa. May 14, 2007)......................................27

*Castro v. Sanofi Pasteur Inc.*,
  2017 WL 4776626 (D.N.J. Oct. 23, 2017)....................................10, 11

*Cullen v. Whiteman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)..........................................................11

*Gunter v. Ridgewood Energy Corp*,
  223 F.3d 190 (3d Cir. 2000)............................................................7, 24

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010)...........................................18

*Henderson v. Volvo Cars of N. Am., LLC*,
  2013 WL 1192479 (D.N.J. Mar. 22, 2013).............................................6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................2, 8

*In re Apple Comput. Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................13

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002).............................................................2, 8

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)............................................................7, 15, 20

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ...................................................10

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...........................................................24

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001).......................................................................19

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F.Supp.2d 484 (E.D. Pa. 2003) ..........................................................18

*In re Crazy Eddie Sec. Litig.*,
   824 F.Supp. 320 (E.D.N.Y. 1993) .............................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................................17

*In re Flonase Antitrust Litig. (DPP case)*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................10

*In re Flonase Antitrust Litig. (IPP case)*,
   291 F.R.D. 93 (E.D. Pa. 2013)..............................................................10, 12

*In re General Instrument Sec. Litig.*,
   209 F.Supp.2d 423 (E.D. Pa. 2001) ..........................................................11

*In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995)......................................................................6, 10

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)......................................................10, 22, 24

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ..........................................2, 9

*In re K-Dur Antitrust Litig.*,
   No. 01-cv-1652 (D.N.J. Oct. 5, 2017) .......................................................10

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004)...........................................18, 19

*In re Linerboard Antitrust Litig.*,
   292 F.Supp.2d 631 (E.D. Pa. 2003) ..........................................................12

iii

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002)..............................................................................27

*In re Medical X–Ray Film Antitrust Litig.*,
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)..........................................................11

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) .......................................................... *passim*

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................................13

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................................17

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998)..............................................................................7, 24

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 WL 3008808 (D.N.J. Nov. 9, 2005) .......................................................11, 22

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................12

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005).................................................................................15

*In re Safety Components, Inc. Sec. Litig.*,
  166 F.Supp.2d 72 (D.N.J. 2001) ..........................................................................24

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012).......................................................27

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) .............................................................10

*Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*,
  2014 WL 12738907 (E.D. Pa. July 14, 2014)......................................................10

*McGuire v. BMW of N. Am., LLC*,
  No. 13-7356, 2014 WL 2566132 (D.N.J. June 6, 2014).......................................14

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) .............................................................................13

*Polonski v. Trump Taj Mahal Assocs.*,
  137 F. 3d 139 (3d Cir. 1998)..................................................................................6

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................13

*Sullivan v. D.B. Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2010)...................................................................6, 15

**Statutes**

15 U.S.C. § 1 .............................................................................................15

18 U.S.C § 3771 ..........................................................................................21

Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 661, 666-668 (June 22, 2004)................................15

Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010) ...................................................15

## I.    INTRODUCTION

Lead Counsel for the Indirect Purchaser Class Plaintiffs ("IPP Lead Counsel"), on behalf of the lawyers that have performed authorized common benefit work in this case (collectively, "IPP Counsel"), hereby request an Order: (1) awarding IPP Counsel attorneys' fees in connection with all of the settlements achieved for the benefit of the Indirect Purchaser Class; (2) reimbursing reasonable out-of-pocket expenses incurred by IPP Counsel that have not been reimbursed to date;[1] and (3) granting reasonable incentive awards to the two class representatives in connection with the IPPs' recent settlements with the Chemtrade Defendants,[2] the Southern Ionics Defendants,[3] Kemira Chemicals, Inc., USALCO, LLC, American Securities, LCC, and C&S Chemicals, Inc.

Together with the settlement that IPPs previously reached with the GEO Defendants, the IPPs' total cash settlement recovery is $33,056,653.08. As explained herein, this recovery represents *more than 100% of the total treble damages* that IPPs could have obtained in this case for the 1997-2011 relevant time period. That also presumes IPPs could ultimately prove a 10% overcharge on all of the Defendants' sales in all of the IPP states during the relevant conspiracy period – a proposition seriously disputed by the Defendants.

---

[1] When the IPPs previously settled with Defendants GEO Specialty Chemicals Inc., Kenneth A. Ghazey, and Brian C. Steppig (collectively, the "GEO Defendants") in June 2008, IPP Lead Counsel obtained an order providing reimbursement of expenses incurred up to that point but deferred a request for an award of attorneys' fees until additional settlements could be reached. *See* ECF No. 1095; ECF No. 1173.

[2] The Chemtrade Defendants are Chemtrade Logistics Income Fund, General Chemical Corporation, General Chemical Performance Products, LLC, General Chemical LLC, GenTek Inc., Chemtrade Logistics Inc., Chemtrade Chemicals Corporation, Chemtrade Chemicals US LLC, Chemtrade Solutions, LLC, as well as former Chemtrade and American Securities employees named as defendants: Alex Avraamides, Frank Reichl, Amita Gupta, Vincent Opalewski, Matthew LeBaron, and Scott Wolff.

[3] The Southern Ionics Defendants are Southern Ionics, Inc. and its principal, Milton Sundbeck.

The Supreme Court and courts in this District have made clear that of all the factors that courts consider in awarding fees in a common-fund class action like this one, the single most important factor is the result obtained for the class. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained"). To recover more than 100% of the class's *treble* damages in settlement – prior to the entry of class certification, no less – is not only a remarkable recovery, we believe it may be unprecedented. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, *2-3 (N.D. Iowa Nov. 9, 2011) (noting that "it is 'very unusual' in an antitrust class action for plaintiffs to receive 'a hundred percent" *of single damages,* and awarding counsel 36.04% of the common fund for the "fabulous results").

In light of this extraordinary result, IPP Counsel request that the Court award attorneys' fees in the amount of one-third (33 1/3%) of the common fund obtained for the IPP Class. As set forth in detail in Section III, *infra*, courts within this District, within the Third Circuit, and elsewhere around the country routinely grant class counsel fee awards of 33 1/3% of the common fund in cases where class counsel has recovered much smaller percentages of the potential *single* damages at issue than IPP Counsel has recovered here. This request is also consistent with the fee and expense award made earlier in this consolidated proceeding, in which Judge Linares awarded the Direct Purchaser Plaintiff Class Counsel 33.3% of the settlement fund obtained in connection with their settlement with the GEO Defendants, plus expenses. *See* ECF No. 1171 at ¶3.

The fees and expenses requested herein are not only reasonable in light of the exceptional result obtained for the IPP Class, they are even more so when considered in light of, *inter alia*: (1) the amount of time devoted to this case and the significant risk undertaken by IPP Counsel in

prosecuting this complex case; (2) the creativity and tenacity demonstrated by IPP Lead Counsel which led to this outstanding recovery for the IPP Class; (3) the additional innovative terms of at least one of the settlements (with Defendant C&S) which provides injunctive relief and future protection to the IPP Class beyond what could have been obtained in the normal course of this litigation; and (4) the fact that the requested fees are *less* than IPP Counsel's actual lodestar (*i.e.,* actual hours expended multiplied by counsel's normal hourly rates), resulting in a significant financial benefit for the IPP Class – all as explained in Section III (C), *infra*.

For all of these reasons, as further discussed below, a fee award of 33 1/3% of the settlement funds, plus reimbursement of out-of-pocket expenses incurred in this case, would be appropriate and fair here.

## II.    PROCEDURAL BACKGROUND

On May 20, 2016, IPP Lead Counsel filed the first indirect purchaser plaintiff class action in this District, *City of Homestead, Florida v. General Chemical Corp., et al.*, 2:16-cv-02873-JLL-JAD, ECF No. 1 (the "Homestead Complaint"). Subsequently, on July 5, 2016, an additional indirect purchaser class complaint was filed in this District by the City of Creston Water Works Department, *City of Creston Water Works Dept. v. General Chemical Corp., et al.*, 2:16-cv-04037-JLL-JAD, ECF No. 1 (the "Creston Complaint").

This Court appointed undersigned counsel, Jay B. Shapiro and Marvin A. Miller, to serve as Interim Co-Lead Counsel for the Indirect Purchaser Class in the above-captioned actions.  ECF No. 211.  The Homestead Complaint and the Creston Complaint were then superseded by the filing of IPPs' Consolidated Class Action Complaint on October 17, 2016, ECF No. 242, and later by the filing of IPPs' Amended Consolidated Class Action Complaint on March 5, 2018, ECF No. 705 (the "CCAC").

On February 16, 2018, IPPs added additional defendants to this consolidated action by filing a similar Class Action Complaint against American Securities LLC, Matthew LeBaron, and Scott Wolff (the "American Securities Defendants"), which complaint (the "American Securities Complaint") was consolidated with the action in which the CCAC was filed. In the CCAC and the American Securities Complaint, IPPs allege that: (i) the Chemtrade Defendants; (ii) the Southern Ionics Defendants; (iii) Kemira; (iv) USALCO; (v) American Securities; (vi) C&S; and (vii) the GEO Defendants (collectively, the "Defendants") colluded to fix the price of Alum and/or allocate customers, thereby unlawfully restraining free trade.

On June 15, 2018, IPPs reached a settlement agreement with the GEO Defendants. That settlement was preliminarily approved by Judge Linares on July 19, 2018, and finally approved by Judge Linares on December 4, 2018. *See* ECF No. 986 (preliminary approval order); ECF No. 1173 (final approval order). The GEO Settlement involves guaranteed cash payments totaling $3,375,000 plus, upon the closing of a sale of all or substantially all of GEO's assets, IPPs were potentially entitled to an additional payment based on an equity value formula set forth in Exhibit B to the GEO settlement agreement. *See* Joint Declaration of Jay B. Shapiro and Marvin A. Miller ("Joint Decl."), filed contemporaneously herewith, at ¶14; ECF No. 935-1, Ex. B. In accordance with the terms of the GEO settlement agreement, GEO previously made its first payment to IPPs of $1,700,000, and a second installment payment of $1,675,000 is due to be paid on or about January 17, 2020. Joint Decl. at ¶14. Additionally, IPP Lead Counsel were made aware on August 30, 2019 that based on a recent sale of GEO's assets, IPPs are entitled to an additional $366,212.12 based on the formula set out in the GEO settlement agreement. *Id.* Of that additional $366,212.12, 95% – that is, $347,901.51 – was paid to IPPs on August 30. *Id.*

In connection with the final approval of the GEO settlement, IPP Lead Counsel deferred a

request for an award of attorneys' fees until additional settlements could be reached, instead requesting only reimbursement of expenses incurred up to that point. *Id.* at ¶15. That request for reimbursement of expenses was granted by Judge Linares. *See* ECF Nos. 1095, 1173.

Now, after three years of protracted and hard-fought litigation, with a docket containing over 1300 entries, IPP Lead Counsel have now successfully resolved all of the IPP Class' claims against the remaining Defendants, and have brought this complex antitrust litigation to a close with a final settlement most closely approximating a best-case scenario victory. Judge Linares preliminarily approved the pending settlements as to the Chemtrade Defendants ($14,000,000), Southern Ionics Defendants ($5,000,000), and Kemira ($2,350,000) on May 13, 2019, and this Court preliminarily approved the settlements with USALCO ($5,000,000), American Securities ($2,200,000), and C&S ($765,440.96) on July 29, 2019. *See* ECF No. 1294 and 1352, respectively. The total of these settlements when added to the settlement amount previously obtained from the GEO Defendants ($3,741,212.12) is $33,056,653.08. Joint Decl. at ¶18.

IPP Counsel have labored for over three years on behalf of the IPP Class without compensation. It is now appropriate for IPP Counsel to be fairly compensated for the results we have achieved for the IPP Class.

## III.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

IPP Lead Counsel request an award of attorneys' fees in the amount of 33 1/3% of the settlement proceeds made available to the Indirect Purchaser Settlement Class, plus reimbursement for out-of-pocket costs and expenses, and $25,000 to each of the two Indirect Purchaser Class Plaintiffs as second and final class representative incentive awards.

### A.    The Common Fund Doctrine Applies to the Settlements

Courts have long held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995). The Third Circuit has noted that at the "heart of this [doctrine] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Polonski v. Trump Taj Mahal Assocs.*, 137 F. 3d 139, 145 (3d Cir. 1998). Here, IPP Counsel successfully negotiated a settlement resulting in a common fund of $33,056,653.08 and are entitled to a share of that fund to compensate them for bringing, prosecuting, and settling the claims.

### B.    Fees Should Be Based on a Percentage of the Common Fund

An award of attorneys' fees and the method used to determine that award are "within the discretion of the court." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, *6 (D.N.J. Feb. 9, 2010). The Third Circuit has ruled, however, that in common fund cases such as this one, the percentage-of-recovery method is the preferred approach in calculating an award of fees. *See Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2010) (noting that the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure"); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, *14 (D.N.J. Mar. 22, 2013) ("The percentage-of-recovery method is preferred in common fund cases. . . .").

### C.    The Requested Fee is Reasonable.

The Third Circuit has identified the following factors for courts to consider when evaluating the reasonableness of a fee request under the percentage-of-recovery method:

(1)     the size of the fund created and the number of persons benefitted;

(2)     the awards made by courts in similar cases;

(3)     the amount of time devoted to the case by plaintiffs' counsel;

(4)     the risk of nonpayment undertaken by plaintiffs' counsel;

(5)     the skill and efficiency of the attorneys involved;

(6)     the complexity and duration of the litigation; and

(7)     the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel.

*Gunter v. Ridgewood Energy Corp*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

This Court has also suggested three additional factors that may be relevant to the Court's inquiry:

(8)     the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

(9)     the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and

(10)    any innovative terms of settlement.

*Merck ERISA*, 2010 WL 547613, at *6; *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 338-40 (3d Cir. 1998). However, "[t]he fee award reasonableness factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006) (internal citation omitted).

In addition, the Third Circuit recommends that the Court "use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *Id.* at 164. *See also Merck ERISA*, 2010 WL 547613, at *12 (applying lodestar cross-check).

Consideration of all of these factors demonstrates that IPP Lead Counsel's request for 33 1/3% of the settlement proceeds is reasonable and should be approved.

### 1) The Size of the Fund Created and Number of Persons Benefited

The result achieved for the Class is the primary factor to be considered in assessing the propriety of an attorneys' fee award. *See Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *AremisSoft Corp.*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained"). Here, through their substantial efforts, IPP Counsel have created a common fund of over $33 million for the benefit of thousands of members of the Indirect Purchaser Settlement Class.

Specifically, when the settlement amounts from the Chemtrade Defendants ($14,000,000), the Southern Ionics Defendants ($5,000,000), Kemira ($2,350,000), USALCO ($5,000,000), American Securities ($2,200,000), and C&S ($765,440.96) are added to the settlement amount obtained from the GEO Defendants ($3,741,212.12), the total of all settlements obtained by IPPs in this case is $33,056,653.08. Joint Decl. at ¶18. When compared to the total amount of all indirect Alum sales in the IPP states by all of the Defendants in this case during the relevant conspiracy period (which total an estimated $108,694,105) – and assuming IPPs could prove a 10% overcharge on all of those sales –the monetary recovery for the class ($33,056,653.08) represents *more than 100% of the total treble damages* that IPPs could have obtained in this case. *Id*. at ¶21.

Prior to reaching the settlements, IPP Lead Counsel worked closely with a highly regarded antitrust economist so that IPP Counsel could thoroughly analyze each corporate Defendant's transactional data in order to determine each Defendant's total sales to distributors, wholesalers, and other resellers in the 33 states whose state laws are being asserted in this case, and calculate IPPs' potential overcharge damages based on those sales. *Id.* at ¶20.  The relevant figures are set forth in the following chart:

**All Defendants' 1997-2011 IPP Sales and Calculation of Single and Treble Damages**

| Defendant | 1997-2011 Total IPP Sales | 10% Overcharge | 10% Trebled |
|---|---|---|---|
| GCC | $73,791,896 | $7,379,189.60 | $22,137,568.80 |
| GEO | $19,020,324 | $1,902,032.40 | $5,706,097.20 |
| USALCO | $7,269,384 | $726,938.40 | $2,180,815.20 |
| C&S | $3,945,282 | $394,528.20 | $1,183,584.60 |
| SOUTHERN IONICS | $2,409,041 | $240,904.10 | $722,712.30 |
| KEMIRA | $2,258,178 | $225,817.80 | $677,453.40 |
| **TOTAL:** | **$108,694,105** | **$10,869,410.50** | **$32,608,231.50** |

*Id*. at ¶22.

Consequently, because the total calculated treble damages are $32,608,231.50, and the settlement recovery for the Class is $33,056,653.08, IPP Lead Counsel has obtained for the IPP Class a settlement in excess of 100% of the IPP Class' total treble damages.

In our collective experience handling complex antitrust cases like this, IPP Lead Counsel can say without hesitation that this level of recovery is exceptional under any definition, and may be unprecedented. *Id.* at ¶23. *Cf. In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *2-3 (noting that "it is 'very unusual' in an antitrust class action for plaintiffs to receive 'a hundred percent" *of single damages,* and awarding counsel 36.04% of the common fund for the "fabulous results").

2) **Awards in Similar Cases**

IPP Lead Counsel's request for 33 1/3% of the settlement proceeds available to the IPP Class is reasonable under the percentage-of-recovery method and is consistent with fees awarded

by courts in this Circuit. While there is no general rule, the Third Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund, with 33 1/3% being standard for good recoveries for a class. *See, e.g., Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, *9 (D.N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. . . . Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range.") (citing *In Re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)); *Merck ERISA*, 2010 WL 547613, at *10 ("inherently complex suit" that was "ongoing for more than two years" warranted 33 1/3% fee award); Order, *In re K-Dur Antitrust Litig.*, No. 01-cv-1652 (D.N.J. Oct. 5, 2017), ECF No. 1057 (awarding 33 1/3% of settlement fund); *In re Flonase Antitrust Litig. (IPP case)*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) (awarding IPP counsel a one-third fee award, and noting that "[a] one-third fee award is standard in complex antitrust cases of this kind"); *In re Flonase Antitrust Litig. (DPP case)*, 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) (approving requested one-third fee and noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees"); *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, 2014 WL 12738907, *2 (E.D. Pa. July 14, 2014) ("[F]ee awards of one-third of the settlement amount are commonly awarded in this Circuit."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, *1, *8 (E.D. Pa. Jan. 3, 2008) (awarding 33 1/3% of settlement fund); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."); *cf. La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, *8 (D.N.J.

Dec. 4, 2009) (noting that "[c]ourts within the Third Circuit often award fees of 25% to 33⅓% of the recovery").

Indeed, courts within this District, within the Third Circuit, and elsewhere around the country routinely grant class counsel fee awards of one-third of the common fund in situations with *much* less significant recoveries for the classes than IPP Lead Counsel have obtained here. *See, e.g., In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, *9, *15 (D.N.J. Nov. 9, 2005) (granting 33% fee award where class counsel obtained 56%-69% of *single* damages); *Cullen v. Whiteman Medical Corp.,* 197 F.R.D. 136, 144 (E.D. Pa. 2000) (awarding class counsel 33% of common fund which provided the class with "approximately seventeen percent of single damages," which the court described as "an amount significantly higher than the proportion of damages obtained in settlement agreements approved by other courts"); *In re Medical X–Ray Film Antitrust Litig.,* 1998 WL 661515, *5, *8 (E.D.N.Y. Aug. 7, 1998) (approving 33.3% fee award for $39 million settlement which represented 17% of the estimated "best possible" recovery); *In re General Instrument Sec. Litig.,* 209 F.Supp.2d 423, 431, 434 (E.D. Pa. 2001) (awarding class counsel 33% of $48 million settlement which represented 11% of the high end of Plaintiffs' expert's damages estimate); *In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320, 323-24 (E.D.N.Y. 1993) (awarding 33% of a recovery that amounted to approximately "ten cents for every dollar lost (6 cents after fees and expenses)"). *See also Castro*, 2017 WL 4776626, at *9 ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. . . . Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range.").

Finally, the requested award is consistent with the attorneys' fees previously awarded by Judge Linares to counsel for the Direct Purchaser ("DPPs") in this consolidated proceeding. In connection with the previously approved settlement between DPPs and GEO, Judge Linares awarded "attorneys' fees in the amount of 33.3% of the total cash proceeds made available to the Direct Purchaser Class, including any funds that may be paid pursuant to a sale [of Defendant GEO]," and "[i]n addition, … $2,109,260.17 in reimbursement of certain of Plaintiffs' Counsel's out-of-pocket expenses." *See* ECF No. 1171 at ¶3.

For these reasons, this factor also weighs in favor of the reasonableness of IPP Lead Counsel's fee request.

### 3) The Amount of Time Devoted to the Case, and the Risk of Nonpayment Undertaken by IPP Counsel

Courts in the Third Circuit have consistently recognized that the attorneys' contingent-fee risk is an important factor in determining a fee award. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) (finding that "investment of time, personnel and resources" supported awarding requested fee); *In re Flonase Antitrust Litig. (IPP case)*, 291 F.R.D. at 104 ("[A]s a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this lengthy litigation, class counsel have not received any payment. This factor supports approval of the requested fee."); *Merck ERISA*, 2010 WL 547613, at *11 (finding that "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis).

The level of recovery ultimately obtained for the IPP Class in this case – basically representing complete and total victory – is particularly noteworthy given the high level of risk inherent in complex antitrust litigation like this. *See, e.g., In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action

to prosecute."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). Indeed, the Federal Reporter is chockfull of reported decisions reflecting the many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended millions of dollars in time and expenses, and received nothing for their efforts.[4]

Here, IPP Lead Counsel faced these and other substantial legal hurdles and heightened litigation risk from the very outset of the case. IPPs were confronted early on by substantial motions to dismiss from each Defendant, which attacked each of the various types of state law claims that IPPs had asserted in 33 different states. *See* ECF Nos. 301, 304, 305, 306, 307, 308, 309, 310, and 311. The Defendants' motions to dismiss also presented complex issues relating to IPPs' Article III standing – namely, the interplay between Article III standing and Fed. R. Civ. P. 23, as well as the potential applicability of the heightened standing requirements in *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983), to IPPs' case.

Indeed, when IPP Lead Counsel filed the initial complaint, we knew we were faced with a prior published opinion from Judge Linares that was directly adverse to IPPs' position on what was perhaps the central Article III standing issue in the case – namely, whether the IPP Class

---

[4] *See, e.g., Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) (Ninth Circuit affirmed district court's dismissal on summary judgment, and plaintiffs received no damages); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict after nineteen day trial and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (antitrust judgment remanded for new trial and damages).

representatives had standing to pursue a class action asserting claims under the laws of states other than the two states where the class representatives resided. *See McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132 (D.N.J. June 6, 2014) (Linares, J.) (dismissing state law claims on the basis that the class representatives did not have had standing to assert state law claims for states in which they did not reside). Accordingly, when IPP Lead Counsel filed this case, we believed that we might be starting out the case by having to take an appeal of an adverse ruling to the Third Circuit. Joint Decl. at ¶26. However, as a result of our extensive research and analysis, and through persuasive advocacy, IPPs ultimately defeated all of Defendants' Article III and other standing arguments, as well as all of Defendants' other joint and individual arguments advanced in support of their motions to dismiss. *See* ECF No. 406 (Order Denying Defendants' Motions to Dismiss).

From the outset of this case, IPP Counsel understood that we were embarking on a complex, expensive, and potentially lengthy litigation, which would potentially require the investment of tens of millions of dollars of attorney time and additional millions of dollars of out-of-pocket expenditures that might never get reimbursed. Joint Decl. at ¶26. These risks also included significant evidentiary hurdles that would have to be overcome in order to prove the extensive antitrust conspiracy IPPs had pled, and to further prove that the antitrust conspiracy resulted in pass-through damages to the IPP Class that could be established on a class-wide basis using common proof. *Id.* at ¶27. IPPs also faced the prospect of uncollectability from certain Defendants who were in precarious financial condition – most notably GEO, which was teetering on the edge of bankruptcy when this case was filed; and C&S, whose financial condition could never support the payment of a substantial judgment in this case. *See id.* at ¶28.  In addition, the Chemtrade Defendants – the biggest defendant group in the case which, as demonstrated in the

transactional data chart set forth above, had by far the highest dollar volume of sales of Aluminum Sulfate of any defendant – were claiming limited liability under the Antitrust Criminal Penalty and Reform Act ("ACPERA").[5]  In short, the risk of limited or no recovery in this case was substantial from the outset.

Despite these considerable risks, IPP Counsel aggressively prosecuted this case on a wholly contingent basis for over three years, shouldering all the risks (and costs) of the litigation. As set forth in the accompanying Joint Declaration of IPP Lead Counsel and its exhibits, IPP Counsel have devoted a total of 26,942.3 hours to the prosecution of the Indirect Purchaser Settlement Class's claims against Defendants, resulting in a lodestar of $14,937,631.25, and have incurred a total of $2,464,388.56 in out-of-pocket expenses on behalf of the IPP Class. Joint Decl. at ¶¶30, 38.[6]

Throughout the litigation, IPP Counsel put the interests of the Class ahead of their own financial interests, refusing to settle cheaply and ultimately obtaining an extraordinary recovery for the Class equivalent to a total, best case scenario victory – all along working without any compensation for over three years. Indeed, even when the first "ice-breaker" settlement with GEO was obtained, generating a minimum of $3.375 million for the IPP Class and potentially more, IPP

---

[5] *See* Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 661, 666-668 (June 22, 2004), as amended by Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010), codified as amended at 15 U.S.C. § 1 note.

[6] As noted previously, the Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage-of-recovery method is reasonable. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164. In applying the lodestar cross-check, however, the Third Circuit has emphasized that "the district court may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306–07 (3d Cir. 2005). To the extent, however, that the Court would like to review IPP Counsel's actual detailed billing records, those records are available and IPP Counsel would be happy to submit them to the Court for review. Because those detailed billing records and time entries contain extensive amounts of information protected from disclosure by the attorney-client privilege and work product immunity, any such review should be conducted by the Court *in camera*.

Lead Counsel did something that not many other law firms would do – unlike DPP counsel we declined at that time to petition for ***any*** attorneys' fees from that first settlement, instead asking only for reimbursement of out-of-pocket expenses so that IPP Counsel continued to have sufficient resources to prosecute this complex and expensive case on behalf of the IPP Class, and deferring any request for attorneys' fees until the end of the case. *See* ECF No. 1032, at p. 3.

Moreover, unlike a situation in which class counsel will obtain a windfall, in this case the requested fee award of 33 1/3% of the common fund will actually result in the application of a significant ***negative*** multiplier when compared to IPP Lead Counsel's lodestar.  IPP Lead Counsel here (and particularly the Stearns Weaver firm, which incurred the majority of attorney time and expenses in this case) typically do a significant amount of defense-side, hourly work for paying clients. Joint Decl. at ¶¶31-32.  If the Court awards IPP Counsel a 33 1/3% attorneys' fee recovery, that will result in an attorneys' fee award of $11,018,884.36– which is $3,918,746.89 ***less*** than the amount of attorney time invested in the case by IPP Counsel at their normal hourly rates. *Id.* at ¶31. Consequently, even with a 33 1/3% award, IPP Counsel will be compensated millions of dollars less than the equivalent value of their standard hourly rates, despite taking on a case that had substantial risk.

Thus, the requested fee is not only reasonable under the circumstances, but in actuality will result in a significant financial benefit to the IPP Class. Through the years-long efforts of IPP Lead Counsel, the IPP Class has now obtained an extraordinary recovery of more than 100% of its treble damages, and yet will end up paying millions of dollars ***less*** in attorneys' fees than it otherwise would have had to pay if had engaged our firms to handle the case on a straight hourly basis. Suffice it to say, there are not many law firms in this country that would agree to handle a highly risky and complex case like this on a contingency, invest over $14 million of their own time and

$2 million of their own money, with the expectation and understanding that they could end up being compensated millions of dollars less than they could have paid if they had handled the case on a normal hourly basis. Yet our firms, in taking on this case, undertook the risk that they would not be paid at all, or could be paid less than they would have been paid for doing equivalent work on a normal hourly basis.

In short, the contingency risk here was not only very significant, it turned out to be real, and fully supports the requested fee. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, *16 (N.D. Cal. Nov. 26, 2007) (explaining that a negative multiplier suggests a percentage-based award is fair and reasonable based on the time and effort expended by class counsel).

### 4)       The Skill and Efficiency of the Attorneys Involved

An analysis of the skill and efficiency of the attorneys involved also supports the fee request here. As set forth in the accompanying Joint Declaration, IPP Lead Counsel are highly experienced in litigating complex class actions and antitrust cases. Joint Decl. at ¶33. Through their efforts in this protracted, hard-fought litigation and through creative negotiations, IPP Lead Counsel were able to successfully obtain an extremely favorable recovery from each of the Defendants. *Id.* at ¶16.

Because of unique issues affecting only the IPPs and because of the tenacity of IPP Lead Counsel, IPPs were also able to obtain key evidence in discovery based on novel and creative legal arguments, including efforts that were strenuously opposed not only by the Defendants but even by the U.S. Department of Justice. By way of example, IPPs fought singlehandedly to obtain F.B.I. Form 302 interview reports of the key players in the conspiracy, including several of the named

individual Defendants in the case. IPPs prepared and submitted numerous briefs on the issue, *see* ECF Nos. 772, 843, 916, and 983, and relentlessly argued at multiple hearings for the discoverability of those 302s despite the Government's steadfast reliance on its *Touhy* regulations and the law enforcement privilege. Ultimately, after a series of rulings from Special Master Hochberg, one of which was affirmed on appeal by Judge Linares (*see, e.g.,* ECF Nos. 993, 1151), IPPs obtained the 302s, which provided extremely useful facts surrounding the conspiracy. As another example of innovative discovery work that the IPPs led, the IPPs obtained, after extensive briefing and hearings, thousands of additional documents from Defendant Kemira related to Kemira's sales of *other* water treatment chemicals and its sales in Canada, which provided valuable information to further settlement discussions with Kemira.  *See* ECF No. 968.

The quality of opposing counsel is also relevant in assessing the quality of class counsel's work. *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, *19 (D.N.J. Oct. 13, 2010). The Defendant groups in this case were represented by experienced antitrust counsel from prominent law firms that zealously represented the interests of their clients. The ability of IPP Lead Counsel to obtain favorable settlements for the Indirect Purchaser Settlement Classes "in the face of formidable legal opposition further evidences the quality of their work." *See In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp.2d 484, 496 (E.D. Pa. 2003).

IPP Counsel's skill and tenacity against formidable adversaries was the driving force behind the successful resolution of this case and the results obtained for the IPP Class. Put differently: "The result achieved is the clearest reflection of petitioners' skill and expertise."  *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *5 (E.D. Pa. June 2, 2004).

### 5)    The Complexity and Duration of the Litigation

"[C]omplex and/or novel issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are the "factors which increase the

18

complexity of class litigation." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 741 (3d Cir. 2001). Moreover, an "antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome." *Linerboard*, 2004 WL 1221350, at *10.

This case was no exception. As forth above, IPP Lead Counsel have aggressively prosecuted this case for over three years, against seven different, well-represented Defendant groups, through extensive motion practice, document discovery, depositions, and lengthy settlement negotiations. *See Merck ERISA*, 2010 WL 547613, at *10 ("inherently complex suit" that was "ongoing for more than two years" warranted 33 1/3% fee award). And unlike the Direct Purchaser Class, the IPPs had numerous additional legal hurdles to overcome (ranging from standing challenges to unique class certification challenges to proving downstream damages), as well as over 33 state law causes of action to support.

### 6) The Absence of Objections to the Fee Request to Date

The settlement notice which was approved by this Court (*see* ECF No. 1352) notified the Indirect Purchaser Settlement Class that IPP Lead Counsel will be seeking an award of attorneys' fees up to 33 1/3% of the total consideration made available to the Indirect Purchaser Settlement Class, in addition to reimbursement of out-of-pocket expenses and class representative incentive awards up to $25,000 for each of the two Indirect Purchaser Class Plaintiffs. The settlement notice also advises Indirect Purchaser Settlement Class that they can object to these requests and provides instructions on how to do so. Joint Decl. at ¶35.  No objections have been received to date. *Id.* at ¶36.  Because the objection deadline is October 7, 2019, any objections received after this submission will be addressed by IPP Lead Counsel in its forthcoming Motion for Final Approval.

**7)      Benefits Attributable to Others, including Government Agencies**

This factor contemplates whether IPP Counsel benefited from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165.

This is hardly a case where private plaintiffs simply piggy-backed on a prior government prosecution. Here, although the DOJ did conduct an investigation into some of the alleged anticompetitive conduct alleged in this case, DOJ ended up alleging only a limited two-party conspiracy between Chemtrade and GEO, which focused on a few geographically isolated instances of bid-rigging involving direct municipal purchasers of Alum. Joint Decl. at ¶5. The criminal proceedings instituted by DOJ in this Court were extremely limited, both in terms of the defendants alleged to have participated in a bid-rigging and market allocation conspiracy in the Alum market, and with respect to the scope of the alleged conspiracy. *Id.* at ¶6. DOJ ultimately sought indictments against only GEO, Frank Reichl, Brian Steppig, and Vincent Opalewski. *Id.*

By contrast, IPPs alleged and prosecuted a substantially different and far more expansive antitrust conspiracy case than the one alleged by DOJ. *Id.* at ¶7. Starting with the same documents that were also made available to DOJ by the defendants in this case, IPPs spent months analyzing those documents to determine the true scope of the conspiracy and the extent of participation in the conspiracy by corporate and individual defendants that were not criminally charged by DOJ. *Id.* at ¶8. As a result of that extensive analysis of many hundreds of thousands of documents, IPP Counsel ultimately concluded that the antitrust conspiracy alleged by DOJ was far too narrow, and that there were many additional corporate and individual defendants that engaged in culpable anticompetitive conduct. *Id.* at ¶9. Through our own independent analysis, IPP Counsel developed and asserted claims on behalf of indirect purchasers in 33 states not only against GEO and the handful of individuals criminally charged by DOJ, but also against the following additional entities

and individuals:

- Southern Ionics, Inc.;
- Milton Sundbeck;
- Kemira Chemicals, Inc.;
- C&S Chemicals, Inc.;
- General Chemical Corporation;
- General Chemical Performance Products, LLC;
- General Chemical LLC;
- GenTek Inc.;
- Chemtrade Logistics Income Fund;
- Chemtrade Logistics Inc.;
- Chemtrade Chemicals Corporation;
- Chemtrade Chemicals US, LLC;
- Chemtrade Solutions, LLC,
- USALCO, LLC;
- American Securities LLC;
- Kenneth Ghazey;
- Alex Avraamides;
- Amita Gupta;
- Matthew Lebaron; and
- Scott Wolff

*Id.*

If anything, the Government was more of a hindrance than of help in obtaining compensation for the IPP Class – which, as the end-payor purchasers who were forced to absorb the overcharges resulting from Defendants' anti-competitive activities, were the real victims in this case. Worse than simply overlooking substantial evidence of a much broader conspiracy, at multiple junctures in this case the Government actually tried to ***impede*** IPPs' discovery and development of that additional evidence to obtain compensation for the victims of this antitrust conspiracy. *Id.* at ¶10. Not only did the Government oppose, unsuccessfully, IPPs' efforts to obtain witness statements in the form of FBI 302s, *id.,* the Government also opposed IPPs' request under the Crime Victims' Rights Act of 2015, 18 U.S.C § 3771, that Defendant Brian Steppig provide restitution in the form of cooperation to IPPs as a condition of his probation. *See* ECF No. 91

(transcript of sentencing) in *United States v. Brian C. Steppig*, Case No. 16-cr-0065-JLL. After the Government opposed IPPs from obtaining that cooperation, IPP Lead Counsel ultimately negotiated a separate cooperation deal with Mr. Steppig as part of the IPP settlement with the GEO Defendants (which included Mr. Steppig). Joint Decl. at ¶¶11-12. As a result of those efforts, Mr. Steppig ultimately provided extremely valuable information to IPP Lead Counsel about the conspiratorial activities of other Defendants – individuals and corporations who, for reasons that escape IPP Lead Counsel, were never prosecuted by the Government. *Id.* That information proved extremely useful in developing IPPs' far more expansive case against these additional Defendants and, ultimately, in helping IPP Lead Counsel negotiate exceptional settlements from those additional persons and entities. *Id.*

Additionally, this is also not a case where IPP Lead Counsel piggybacked off of the work of Direct Purchaser Class Counsel; rather, IPP Lead Counsel led the charge on many key issues, identified and named as defendants culpable parties not originally named by Direct Purchasers, fought numerous key discovery battles independently, and had to overcome many legal hurdles that did not apply to the Direct Purchaser Class such as proving downstream pass-through of damages, overcoming several complex standing issues, and addressing numerous unique issues arising under the more than 33 different state law causes of action asserted solely by the IPPs. *Id.* at ¶13.

>8)    **The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Agreement**

The 33 1/3% fee request reflects commonly negotiated fees in the private marketplace. *See Merck ERISA*, 2010 WL 547613, at *12; *Remeron*, 2005 WL 3008808, at *16 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases . . . plaintiffs'

counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"). Accordingly, this factor also weighs in favor of the reasonableness of the requested award.

### 9)    Innovative Terms of Settlements

IPP Lead Counsel submits that the fact that the total dollar amount of these settlements exceeds 100% of the IPP Class' total treble damages qualifies them as "innovative" under any definition. Additionally, a number of these settlement agreements also contained innovative cooperation provisions, which assisted with obtaining larger recoveries from other later-settling Defendants. Joint Decl. at ¶24.

IPP Lead Counsel also negotiated for and obtained for the IPP Class a stipulated injunction permanently enjoining C&S "from directly or indirectly engaging in price fixing, bid-rigging, market allocation, or any similar anti-competitive behavior in violation of any federal and/or state law, in connection with the sale of liquid aluminum sulfate or any other water treatment chemical." *See* Exhibit C to C&S Settlement Agreement, ECF No. 1317-3. That stipulated permanent injunction, which extends beyond just Liquid Aluminum Sulfate and covers "any other water treatment chemical," provides the IPP Class (as well as all other municipal and private purchasers of water treatment chemicals) with benefits and protections against illicit activities that could not otherwise be obtained in this case. Joint Decl. at ¶25. Additionally, in light of Defendant C&S's precarious financial condition, IPP Lead Counsel successfully negotiated and obtained for the IPP Class UCC-1 security interests in all of C&S's bank and other deposit accounts, accounts receivable, inventory, machinery, furniture, fixtures, equipment, intellectual property, chattel paper, and other tangible and intangible property, in order to secure C&S's payment obligations in this case. *See* Exhibit B to C&S Settlement Agreement, ECF No. 1317-3.

*        *        *        *        *        *        *        *

23

In sum, each of the ten factors articulated in the *Gunter* and *Prudential* cases supports the 33 1/3% fee requested here, and the requested fee award would be wholly consistent with fees awarded in this Circuit.

### D.    IPP Counsel Should Be Reimbursed For Their Out-Of-Pocket Expenses

In addition to its request for attorneys' fees, IPP Lead Counsel also requests reimbursement of certain out-of-pocket expenses in the amount of $1,124,557.39 at this time.[7]  It is well-settled that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.,* 166 F.Supp.2d 72, 108 (D.N.J. 2001) (*citing Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir. 1995)); *Ikon*, 194 F.R.D. at 192 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund."). The appropriate analysis for deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

IPP Counsel have incurred and are obligated to pay substantial out-of-pocket expenses for expert witnesses, third-party vendors, and notice costs to the Class. Joint Decl. at ¶37. In connection with the IPPs' previously-approved settlement with the GEO Defendants, Judge Linares awarded reimbursement of expenses at that time, in the amount of $1,339,831.17. *See* ECF No. 1095. IPP Counsel now seek reimbursement of an additional $1,124,557.39, for expenses that were incurred since the previously-approved expense reimbursement, which are set out, by category, in the

---

[7]  Since this brief is being filed before the completion of additional work which may be required and additional expenses incurred prior to the Fairness Hearing (currently set for November 7, 2019), IPP Lead Counsel will supplement this request with any such items before that hearing date.

exhibits to the accompanying Joint Declaration. *See* Joint Decl. at ¶¶38-40; *id.* at Exs. A-F. Those categories of expenses are of the type routinely charged to hourly-fee paying clients in preparation for a modern-day antitrust case of this size and scope.  Indeed, they are the same types of expenses which Judge Linares earlier approved in this case in connection with the IPPs' settlement with the GEO Defendants. *See* ECF No. 1095. *See also* ECF No. 1171 at ¶3 (awarding Interim DPP Lead Counsel "$2,109,260.17 in reimbursement of certain of Plaintiffs' Counsel's out-of-pocket expenses" in connection with the DPPs' settlement with the GEO Defendants, in addition to attorneys' fees in the amount of 33.3% of the total cash proceeds made available to the Direct Purchaser Class).

### E.    The Court's Order On Fees Should Account For Settlement Proceeds Received After Entry Of The Final Order

Pursuant to the terms of the settlements with Defendants GEO and C&S, which were structured to account for those entities' precarious financial positions, certain settlement monies are not anticipated to be paid into the IPP settlement fund until after the entry of a final approval order in this case (including an order on this motion). Specifically, pursuant to the terms of the GEO settlement agreement, to date GEO has paid $2,047,901.51 of the settlement monies it owes, and an additional installment payment of $1,675,000 is due to be paid on or about January 17, 2020, in addition to the remaining 5% of the additional recovery based on the recent sale of GEO's assets. Joint Decl. at ¶14.

Additionally, pursuant to the terms of the C&S settlement agreement, C&S has currently paid IPPs its initial up-front payment of $100,000, and is contractually obligated to pay an additional $600,000 in monthly installments over the next four (4) years, plus interest of 4.45%. *Id.* at ¶19.   With interest, the total amount to be paid by C&S in settlement is $765,440.96. *Id.*

Consequently, because not all of the total settlement dollars have yet been paid into the IPP settlement account as of the date of this motion, and because a certain portion of those settlement dollars are not expected to be paid until after the Court rules on this motion and issues a final approval order, the Court's final order on attorneys' fees should take these timing issues into account. Specifically, so as to avoid repeated and redundant fee petitions every time these additional settlement dollars are received, the Court's final order should provide that, after setting the percentage of the fund to be paid as attorneys' fees to IPP Counsel, such percentage can be deducted from these later-arriving dollars when they are received and disbursed to IPP Counsel as part of their attorneys' fee award, with the remaining balance to be distributed to the IPP Class as part of the claims administration process. This is consistent with the order previously entered by Judge Linares in connection with the GEO-DPP settlement. *See* ECF No. 1171 at ¶3 (permitting DPP counsel to deduct 33.3% of later-received settlement dollars as attorneys' fees).

## IV.   THE COURT SHOULD APPROVE INCENTIVE AWARDS TO THE INDIRECT PURCHASER CLASS PLAINTIFFS

Finally, IPP Lead Counsel requests that the Court award $25,000 to each of the two Indirect Purchaser Class Plaintiffs (an aggregate of $50,000) for their work representing the Indirect Purchaser Settlement Class. Each of the Indirect Purchaser Class Plaintiffs has been committed to pursuing the Indirect Purchaser Settlement Class's claims since they became involved in the litigation well over three years ago. Joint Decl. at ¶41. Specifically, Indirect Purchaser Class Plaintiffs provided information necessary for filing the Complaint, and have undergone significant efforts to produce their own documents in response to Defendants' document requests. *Id*. The awards requested here are well deserved.

26

In the Third Circuit, service awards may be paid to class representatives to reward efforts that benefit the class.[8]  Courts typically focus on the level of the representatives' involvement, whether or not they are institutional entities (that typically have greater burdens in litigation than individual/consumer plaintiffs), and the amount of the requested award in comparison to the total amount obtained on behalf of the class. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig*., 205 F.R.D. 369, 400 (D.D.C. 2002); *In re Vitamin C Antitrust Litig.,* 2012 WL 5289514, *11 (E.D.N.Y. Oct. 23, 2012). The requested awards to the Indirect Purchaser Class Plaintiffs – each relatively small local governments with limited resources – are reasonable and justified based on their commitment to the case.

Last October, in connection with the IPPs' settlement with the GEO Defendants, Judge Linares provided a $25,000 incentive award to each of the two Indirect Purchaser Class Plaintiffs. *See* ECF No. 1095. However, this second and final request – which would result in a total of $50,000 for each of the two plaintiffs – is warranted in light of the complexity and long history of this case. For the past two years, both of the IPP Class representatives have dutifully represented the Class in all matters related to this action. Joint Decl. at ¶43.  They have been subject to extensive document discovery from the Defendants, have aided IPP Counsel with both understanding and prosecuting the case, and prepared extensively for their depositions which were cancelled on the eve of settlement with the final Defendants. *Id*. They have also stayed informed regarding the settlement negotiations and provided their consent once IPP Lead Counsel reached an appropriate settlement amount for each of the Defendants. *Id*.

---

[8] *See Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.)*, 513 F.Supp.2d 322, 342 (E.D. Pa. May 14, 2007) ("It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class.").

## V.    CONCLUSION

For the reasons set forth herein, IPP Lead Counsel respectfully requests the entry of an Order (1) awarding attorneys' fees equal to 33 1/3% of the total settlement proceeds received; (2) approving reimbursement of IPP Counsel's reasonable out-of-pocket expenses in the amount of $1,124,557.39; and (3) granting each of the two IPP class representatives an additional $25,000 incentive award to be paid from the aggregate settlement funds.

Dated: September 6, 2019                        Respectfully submitted,

s/ *Jay B. Shapiro*
Jay B. Shapiro
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3229
jshapiro@stearnsweaver.com

s/ *Marvin A. Miller*
Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400
mmiller@millerlawllc.com

*Interim IPP Co-Lead Counsel*