# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE:  LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (MCA)(MAH)<br><br>MDL No. 2687<br><br>**Motion Date: April 5, 2021** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENTS AND JUDGMENT ORDERS

C. Scott Lent (admitted *pro hac vice*)
Paul Q. Andrews (admitted *pro hac vice*)
Travis W. Clark (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
(212) 836-8000 Telephone
Scott.Lent@arnoldporter.com
Paul.Andrews@arnoldporter.com
Travis.Clark@arnoldporter.com

*Counsel for American Securities, LLC*

William F. Ryan, Jr. (admitted *pro hac vice*)
Aaron L. Casagrande (admitted *pro hac vice*)
Aaron A. Nichols   (admitted *pro hac vice*)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
(410) 347-8741
(410) 223-4161 (fax)
wryan@wtplaw.com
acasagrande@wtplaw.com
anichols@wtplaw.com

*Counsel for USALCO, LLC*

John D. "Randy" Dalbey
(admitted *pro hac vice*)
CHILIVIS, GRUBMAN, DALBEY & WARNER, LLP
3127 Maple Drive, NE
Atlanta, Georgia 30305
(404) 262-6504
(404) 261-2842 (fax)
jddalbey@cglawfirm.com

*Counsel for C&S Chemicals, Inc.*

TABLE OF CONTENTS

Page

I.   INTRODUCTION ...............................................................1

II.  STATEMENT OF RELEVANT FACTS.......................................3

     A.   The MDL Class Proceedings Were on Behalf of
          All Direct Purchasers of Alum in The United
          States and All Indirect Purchasers in Thirty-Three
          U.S. Jurisdictions..................................................3

     B.   The Relator's Qui Tam Complaints Relate to The
          Facts and Circumstances Alleged in The MDL
          Consolidated Proceeding Before This Court.......................4

     C.   The MDL Class Settlements ...............................................5

          1.   The Scope of The Settlement Classes.......................6

          2.   The Scope of The Releases Approved by
               The Court ...............................................10

          3.   The Binding Nature, Sole Remedy,
               Exclusive Jurisdiction and Stay Provisions
               of The Settlement Agreements Approved by
               The Court ...............................................13

     D.   Advance Notice of The Proposed Class
          Settlements was Given to Potential Class
          Members, Including the Municipalities Relator
          Purports to Represent, as well as The Attorneys
          General of Illinois and Virginia, Among Others.............15

     E.   The Judgment Orders Granting Final Approval of
          The DPP Settlement Agreements.......................................16

     F.   Relator's Objections to The Settlements and
          Failure to Appeal This Court's Denials of His
          Objections...............................................19

i

III.   ARGUMENT .............................................................................20

   A.   This Court Retained Jurisdiction to Enforce The
       Settlement Agreements ....................................................20

   B.   An Injunction to Enforce The Class Settlement
       Agreements is Proper Under The All Writs Act .............22

       1.   An Injunction is Necessary "In Aid Of" This
          Court's Jurisdiction .................................................23

       2.   The Anti-Injunction Act Does Not Apply to
          an Injunction Issued 'In Aid Of' This
          Court's Jurisdiction' .................................................24

       3.   An Injunction is Also Necessary to Protect
          and Effectuate This Court's Judgments ..................29

          a.   The Claims of Relator and The
             Municipalities are Barred by *Res*
             *Judicata*.......................................................29

          b.   The Claims of Relator and The
             Municipalities are Barred by
             Collateral Estoppel ......................................34

       4.   This Case Also Satisfies The Equitable
          Requirements for an Injunction .............................39

IV.   CONCLUSION..........................................................................40

TABLE OF AUTHORITIES

Page

Cases

*Agnes ex rel. Agnes v. E.I. Du Pont De Nemours & Co.*,
　No. 98-1405 (DMC), 2011 WL 1322043 (D.N.J. Mar. 31,
　2011) ................................................................................. 20-21, 38, 39

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
　398 U.S. 281 (1970) ...................................................................... 24

*Battle v. Liberty Nat'l Life Ins. Co.*,
　877 F.2d 877 (11th Cir. 1989) ......................................... 23-24, 27

*Carlough v. Amchem Prod., Inc.*,
　10 F.3d 189 (3d Cir. 1993) .................................... 23, 25, 27-28

*Collins v. E.I. DuPont de Nemours & Co.*,
　34 F.3d 172 (3d Cir. 1994) ...................................................... 31-32

*Freeman v. MML Bay State Life Ins. Co.*,
　445 Fed. App'x 577 (3d Cir. 2011) ............................................ 35

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
　No. 11-4429(JLL), 2012 WL 1574301
　(D.N.J. May 3, 2012) .................................................................... 30

*Grimes v. Vitalink Comms. Corp.*,
　17 F.3d 1553 (3d Cir. 1994) .......................................... 20, 29, 37

*Halley v. Honeywell Int'l, Inc.*,
　861 F.3d 481 (3d Cir. 2017) ......................................................... 10, 30

*In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*,
　315 F.3d 417 (4th Cir. 2003) ...................................................... 26

*In re Baldwin-United Corp.*,
　770 F.2d 328 (2d Cir. 1985) .................................... 24, 27, 28-29

*In re Corrugated Container Antitrust Litig.*,
　659 F.2d 1332 (5th Cir. 1981) ................................. 24, 26-27, 28

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002) ............................................................ 24-25, 28

*In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*,
    369 F.3d 293 (3d Cir. 2004) ............................................................ *passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    134 F.3d 133 (3d Cir. 1998) ........................................................ 28

*In re Linerboard Antitrust Litig.*,
    361 F. App'x 392 (3d Cir. 2010)............................................................ 25-26

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    261 F.3d 355 (3d Cir. 2001)............................................................*passim*

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    314 F.3d 99 (3d Cir. 2002)............................................................39

*In re Sch. Asbestos Litig.*,
    No. 83-0268, 1991 WL 61156 (E.D. Pa. Apr. 16,
    1991), *aff'd mem.*, 950 F.2d 723 (3d Cir. 1991)........................................ 23

*Karatzas v. Mass Mut. Fin. Grp.*,
    No. 16-1302 (RBK/AMD), 2016 WL 6953421
    (D.N.J. Nov. 28, 2016)............................................................30

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004)............................................................ 39-40

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)............................................................ 20-21

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*,
    589 F.3d 835 (6th Cir. 2009) ........................................................ 26

*Marmon Coal Co. v. Dir., Office of Workers' Comp. Progs.*,
    726 F.3d 387 (3d Cir. 2013)............................................................33

*Perlstein v. Transamerica Occidental Life Ins. Co.*,
    No. 07-cv-5782 (DMC),
    2008 WL 2837185 (D.N.J. July 21, 2008)....................................................31

*Robertson v. Bartels*,
    148 F. Supp. 2d 443 (D.N.J. 2001),
    *aff'd*, 534 U.S. 1110 (2002)................................................... 33-34

*Scachitti v. UBS Financial Servs., Inc.*,
    215 Ill. 2d 484 (2005) ................................................................32

*Simoni v. Luciani*,
    872 F. Supp. 2d 382 (D.N.J. 2012) ..........................................30

*Three J Farms, Inc. v. Plaintiffs' Steering Comm. (In re Corrugated
Container Antitrust Litig.)*,
    659 F.2d 1332 (5th Cir. 1981) .................................... 24, 26-27, 28

*Toscano v. Conn. Gen. Life Ins. Co.*,
    288 F. App'x 36 (3d Cir. 2008) ...................................... 30, 37-38

*U.S. ex rel. Charte v. Am. Tutor, Inc.*,
    934 F. 3d 346 (3rd Cir. 2019) ....................................................32

*United States v. Am. Soc. of Composers, Authors and Publishers*,
    442 F.2d 601 (2d Cir. 1971) .............................................. 24, 27

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)........................................................ 22

*United States ex rel. Hindo v. Univ. of Health Sciences/Chi. Med. School*,
    No. 91- cv-1432, 1993 WL 512609 (N.D. Ill. Dec. 8, 1993)......................33

*Wright v. Prudential Ins. Co. of Am.*,
    285 F. Supp. 2d 515 (D.N.J. 2003) ...........................................20

Other Authorities

28 U.S.C. §1715 ................................................................................16

28 U.S.C. § 2283 ..............................................................................29

Index of Exhibits

Name                                                                    Exhibit #

Judge Everett A. Martin, Jr. December 10, 2019,
Letter Memorandum Order (Circuit Court of the
City of Norfolk, Virginia) .......................................................................1

Amended Complaint dated September 27, 2018,
*State of Illinois, ex rel. Lawrence McShane, Plaintiff-Relator,*
*v. Reichl, et al.* (Circuit Court of Cook County, Illinois) .........................2

Amended Complaint dated September 27, 2018,
*City of Chicago, ex rel. Lawrence McShane, Plaintiff-Relator,*
*v. Reichl, et al.* (Circuit Court of Cook County, Illinois) .........................3

Third Amended Complaint dated November 23, 2020,
*Commonwealth of Virginia, ex rel. Lawrence*
*McShane, Plaintiff-Relator, v. Reichl, et al.*
(Circuit Court of Norfolk, Virginia).........................................................4

Settlement Agreement Between Direct Purchaser
Class Plaintiffs and Defendant USALCO, LLC
(Docket No. 1250-2) ...............................................................................5

Settlement Agreement Between Direct Purchaser
Class Plaintiffs and Defendant American
Securities, LLC (Docket No. 1273-2) ....................................................6

Settlement Agreement Between Direct Purchaser
Class Plaintiffs and Defendant C&S Chemicals, Inc.
(Docket No. 1326-2) ...............................................................................7

Declaration of Charles E. Ferrara
dated November 20, 2020 .......................................................................8

In re: Liquid Aluminum Sulfate Antitrust Litigation,
Civil No. 16-md-2687, Hearing Transcript
dated November 14, 2018 (Docket No. 1184) ........................................9

In re: Liquid Aluminum Sulfate Antitrust Litigation,
Civil No. 16-md-2687, Hearing Transcript
dated September 26, 2019 (Docket No. 1426) ......................................................10

## I.      INTRODUCTION

Defendants American Securities, LLC ("American Securities"), C&S Chemicals, Inc. ("C&S") and USALCO, LLC ("USALCO" and collectively with American Securities and C&S, the "Settling Defendants") submit this memorandum of law in support of their Motion to Enforce Settlement Agreements and request that this Court:

> (i) exercise its retained, continuing, and exclusive jurisdiction to administer, interpret, implement and enforce their court-approved settlement agreements with the Direct Purchaser and Indirect Purchaser Settlement Classes, which settlement agreements are incorporated in and made a part of this Court's related judgment orders fully and finally approving the settlement agreements in all respects; and

> (ii) enjoin the Relator Lawrence McShane ("Relator") and the governmental entities he purports to represent from pursuing claims he filed against the Settling Defendants in Illinois and Virginia state courts to recover damages allegedly sustained by municipal and other local governmental purchasers of liquid aluminum sulfate ("Alum") in these jurisdictions (collectively, "Municipalities"), penalties and attorneys' fees.

Relator is a former employee of General Chemical Corporation who claims to be the "whistleblower" who reported the alleged conspiracy that forms the basis of the antitrust actions in this consolidated proceeding.  After the filing of the Direct Purchaser Consolidated Amended Complaint on August 22, 2016 ("DPP Complaint", Dkt. No. 220) and the Indirect Purchaser Consolidated Complaint on October 17, 2016 ("IPP Complaint", Dkt. No. 242), Relator filed a series of *qui tam*

lawsuits[1] in Illinois and Virginia under various false claims statutes alleging, like the plaintiffs in these consolidated proceedings, that the Settling Defendants and other named defendants engaged in a nationwide conspiracy to fix prices and rig bids for contracts in the Alum market (collectively, the "Qui Tam Cases").[2]

The alleged underlying conspiracy in the Qui Tam Cases is the same as that alleged in these consolidated multidistrict proceedings.  The Municipalities, on whose behalf Relator seeks to recover in the Qui Tam Cases, are class members who, as set forth more fully below, already settled and released all such claims against the Settling Defendants.  Those settlements and releases were approved by this Court and incorporated into, and made a part of, judgment orders issued by this Court dismissing with prejudice the claims of the Direct Purchaser Class and Indirect Purchaser Class against the Settling Defendants.  These settlements and

---

[1]     A "qui tam lawsuit" is a lawsuit in which a private citizen is authorized by law to file a claim on behalf of a government entity against a third-party that allegedly defrauded the government, seeking to recover such moneys for the government entity.  The citizen, or "Relator," receives a percentage of the government's recovery.

[2]     The Qui Tam Cases include: (1) *Lawrence McShane v. Frank A. Reichl, et al.*, Case No. CL17-944 (Circuit Court for Norfolk, Virginia, filed January 31, 2017); (2) *State of Illinois ex rel. Lawrence McShane v. Frank A. Reichl, et al.*, Case No. 2017-L-001074 (Circuit Court of Cook County, Illinois, filed January 30, 2017); and (3) *City of Chicago ex rel. Lawrence McShane v. Frank A. Reichl, et al.*, Case No. 2016-L-011383 (Circuit Court of Cook County, Illinois, filed November 18, 2016).

releases warrant an injunction against Relator and the Municipalities from pursuing the Qui Tam Cases against the Settling Defendants.

## II.  STATEMENT OF RELEVANT FACTS

### A.  The MDL Class Proceedings Were On Behalf Of All Direct Purchasers of Alum In The United States And All Indirect Purchasers In Thirty-Three U.S. Jurisdictions

The DPP Complaint was filed on behalf of a class consisting of "[a]ll persons and entities in the United States who purchased liquid aluminum sulfate directly from Defendants, from 1997 through at least February 2011."  Dkt. No. 220 at ¶ 45.  Likewise, the IPP Complaint was filed on behalf of "all persons or entities . . . who indirectly purchased liquid aluminum sulfate, . . . from January 1997 and continuing until the anticompetitive effects of Defendants' unlawful conduct ceases," in thirty-three United States jurisdictions, including Illinois.  Dkt. No. 242 at ¶ 174.  Thus, both the DPP Complaint and IPP Complaint included as putative class members the Municipalities that Relator purports to represent in the Qui Tam Cases.  As the Court in the Virginia *qui tam* case has noted, "[t]here is no dispute the Localities are members of the Class," referring to the Direct Purchaser Settlement Class.  *See* December 10, 2019, Letter Memorandum and attached Order, which is **Exhibit 1** to this memorandum.[3]

---

[3]      In its December 10, 2019 letter order granting in part, and denying in part, certain defendants' pleas in bar, the Circuit Court of the City of Norfolk suggested

**B.** **The Relator's Qui Tam Complaints Arise Out of the Same Facts and Circumstances Alleged In The MDL Consolidated Proceeding Before This Court**

Relator's Qui Tam Cases are based on the same alleged conspiracy that formed the basis of the antitrust actions in this consolidated MDL proceeding.  In his qui tam complaints,[4] Relator alleges that Settling Defendants and others engaged,

> [I]n a conspiracy for the purposes of suppressing and eliminating competition in the selling and marketing of liquid aluminum sulfate by entering into an agreement to rig bids and allocate customers for, and to fix, stabilize and maintain the price of liquid aluminum sulfate sold to municipalities and pulp and paper companies throughout the United States.

Ill. Am. Cmplt., **Exhibit 2**, at ¶ 33.  Relator further alleges that "the conspiracy was in effect by no later than 2005 and lasted through at least February 2011."  *Id.*  Likewise, the claims asserted in the Consolidated Proceedings in this case alleged that the Settling Defendants participated in a conspiracy to rig bids, allocate customers and fix, stabilize and maintain the price of alum sold in the United States

---

that Defendants "return to the District Court and seek an injunction barring the prosecution of this action under the Anti-Injunction Act."  Exhibit 1 at 9 n.20.

[4]      References herein are to the allegations contained in Relator's Amended Complaint on behalf of the Illinois Municipalities, which allegations are the same as those made in his other *qui tam* complaints for all purposes relevant to this Motion.  Relator's currently pending complaints in the Illinois and Chicago Qui Tam Cases are attached hereto as **Exhibits 2** and **3**, respectively.  Relator's recently filed Third Amended Complaint in the Virginia action is attached hereto as **Exhibit 4**.  Given the volume of the exhibits to these complaints, the exhibits are not being submitted to the Court but can be submitted at the Court's request.

from January, 1997 to at least February 28, 2011.  *See, e.g.,* Dkt. No. 1366-3 at 1 (Court-approved Notice of Proposed Settlements between Direct Purchaser Class Plaintiffs and American Securities and USALCO).  Those claims were settled and released.

### C.    The MDL Class Settlements

Following more than three years of litigation, the Direct Purchaser Class Plaintiffs filed a series of motions for preliminary approval of class-wide settlements with the Settling Defendants, including: (1) on March 25, 2019, a Motion for Preliminary Approval of a class-wide settlement with USALCO (Dkt. No. 1250); (2) on April 18, 2019, a Motion for Preliminary Approval of a class-wide settlement with American Securities (Dkt. No. 1273); and (3) on July 1, 2019, a Motion for Preliminary Approval of a class-wide settlement with C&S (Dkt. No. 1326).  The proposed settlement agreements between the Direct Purchaser Class Plaintiffs and USALCO, American Securities and C&S, which are collectively referred to herein as the "DPP Settlement Agreements," *see* Dkt. Nos. 1250-2, 1273-2 and 1326-2, respectively, and are attached hereto as **Exhibits 5** to **7**.[5]

---

[5]    These motions were preceded by a Motion for Preliminary Approval of a class-wide settlement between the DPPs and the GEO Settling Parties, which included GEO and Steppig, among others on June 15, 2018 (Dkt. No. 911) and a Motion for Preliminary Approval of a class-wide settlement between the DPPs and the Chemtrade Defendants on January 14, 2019 (Dkt. No. 1189).

Similarly, the Settling Defendants entered into class-wide settlement agreements with the Indirect Purchaser Class Plaintiffs.  *See* Dkt. No. 1317-1 (USALCO); Dkt. No. 1317-2 (American Securities); Dkt. No. 1317-3 (C&S), which are collectively referred to herein as the "IPP Settlement Agreements."  In other words, all defendants have settled with the class plaintiffs, and the class litigation has ended.  *See* Dkt. No. 1463 ("this case is hereby terminated as to all parties".

The class settlements provide for significant recovery for the members of the respective classes, including the Illinois and Virginia Municipalities Relator purports to represent.  Although the DPP Settlement Agreements and the IPP Settlement Agreements provide for different consideration and have certain different terminology, their terms are functionally identical as they relate to this Motion.

### 1.    The Scope of The Settlement Classes

In the DPP Settlement Agreements, the "Direct Purchaser Settlement Class" includes "all Direct Purchasers, including the Direct Purchaser Class Plaintiffs and Direct Purchaser Settlement Class Members."   Dkt. No. 1250-2, at ¶ 1(k) (USALCO); Dkt. No. 1273-2, at ¶ 1(j) (American Securities);  Dkt. No. 1326-2, at ¶ 1(k) (C&S).  "Direct Purchasers" are defined as "all persons or entities that purchased Alum in the United States directly from a Defendant or co-conspirator

from January 1, 1997 to at least February 28, 2011."  Dkt. No. 1250-2, at ¶ 1(g) (USALCO); Dkt. No. 1273-2, at ¶ 1(g) (American Securities); Dkt. No. 1326-2, at ¶ 1(g) (C&S).

The only persons and entities excluded from the Direct Purchaser Settlement Class are "[d]efendants . . . and their respective parents, subsidiaries, and affiliates" and "any Direct Purchasers who timely and validly elect to be excluded from the Direct Purchaser Settlement Class."  Dkt. No. 1250-2, at ¶ 1(k) (USALCO); Dkt. No. 1273-2, at ¶ 1(j) (American Securities); Dkt. No. 1326-2, at ¶ 1(k) (C&S). None of the entities that Relator purports to represent elected to be excluded from the Direct Purchaser Settlement Class.

Similarly, in the IPP Settlement Agreements, the "Indirect Purchaser Settlement Class" includes "all Indirect Purchasers, including the Indirect Purchaser Class Plaintiffs and Indirect Purchaser Settlement Class Members."  Dkt. No. 1317-1, at ¶ 1(k) (USALCO); Dkt. No. 1317-2, at ¶ 1(j) (American Securities); Dkt. No. 1317-3, at ¶ 1(n) (C&S).  An "Indirect Purchaser" is defined as "all persons or entities that purchased Alum in the Indirect Purchaser States indirectly for end use and not for resale from a Defendant or co-conspirator during the Settlement Class

Period." Dkt. No. 1317-1, at ¶ 1(h) (USALCO); Dkt. No. 1317-3, at ¶ 1(j) (C&S); ); *see also* Dkt. No. 1317-2, at ¶ 1(g) (American Securities).[6]

The only persons or entities excluded from the Indirect Purchaser Settlement Class are "[d]efendants and co-conspirators and their respective parents, subsidiaries and affiliates" and "any Indirect Purchasers who timely and validly elect to be excluded from the Indirect Purchaser Settlement Class."  Dkt. No. 1317-1, at ¶ 1(k) (USALCO); Dkt. No. 1317-2, at ¶ 1(j) (American Securities); Dkt. No. 1317-3, at ¶ 1(n) (C&S).  None of the entities that Relator purports to represent elected to be excluded from the Indirect Purchaser Settlement Class.

The Municipalities allege that they are both "Direct Purchasers" and "Indirect Purchasers" of Alum, and therefore are members of the Direct Purchaser Settlement Class and/or Indirect Purchaser Settlement Class. *See, e.g.,* Exhibit 3, Chicago Amended Complaint, at ¶¶ 35, 51, 51–99 (including allegations that the Municipalities purchased Alum directly from the Defendants and indirectly through distributors).  Unless, therefore, the Municipalities opted out of the Direct Purchaser Settlement Class and the Indirect Purchaser Settlement Class, they remain class members and are bound by the settlement agreements entered into on behalf of ***all*** class members.

---

[6]     The "Settlement Class Period" was defined as January 1, 1997 through February 28, 2011.  Dkt. No. 1317-1, at ¶ 1(w) (USALCO); Dkt. No. 1317-2, at ¶ 1(x) (American Securities); Dkt. No. 1317-3, at ¶ 1(aa) (C&S).

Not only did the Municipalities not elect to be excluded from the class settlement agreements, a number of them have submitted claim forms to receive payments from the class settlements. *See* Declaration of Charles E. Ferrara attached hereto as **Exhibit 8**.[7]  These Municipalities include, among others, the City of Chicago, the City of Crystal Lake, the City of Decatur, the City of Salem and the City of West Chicago, in Illinois as well as the City of Chesapeake and the City of Williamsburg in Virginia. *See id*.[8]

---

[7]   Mr. Ferrara is a Sr. Business Resource Liaison for the class action notice and settlement administration firm, Angeion Group, LLC, retained by the DPP class. *Id*. at ¶¶ 1-2.  Exhibit A to Mr. Ferrara's declaration contains a listing of the Municipalities that have participated in the DPP Settlement Class and have received distributions from the class settlements.  The remainder of the attachments to the Declaration originally contained the claim forms and backup documentation submitted by the Municipalities identified in Exhibit A to the Declaration.  For the convenience of the Court and the parties, the backup documentation has been removed and the remaining Declaration, claim forms and attachments thereto have been numbered sequentially.

[8]   The Claim Forms include express disclaimers, such as: (1) "By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, **including the terms of the releases** described therein and provided for herein", *see*, *e.g.*, Exhibit 8 at Angeion000134 (emphasis added), and (2) "You agree to submit to the jurisdiction of the District Court for the District of New Jersey, where this Action is pending, for purposes of resolving any issues related to or arising from your claim."  *Id*. at Angeion000137.  To the extent the Court requests the submission of the entirety of the Claim Forms with the backup documentation, undersigned counsel can provide that information to the Court.

## 2.     The Scope of The Releases Approved By The Court

Under the court approved settlement agreements, the Direct Purchaser Settlement Class broadly released any and all claims any class member had against the Settling Defendants that in any way arose out of or related to the facts and circumstances alleged in the Consolidated Proceedings, including any "consequences thereof."  As the Third Circuit has noted, "[i]t is not unusual for a class settlement to release all claims arising out of a transaction or occurrence." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017).

Each release provides that the Settling Defendant "shall be completely released" from "any and all claims" regardless of whether the claims are "class, individual or otherwise in nature" and whether they are brought "directly, representatively, derivatively or in any other capacity."  *See* Dkt. No. 1250-2, at ¶ 14 (USALCO); Dkt. No. 1273-2, at ¶ 14 (American Securities); Dkt. No. 1326-2, at ¶ 14 (C&S).[9]  Under the express terms of each release, the only claims preserved are those involving "negligence, personal injury, breach of product warranty, bailout, failure to deliver lost wages, damaged or delayed goods, product defect or similar claim relating to Alum." *See* Dkt. No. 1250-2, at ¶ 14 (USALCO); Dkt. No. 1273-2, at ¶ 14 (American Securities); Dkt. No. 1326-2, at ¶ 14 (C&S).  The claims

---

[9]     The release provisions contained in the IPP Settlement Agreement and related Orders approving those agreements are the same for all relevant purposes relating to this Motion.  *See* Dkt. No. 1317-1, at ¶ 15 (USALCO); Dkt. No. 1317-2, at ¶ 14  (American Securities); Dkt. No. 1317-3, at ¶ 14 (C&S).

alleged in Relator's Qui Tam Cases do not fall within this limited exception to the broad release of any and all claims.

In this regard, the release in USALCO's DPP Settlement Agreement, which is identical in all material respects to the release in the other DPP Settlement Agreements, states in pertinent part:

> Upon Final Judgment and in consideration of payment of the Settlement Funds into the Direct Purchaser Escrow Account, and for other valuable consideration, **the USALCO Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature** (whether or not any Direct Purchaser Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, **whether directly, representatively, derivatively or in any other capacity**) **that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of Final Judgment, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in anyway arising out of or relating in any way to the facts and circumstances alleged in the Consolidated Proceedings ("Released Claims")**, provided however, that nothing herein shall release claims involving any negligence, personal injury, breach of product warranty, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or similar claim relating to Alum.

Dkt. No. 1250-2, at ¶ 14 (USALCO) (emphasis added); *see also* Dkt. No. 1273-2, at ¶ 14 (American Securities); Dkt. No. 1326-2, at ¶ 14 (C&S).

Consistent with the broad release of claims, the DPP Settlement Agreements define the parties subject to the release in equally broad terms.  In addition to

encompassing "all persons or entities that purchased Alum in the United States from a Defendant or a co-conspirator from January 1, 1997 to at least February 28, 2011" (*i.e.*, "Direct Purchasers"), *see, e.g.*, Dkt. No. 1250-2, at ¶ 1(g) (USALCO), the Releasing Parties expressly includes, in pertinent part, "any person or entity acting on behalf of or through them in any capacity whatsoever"; "any of their . . . officials . . . legal representatives"; and any "persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer or any other capacity, whether or not any of them participate in this settlement." In this regard, the DPP Settlement Agreements provide that:

> **"Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Direct Purchaser Settlement Class and all Direct Purchaser Settlement Class Members, including the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members, each on behalf of themselves and their respective predecessors and successors**; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; their assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; **and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, the following:** (1) any Releasing Party's subdivisions (political or otherwise, including, but not limited to, municipalities, counties, parishes, villages, unincorporated districts and hospital districts), public entities, public instrumentalities and public education institutions; **and (2) persons or entities acting in a parens patriae, sovereign, quasi-sovereign,**

**private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this settlement.** As used in this Paragraph, "affiliates" means entities controlling, controlled, in whole or in part, by or under common ownership or control with, in whole or in part, any of the Releasing Parties or their predecessors.

Dkt. No. 1250-2, at ¶ 1(w) (USALCO) (emphasis added); Dkt. No. 1273-2, at ¶ 1(x) (American Securities); Dkt. No. 1326-2, at ¶ 1(w) (C&S). Thus, the releases expressly extend to and release all past, current and future claims by any persons acting in a *qui tam* capacity. And, they expressly apply "whether or not any of them participate in this settlement." *Id.*

### 3.   The Binding Nature, Sole Remedy, Exclusive Jurisdiction and Stay Provisions of The Settlement Agreements Approved By The Court

Paragraph 21 of the DPP Settlement Agreements provides that, "upon Final Approval, each and every covenant and agreement herein shall be binding upon all Direct Purchaser Settlement Class Members." Dkt. No. 1250-2, at ¶ 21 (USALCO); *see also* Dkt. No. 1273-2, at ¶ 21 (American Securities); Dkt. No. 1326-2, at ¶ 21 (C&S).

The DPP Settlement Agreements further provide that they are the sole remedy for all Released Claims:

> This Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any [Settling Defendants] Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any [Settling Defendants] Released Party.

Dkt. 1250-2, ¶ 22 (USALCO); Dkt. No. 1273-2, at ¶ 22 (American Securities); Dkt. No. 1326-2, at ¶ 22 (C&S).[10]

The DPP Settlement Agreements expressly provide that: "[t]he Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement."  Dkt. No. 1250-2, at ¶ 18 (USALCO); *see also* Dkt. No. 1273-2, at ¶ 18 (American Securities); Dkt. No. 1326-2, at ¶ 18 (C&S).  Additionally, they provide that the Settling Defendants shall be entitled to a stay of any other suit against them until this Court has entered a final judgment no longer subject to further review, stating:

> In the event that the provisions of Paragraph 14 or 15 are asserted by any USALCO Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such USALCO Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.

Dkt. No. 1250-2, at ¶ 18 (USALCO); *see also* Dkt. No. 1273-2, at ¶ 18 (American Securities); Dkt. No. 1326-2, at ¶ 18 (C&S).

---

[10]    Also noteworthy is that the DPP Settlement Agreements contained opt-out and termination provisions pursuant to which the Settling Defendants had the ability to terminate the DPP Settlement Agreements if a certain threshold of Class Members elected to be excluded from, or opted out of, participating in the Class Settlement.  Dkt. No. 1250-2, at ¶ 17.  None of the governmental entities that Relator purports to represent elected to opt out of the settlement classes.

**D.** **Advance Notice of The Proposed Class Settlements was Given to Potential Class Members, Including The Municipalities Relator Purports to Represent, as well as The Attorneys General of Illinois and Virginia, Among Others**

By various orders, this Court preliminarily approved the DPP Settlement Agreements with USALCO, American Securities and C&S on April 24, 2019, May 13, 2019 and September 12, 2019, respectively. *See* Dkt. Nos. 1282, 1293 and 1373. Pursuant to those orders, the Direct Purchaser Plaintiffs provided court-approved notice of the proposed class settlement to class members including the Municipalities that are the parties of interest in the Qui Tam Cases.

As part of the notice process, the court-approved notice of the proposed settlements was sent to over 10,000 potential class members and also published in an industry newspaper and on a dedicated website. *See* Dkt. No. 1366-3, at ¶¶ 10, 12, 13–16 (USALCO & American Securities); Dkt. No. 1401-2, at ¶¶ 9, 11, 12–14 (C&S). The notice included a number of disclosures. In addition to providing basic information about the lawsuit and the settlement, *see, e.g.,* Dkt. No. 1366-3 at 7-18, the notices expressly notified potential class members of the broad releases contained in the proposed settlement agreements, *id.* at 13–14, and gave them instructions on how they could elect to opt out of the settlement class by simply mailing a letter to the claims administrator by a date certain saying they wanted to be excluded from the settlement class. *Id.* at 15. The notices also advised potential class members that, if they did nothing at all, "you will remain in the Direct

15

Purchaser Settlement Class, and you will be bound by the terms of the Settlements and will forego any right to sue, or be part of any other lawsuit against USALCO . . . or American Securities over the 'Released Claims.'" *Id.* at 18.[11]

In addition to the notice provided to the Municipalities, notice was also provided to the Attorneys General of each of the 50 states, including Illinois and Virginia, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *See, e.g.*, Dkt. No. 1388, at ¶ 6. None of them objected to the Court's approval of the settlement agreements**.**

### E. The Judgment Orders Granting Final Approval of The DPP Settlement Agreements

This Court's Judgment Orders approving the DPP Settlement Agreements (the "DPP Settlement Orders") incorporated, and made a part thereof, the respective DPP Settlement Agreements and further incorporated, by specific reference, the release provisions of paragraph 14 of the DPP Settlement Agreements "in all respects." Dkt. No. 1388, at ¶¶ 2, 11 (USALCO and American Securities) ("The provisions of paragraphs 14, 15, and 16 of the respective Settlement Agreements, together with the definitions contained in paragraph 1 of the respective Settlement

---

[11]     The Indirect Purchaser Plaintiffs followed a similar court-approved notice process for their potential class members and included information substantively similar to that provided in the Direct Purchaser Plaintiffs' notice. *See* Dkt. No. 1400-1, at 21 ("Unless you excluded yourself, you will not be able to file a lawsuit or be part of any other lawsuit asserting claims against the Settling Defendants concerning or relating to the claims and factual allegations that were or could have been raised in this action.").

Agreements relating thereto, are expressly incorporated herein in all respects."); *see also* Dkt. No. 1420, at ¶¶ 2, 10 (C&S).

The DPP Settlement Orders further certified a nationwide settlement class of "all persons or entities that purchased liquid aluminum sulfate ("Alum") in the United States directly from a Defendant from January 1, 1997 through February 28, 2011." Dkt. No. 1388, at ¶ 4 (USALCO and American Securities); Dkt. No. 1420, at ¶ 4 (C&S).

Pursuant to the express provisions of the DPP Settlement Orders, the only parties excluded from the settlement class are (1) Defendants and their respective parents, subsidiaries, and affiliates and (2) any Direct Purchaser Settlement Class Member "who timely and validly elect[ed] to be excluded from the Direct Purchaser Settlement Class, as listed on . . . Exhibit 1" to the Orders. *See* Dkt. No. 1388, at ¶ 4 (USALCO and American Securities); Dkt. No. 1420, at ¶ 4 (C&S). Neither Relator, nor any of the Municipalities he purports to represent, are listed on Exhibit 1 to the Orders. *See* Dkt. No. 1388, at Exhibit 1 (USALCO and American Securities); Dkt. No. 1420, at Exhibit 1 (C&S).

Further, each of the DPP Settlement Orders expressly provides that the terms of the Settlement Agreement and Order are "forever binding" on the "Direct Purchaser Class Plaintiffs, and all other Direct Purchaser Settlement Class Members (regardless of whether or not any individual Direct Purchaser Class Member

submits a Claim form or seeks or obtains a distribution from the net Settlement proceeds)[.]"  Dkt. No. 1388, at ¶ 10 (USALCO and American Securities); Dkt. No. 1420, at ¶ 9 (C&S).  The Orders expressly state that:  "Other than those parties listed on Exhibit 1, there are no persons excluded from the Direct Purchaser Settlement Class and not bound by the terms of the Settlement Agreement or this Judgment."  Dkt. No. 1388, at ¶ 10 (USALCO and American Securities); Dkt. No. 1420, at ¶ 9 (C&S).  The Orders further found that the settlements are "in all respects, fair, reasonable and adequate to the Direct Purchaser Settlement Class." Dkt. No. 1388, at ¶ 8 (USALCO and American Securities); *see also* Dkt. No. 1420, at ¶ 7 (C&S).

Finally, the DPP Settlement Orders expressly provided that this Court "retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement . . . and (f) the Direct Purchaser Settlement Class Members for all matters relating to the Action."  Dkt. No. 1388, at ¶ 15 (USALCO and American Securities); Dkt. No. 1420 at ¶ 14 (C&S).  The Orders further state: "Exclusive jurisdiction is hereby retained over the Parties and the Direct Purchaser Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreements and this

Order."   Dkt. No. 1388, at ¶ 25 (USALCO and American Securities); Dkt. No. 1420, at ¶ 23 (C&S).

**F.   Relator's Objections to The Settlements and Failure to Appeal This Court's Denials of His Objections**

As this Court is aware, Relator repeatedly sought to intervene in this action to object to the class settlements approved by this Court.  *See, e.g.,* Dkt. Nos. 1091-92, 1375-76.  Relator admittedly sought to do so because he understood that the releases contained in the various settlements would release his claims if approved by this Court.  *See* November 14, 2018, Hearing Transcript, Dkt. No. 1184, at p. 30:8-12, attached as **Exhibit 9** hereto (Counsel for Relator, stating:  "I think that the release provisions would be tantamount to settling and dismissing the actions in our claims, and the direct purchaser plaintiffs acknowledge in their briefing that they are seeking a release of those claims . . . .").

The Court denied Relator's attempts to intervene and repeatedly stated that it would not then opine on the application of the class settlement releases on the Qui Tam Cases.  *See, e.g.*, Dkt. Nos. 1169 and 1390.  Relator did not appeal this Court's denials of his motions to intervene.

In addition to seeking to intervene, Relator's counsel has also expressly admitted that this Court is the appropriate venue to determine the scope of the releases.  *See* September 26, 2019, Hearing Transcript, Dkt. No. 1426, at 28:24-29:1, attached as **Exhibit 10** hereto (in addressing the Court, Relator's counsel

stated, "I think that you are the appropriate judge to say what the settlement is doing and what exactly is being exchanged between the parties . . . .").

## III.   ARGUMENT

### A.   This Court Retained Jurisdiction To Enforce The Settlement Agreements

"Courts have repeatedly affirmed the power of a court approving a settlement agreement to exercise its discretion to retain jurisdiction over the enforcement of that agreement, so long as it does so explicitly in the dismissal order[.]" *Wright v. Prudential Ins. Co. of Am.*, 285 F. Supp. 2d 515, 520 (D.N.J. 2003) (citation omitted); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (acknowledging that, although it was not the case there, a provision retaining jurisdiction over a settlement agreement makes compliance with the settlement agreement part of the dismissal order; thus a breach of the agreement is a violation of the court order); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994) ("As a judgment, the settlement and release of claims is a contract that not only is agreed upon by the parties, but also is stamped with the imprimatur of the court with jurisdiction over the parties and the subject matter of the lawsuit.").

"A court has jurisdiction to enforce a settlement agreement when the parties' obligation to comply with the terms of the settlement agreement are made part of the order of dismissal." *See Agnes ex rel. Agnes v. E.I. Du Pont De Nemours &*

*Co.*, No. 98-1405 (DMC), 2011 WL 1322043, at *4 (D.N.J. Mar. 31, 2011) (citing *Kokkonen*, 511 U.S. at 381).

As noted above, both the DPP Settlement Agreements and the DPP Settlement Orders expressly provide for this Court to retain jurisdiction over disputes regarding the settlements.  *See* DPP Settlement Agreements, Dkt. No. 1250-2, at ¶ 18 (USALCO) ("The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement."), Dkt. No. 1273-2, at ¶ 18 (American Securities) (same), and Dkt. No. 1326-2, at ¶ 18 (C&S); and DPP Settlement Orders, Dkt. No. 1388, at ¶ 15 (USALCO and American Securities) (This Court "retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement . . . and (f) the Direct Purchaser Settlement Class Members for all matters relating to the Action."), Dkt. No. 1420, at ¶ 14 (C&S); *see also* Dkt. No. 1388, at ¶ 25 (USALCO and American Securities) ("Exclusive jurisdiction is hereby retained over the Parties and the Direct Purchaser Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreements and this Order."), Dkt. No. 1420, at ¶ 23 (C&S) (same).

Furthermore, all municipalities that submitted claim forms affirmed that they agreed "to submit to the jurisdiction of the District Court for the District of New Jersey, where this Action is pending, for purposes of resolving any issues related to or arising from your claim." *See*, e.g., Exhibit 8 at Angeion000137.

**B.    An Injunction to Enforce The Class Settlement Agreements is Proper under The All Writs Act**

The All Writs Act grants authority to enjoin non-parties "to the original action" when they "are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. N.Y. Tel. Co.,* 434 U.S. 159, 174 (1977). Thus, "district courts have the authority under the All Writs Act . . . to protect their jurisdiction by enjoining state court proceedings that interfere with a judicially approved settlement." *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, 369 F.3d 293, 297 (3d Cir. 2004) ("*In re Diet Drugs II*"). As noted above, in its December 10, 2019 letter order granting in part, and denying in part, certain defendants' pleas in bar in the *qui tam* case filed by Relator in Virginia, the Circuit Court of the City of Norfolk specifically invited the Defendants to "return to the District Court and seek an injunction barring the prosecution of this action under the Anti-Injunction Act." Exhibit 1 at 9 n.20.[12]

---

[12]    Certain defendants in the MDL proceeding not parties to this motion also sought relief in the Chicago and Illinois *qui tam* cases based on the class

### 1. An Injunction is Necessary "In Aid Of" This Court's Jurisdiction

Allowing Relator's *qui tam* actions to continue will subvert the release provisions and frustrate the finality provided for by the settlement agreements. Thus, this Court's enforcement of the release provisions is necessary in aid of its jurisdiction. *See In re Diet Drugs II*, 369 F.3d at 306 ("Allowing state court actions to run afoul of that provision would fatally subvert it and render the agreement (and the Court's jurisdiction) nugatory.").

Federal courts regularly invoke the All Writs Act to protect settlements where they retain jurisdiction over the parties and the subject matter of the settlement for the purpose of administering such settlement. *See Carlough v. Amchem Prod., Inc.*, 10 F.3d 189 (3d Cir. 1993) (enjoining parallel state action to protect settlement); *In re Sch. Asbestos Litig.*, No. 83-0268, 1991 WL 61156 (E.D. Pa. Apr. 16, 1991), *aff'd mem.*, 950 F.2d 723 (3d Cir. 1991) (affirming district court's injunction of state court proceedings in a complex class action); *Battle v.*

---

settlements approved by this Court, arguing that the releases in their settlement agreements barred Relator's prosecution of those *qui tam* cases. The Circuit Court for Cook County denied those defendants' motion, in part, because, applying its interpretation of Illinois law, the court found that the class settlements and orders implementing the settlements were not final judgments for *res judicata* purposes. At the same time, it acknowledged the existence of a split in authority among Illinois intermediate appellate courts on that very issue. Moreover, in applying Illinois law, the court did not apply the express provision of the class settlement agreements stating that the settlement agreements "shall be governed by and interpreted according to the substantive laws of the State of New Jersey. . . ." *See, e.g.*, Dkt. No. 1189-2 at ¶ 30.

*Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989) (affirming injunction against state court plaintiffs pursuing claims substantially similar to the antitrust claims settled in the federal court); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328 (2d Cir. 1985) (affirming injunction issued against potential state action which would have interfered with prospective settlements); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981) (affirming injunction to protect settlement); *United States v. Am. Soc'y of Composers, Authors, & Publishers*, 442 F.2d 601 (2d Cir. 1971) ("*ASCAP*") (affirming injunction issued by district court, even though the settlement had been reached twenty-one years before, because the court still retained jurisdiction to administer the fund created by the settlement).

### 2. The Anti-Injunction Act Does Not Apply to An Injunction Issued "'In Aid of' this Court's Jurisdiction"

The Anti-Injunction Act does not limit an injunction when issued "in aid of [this Court's] jurisdiction." *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002) ("*In re Diet Drugs I*"). Even if the exceptions in the Anti-Injunction Act must be construed narrowly, "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 234 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)).

Courts look at several factors "to determine whether sufficient interference is threatened to justify an injunction otherwise prohibited by the Anti-Injunction Act." *Id.* at 234. First, Courts "look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding." *Id.* "Second, [they] assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action." *Id.* Third, they "consider principles of federalism and comity[.]" *Id.*

These type of MDL proceedings are exempt from the reach of the Anti-Injunction Act because "[c]omplex cases in the later stages . . . embody an enormous amount of time and expenditure of resources." *Id.* at 236. In *In re Diet Drugs I*, the Third Circuit affirmed a district court order in an MDL enjoining non-settling plaintiffs from commencing or prosecuting parallel actions in other courts because "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction." *Id.* at 235 (citing *Carlough,* 10 F.3d at 202–04).

And, in *In re Linerboard Antitrust Litigation*, the Third Circuit affirmed an order enjoining class counsel from seeking relief in state court regarding attorneys' fees disbursed through the settlement of an MDL federal action. 361 F. App'x 392

(3d Cir. 2010). Counsel had filed a state civil action claiming he was owed a referral fee, and later settled the state action.  *Id.* at 394.  The federal district court enjoined state counsel from "taking any further action relating to the allocation of fees in [the] MDL," *id.*, "to prevent disruption of 'the orderly resolution of the federal litigation[,]'" because state counsel's action "directly implicated the *res* at issue in the MDL case"—namely the allocation of attorneys' fees.  *Id.* at 396.

Other Circuit Courts also recognize that an injunction is proper in complex class action litigation as necessary "in aid of" the court's jurisdiction when the action in state court has the power to frustrate the work done by the federal court. *See, e.g.*, *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848–49 (6th Cir. 2009) ("An injunction is therefore necessary . . . to protect the district court's ability to manage the distribution of the class settlement fund."); *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.,* 315 F.3d 417, 441 (4th Cir. 2003) ("[F]ederal appellate courts have permitted injunctions under the [necessary in aid of jurisdiction] exception where a parallel state court action threatens to frustrate federal multi-district litigation proceedings and disrupt the orderly resolution of those proceedings.").  In *In re Corrugated Container Antitrust Litig.*, the Fifth Circuit affirmed an order issued by a district court in "an enormous class action" MDL enjoining certain plaintiffs from pursuing a lawsuit in state court because "the actions of [state plaintiffs] in pursuing similar state law claims in

[state court] would be a challenge to [its] jurisdiction."  659 F.2d at 1333–34.

Likewise, the Eleventh Circuit in *Battle v. Liberty National Life Insurance Company*, affirmed an order issued by the district court enjoining state court actions alleging similar antitrust claims as the ones settled in federal court.  877 F.2d at 883.  The court held that any proceedings in state court had the potential to frustrate the work done by the federal court in disposing of the case.  *Id*. at 880–82.

Similarly, in *In re Baldwin-United Corporation*, the Second Circuit affirmed a district court's order enjoining the State of New York, and other similarly situated plaintiffs, from initiating proceedings in state court to litigate claims similar to the ones settled in federal court.  770 F.2d at 336-42.  The Second Circuit reasoned that if no post-settlement injunction was issued to bar "the states from bringing state law claims derivative of the plaintiffs'[claims,]" then "the finality of virtually any class action involving pendent state claims could be defeated by subsequent suits brought by the [state plaintiffs] asserting rights derivative of those released by the class members."  *Id.* at 336; *see also ASCAP,* 442 F.2d at 603 (agreeing with plaintiffs' argument that "a variety of state court decisions would tend to frustrate the antitrust policy of the consent decree").

In considering the second factor, assessing the level of interference with the federal action, when a state court proceeding may have the effect of making a "determination regarding the validity of the federal settlement[,]" courts will issue

an injunction. *See Carlough*, 10 F.3d at 204 (finding "it difficult to imagine a more detrimental effect upon the district court's ability to effectuate the settlement of [a] complex and far-reaching matter than would occur if the . . . state court was permitted to make a determination regarding the validity of the federal settlement"). Moreover, when the state court action "declare[s] what the federal court should and should not do with respect to the federal settlement," it interferes with the federal court's proceedings. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998); *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d at 1335 (affirming issuance of an injunction where state court had limited how defendants prepared for settlement in other actions because "[s]uch a limitation on the terms of [the federal] settlement would clearly interfere with the [MDL] court's ability to dispose of the broader action pending before it"). In any event, "[t]he test, as always, is whether the state court proceeding 'so interfer[es] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *In re Diet Drugs I*, 282 F.3d at 238 (quoting *Atl. Coast,* 398 U.S. at 295). Finally, principles of federalism and comity do not preclude this Court from granting an injunction to protect its jurisdiction, as the need to prevent "vexatious and harassing" state court actions overrides any such concerns. *In re Baldwin-United Corp.,* 770 F.2d at 337 ("To the extent that the impending state court suits

were vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief.").

### 3. An Injunction is Also Necessary to Protect and Effectuate This Court's Judgments

The Anti-Injunction Act does not prevent federal courts from enjoining state court actions "to protect or effectuate [their] judgments."  28 U.S.C. § 2283.  This exception to the general applicability of the Anti-Injunction Act "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled questions at the core of [an] action.'"  *Grimes*, 17 F.3d at 1563 (internal quotation marks and citation omitted).  The Court's authority to enjoin state court actions to protect or effectuate its judgments "is founded in the well-recognized concepts of res judicata and collateral estoppel."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 364 (3d Cir. 2001) ("*Prudential I*") (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)).

### a. The Claims of Relator and the Municipalities are Barred by *Res Judicata*

In this Circuit, it is well settled law that "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."  *Prudential I*, 261 F.3d at 366.  "This is true even though the

29

precluded claim was not presented, and could not have been presented, in the class action itself." *Id.*; *see also Halley*, 861 F.3d at 495 (concluding that the district court did not abuse its discretion to release "unknown and unforeseen" claims because it was in the best position to "evaluate the fairness of the settlement vis-à-vis the scope of the release"); *Karatzas v. Mass Mut. Fin. Grp.*, No. 16-1302 (RBK/AMD), 2016 WL 6953421, at *2 (D.N.J. Nov. 28, 2016) (holding Plaintiff's claim was barred by early release where the claim "could have been alleged at the time" the previous claims were brought). *Res judicata* applies where there is: "(1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action." *Simoni v. Luciani*, 872 F. Supp. 2d 382, 388 (D.N.J. 2012) (citing *Mullarkey v. Tamboer*, 536 F.3d 215, 225 (3d Cir. 2008)).

As to the first element, courts in this circuit have held that a class action settlement is a final judgment on the merits rendered by a court of competent jurisdiction. *See Prudential I*, 261 F.3d at 367 (holding that a class settlement that was incorporated into a final judgment and order had claim preclusive effect); *see also Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion."); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, No. 11-4429 (JLL), 2012 WL 1574301, at *11 (D.N.J. May 3, 2012)

30

("Judicial approval of settlement agreements are considered final judgments on the merits for the purposes of claim preclusion.") (citation omitted); *Perlstein v. Transamerica Occidental Life Ins. Co.*, No. 07-cv-5782 (DMC), 2008 WL 2837185, at *5 (D.N.J. July 21, 2008) (holding the doctrine of *res judicata* applies to bar claims brought by individual plaintiffs ten years after the judgment and release of related claims in a class action settlement).

This Court's Orders,

> fully and finally approve[d] the Settlement set forth in . . . the USALCO Settlement Agreement and the American Securities Settlement Agreement in all respects (including, without limitation: . . . the releases provided for therein; and the dismissal with prejudice of the Action as to . . . USALCO and American Securities), and [found] that the Settlement is, in all respects, fair, reasonable, and adequate to the Direct Purchaser Settlement Class.

Dkt. No. 1388, at ¶ 8; *see also* Dkt. No. 1420, at ¶ 7 (C&S).  These Orders resulted in the dismissal with prejudice of "all of the claims asserted against [the Settling Defendants] in the Action by Direct Purchaser Class Plaintiffs and the other Direct Purchaser Settlement Class Members," including the Municipalities' claims.  Dkt. No. 1388, at ¶ 9 (American Securities and USALCO); Dkt. No. 1420, at ¶ 8 (C&S).

Moreover, the relationship between the Relator and the Municipalities that are the subject of his Qui Tam Cases are clearly close enough to include Relator as a privy within the scope of *res judicata*.  *See Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) ("privity" is "a word used to say that the

relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." (internal quotations and citation omitted)).

Relator's sole basis for bringing his *qui tam* actions is the Municipalities' alleged purchases of Alum. "[O]ne person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right[.]" *Collins*, 34 F.3d at 176 (quoting *Moore v. Hafeeza*, 212 N.J. Super. 399, 403–04 (1986)). And *qui tam* actions (such as those brought by Relator) "belong to the Government, not to relators." *U.S. ex rel. Charte v. Am. Tutor, Inc.,* 934 F.3d 346, 353 (3d Cir. 2019).[13] It is the governments, *i.e.* the Municipalities, that are the real parties in interest to the *qui tam* claims asserted by Relator. *See id.* at 352 (citing to *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 930 (2009), for the proposition that the United States Government "is a real party in interest in a case brought under the False Claims Act" (internal quotation marks and citation omitted)).

The Municipalities, the real parties in interest as purchasers of Alum, did not opt out of the Settlement Class, are members of the Settlement Classes, and are

---

[13]    The Illinois false claims act "mirrors the Federal False Claims Act" as it existed in 2005. *Scachitti v. UBS Fin. Servs., Inc.*, 215 Ill. 2d 484, 506 (2005).  The pertinent qui tam provisions of the federal act are the same as in 2005.

bound by the Settlement Agreements. The terms of the Settlement Agreements, which are made part of the Judgment Orders, expressly provide that the Releasing Parties include "any person or entity acting on behalf of or through them in any capacity whatsoever"; "any of their . . . legal representatives"; and any "persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer or any other capacity[.]" Dkt. No. 1250-2, at ¶ 1(w) (USALCO); Dkt. No. 1273-2, at ¶ 1(x) (American Securities); Dkt. No. 1326-2, at ¶ 1(w) (C&S). Relator, who is unquestionably a privy to the Municipalities, brings claims that have been released. *See United States ex rel. Hindo v. Univ. of Health Scis./Chi. Med. Sch.*, No. 91- cv-1432, 1993 WL 512609, at *1–2 (N.D. Ill. Dec. 8, 1993) (concluding that where claims brought in state and federal actions were predicated on the same facts, the state action's final judgment had preclusive effect on the claim brought in federal court).

As to the third element, identity of causes of action, the Third Circuit has instructed that "[t]he focus of the inquiry is the essential similarity of the underlying events giving rise to the various legal claims." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Progs.*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks and citation omitted). When the "causes of action . . . arise from the same transaction, with the scope of the transaction being determined by considering whether there exists a common nucleus of operative facts[,]" they are deemed the

same and the latter action is precluded by disposition of the earlier one. *Robertson v. Bartels*, 148 F. Supp. 2d 443, 448–49 (D.N.J. 2001), *aff'd,* 534 U.S. 1110 (2002); *see also Prudential I*, 261 F.3d at 367 (finding that state plaintiffs were precluded from relying upon the same "common nucleus of operative facts underlying claims" already disposed of "to fashion a separate remedy against [defendant] outside the confines of the Released Claims.").

Here, Relator's allegations are based on "the same nucleus of operative facts" as the Direct Purchaser Class Plaintiffs' allegations in the MDL Action—claims that the Defendants engaged in a conspiracy to fix prices and rig bids for contracts in the Alum market. (*Compare* Illinois Am. Cmplt., Exhibit 2, ¶ 33, *with* DPP Complaint, Dkt. No. 220, at ¶ 1). In fact, the Court in the Virginia *qui tam* case has also recognized that "[t]his action and the MDL arise out of the same cause of action: the antitrust conspiracy concerning the sale of aluminum sulfate." Exhibit 1 at 4. Thus, the claims of the Relator and the Municipalities are barred by res judicata.

### b.    The Claims of Relator and The Municipalities are Barred by Collateral Estoppel

"It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action." *Prudential I*, 261 F.3d at 366. And, "[t]his is true even though the precluded claim was not presented, and could not have been presented, in the class action itself."

*Id*.  The Third Circuit has affirmed injunctions that "effectuate[] the settlement agreement's bar against new claims based on 'facts and circumstances underlying' the claims that had been settled and released."  *In re Diet Drugs II*, 369 F.3d at 305 citing *Prudential I*, 261 F.3d at 261); *see also Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579–80 (3d Cir. 2011) (same).

The Third Circuit's decision in *Prudential I* is instructive and demonstrates that the Qui Tam Cases should be enjoined by this Court.  Similar to this case, *Prudential I* involved a court-approved class settlement of a nationwide class action alleging that Prudential had engaged in deceptive sales practices in the sale of life insurance policies.  And, like here, the class release in *Prudential I* "was expressly incorporated into the Final Order and Judgment." *Prudential I*, 261 F.3d at 367.

As here (where the subject releases release the Settling Defendants from any and all causes of action that in any way relate to the facts and circumstances alleged in these consolidated proceedings), the *Prudential I* settlement release similarly discharged the releasees from "any and all causes of action . . . related to . . . the Released Transactions."  *Id.* (emphasis omitted).  The *Prudential I* class settlement, however, also provided that policyholders who owned more than one policy could elect to remain as class members but exclude themselves from the class with respect to other policies.  *Id*. at 360.

Two class members who owned four eligible policies elected to exclude themselves from the settlement class as to two of their policies but remained class members as to the other two. *Id.* at 361. These class members, in turn, brought an action in Florida state court with respect to the two excluded policies, "basing their claims in part on facts that also supported claims arising from [the] settled policies." *In re Diet Drugs II*, 369 F.3d at 305. Prudential then returned to this district court, which like here had entered a final order and judgment certifying the Prudential settlement class and approving the settlement, and asked it to enjoin the Florida court action. *Prudential I*, 261 F.3d at 360.

The plaintiffs in the Florida action opposed the injunction request and argued, *inter alia*, that an injunction would render meaningless the opt-out provisions upon which they chose to exclude the two policies from the class settlement. *Id.* at 368. The district court rejected their argument and enjoined them from any other action in furtherance of their state court action "that is based on, relates to or involves facts and circumstances underlying the Released Transactions in the Class Action." *Id.* at 363. The Third Circuit affirmed. *Id.* at 369–70.

In affirming the district court's injunction the Third Circuit held that because "the Class Release was expressly incorporated into the Final Order and Judgment, it has both claim preclusive <u>and</u> issue preclusive effect." *Id.* at 367 (emphasis

36

added) (internal citation omitted).  As to the "issue preclusive" effect of the Class Release, the appeals court ruled that its release of all claims related to the Related Transactions "precludes class members from relying upon the common nucleus of operative facts underlying claims on the Class Policies to fashion a separate remedy against Prudential outside the confines of the Released Claims."  *Id*. Consequently, the Court held that the two class members who had elected to exclude themselves from the class as to two of their policies were "precluded from using the sales practices and factual predicates pertaining to their Class Policies in their state court action on the Excluded Policies."  *Id*.

In making these rulings, the Third Circuit expressly agreed with the district court's conclusion "that allowing the [state plaintiffs, the subject policyholders,] to prosecute their civil claims in the Florida court would allow an end run around the Class Settlement" and further warned that it "would seriously undermine the possibility for settling any large, multi district class action," emphasizing that "[d]efendants in such suits would always be concerned that a settlement of the federal class action would leave them exposed to countless suits in state court despite settlement of the federal claims."  *Id*.

"The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement."  *Toscano*, 288 F. App'x at 38; *see also Grimes*, 17 F.3d at 1557 ("As a judgment, the settlement and

release of claims is a contract that not only is agreed upon by the parties, but also is stamped with the imprimatur of the court with jurisdiction over the parties and the subject matter of the lawsuit.").

Here, the terms of the settlement agreements and releases bar Relator's claims. The settlement and releases are broad, general discharges of all future claims relating to the bidding and sale of Alum during the relevant period. *See* pp. 5 to 14, *supra*; *see also Prudential I*, 261 F.3d at 367 (enforcing a Class Release that barred "any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, . . . that have been, could have been, may be or could be alleged or asserted now or in the future . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions . . . ." (emphasis omitted)).

As in *Prudential I*, the settlement and releases here expressly entrust ongoing enforcement authority to the Court. *Prudential I*, 261 F.3d at 367-68 (approval of settlement and entry of final judgment did not divest the district court of jurisdiction; "[a] district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction"); *see also Agnes,* 2011 WL 1322043, at *4–5 (jurisdiction to enforce the terms of a settlement agreement was retained by an express provision in the Court's order). And, as in *Prudential I*, failure to give effect to such a clear

release would threaten future settlements of complex litigation. *Prudential I*, 261 F.3d at 367 ("[T]he position urged by [plaintiffs] here would seriously undermine the possibility for settling any large, multi district class action."); *see also Agnes*, 2011 WL 1322043, at *8 ("The *Agnes* cases involved complex litigation, and were resolved through a comprehensive and carefully negotiated settlement agreement. . . . Collateral attacks in state court would undermine the settlement and resolution of the litigation, deter similar settlement in the future, and render the settlement agreement, as well as the jurisdiction retained by this Court, nugatory.").

The terms of the Settlement Agreements and releases, pursuant to the express terms and falling under the relitigation exception, preclude Relator and the Municipalities from bringing claims that arise out of the same facts and circumstances underlying the released claims.

### 4. This Case Also Satisfies the Equitable Requirements for an Injunction.

Courts "determining whether to issue an injunction must consider several factors that guide and constrain its equitable authority." *In re Diet Drugs II*, 369 F.3d at 307; *but see Prudential I*, 261 F.3d at 363–70 (affirming injunction under All Writs Act and Anti-Injunction Act without examining equitable requirements); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 314 F.3d 99, 103–05 (3d Cir. 2002) ("*Prudential II*") (same); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply

to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.").  In particular, "a party seeking an injunction must show that there is some legal transgression that an injunction would remedy" and any injunction "must be commensurate with the wrong it is crafted to remedy. . . ."  *In re Diet Drugs II*, 369 F.3d at 307.

These requirements are met here.  For the reasons discussed above, there is a legal wrong that an injunction would remedy: the breach of the settlement and releases that the Settling Defendants negotiated and executed.  An injunction is also proportional to the wrong and is the remedy that the plaintiffs agreed was appropriate for any breach.

## IV.	CONCLUSION

For the reasons stated above, Defendants respectfully request the Court enjoin Relator from pursuing his lawsuits in Illinois and Virginia.

Dated: December 11, 2020

American Securities, LLC

By: /s/  C. Scott Lent
C. Scott Lent (admitted *pro hac vice*)
Paul Q. Andrews (admitted *pro hac vice*)
Travis W. Clark (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
(212) 836-8000 Telephone
Scott.Lent@arnoldporter.com
Paul.Andrews@arnoldporter.com
Travis.Clark@arnoldporter.com


-and-


C&S Chemicals, Inc.

By:    /s/ John D. Dalbey
John D. "Randy" Dalbey (admitted *pro hac vice*)
CHILIVIS, GRUBMAN, DALBEY & WARNER, LLP
3127 Maple Drive, NE
Atlanta, Georgia 30305
(404) 262-6504
(404) 261-2842 (fax)
jddalbey@cglawfirm.com


-and-

USALCO, LLC

By:  */s/ Aaron L. Casagrande*
William F. Ryan, Jr. (admitted *pro hac vice*)
Aaron L. Casagrande (admitted *pro hac vice*)
Aaron A. Nichols  (admitted *pro hac vice*)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland  21202
(410) 347-8741
(410) 223-4161 (fax)
wryan@wtplaw.com
acasagrande@wtplaw.com
anichols@wtplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing Motion to Enforce Settlements and Judgment Orders, Memorandum of Law and exhibits thereto, and Proposed Order were filed electronically with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

Dated: December 11, 2020               /s/ *Aaron L. Casagrande*
                                       Aaron L. Casagrande

*10883023*