# EXHIBIT 1



FOURTH JUDICIAL CIRCUIT OF VIRGINIA
CIRCUIT COURT OF THE CITY OF NORFOLK

**EVERETT A. MARTIN JR.**
JUDGE

150 ST. PAUL'S BOULEVARD, SUITE 800
NORFOLK, VIRGINIA 23510

December 10, 2019

Julia Rickert, Esq.
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607

Kevin Martingayle, Esq.
Bischoff Martingayle
3704 Pacific Avenue, Suite 300
Virginia Beach, Virginia 23451

Eric N. Heyer, Esq.
Thompson Hine, LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036

Robert C. Gill, Esq.
Saul, Ewing, Arnstein & Lehr, LLP
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, D.C. 20006

Jeremiah Denton, IV, Esq.
3300 South Building, Suite 208
397 Little Neck Road
Virginia Beach, Virginia 23452

Alan D. Albert, Esq.
O'Hagen Meyer, PLLP
411 East Franklin Street, Suite 500
Richmond, Virginia 23219

William F. Ryan, Esq.
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202

Re: **Commonwealth of Virginia, *ex rel.* Lawrence McShane v. Frank A. Reichl, *et al.***
**Civil No.: CL17-944**

Dear Ms. Rickert and Gentlemen:

Justice Alito wrote for a unanimous Court that "[t]he False Claims Act's *qui tam* provisions present many interpretive challenges, and it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine." *Kellogg Brown & Root Services, Inc. v. United States, ex rel. Carter,* 135 S. Ct. 1970, 1979 (2015). He did not have to contend with the definition of "Commonwealth."

To Verify The Digital Signature, visit https://eisweb.courts.state.va.us/CdvActmain (Document ID:710-45669)

In his second amended complaint,[1] Mr. McShane (the "relator") alleges he was a former manager and director of the Chemtrade defendants and through his employment he became aware of a conspiracy by manufacturers of aluminum sulfate, a chemical used in municipal water treatment facilities, to fix prices, submit fraudulent bids, and divide territory for anti-competitive purposes. He further alleges he informed the Federal Bureau of Investigation of the conspiracy, and it began a criminal investigation in 2011. He pleads the conspiracy began no later than 2005 and continued until at least February of 2011, and may have continued longer. Complaint ¶s 46, 101. He claims that many of the individual and corporate defendants in this suit pleaded guilty to antitrust charges in the U. S. District Court for the District of New Jersey (the "District Court").

The relator brings this action pursuant to the Virginia Fraud Against Taxpayers Act ("VFATA"), *Code* § 8.01-216.1 *et seq.*[2] He does not bring it on behalf of the Commonwealth of Virginia proper.[3] He originally brought it on behalf of twenty-four cities, counties, towns, and water authorities. By order of February 19, 2019, this court dismissed the claims of four cities, two counties, and two authorities[4] with the consent of the relator and the Attorney General. There are sixteen remaining local entities (the "Localities") on whose behalf the relator proceeds.[5]

Beginning in 2015, civil antitrust actions were filed against one or more of the defendants herein in several federal district courts. By order of February 4, 2016, a United States Judicial Panel on Multidistrict Litigation transferred all of the cases to the District Court. None of the Localities are named plaintiffs in any of those actions.

A "Consolidated Amended Complaint" was filed in the District Court on August 22, 2016. Civil Action No. 16-md-2687. The nature of the action (the "MDL") was described in ¶s 1 and 3 as:

> 1. This is an antitrust class action arising from a conspiracy among Defendants, as identified below, to allocate territories and/or not to compete for each other's historical business by rigging bids for, allocating customers and fixing, stabilizing, and maintaining the price of liquid aluminum sulfate ("Alum") sold in the United States.

> 3. This lawsuit is brought as a class action on behalf of all entities and persons that purchased Alum directly from one or more of the Defendants from January 1, 1997 through at least February 2011…The named Plaintiffs and Class

---

[1] In his briefs he refers to his pleading as his amended complaint. I shall refer to it as his complaint.
[2] To save Mrs. Strittmatter keystrokes, I shall refer to specific statutes within VFATA by the number after the second period. Thus § 8.01-216.6(H) will be referred to as § 6(H) or *Act* § 6(H).
[3] Whenever I refer to the Commonwealth of Virginia proper, I shall use "Virginia." Whenever I use the word "Commonwealth" I am referring to the statutory term in § 2.
[4] The cities of Lynchburg, Newport News, Norfolk, and Richmond; the counties of Chesterfield and Henrico; the Appomatox River and Rivanna Water Authorities.
[5] The cities of Chesapeake, Covington, Danville, Emporia, Harrisonburg, Lexington, Martinsville, Portsmouth, Suffolk, and Williamsburg; the counties of Caroline and Spotsylvania; the towns of Broadway and Culpepper; authorities of Augusta and Greensville Counties.

here include public bodies and private water companies,
which use Alum in their water and wastewater treatment
processes, . . .

The "Class" was described in ¶ 45 as: "All persons and entities in the United States who purchased liquid aluminum sulfate directly from Defendants, from 1997 through at least February 2011." There is no dispute the Localities are members of the Class. The defendants herein began entering into settlement agreements in the MDL in the spring of 2018, and the District Court has approved the settlements.[6]

The defendants have filed pleas in bar raising four defenses: accord and satisfaction, *res judicata*, "alternate remedy" under *Act* § 6(H), and "first to file" under *Act* § 8. A plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. *Tomlin v. McKenzie,* 251 Va. 478, 468 S.E.2d 882 (1996). The evidence submitted in support of the pleas was documents from the MDL, to which there were no objections.

*Accord and Satisfaction*

The defendants rely on the releases contained in their settlement agreements that the District Court approved to claim there has been an accord and satisfaction under the common law and *Code* § 8.3A-311.

This defense can be resolved without construing VFATA or the settlement agreements. The Localities are not named parties in any of the suits that are part of the MDL. None of the Localities retained the attorneys who signed the settlement agreements on behalf of the Class. There is an absence of agency. The essentials of a valid contract must be present for an accord and satisfaction. *Virginia-Carolina Elec. Works v. Cooper,* 192 Va. 78, 63 S.E.2d 717 (1951).

The case the defendants cite to support their claim that the Localities need not sign the settlement agreements for there to be an accord and satisfaction, *Shortt v. Hudson Supply & Equip. Co.,* 191 Va. 306, 60 S.E.2d 900 (1950), does not support the proposition in this context. That case simply applied the common law rule that a plaintiff's release of one joint tortfeasor released all joint tortfeasors.

With respect to *Code* § 8.3A-311, the settlement agreements (Chemtrade's is twenty-nine pages in length) simply are not negotiable instruments. *Code* § 8.3A-104 (a), (b).

I overrule the pleas in bar on this ground.

---

[6] GEO entered into its settlement agreement in June 2018; the District Court gave it final approval on December 3, 2018. Chemtrade entered into its settlement agreement in January 2019; the District Court gave it final approval on April 22, 2019. USALCO entered into its settlement agreement in February 2019; the District Court gave it final approval on September 26, 2019. C&S entered into its settlement agreement in July 2019; the District Court gave it final approval on November 13, 2019.

*Res Judicata*

Unlike accord and satisfaction, which is a matter of contract, *res judicata* requires a final judgment on the merits from a court of competent jurisdiction. Furthermore, the named plaintiffs in a class action suit can settle claims of parties they have never met and who have not given them the authority to do so. The authority is provided by law. Fed.R.Civ.P. 23.

Claim preclusion is the branch of *res judicata* the defendants invoke. Rule 1:6 does not apply as it is limited to Virginia judgments, Rule 1:6(b), and the judgments the defendants claim bar this action are from the District Court. Federal law applies. *Semtek International v. Lockheed Martin,* 531 U.S. 497, 507 (2001). Federal law generally gives preclusive effect to a final judgment on the merits in a prior suit when there is identity of the cause of action and the parties (or privies) in the two suits. *U.S. ex rel. May v. Perdue Pharma,* 737 F.3d 908, 912 (4th Cir. 2013). When a dismissal is based on a settlement agreement, *res judicata* applies to the matters specified in the agreement rather than the original complaint. *May, supra,* at 913.

Chemtrade, GEO, USALCO, and C&S Chemicals ("C&S") all claim the District Court's final approvals of their settlements are final judgments on the merits as no one appealed. The relator does not contest this. Nor is there any dispute the Localities had fair notice of the MDL and that none "opted-out."

I disagree with the relator that we have different causes of action. This action and the MDL arise out of the same cause of action: the antitrust conspiracy concerning the sale of aluminum sulfate. That cause of action produced at least two claims: a civil antitrust suit and an action under VFATA. The claims may have different remedies and arise under different statutes, but that does not make them different causes of action. *Harnett v. Billman,* 800 F.2d 1308, 1314 (4th Cir. 1986); *Nash County Bd. of Education v. Biltmore Co.,* 640 F.2d 484, 488 (4th Cir. 1981). This is not inconsistent with my ruling on the motion to stay, as that involved issues, not causes of action.

Under federal law there are six categories of exceptions to the general rule that one is not bound by a judgment *in personam* in a case in which he is not a party. Only the third category applies here. "'[I]n certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit ... Representative suits with preclusive effect on nonparties include properly conducted class actions." *Taylor v. Sturgell,* 552 U.S. 880, 894 (2008), quoting from *Richards v. Jefferson Co.,* 517 U.S. 793, 798 (1996).

> A party's representation of a nonparty is "adequate"
> for preclusion purposes only if, at a minimum: (1) The
> interests of the nonparty and her representative are
> aligned, . . . and (2) either the party understood herself
> to be acting in a representative capacity or the original
> court took care to protect the interests of the nonparty, . . .
> In addition, adequate representation sometimes requires
> (3) notice of the original suit to the persons alleged to

4

> have been represented, . . . In the class-action context,
> these limitations are implemented by the procedural
> safeguards contained in Federal Rule of Civil
> Procedure 23.

*Taylor,* 533 U.S. at 900-01. The interests of the relator (and through him, Virginia) and the Class are aligned to this extent. They are seeking damages from the same defendants arising out of the same antitrust conspiracy concerning the sale of aluminum sulfate. The Class understood itself to be acting in a representative capacity and the District Court gave notice of the settlement to Virginia through the Attorney General pursuant to the Class Action Fairness Act. 28 *U.S.C.* § 1715.

    Counsel for relator moved to intervene in the MDL and objected to the Chemtrade, GEO, and C&S settlements, being concerned about what effect they might have on this action.[7] The District Court denied his motion and objection, but stated no opinion on what preclusive effect the settlement would have on this action.[8]

    Counsel for the defendants also state that the Attorney General filed no objection to the settlement in the MDL. Relator does not contest this, but observes that Virginia was not a party in the MDL. I also note that 28 *U.S.C.* § 1715(f) provides: "Nothing in this section shall be construed to . . . impose any obligations, duties, or responsibilities upon, . . . state officials." The Attorney General was also given notice of the hearing on these pleas in bar held on October 29, 2019, and he filed no brief or objection and made no appearance.

    The releases the defendants received are similar and quite broad.[9] Setting out each in this letter at length would serve no good purpose, but each release applies to any and all claims a class member has against the defendants arising out of or related to the facts in the MDL. The settlement agreements further provided that they were the sole remedies for the class members and upon entry of the final judgment the class members "shall be forever barred from . . . maintaining . . . any and all Released Claims against any defendant.[10]

    The relator advances, it appears, two other reasons why *res judicata* does not apply. First, the settlements in the MDL are contrary to several provisions in VFATA. The simple response to this is that VFATA does not apply to the settlement of the MDL; it applies to this action.

    Among the provisions the relator claims block the MDL's preclusive effect is *Act* § 5(A), which provides: "This action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." This applies to *voluntary*

---

[7] I am not bound by any legal concessions relator's counsel may have made at hearings in the MDL, nor, for that matter, by any concession Chemtrade's counsel may have made in the Illinois action.

[8] "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court . . . ." *Smith v. Bayer Co.,* 564 U.S. 299, 307 (2011) (emphasis in original).

[9] Chemtrade and GEO settlement agreements ¶s 15; USALCO and C&S settlement agreements ¶s 14. These paragraphs define the claims released as the Released Claims.

[10] Chemtrade settlement agreement ¶24; GEO settlement agreement ¶25; USALCO and C&S settlement agreements ¶s 22.

dismissals.[11] The defendants seek an *involuntary* dismissal. If, for example, the Attorney General brought a proceeding under VFATA, and the defendant moved to dismiss on the statute of limitations, § 9, would the Attorney General have to agree before the court could grant the motion? Of course not.

*Act* § 5(C) provides: "The Commonwealth may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." "The action" referred to is one brought under VFATA, not a class action in a federal district court. Thus, any hearing in the MDL did not need to satisfy this provision, and I need not conduct any such hearing because the defendants are not seeking to settle this action, but to dismiss it.

The second reason contains two variations on the same theme. There is no privity between the Class and Virginia because the Class was only seeking damages, not statutory civil penalties, and/or the "Releasing Parties" in the settlement agreements did not have the authority to release *qui tam* claims.

Although not a party in this action, Virginia is a real party in interest. *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932-35 (2009). At least 70% of any civil penalties and damages recovered are paid to her. *Act* §§ 3(A), 7(B). Virginia's interest in recovering treble damages from the defendants was adequately represented by the Class; the Class represented the identical legal right, albeit under different statutes. (See *Nash County, supra,* finding that *res judicata* barred a private federal antitrust action after the state attorney general settled a state antitrust action arising out of the same conduct; both actions sought treble damages). Privity exists under federal law between Virginia and the Class with respect to the claims for treble damages. To deny privity would undermine the efficacy of the MDL settlements by exposing the defendants to double liability for treble damages. Relator's suggestion that the defendants receive a credit in this action for any amount they pay the Localities in the MDL would also undermine the settlements.

However, I agree with the relator that the Class did not adequately represent Virginia's legal right to enforce its penal statutes. The Class did not, and probably could not, pursue the statutory civil penalties under VFATA.[12] *Act* §§ 4, 5, 6. This is not merely an additional remedy arising out of the same cause of action; it is an attribute of sovereignty. Private parties through their settlements of civil actions cannot bind the sovereign in its enforcement of penal statutes enacted for the public benefit that allow different relief. *California v. Intellegender,* 771 F.3d 1169 (9th Cir. 2014); *Herman v. South Carolina National Bank,* 140 F.3d 1413 (11th Cir. 1998); *Jones v. SEC,* 115 F.3d 1173 (4th Cir. 1997).

---

[11] See *U.S. ex rel. Lusby v. Rolls-Royce Corp,* 570 F.3d. 849, 852 (7th Cir. 2009) (construing 31 *U.S.C.* § 3730 (b)(1)). ("These rules reflect a legislative view that the United States needs protection from bumbling relators."). Federal cases construing the False Claims Act, 31 U.S.C. §§ 3729-3733, "provide guidance" in construing VFATA. *Lewis v. City of Alexandria,* 287 Va. 474, 479, n.4, 756 S.E.2d 465, 469 (2014).

[12] Would a VFATA claim have been typical of the claims of the Class? Fed.R.Civ.P. 23(a)(3)?

No one has found a case quite like this, but *Intelligender* is the closest. There a private class action suit against the manufacturer of a gender prediction test settled with the class members receiving a *de minimis* award. California then sued the manufacturer for the same conduct under a state false advertising statute, and it sought civil penalties, an injunction, and restitution. The manufacturer sought an injunction from the class action court against the prosecution of the state action. The class action court denied the injunction. On appeal, the Ninth Circuit held the class action court erred in denying the injunction with respect to California's claim for restitution as privity existed because California was suing for the same relief the plaintiffs had already pursued. However, it affirmed the denial of the injunction concerning California's claims for civil penalties and an injunction for a lack of privity. California was suing "in its sovereign capacity" and its action "implicates the public's interest as well as private interests . . . ." 771 F.3d at 1177-78.

A case upon which the defendants rely, *In re MI Windows and Doors,* 860 F.3d 218 (4th Cir. 2017), involved only private rights. A class member failed to opt-out of the settlement and sought to prosecute in a state court its own claim arising out of the same cause of action. The district court there enjoined the prosecution of the state claim and the Fourth Circuit affirmed. That decision did hold that a judgment approving a settlement agreement may release not only the claims presented in the class action, but also claims arising out of the "identical factual predicate." 860 F.3d at 225. However, public rights were not involved.[13]

If a rule can be discerned from these cases, it might be that private parties to a class action settlement can release rights that could be asserted either by private parties or governmental authorities, *e.g.,* monetary damages, but they cannot release rights exclusively enforced by governmental authorities (or by someone, such as relator, acting on behalf of the government). The drafters of the definition of "Releasing Parties" in the settlement agreements may have had this in mind.

I sustain the pleas in bar to relator's claim for treble damages and I overrule it as to his claim for civil penalties for the submission of false or fraudulent claims for payment or approval.[14]

*Alternate Remedy*

*Act* § 6(H) provides:

> Notwithstanding the provisions of [*Act* § 5(B)], the
> Commonwealth may elect to pursue its claim through

---

[13] I recognize most of the named parties in the MDL (and perhaps most Class members) were local governmental authorities. However, their complaints were purely proprietary: they overpaid for a commodity.

[14] Delta Chemical is covered by the release given to USALCO and the District Court's approval of the settlement. The relator has pleaded USALCO acquired Delta Chemical in 2011, and that it is the successor to Delta Chemical. Complaint ¶s 31, 32. The USALCO settlement agreement in the MDL defines "USALCO Released Parties" to mean "USALCO, its predecessors . . . and . . . affiliates . . . . As used in this paragraph, "affiliates" means entities . . . controlled, in whole or in part, by . . . . USALCO . . . ." ¶ 1(o). Contrary to relator's counsel's assertion in her response, nothing in the motion to quash service of process on Delta Chemical in the Illinois action states that USALCO did not acquire Delta Chemical. The motion and affidavit state that Delta Chemical is a corporation in good standing and Mr. Clary was not its registered agent.

> any alternate remedy available to the Commonwealth,
> including any administrative proceeding to determine
> a civil money penalty. If any such alternate remedy is
> pursued in another proceeding, the person initiating the
> the action shall have the same rights in such proceeding
> as such person would have had if the action had continued
> under this section.

The plain meaning of the operative phrase "elect to pursue" ought first to be considered. "Elect" here means to choose. A choice can be made by failing to act. By failing to opt-out of a class action settlement, you choose to accept the settlement. "Pursue," however, is defined as:

> 1. to follow in order to overtake, capture, kill etc.; chase.
> 2. to follow close upon; go with; attend . . . 3. to strive
> to gain; seek to attain or accomplish (an end, object,
> purpose, etc.). 4. to proceed in accordance with (a
> method, plan, etc.). 5. to carry on or continue (a course
> of action. . . .

*The Random House Dictionary of the English Language* (1967). All of these definitions connote affirmative action. Having a stranger include you in a putative class action, failing to object to the settlement, failing to opt-out, and failing to submit a proof of claim can hardly be called the pursuit of anything. Submitting a proof of claim in a class action suit, however, is pursuing an alternative remedy.[15]

The question then becomes does "Commonwealth" in the first sentence of § 6(H) include the Localities or does the context require otherwise? The relator brings this action on behalf of the Localities, not Virginia. Complaint ¶s 64-100, 102, 113. The Attorney General exercised his statutory discretion not to intervene. *Act* § 5. The District Court gave the Attorney General notice of the settlement in the MDL and the Attorney General did not object or attempt to intervene on behalf of the relator or the Localities. The Attorney General has filed no opposition to the pending special pleas and he made no appearance at the hearing.

Based upon arguments made and under these circumstances, I do not believe the context of VFATA limits "Commonwealth" in the first sentence of § 6(H) to Virginia.[16] Had the General Assembly intended to so limit it, "Attorney General" could have been substituted for the first "Commonwealth" in the sentence. The term "Attorney General" does not include attorneys for political subdivisions. *Act* § 2. Nor do I believe this construction affects the Attorney General's authority to investigate, intervene, or decline to intervene in VFATA actions.

---

[15] On the date of the hearing, it appears the cities of Chesapeake and Williamsburg had filed proofs of claim.
[16] Had the Attorney General appeared in this case it is possible he might have made arguments that would have caused me to reach the opposite conclusion.

I sustain the pleas in bar with respect to the claims the relator asserts on behalf of any Localities that file proofs of claim in the MDL.[17]

*First to File*[18]

*Act* § 8 provides in its second paragraph: "In no event may a person bring an action under this article that is based upon allegations or transactions that are the subject of a civil suit . . . in which the Commonwealth is already a party."

Even if I assume "Commonwealth" can be construed here to mean the Localities, it does not bar this action. First, Virginia jurisprudence does not recognize class actions. *Casey v. Merck & Co.,* 283 Va. 411, 722 S.E.2d 842 (2012). Second, as previously stated, the Localities are not named parties in any of the actions consolidated into the MDL. I cannot understand how, under Virginia law, the Localities became parties to the MDL until, at the earliest, the District Court gave preliminary approval to the settlements and certified the class or, possibly later, when the "opt-out" periods had expired.[19] However, I need not decide which controls as both dates were after relator filed this action. I overrule the pleas in bar on this ground.

I attach an order reflecting these rulings.

As neither side got what it wanted, and as the issues presented are novel and a trial is likely to be protracted and expensive, I will certify the issues the special pleas raise to the Supreme Court of Virginia for an interlocutory appeal pursuant to *Code* § 8.01-670.1, if all parties agree.[20]

Sincerely yours,

Everett A. Martin, Jr.
Judge

EAMjr./mls

cc:    Peter E. Broadbent, III, Esq.

---

[17] I recognize this may have consequences to be regretted. Relator's counsel will have to seek to enforce his rights in the District Court with respect to payments to Localities filing proofs of claim in the MDL. His reception there thus far appears to have been rather frosty. This could also set off a scramble by counsel for the defendants to encourage counsel for the Localities to file proofs of claim and by relator's counsel to dissuade them from doing so.

[18] Chemtrade and USALCO do not plead this defense.

[19] Not being familiar with the procedures in a class action, I asked counsel if the District Court certified the class before approving the settlements. No one was certain, but it appears not. Under federal law a non-named class member becomes a party to the class action when the class is certified. See *Smith v. Bayer, supra,* at 313: "no one in that case was 'willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified.*'" (emphasis in original; citing dissent of Justice Scalia in *Devlin v. Scardelletti,* 536 U.S. 1, 16, n. 1 (2002)).

[20] The defendants are, of course, free to return to the District Court and seek an injunction barring the prosecution of this action under the Anti-Injunction Act. 28 *U.S.C.* § 2283.

9

VIRGINIA:   IN THE CIRCUIT COURT OF THE CITY OF NORFOLK

COMMONWEALTH OF VIRGINIA, *ex rel.,*
    LAWRENCE MCSHANE,

        Plaintiff-Relator,

v.                                  CIVIL NO.:  CL17-944

FRANK A. REICHL, *et al.,*

        Defendants.

## ORDER

For the reasons stated in the Court's letter of December 10, 2019, the Defendants'

Pleas in Bar are:

(1) OVERRULED on the ground of accord and satisfaction;

(2) SUSTAINED as to the claim for treble damages on the ground of *res judicata* and

    OVERRULED on that ground as to the claim for statutory civil penalties;

(3) SUSTAINED on the ground of "alternate remedy" with respect to those

    Localities (as defined in the letter) that file proofs of claim in the multi-district

    litigation pending in the U.S. District Court for the District of New Jersey and

    OVERRULED as to those Localities that do not file proofs of claim;

(4) OVERRULED on the ground of "first to file."

Endorsements are waived pursuant to Rule 1:13.  The Court has caused mailed copies

of this Order to be sent to counsel for the parties and to the Attorney General.

ENTER:    **December 10, 2019**

Judge

Everett A. Martin, Jr., Judge

Office of
**GEORGE E. SCHAEFER**
Clerk of the
Circuit Court
Norfolk, Virginia

The Foregoing Document Copy Teste:
George E. Schaefer, Clerk
Norfolk Circuit Court
BY *Tracey Staples*
Tracey Staples, Deputy Clerk
Authorized to sign on behalf
of George E. Schaefer, Clerk
Date: December 11, 2019

CM