EXHIBIT 6

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (JLL) (JAD) |

## SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER
## CLASS PLAINTIFFS AND DEFENDANT AMERICAN SECURITIES LLC

THIS SETTLEMENT AGREEMENT is made and entered into as of the 15th day of April, 2019 by and between on the one hand: Plaintiffs Central Arkansas Water; City of Charlotte, North Carolina; City and County of Denver, Colorado, acting by and through its board of Water Commissioners; Flambeau River Papers, LLC; City of Greensboro, North Carolina; Mobile Area Water and Sewer System; City of Rochester, Minnesota; City of Sacramento, California; SUEZ Water Environmental Services Inc.; SUEZ Water New Jersey Inc.; SUEZ Water Princeton Meadows Inc.; SUEZ Water New York Inc.; SUEZ Water Pennsylvania Inc.; City of Texarkana, Arkansas and City of Texarkana, Texas, d/b/a Texarkana Water Utilities and City of Shreveport, Louisiana (collectively, "Direct Purchaser Class Plaintiffs"), individually and on behalf of the putative Direct Purchaser Settlement Class, as defined below; and on the other hand Defendant American Securities LLC ("American Securities"). The Direct Purchaser Class Plaintiffs, Direct Purchaser Settlement Class, and American Securities are referred to collectively as the "Parties" and individually as a "Party."[1] This Agreement does not release any claims of the Direct Purchaser Class Plaintiffs and the other members of the Direct Purchaser Settlement Class against any Non-Settling Defendant.

---

[1]     All terms with initial capitalization shall have the meanings set forth in Paragraph 1 below or as otherwise defined herein.

WHEREAS, Direct Purchaser Class Plaintiffs (on behalf of themselves and as representatives of the putative class of similarly situated persons or entities) allege in the Consolidated Proceedings, as defined below, that, among other things, American Securities participated in a conspiracy – with other Defendants in this litigation and unnamed co-conspirators – to allocate territories and/or not to compete for each other's historical business by rigging bids, allocating customers, and fixing, stabilizing, and maintaining the price of liquid aluminum sulfate ("Alum") sold in the United States from January 1, 1997 through at least February 28, 2011;

WHEREAS, Interim DPP Lead Counsel and Plaintiffs' Steering Committee have been appointed by the Court to represent, on an interim basis, the putative class of Direct Purchasers;

WHEREAS, American Securities acknowledges it is appropriate, solely as part of this Settlement, and subject to Final Approval, to stipulate to the certification of the Direct Purchaser Settlement Class, as defined below, and that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied here for purposes of this Settlement only;

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted in the Consolidated Proceedings by Direct Purchaser Class Plaintiffs against the American Securities Released Parties;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, as defined below, and this Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, Direct Purchaser Class Plaintiffs have concluded, after preliminary discovery and investigation of the facts and after considering the circumstances of the Class Action and Consolidated Proceedings and the applicable law, that it is in the best interests of

667029v2

Direct Purchaser Class Plaintiffs to enter into this Agreement with American Securities to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Direct Purchaser Settlement Class and Direct Purchaser Settlement Class Members, and, further, that this Settlement (as defined below) is fair, reasonable, adequate, and in the best interests of the Direct Purchaser Settlement Class;

WHEREAS, American Securities, without admitting any liability or wrongdoing, wishes to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the Direct Purchaser Class Action and Direct Purchaser Settlement Class Members' claims be settled and compromised, and dismissed on the merits with prejudice as to the American Securities Released Parties, subject to Court approval:

1. <u>Definitions</u>: The following terms shall have the following meanings for purposes of this Agreement.

    a. "Agreement" means this Settlement Agreement Between Direct Purchaser Class Plaintiffs and American Securities.

    b. "Case Contribution Award" means compensation for Direct Purchaser Class Plaintiffs for their time and effort undertaken in the Class Action.

    c. "Class Action" or "Direct Purchaser Class Action" means the putative class action filed by Direct Purchaser Class Plaintiffs in the Consolidated Proceedings.

    d. "Consolidated Proceedings" means the consolidated proceedings entitled, *In re: Liquid Aluminum Sulfate Antitrust Litigation*, Civil Action No. 16-

md-2687 (JLL) (JAD), pending in the United States District Court for the District of New Jersey and any Direct Purchaser claim or complaint filed in or transferred to these proceedings.

e. "Court" means the United States District Court for the District of New Jersey.

f. "Defendants" mean the defendants in the Consolidated Proceedings sued by the Direct Purchaser Class Plaintiffs.

g. "Direct Purchaser" or "Direct Purchasers" means all persons or entities that purchased Alum in the United States directly from a Defendant or co-conspirator from January 1, 1997 to at least February 28, 2011.

h. "Direct Purchaser Escrow Account" means the escrow account established to receive and maintain funds contributed on behalf of American Securities for the benefit of the Direct Purchaser Settlement Class, including Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members.

i. "Direct Purchaser Escrow Agreement" means that certain agreement by and between Esquire Bank and Direct Purchaser Class Plaintiffs (by and through Interim DPP Lead Counsel) pursuant to which the Direct Purchaser Escrow Account is established and funded for the benefit of the Direct Purchaser Settlement Class, including Direct Purchaser Class Plaintiffs.

j. "Direct Purchaser Settlement Class" means all Direct Purchasers, including the Direct Purchaser Class Plaintiffs and Direct Purchaser

667029v2

Settlement Class Members. Excluded from the Direct Purchaser Settlement Class are 1) any Direct Purchasers who timely and validly elect to be excluded from the Direct Purchaser Settlement Class in accordance with the Preliminary Approval (the "Opt-Outs"), and 2) Defendants and their respective parents, subsidiaries, and affiliates.

k.    "Direct Purchaser Settlement Class Members" means any person or entity that is a member of the Direct Purchaser Settlement Class.

l.    "Execution Date" means the date all counsel to the Parties to this Agreement sign the Agreement.

m.    "Final Approval" means an order and judgment by the Court that finally approves this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses with prejudice American Securities from the Direct Purchaser Class Action.

n.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied:

i.    Final Approval; and

ii.    Either (1) thirty (30) days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

5

o.  "Interim DPP Lead Counsel" means James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., as appointed by the Court to represent the putative class of Direct Purchasers on an interim basis.

p.  "Mailed Direct Purchaser Class Notice" means the individual notice of this Settlement to be mailed by the Settlement Administrator, at the direction of Interim DPP Lead Counsel, to Direct Purchasers.

q.  "Non-Settling Defendant" means any Defendant in the Direct Purchaser Class Action, including any Defendants that may be added at a later date, other than the American Securities Released Parties.

r.  "Non-Settling Plaintiff" means any Plaintiff in the Consolidated Proceedings other than the Direct Purchaser Class Plaintiffs.

s.  "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Mailed Direct Purchaser Class Notice and Published Direct Purchaser Class Notice, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting members of the Direct Purchaser Settlement Class, processing claims, escrowing funds, and issuing and mailing payments.

t.  "Plaintiffs' Steering Committee" means the group of counsel appointed by the Court, along with Interim DPP Lead Counsel, to represent, on an interim basis, the putative class of Direct Purchasers.

6

u.   "Preliminary Approval" means an order by the Court to preliminarily approve this Agreement and the Settlement pursuant to Federal Rule of Civil Procedure 23.

v.   "Published Direct Purchaser Class Notice" means the summary of the Mailed Direct Purchaser Class Notice submitted to the Court for approval in connection with the motion for Preliminary Approval.

w.   "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

x.   "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Direct Purchaser Settlement Class, including the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; their assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, the following: (1) any

7

Releasing Party's subdivisions (political or otherwise, including, but not limited to, municipalities, counties, parishes, villages, unincorporated districts and hospital districts), public entities, public instrumentalities and public education institutions; and (2) persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

y.      "Settlement" means the settlement of the Direct Purchaser Class Action and any claims filed by Direct Purchaser Settlement Class Members with respect to any of the American Securities Released Parties, as set forth in this Agreement.

z.      "Settlement Administrator" means Angeion Group, the firm retained to disseminate the Mailed Direct Purchaser Class Notice and administer the Settlement, subject to approval of the Court.

aa.     "Settlement Class Period" means January 1, 1997 to at least February 28, 2011.  However, to the extent the Class Period, as that term is defined in the Direct Purchaser Class Action, is expanded, the definition of Settlement Class Period will also expand to the same time period, if such expansion is approved by the Court prior to Final Approval.

bb.    "Settlement Funds" means the payments made by American Securities pursuant to this Agreement, including any interest accrued on such payments.

cc.    "American Securities Released Parties" means (a) American Securities, its former and current parents, subsidiaries and affiliates; and b) any of their respective current and former, direct or indirect, directors, officers, managers, attorneys, equity holders, agents, and employees, including without limitation, Matthew LeBaron and Scott Wolff, who were named as Defendants in the Litigation, provided however, that excluded from the American Securities Released Parties are any current defendants in the Consolidated Proceedings to the extent named as defendants by the Direct Purchaser Class Plaintiffs, other than American Securities, LLC, Matthew LeBaron and Scott Wolff.

2.    <u>The Parties' Efforts to Effectuate this Settlement</u>.  The Parties agree to support entry of Final Approval, including through the conclusion of any appeal, motion for re-argument, motion for rehearing, petition for a writ of certiorari or other writ.

3.    <u>Settlement Announcement and Litigation Standstill</u>.  Upon execution of this Agreement, the Parties shall inform the Court, Non-Settling Defendants and Non-Settling Plaintiffs that the Parties have executed this Agreement.  Upon execution of this Agreement, the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class, through Interim DPP Lead Counsel, shall cease all litigation activities related to the pursuit of claims against the American Securities Released

Parties in the Consolidated Proceedings (except as permitted in Paragraph 9 of this Agreement) (the "Litigation Standstill").

4.    <u>Motions for Preliminary Approval</u>.  As soon as practicable, and in no event later than fifteen (15) days after the Execution Date, unless otherwise extended by written agreement of the Parties, Direct Purchaser Class Plaintiffs, through Interim DPP Lead Counsel, shall submit to the Court a motion for Preliminary Approval of this Agreement, seeking certification of the Direct Purchaser Settlement Class for settlement purposes.  The Preliminary Approval motion shall include: (a) the proposed definition of the class for settlement purposes; (b) a proposed form of, method for, and date of dissemination of notice; (c) a proposed schedule for the filing of any motion for fees and expenses, the filing of a motion to approve finally this Agreement, and a final fairness hearing; and (d) a proposed form of order preliminarily approving this Agreement and certifying the Direct Purchaser Settlement Class for settlement purposes.  The motion (and its exhibits) seeking Preliminary Approval, including the text of the items referred to in clauses (a) through (d) above shall be proposed by Direct Purchaser Class Plaintiffs, through Interim DPP Lead Counsel, subject to the agreement of American Securities, which agreement shall not be unreasonably withheld.  The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval of this Agreement and certification of the Direct Purchaser Settlement Class for purposes of this Settlement only.

5.    <u>Direct Purchaser Class Notices</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

667029v2

a. The Mailed Direct Purchaser Class Notice shall be mailed by the Settlement Administrator, at the direction of Interim DPP Lead Counsel, to Direct Purchasers that: are identified by or were previously identified by Non-Settling Defendants; and are identified by Interim DPP Lead Counsel. Because the information about the Direct Purchaser Settlement Class that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Interim DPP Lead Counsel will be solely for the purpose of effectuating the Settlement. The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided in this Agreement or court order. Any questions relating to notice provided to individual members of the Direct Purchaser Settlement Class shall be directed to the Settlement Administrator, which shall answer reasonable questions raised by American Securities.

b. Notice of this Settlement to the Direct Purchasers may be combined with notice of certification of the Direct Purchaser Settlement Class. Claim

667029v2

forms may also be included with the Mailed Direct Purchaser Class Notice sent to Direct Purchasers.

    c.    The Published Direct Purchaser Class Notice shall be submitted to the Court for approval in connection with the motion for Preliminary Approval.

    d.    After Final Approval has been obtained, and American Securities' right of rescission or termination under Paragraph 17 cannot be exercised or has been waived, and with Court approval, all Notice and Administrative Costs, including without limitation, costs and expenses associated with the Direct Purchaser Escrow Account, and the costs and expenses for filing of tax returns and payment of taxes, will be paid out of the Settlement Funds as specified in the Direct Purchaser Escrow Agreement. All expenses and costs incurred by the Direct Purchaser Class Plaintiffs and Interim DPP Lead Counsel shall be reimbursed and indemnified solely out of the Settlement Funds, as provided by an order of the Court. The American Securities Released Parties shall not be liable for any costs, fees, or expenses of any of Direct Purchaser Class Plaintiffs' and Interim DPP Lead Counsel's attorneys, experts, advisors, agents, or representatives, including but not limited to the Settlement Administrator. All such costs, fees, and expenses shall be paid out of the Settlement Funds.

6.    <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval of this Agreement and certifies the Direct Purchaser Settlement Class, Direct Purchaser Class Plaintiffs, through Interim DPP Lead

Counsel, shall—in accordance with the schedule set forth in the Court's Preliminary Approval—submit to the Court a separate motion for Final Approval of this Agreement by the Court, the text of which shall be proposed by Interim DPP Lead Counsel, subject to the agreement of American Securities, which agreement shall not be unreasonably withheld. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.  finally approving the Settlement as being a fair, reasonable, and adequate settlement for the Direct Purchaser Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance and consummation of the Settlement pursuant to the terms and conditions set forth in this Agreement;

b.  dismissing the Direct Purchaser Class Action, with prejudice as to the American Securities Released Parties;

c.  discharging and releasing the American Securities Released Parties from all Released Claims;

d.  reserving continuing and exclusive jurisdiction over the Settlement for all purposes; and

e.  determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the American Securities Released Parties shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement.

667029v2

7.   <u>Escrow Account</u>.  The Direct Purchaser Escrow Account will be established and shall be administered by Interim DPP Lead Counsel for the Direct Purchaser Class Plaintiffs and Direct Purchaser Settlement Class under the Court's continuing supervision and control pursuant to the Direct Purchaser Escrow Agreement.  No disbursements of funds from the Direct Purchaser Escrow Account will occur without order of the Court.

8.   <u>Settlement Consideration</u>.  Subject to the approval hereof, and in consideration of the release of Released Claims, American Securities agrees to pay, on behalf of itself and the American Securities Released Parties, U.S. $13 million by depositing that amount into the Direct Purchaser Escrow Account within thirty (30) days after Preliminary Approval.  American Securities shall make no additional payments to the Direct Purchaser Class Plaintiffs, the Direct Purchaser Settlement Class, the Direct Purchaser Settlement Class Members, or Interim DPP Lead Counsel.  The Settlement Funds represent all sums owed and payable by American Securities and/or the American Securities Released Parties pursuant to this Agreement, including payment of damages, attorneys' fees, incentive fees, notice costs, costs of administration and costs of any kind.  The Parties agree and acknowledge that none of the Settlement Funds paid by or on behalf of American Securities under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind, nor shall it be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the American Securities Released Parties.

9.   <u>Cooperation With Settlement Process</u>.    American Securities shall provide cooperation in the settlement process to the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members through Interim DPP Lead Counsel and the Plaintiffs' Steering Committee pursuant to the terms of this Paragraph.  But for the cooperation enumerated in this Paragraph 9, all litigation activities related to the pursuit of claims by Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members against the American Securities Released Parties in the Consolidated Proceedings are subject to the Litigation Standstill set forth in Paragraph 3.  The American Securities Released Parties shall have no cooperation obligation except those related to the settlement process as expressly set forth in this Paragraph 9.  None of the cooperation provisions are intended to, nor do they, waive any otherwise applicable privilege.

a.    **Preliminary Approval**.  The Parties agree to cooperate to the extent reasonably necessary in connection with Interim DPP Lead Counsel's preparation of the motion for Preliminary Approval and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

b.    Other than as specifically set forth above, each Party shall be responsible for its own expenses, including legal fees, in connection with the cooperation obligations outlined above.

10.   <u>Material Breach and Reservation of Rights</u>.  American Securities agrees that a material breach of this Agreement will have occurred if American Securities defaults under the terms of this Agreement with respect to American Securities'

obligations to provide the Settlement Funds (as set forth in Paragraph 8 of this Agreement) and American Securities' obligations to cooperate with the settlement process (as set forth in Paragraph 9 of this Agreement). In the event that American Securities violates any material provision of this Agreement, the Release (set forth in Paragraphs 14 and 15 of this Agreement) shall be voided, and the Direct Purchaser Class Plaintiffs (on behalf of the Direct Purchaser Settlement Class) and the Direct Purchaser Settlement Class Members shall be entitled to assert the full amount of their respective claims, reduced only by the value of any consideration actually received. If American Securities defaults under the Agreement and commences a proceeding under Title 11 of the United States Code (an "American Securities Bankruptcy"), American Securities reserves its right to dispute its liability to the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members. Nothing in this Agreement shall limit any argument or claim the American Securities Released Parties, the Direct Purchaser Class Plaintiffs or the Direct Purchaser Settlement Class Members could assert in an American Securities Bankruptcy. Additionally, the Direct Purchaser Class Plaintiffs (on behalf of the Direct Purchaser Settlement Class) and the Direct Purchaser Settlement Class Members agree that a material breach of this Agreement will have occurred if the Direct Purchaser Class Plaintiffs or the Direct Purchaser Settlement Class Members default under the terms of this Agreement. In the event that Direct Purchaser Class Plaintiffs or the Direct Purchaser Settlement Class Members violate any material provision of this Agreement, American Securities shall have the unilateral right in its sole

16

discretion to terminate the Agreement. All rights, claims and defenses of American Securities and the Direct Purchaser Class Plaintiffs and the Direct Purchaser Settlement Class Members are otherwise reserved.

11.     <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Funds as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim DPP Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim DPP Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. Interim DPP Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Funds (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Funds shall be paid out of the Settlement Funds. The American

17

Securities Released Parties shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund or this Agreement.

12.  <u>Distribution of Settlement Funds to Direct Purchaser Settlement Class</u>.  Direct Purchaser Settlement Class Members shall be entitled solely to the Settlement Funds for settlement and satisfaction against the American Securities Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the American Securities Released Parties.  Except as provided by order of the Court, no Direct Purchaser Settlement Class Member shall have any interest in the Settlement Funds or any portion thereof.  Direct Purchaser Class Plaintiffs, Direct Purchaser Settlement Class Members, and their counsel will be reimbursed and indemnified solely out of the Settlement Funds for all expenses including, but not limited to, the costs of notice of the Settlement to Direct Purchaser Settlement Class Members.  The American Securities Released Parties shall not be liable for any costs, fees, or expenses of Interim DPP Lead Counsel or Plaintiffs' Steering Committee or any of Direct Purchaser Class Plaintiffs' or Direct Purchaser Settlement Class Members' or Interim DPP Lead Counsel's respective attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Funds.  If the Court grants Final Approval of this Agreement pursuant to the provisions of Paragraph 6, and American Securities' right of rescission under Paragraph 17 cannot be exercised or has been waived, Direct Purchaser Class Plaintiffs, with

18

Court approval, may use the Settlement Funds to pay such costs and expenses for the litigation of the Class Action as set forth in this Paragraph.

13.     <u>No Objection to Fee Request or Case Contribution Awards</u>.  American Securities shall not take any position with respect to Direct Purchaser Class Plaintiffs' application for attorneys' fees, up to a maximum of 33.3% of the total consideration made available to the Direct Purchaser Settlement Class, and for reimbursement of costs and expenses.  In addition, American Securities shall not oppose any request for Case Contribution Awards to Direct Purchaser Class Plaintiffs in an amount up to $20,000 each.  The procedure for and the grant or denial or allowance by the Court of attorneys' fees, reimbursement of costs and expenses and Case Contribution Awards are considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the applications for attorneys' fees, reimbursement of costs and expenses and Case Contribution Awards, or any appeal from any order relating thereto or the reverse or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment approving the Agreement and the Settlement.

14.     <u>Release</u>.  Upon Final Judgment and in consideration of payment of the Settlement Funds into the Direct Purchaser Escrow Account, and for other valuable consideration, the American Securities Released Parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature

19

667029v2

(whether or not any Direct Purchaser Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of Final Judgment, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to the facts and circumstances alleged in the Consolidated Proceedings, including, but not limited to the claims asserted in (or that could have been asserted in) the Direct Purchaser Class Plaintiffs' Consolidated Amended Complaint, dated August 22, 2016 ("Released Claims"), provided however, that nothing herein shall release claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, or product defect claim relating to Alum. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties shall be preliminarily enjoined and barred from asserting and/or prosecuting any Released Claims against the American Securities Released Parties. American Securities further agrees that it will not file any suit against the Releasing Parties and their current and former, direct and indirect, parents, subsidiaries, affiliates, directors, officers, shareholders, and employees arising out of or relating to the Released Claims. The release of the Released Claims will become effective as to all Releasing

667029v2

Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the American Securities Released Parties arising out of or relating to the Released Claims.

Notwithstanding the foregoing, for purposes of clarity, excluded from the Release are any claims that the DPPs may prosecute or benefit from pursuant to Section 9 of that certain "Settlement Agreement Between Direct Purchaser Class Plaintiffs and Chemtrade Defendants" (the "Chemtrade Settlement"), filed in the Litigation on January 14, 2019 (Dkt. 1189-2), including the Indemnification Claim (as defined in the Chemtrade Settlement). All rights and privileges of the DPPs set forth in the Chemtrade Settlement are expressly preserved and unaffected by this Agreement as are all of American Securities' defenses and objections to the Chemtrade Settlement Agreement claims. Also for purposes of clarity, it is agreed that any claims the DPPs may prosecute or benefit from pursuant to Section 9 of the Chemtrade Settlement, including the Indemnification Claim, are not covered by (i) the limitations, set forth in Paragraph 8 of this Agreement, on sums owed and payable by American Securities and/or the Released Parties and (ii) the Litigation Standstill discussed in paragraph 3 of this Agreement.

15. <u>Further Release.</u>  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16. Reservation of Claims. The Parties intend by this Agreement to release only the American Securities Released Parties with respect to the Released Claims. The Parties specifically do not intend this Agreement, or any part hereof or any other aspect of the proposed Settlement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, or corporation whatsoever, including, but not limited to the Non-Settling Defendants. The release set forth in Paragraphs 14 and 15 above is not intended to and shall not release any claims other than the Released Claims.

22

667029v2

17. <u>Modification or Termination of Agreement.</u>

   a.    This Agreement shall terminate at the discretion of either American Securities or Direct Purchaser Class Plaintiffs, through Interim DPP Lead Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that results in a modification to a material term of the proposed Settlement, including, without limitation, the amount and terms of relief, the obligations of the Parties, the findings or conclusions of the Court, the provisions relating to notice, the definition of the class, and/or the terms of the releases; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval and Final Judgment (as provided in Paragraph 6), or any of the Court's findings of fact or conclusions of law, that results in a modification to a material term of the proposed Settlement. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Paragraph 17.a., by a signed writing served on the other Parties no later than twenty (20) days after receiving notice of the event prompting the termination.

   b.    <u>Opt-Out Provisions</u>: In addition, American Securities shall have the right, in its sole discretion, to terminate or modify this Agreement based on the percentage of Qualifying Opt-Outs (defined in the Opt-Out Side Letter), or the percentage of the dollar amount of the Qualifying Opt-Outs direct purchases of Alum during the Settlement Class Period. The terms for the

23

exercise of these rights, including the percentage thresholds, are set forth in a confidential letter agreement ("Opt-Out Side Letter") between Interim DPP Lead Counsel and counsel for American Securities, the terms of which are hereby incorporated by reference into this Agreement and which will be shared confidentially with the Court for purposes of Preliminary Approval and Final Approval. The Settlement Administrator shall provide to counsel for American Securities a declaration containing information sufficient for American Securities to determine whether the percentage thresholds have been reached including the percentage of Direct Purchaser Settlement Class Members who opt out of the Direct Purchaser Settlement Class and the percentage of volume of Alum purchases that is opted out of the Direct Purchaser Settlement Class within thirty (30) days after the Opt-Out Deadline. American Securities  must elect in its sole discretion to terminate or modify the Agreement, as set forth herein and in the Opt-Out Side Letter, in writing to Interim DPP Lead Counsel at the address set forth below, within forty-five (45) days after the Opt-Out Deadline. American Securities may waive this provision (in whole or in part) in its sole discretion.

c.    If, but only if, this Agreement is terminated pursuant to Paragraph 17.a. or b. above, then:

1.    This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be

bound by any of its terms, except for the terms of Paragraph 17.c. herein;

2.    The Parties will petition the Court to have any stay orders entered pursuant to this Agreement lifted;

3.    All of the Agreement's provisions, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of the American Securities Released Parties, Direct Purchaser Class Plaintiffs or any Direct Purchaser Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

4.    The American Securities Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, arguments in support of, and substantive and procedural rights as to all defenses to the causes of action or remedies that have been sought or might be later asserted in the actions, including without limitation, any argument or position opposing class certification, liability or damages;

5.    Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any action taken by a Party or Direct Purchaser Settlement Class Member

25

pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

6. Any settlement-related order(s) or judgment(s) entered in this Class Action after the date of execution of this Agreement related to the American Securities Released Parties shall be deemed vacated and shall be without any force or effect;

7. All costs incurred in connection with the Settlement, including, but not limited to, notice, publication, and customer communications, shall be paid from the Settlement Fund and all remaining funds shall revert back to American Securities as soon as practicable. Neither Direct Purchaser Class Plaintiffs nor Interim DPP Lead Counsel shall be responsible for any of these costs or other settlement-related costs; and

8. Any attorneys' fees and expenses previously paid to Interim DPP Lead Counsel shall be returned to American Securities within fourteen (14) calendar days of termination of the Agreement.

18. <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement. Without limiting the generality of the foregoing, it is hereby agreed

that any dispute concerning the provisions of Paragraph 16 or 17, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 16 or 17 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Agreement. In the event that the provisions of Paragraph 16 or 17 are asserted by any American Securities Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such American Securities Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the *in personam* jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

19. <u>Class Action Fairness Act.</u> American Securities, at its sole expense, shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, as applicable.

20. <u>American Securities Released Parties Have No Responsibility for Settlement Fund Administration or Distribution</u>. Subject to Paragraph 19 above, the

27

American Securities Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

21.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Direct Purchaser Settlement Class Members, the Releasing Parties, and the American Securities Released Parties.  Without limiting the generality of the foregoing, upon certification of the Direct Purchaser Settlement Class and Final Approval of the Settlement, each and every covenant and agreement herein by the Direct Purchaser Class Plaintiffs shall be binding upon all Direct Purchaser Settlement Class Members and Releasing Parties who have not validly excluded themselves from the Direct Purchaser Settlement Class; and upon Final Approval, each and every covenant and agreement herein shall be binding upon all Direct Purchaser Settlement Class Members.

22.     <u>Sole Remedy</u>.  This Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any American Securities Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any American Securities Released Party.

23.     <u>Authorization to Enter this Agreement</u>.

     a.     The undersigned representatives of American Securities covenant and represent that each such representative is fully authorized to enter into and to execute this Agreement on behalf of the American Securities Released Parties.

b.  Interim DPP Lead Counsel represents that he is fully authorized to conduct settlement negotiations with defense counsel on behalf of the Direct Purchaser Class Plaintiffs and putative Direct Purchaser Settlement Class and is fully authorized to enter into and execute the Agreement on behalf of the Direct Purchaser Settlement Class.

c.  The Parties further acknowledge that this Agreement represents the entire agreement by and between them and that each makes no other representation or warranty upon which the other can rely other than as stated herein.

24.  <u>Notices</u>.  All notices under this Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed, if directed to Direct Purchaser Class Plaintiffs, Direct Purchaser Settlement Class, or any Direct Purchaser Settlement Class Member, to:

James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068

if directed to American Securities, to:

Aaron Rubinstein and Scott Lent
Arnold & Porter Kay Scholer LLP
250 West 55th Street
New York, New York 10019

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

25. <u>No Admission</u>. Whether or not Final Judgment is entered or this Agreement is terminated, the Parties expressly agree that this Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the American Securities Released Parties. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408 in any instance where it would otherwise apply.

26. <u>No Third-Party Beneficiaries</u>. No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a American Securities Released Party, Direct Purchaser Class Plaintiff, Direct Purchaser Settlement Class Member, or Interim DPP Lead Counsel or Plaintiffs' Steering Committee (on behalf of the Direct Purchaser Settlement Class and with respect to fees and disbursements to be paid from the Settlement Funds pursuant to Court order).

27. <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

28. <u>Choice of Law</u>. All terms of this Agreement and the other documents contemplated herein shall be governed by and interpreted according to the substantive laws of the State of New York, without regard to its choice of law or conflict of laws principles.

667029v2

29.     Amendment and Waiver.  This Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.  This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement.  Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

30.     Execution in Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

31.     Integrated Agreement.  This Agreement (including the Opt Out Side Letter) comprises the entire agreement between the Parties and the terms of this Agreement are contractual and are not a mere recital.  The Parties agree that this Agreement may be modified only by a written instrument signed by the Parties

31

and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Agreement not in writing and signed by the Parties.

32.   <u>Voluntary Settlement</u>.  The Parties agree that this Agreement and the Settlement were negotiated in good faith by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Agreement on the date first above written.

Date: April 15, 2019

Aaron Rubinstein
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York, 10019

Date: April 15, 2019

James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068

*Interim Direct Purchaser Class Plaintiffs Lead Counsel*

32