# EXHIBIT 10

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY


IN RE: LIQUID ALUMINUM        :    Civil No. 16-md-2687-MCA

ANTITRUST LITIGATION

                              :        TRANSCRIPT OF

-------------------------------x    HEARING ON MOTION;

                                    FAIRNESS HEARING


                              Martin Luther King Courthouse
                              50 Walnut Street
                              Newark, New Jersey 07102
                              September 26, 2019



BEFORE:

        THE HON. MADELINE COX ARLEO, U.S.D.J.









                              Reported by:
                              CHARLES P. McGUIRE, C.C.R.
                              Official Court Reporter



Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

2

APPEARANCES:

  CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
  5 Becker Farm Road
  Roseland, New Jersey 07068
  BY: JAMES E. CECCHI, ESQ., and
      LINDSAY H. TAYLOR, ESQ.
  Attorneys for Direct Purchaser Plaintiffs


  LITE DePALMA GREENBERG, LLP
  570 Broad Street
  Newark, New Jersey 07102
  BY: BRUCE D. GREENBERG, ESQ.
  Attorney for Direct Purchaser Plaintiffs


  STEARNS WEAVER MILLER
  150 West Flagler Street
  Miami, Florida 33130
  BY: JAY B. SHAPIRO, ESQ.
  Attorney for Plaintiff City of Homestead


  PORZIO BROMBERG & NEWMAN, PC
  100 Southgate Parkway
  Morristown, New Jersey 07962
  BY: JOHN S. MAIRO, ESQ.,
      WILLIAM J. HUGHES, JR., ESQ., and
      KELLY CURTIN, ESQ.
  Attorneys for Defendants Southern Ionics, Inc.
  and Milton Sundbeck


  SAUL EWING ARNSTEIN & LEHR LLP
  500 East Pratt Street
  Baltimore, Maryland 21202
  BY: KAYLEIGH T. KEILTY, ESQ.
  Attorney for Defendants Delta Chemical Corporation
  and John D. Besson and Rebecca L. Besson


  ARNOLD & PORTER KAYE SCHOLER
  250 West 55th Street
  New York, New York 10019
  BY: AARON RUBINSTEIN, ESQ., and
      PAUL ANDREWS, ESQ.
  Attorneys for Defendants American Securities, LLC,
  Matthew Labaron, and Scott Wolff

3

APPEARANCES:

    WHITEFORD TAYLOR PRESTON LLP
    7 St. Paul Street
    Baltimore, Maryland 21202
    BY: WILLIAM F. RYAN, JR., ESQ., and
        AARON CASAGRANDE, ESQ.
    Attorneys for Defendant Usalco, LLC

    WEIL GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    BY: KAYLEIGH GOLISH, ESQ.
    Attorney for Defendants General Chemical and Chemtrade

    LOEVY & LOEVY
    311 North Aberdeen Street
    Chicago, Illinois 60607
    BY: JULIA RICKERT, ESQ.
    Attorney for Intervenor Lawrence McShane

1           THE COURT CLERK:  All rise.

2           THE COURT:  Good afternoon, everyone.

3           all right.  We're here in In Re Liquid Aluminum

4  Sulfate Antitrust Litigation.

5           Can I have appearances, please?

6           MR. CECCHI:  May it please the Court.

7           James Cecchi on behalf of the direct purchaser

8  class.  With me is my partner, Lindsay Taylor.

9           THE COURT:  Okay.  Hello, everyone.

10          MR. TAYLOR:  Hello, Your Honor.

11          THE COURT:  Okay.

12          MR. GREENBERG:  Good afternoon, Your Honor.

13          Bruce Greenberg from Lite DePalma Greenberg, also

14 on behalf of the Direct Purchaser Plaintiffs Executive

15 Committee.

16          THE COURT:  All right.

17          MR. MAIRO:  Good afternoon, Your Honor.

18          John Mairo, Bill Hughes, Kelly Curtin from Porzio

19 Bromberg & Newman on behalf of Southern Ionics,

20 Incorporated.

21          THE COURT:  Okay.

22          MR. RUBENSTEIN:  Good afternoon, Your Honor.

23          Aaron Rubinstein and Paul Andrews from Arnold &

24 Porter Kaye Scholer on behalf of Defendant American

25 Securities.

```
1              THE COURT:  Okay.

2              MR. RYAN:  Good morning, Your Honor.

3              Bill Ryan, together with Aaron Casagrande on my

4      right.  We represent Usalco LLC.

5              THE COURT:  Okay.  Thanks for coming in, everyone.

6      I know some of you have traveled a little bit of distance.

7      I appreciate your coming today.

8              And we have a couple parties on the phone.

9              MR. SHAPIRO:  Your Honor, this is Jay Shapiro from

10     the Stearns Weaver firm.  I'm here on behalf of the indirect

11     purchaser plaintiff class.

12             THE COURT:  Okay.

13             All right, everyone, have a seat.

14             Okay.  So, we're here to approve a settlement that

15     had been reached between the parties.

16             In that regard, I do have a brief from the direct

17     purchaser plaintiffs' motion for final approval of a

18     settlement with Southern Ionics, Usalco, and American

19     Securities, and for an award of counsel fees.

20             And I should note that I preliminarily approved

21     this settlement earlier this spring, and that, today, we're

22     here for final settlement.

23             The brief that I received states that there are no

24     objections to the settlement.  Is that still the case?

25             MR. CECCHI:  Judge, there is --
```

1          THE COURT:  There's an intervenor.

2          MR. CECCHI:  -- one proposed intervenor, and a

3     proposed objection, and counsel is here.

4          THE COURT:  Okay.  So let me hear from -- come on

5     forward.  You can come up to the podium.

6          I should note for the record that I did get a

7     brief by Mr. McShane to intervene.

8          Are you representing Mr. McShane?

9          MS. RICKERT:  I am.

10          Good afternoon, Your Honor.  My name is Julia

11     Rickert, R-i-c-k-e-r-t.

12          THE COURT:  Are you a member of the bar of

13     New Jersey?

14          MS. RICKERT:  I have been admitted pro hac.

15          THE COURT:  Okay.

16          MS. RICKERT:  So, Your Honor, I'm here today to

17     argue this motion to intervene.

18          THE COURT:  Well, I got your motion, and let me

19     just put it in some factual context.

20          So your client has qui tam cases pending in state

21     court.

22          MS. RICKERT:  Yes, two in Illinois state court and

23     one in Virginia state court.

24          THE COURT:  Right, and in those qui tam claims, he

25     is claiming fraud on behalf of some of the municipal parties

1  who were party to this action.  Correct?

2  MS. RICKERT:  Well, that's true of the Chicago

3  case, which is in the Illinois court.  The other two cases,

4  to be precise, are brought on behalf of the Commonwealth of

5  Virginia for fraud against municipalities in Virginia, and

6  the other is brought on behalf of the state of Illinois for

7  fraud that was committed against the municipalities, but in

8  both of those cases, it is the state that will obtain any

9  recovery from the cases.  The municipalities are not

10  guaranteed anything.

11  THE COURT:  Okay.  So you're new to this case, but

12  I have the ample record of Judge Linares, who has twice

13  addressed your motion to intervene, and I can read you from

14  an order that's found at the electronic docket at 1169,

15  dated December 3rd of 2018, almost a year ago, and he says

16  in paragraph five:

17  "The purpose of this order is to address

18  Mr. McShane's motion to intervene and object -- " -- and I

19  should state at this point there were other, ongoing

20  settlements; right?  Some settlements had occurred before

21  this time and after this time, and there was some

22  preliminary approval going on.

23  MS. RICKERT:  Yes, I believe that the order you're

24  talking about was from the Geo settlement.

25  THE COURT:  Right.  So it's a similar context, but

1    with different defendants.

2            And he says:

3            "The purpose of this order is to address solely

4    Mr. McShane's motion to intervene and object.  Mr. McShane's

5    motion to intervene is denied because, as explained on the

6    record, Mr. McShane is not a member of either the direct

7    purchaser plaintiffs or the indirect purchaser plaintiffs,

8    and thus has no standing to intervene in this action for the

9    purposes of objecting to the settlement under Federal Rule

10    of Civil Procedure 24(a)."

11            MS. RICKERT:  Yes.

12            THE COURT:  And this was reiterated in a later

13    order of his, I'm not sure if it was a written order or at

14    oral argument.  Neither of these orders were appealed or

15    attempted to be appealed to the 3rd Circuit.

16            The brief that I have from you today that was

17    filed on September 12th doesn't even address the standing

18    issue, which was the basis of both -- or more appropriately

19    address anything about the analysis of Judge Linares with

20    respect to standing in either of his prior two decisions.

21            MS. RICKERT:  Your Honor, in the motion to

22    intervene, we did make an argument about why law of the case

23    should not apply here, because part of Judge Linares's

24    reasoning that there was no standing, yes, he said, not a

25    class member.  Now, that is for standing under Rule 23.  If

1    Mr. McShane was a class member, there would be no reason to

2    file a motion to intervene under Rule 24.  Judge Linares

3    said based on representations from class counsel and defense

4    counsel that Mr. McShane's concern about the potential

5    release of his claims was speculative and supposition

6    because there had been no action taken in the state courts

7    to dismiss his claims, and for that reason, it would be an

8    advisory opinion, et cetera.

9         So our argument on the standing point is that we

10   qualify under Rule 24(a)(2) as of right, and that the

11   circumstances have changed since Judge Linares made his

12   ruling in that, now, the Defendants who have previously

13   settled, Geo, the Chemtrade Defendants, have actually filed

14   motions to dismiss based on the settlement in this case,

15   and so --

16        THE COURT:  Judge Linares did not make a

17   conditional ruling.  In fact, in paragraph six, he says:

18        "Mr. McShane's objection to the settlement is

19   denied.  As the Court stated in the record of the hearing,

20   the Court is not making a ruling that the approval of this

21   settlement in any way affects Mr. McShane's qui tam action

22   pending in three separate courts."

23        He just said you have no standing to intervene

24   here.  What happens in state court happens in state court.

25   There's nothing that I saw in his orders that his finding

1  was predicated on, if your motion is denied, you're invited

2  to come back and renew your motion here.

3  MS. RICKERT:  Well, he did say during the hearing

4  that if this were to happen that the...

5  My apologies.

6  Judge Linares did ask repeatedly whether there had

7  been any motions filed and did say that it would be dealt

8  with at that time if such a motion were filed.

9  THE COURT:  I don't see that in your brief, and I

10  certainly didn't see it in the record.  So you said he said

11  something, and if you have a transcript in front of you, I

12  think it would be helpful to know precisely what was said at

13  the hearing.  You didn't provide the Court with a copy of

14  that transcript.

15  MS. RICKERT:  I apologize.  I thought that we did

16  provide a copy of the transcript, but if we did not, I'm

17  sorry for that.  If you can just give me one moment, I

18  will...

19  Okay.  So in the transcript from April -- I'm

20  sorry, this is the second hearing -- the Court said -- this

21  is page 18, line 16 to 19 -- line 21, the Court said at the

22  end -- well, first, defense counsel said:

23  "I think, Your Honor, there's certainly been no

24  motions filed in the qui tam case and any speculation about

25  what will happen is just that, speculation."

1          And the Court said:

2          "Right.  So if that were, in fact, to happen,

3    you're going to have to deal with it at that point, but at

4    this point, that is not before the Court."

5          So our understanding, at least --

6          THE COURT:  Who said that?

7          MS. RICKERT:  Judge Linares said that.

8          THE COURT:  Read that again.

9          MS. RICKERT:  "So if that were, in fact, to

10   happen, you're going to have to deal with it at that point,

11   but at this point, that is not before the Court."

12          THE COURT:  I would really be stretching to read

13   that as an invitation by Judge Linares to -- that his

14   standing analysis would change based on just a filing.  I

15   mean, I think it was anticipated that that filing would be

16   made, and there's been no ruling yet.  And there's nothing

17   -- he wrote an order specifically addressing the motion to

18   intervene and said it's denied because he has no standing to

19   intervene in this action.  That one line does not change the

20   written order in any way, shape, or form, and there's not

21   even in your brief an underlying analysis of how the

22   standing issue has changed.

23          MS. RICKERT:  Well, we tried to clarify in the

24   brief in support of the motion to intervene that we are

25   moving under Rule 24, that we're not seeking to object as

1 class members under Rule 23.  I think that Judge Linares's

2 order saying that there's no standing because Mr. McShane

3 isn't a class member, you know, may have misunderstood the

4 basis for our objection, which is under Rule 24.  So we did

5 address that in the brief to clarify and explain the

6 criterion under 24(a)(2) and why we meet it.

7    So I think we did make that argument in our brief

8 in support of the motion to intervene, and to the extent

9 that Judge Linares's previous decision was based strictly on

10 Mr. McShane's status as a non-class member, you know, that

11 that's error because that is not the standard under Rule 24.

12 So I would ask you to reconsider that decision as a

13 misstatement of the law.

14    THE COURT:  What did you move on before Judge

15 Linares in the motion to intervene?

16    MS. RICKERT:  We did cite 24(a)(2) at that time,

17 but he did not address Rule 24 in his order.

18    THE COURT:  So you moved under 24, he denied it,

19 and you didn't move for reconsideration; right?

20    MS. RICKERT:  Correct.

21    THE COURT:  And you didn't appeal it to the 3rd

22 Circuit.

23    MS. RICKERT:  No, we did not.

24    THE COURT:  And now you're asking me a year later

25 to reconsider his ruling.

1       MS. RICKERT:  Well, this is a separate settlement,

2   so I'm not even sure that the --

3           THE COURT:  But it's not the settlement; it's the

4   ruling.  It's the same ruling.

5           MS. RICKERT:  I understand that the circumstance

6   is very similar, it's a very similar settlement.  As I said,

7   I think that circumstances, factual circumstances have

8   changed in that Mr. McShane's interest under Rule 24(a)(2)

9   is much more concrete now.  It is, again, not as a class

10  member, but as a person who has an interest in claims that

11  are purported to be released by the settlement.  And I'd be

12  happy to talk about the problems with that.

13          THE COURT:  Well, let's talk about a couple of

14  things.

15          MS. RICKERT:  Sure.

16          THE COURT:  And then I'll let defense counsel

17  respond.

18          So, one of your clients or one of your qui tam

19  entities is the City of Chicago; correct?  They're a party

20  in this lawsuit, and they have not objected to the

21  settlement.

22          MS. RICKERT:  Correct.

23          THE COURT:  All right.

24          MS. RICKERT:  Or at least, that's my

25  understanding.

1          THE COURT:  So what do you envision the

2     intervention -- what your role would be if I were to let you

3     intervene?  With respect to Chicago.

4          MS. RICKERT:  With respect to Chicago, so, you're

5     right that there are slightly different issues between the

6     Chicago case and the Illinois and Virginia cases.  With the

7     City of Chicago, the -- you know, first of all, I would note

8     that the settlement language actually said that qui tam

9     claims were released to the extent of the power of the

10    signatory to release them.

11          Now, under the Chicago false claims ordinance,

12    like the Federal False Claims Act and all of the state

13    analogs, he who later brings the claim cannot have that

14    claim dismissed over his or settled over his objection

15    without a hearing on his objection and on the fairness of

16    releasing these claims and a judicial determination that

17    doing so is fair.  So the city actually does not have the

18    power to, you know, passively settle these claims under that

19    statute, and if the city were reading the settlement

20    agreement and saw the release language and the discussion of

21    qui tams and saw that it said they're only released to the

22    extent of the powers of the signatories to the agreement,

23    they would know that the prerequisites for settlement had

24    not being fulfilled and would not understand the claims to

25    be released.  They would have no reason to object or opt

1    out, necessarily.

2            When it comes to the state cases, the state

3    interests are not protected here at all.  The class counsel

4    points out that, you know, the states have not -- have not

5    opted out, they have no ability to opt out, that they are

6    not class members, and their interest -- they have

7    intervened in the sense that Mr. McShane, who represents the

8    interests of those states in these actions, has intervened,

9    and he has a statutory right to pursue these actions and his

10   and the state's interests in them.

11           THE COURT:  All right.  Can I hear from

12   Mr. Cecchi?

13           MR. CECCHI:  Yes, Your Honor.

14           So, just to put this in context, these are the

15   fourth, fifth, and sixth settlements of these antitrust

16   claims on behalf of the direct purchaser class.

17           In the first settlement, Mr. McShane filed -- the

18   Geo settlement, he filed essentially an identical motion,

19   and Judge Linares's ruling was that he was not going to

20   adjudicate the effect of the rulings.  He was not going to

21   give an advisory opinion.  What he did do and what he said,

22   and counsel was present when he said this, is, when the

23   motions are filed in the state court cases, you will deal

24   with it at that point in time.

25           So the argument that it was not contemplated or

1    that's a changed circumstance because now motions have been

2    filed is not accurate.

3            And I can cite Your Honor to Judge Linares's

4    language in the Geo settlement.  What he said is, you will

5    have your transcript and you can quote it in your position

6    brief when it happens.  When it happens, he was referring to

7    the motion to dismiss the qui tam case.  The argument that

8    counsel just articulated about the inability to release the

9    claims, the state claims, she has every right and every

10   ability to articulate those arguments in the state court

11   case.  Indeed, that was the basis of the ruling that Judge

12   Linares made:  I am not going to adjudicate, I'm not going

13   to interfere with that qui tam judge; you go deal with it

14   there, because that's where it should be dealt with.  It was

15   specifically contemplated motions to dismiss would be filed.

16           Fast forward to April of '19:  Same motion, same

17   ruling.  At that time, we made the argument.  Judge

18   Linares -- it's law of the case at this point.  They don't

19   have standing.  He specifically ruled that they have no

20   right to intervene, and he held:  Again, it's not for me;

21   it's for the state court Judge.

22           So all of this was contemplated.  This is exactly

23   what was anticipated to happen, that the argument that

24   counsel articulates, whether they can be released or not,

25   that's what has been dealt with.

1          So now we're really at law of the case, and the

2     only argument that's articulated as to why we don't have law

3     of the case is because there's some changed circumstance is

4     factually not consistent with the record, because it was

5     anticipated that the motion would be filed in state court.

6          But there's a couple of very practical points that

7     I want to raise about the Rule 24 argument.

8          Rule 24 says you can intervene if you have some

9     right that's not being adequately protected by the people

10     here, by class counsel, and that gives you a right to

11     intervene.

12          The only argument Mr. McShane has ever articulated

13     as to why he has a right to intervene is his alleged

14     economic interest in the outcome of the qui tam cases.  The

15     case law is clear.  We briefed it to Judge Linares, we cited

16     it to Your Honor.  That is not a reason to intervene under

17     Rule 24.

18          The second practical argument I want to raise is,

19     as counsel acknowledges, the City of Chicago is a class

20     member.  I represent the City of Chicago.  The City of

21     Chicago received direct-mail notice of this settlement, as

22     it did all of the other settlements.  Presumably, if the

23     City of Chicago felt I was not an adequate representative of

24     its interests, it could have come before Your Honor.  It

25     could have said something.  If they wanted Mr. McShane to

1      represent them, opt them out, do anything, they could have

2      come forward.  They're a class member.

3              As to the states, if they have a statutory right

4      to pursue these claims or if Mr. McShane has a statutory

5      right to pursue these claims, he has every ability to do so

6      in the state court and articulate his defenses to the motion

7      to dismiss.

8              So nothing has changed vis-a-vis Rule 24 or the

9      fact that Mr. McShane is not a class member.  He's not a

10     purchaser of alum.  So under whatever rule you want to look

11     at, he has no standing.

12             So we -- excuse me, Your Honor.

13         (Off the record discussion)

14             MR. CECCHI:  Finally, Mr. Taylor has pointed out,

15     the final point is, these agreements before Your Honor are

16     agreements between the Defendants and class counsel and the

17     direct purchaser class.  The law is, as much power as an

18     Article III judge has, the law is that you can't rewrite the

19     agreements for us.

20             So, the agreements are before Your Honor.  Either

21     they're fair, reasonable, and adequate, or they're not.

22             So he's asking you to do something you can't do,

23     and I am always loath to say that to an Article III judge,

24     but that's just what the law is.  We have voluntary

25     agreements.  The release language is what it is.  I can't

19

1    opine what the state judge is going to do.  If counsel has

2    meritorious arguments, presumably, she will win; if she does

3    not, presumably, she will not.

4           So, nothing has changed.  We think this is now law

5    of the case squared.

6           His motion should be denied.

7           THE COURT:  Thank you.

8           Anything you want to add?

9           MS. RICKERT:  Yes, if I may.

10           I would say, first of all, the idea that economic

11    interest isn't enough under Rule 24, that's not telling the

12    whole story.

13           So the cases that say this, like Mountaintop Condo

14    Association -- and, I'm sorry, I didn't have time to file a

15    reply to their brief, but it's 72 F.3d 361, a 3rd Circuit

16    case, talks about how -- yet the mere fact that a lawsuit

17    may impede a third party's ability to recover in a separate

18    suit isn't enough, but what it's talking about, it's very

19    explicit about this, is when someone is saying, those

20    defendants won't have any money left for my suit if this

21    settlement happens.  Now, that isn't enough.  But when you

22    actually have a claim that is purportedly being released,

23    that is a different situation.

24           And Mr. McShane doesn't just have an interest in a

25    recovery under the law.  I mean, the Supreme Court has said

1    in Vermont Agency Natural Resources that -- this is the

2    Federal Fraud Claims Act, which is identical to the ones at

3    issue here -- "The statute gives the relator himself an

4    interest in the lawsuit and not merely the right to retain a

5    fee out of recovery."  And the Court goes on to say for that

6    reason, you know, the government is prohibited from settling

7    the suit over relator's objection without a judicial

8    determination of fairness.

9         So there's no question about McShane's interest.

10   And the idea that the state's interests are protected here

11   in any way is false.  The measure of damages in our case is

12   very, very different than the measure of damages in this

13   one.  These are fraud claims.  These are about actions taken

14   after the anticompetitive conspiracy was formed to defraud

15   the Government, and the fact is that the measure of damages

16   is not the difference between the fair market value and the

17   inflated price, it's -- there's fraudulent inducement here.

18   So we're talking about the full value of the contract.

19        Additionally, the government can -- fines are

20   available under these statues for each false claim and each

21   invoice, and none of that is considered, I assume, by the

22   fairness analysis that you're conducting.  And Rule 23

23   doesn't simply wipe, you know, wipe away the state laws and

24   make them ineffective.  The states couldn't opt out, the

25   state's interests are not being protected here, and I think

1    it was, you know, a mistaken ruling before to exclude us on

2    standing grounds, and I would ask you to reconsider that and

3    consider the objection.

4             And if I may just add one more thing, there are

5    two possibilities.  Either these are -- two cases.  Either

6    class counsel said yes, we have the ability to release these

7    claims and would like to be paid for that and there is

8    consideration, or they haven't received consideration, in

9    which case this release would, you know, be a nullity.

10            I think it's well within your authority to figure

11   out what this settlement agreement means.  I think that it

12   makes sense to find out whether they're purporting to

13   release what I believe are valuable claims brought by the

14   persons who blew the whistle on this entire scheme, the

15   Department of Justice, and, you know, they should be able to

16   articulate what exactly is happening here and what they're

17   releasing and under what authority.  You know, they do not

18   have the authority to release, they have represented that

19   they do, that was incorrect, and defense counsel should be

20   aware of that.

21            THE COURT:  All right.  I just want to take a

22   quick look at something Judge Linares wrote.  I want to take

23   a quick break, and I'll be back.

24            Mr. Cecchi, do you want to finish your point

25   before I take a break?

1    MR. CECCHI:  Very quickly, Your Honor.

2    The claims that are being released here are the

3    claims that we asserted, the class claims.  We didn't assert

4    qui tam claims.  The arguments that counsel is articulating

5    presumably she has articulated to the judge in the state

6    court, and I'm not going to offer an advisory opinion, just

7    like Judge Linares didn't offer an advisory opinion.

8    MS. RICKERT:  If I may, very briefly.

9    It's not an advisory opinion to determine whether

10   these claims are currently, right now, being released by

11   this settlement.  These aren't hypothetical claims; these

12   are cases that exist, that are ongoing.  I do expect to

13   prevail in the arguments in those cases.

14   But I would just point out that the Defendants get

15   an extra argument when you approve a settlement because then

16   they're arguing res judicata as well.  Now, I don't think

17   that --

18   THE COURT:  It's not res judicata because you're

19   not a party to this lawsuit.

20   MS. RICKERT:  Well, yes, we have arguments against

21   that, but --

22   THE COURT:  Well, it's not even close.  I mean,

23   the issue is, the release does not address qui tam claims.

24   You're not a party to this lawsuit.  Res judicata wouldn't

25   apply.

1     And I want to take a look at what Judge Linares

2  said, because, frankly, you said twice that Judge Linares

3  got it wrong, and what is this; there have been six

4  settlements?  This has been raised three times, it's been

5  rejected three times on solid grounds and on a reasonable

6  basis on your motion to intervene, and there was never a

7  motion for reconsideration even filed, and there was

8  certainly never an appeal to the 3rd Circuit filed.

9     So after -- this is the sixth settlement?

10     MR. CECCHI:  Fourth, fifth, and sixth.

11     THE COURT:  Fourth, fifth, and sixth with the

12  three most recent parties.  So, we had three before this,

13  Judge Linares made his rulings, and now a new judge comes

14  into the case, and there is no doubt in my mind that this

15  issue probably would not even have been raised, certainly

16  with the force that it's raised now, if Judge Linares was

17  here.

18     MS. RICKERT:  I disagree.  I --

19     THE COURT:  Well, I can assure you of something:

20  If Judge Linares was here, it would be summarily denied,

21  because he's been so clear about it.

22     And I just want to look at his precise language,

23  because the language you pointed out that suggested that

24  Judge Linares was inviting a motion, another intervention

25  motion, a later intervention motion, if the motion was

1    filed, it seems ambiguous to me, number one, and, number

2    two, it wouldn't make sense anyway, because, if these

3    settlements had occurred, you know, the next day, a year ago

4    instead of today, they would be done, there would be a final

5    judgment, and you wouldn't be able to even make the argument

6    because the motions were subsequently filed.

7                So it seems that when you said the changed

8    circumstances are the filing of motions, it doesn't seem to

9    be a changed circumstance because that was clearly something

10   that could have been anticipated by, was anticipated by the

11   parties years ago, and it didn't change his ruling.  His

12   ruling was, as Mr. Cecchi pointed out, you can raise it

13   there in state court.

14               MR. CECCHI:  Judge, I have the transcripts if that

15   would assist Your Honor.

16               THE COURT:  Yes, I'm going to take a look at them.

17               MR. CECCHI:  And I can point you to, Your Honor,

18   the Geo settlement, it's 38:11 to 39:23.  That's the

19   transcript of November 14th, 2018, where the Court says, you

20   know, when the issue is raised in the state court case,

21   raise these issues there to the state court judge.  I mean,

22   that's the context.

23               THE COURT:  And remind me what the release

24   language says in this case.

25               MR. CECCHI:  The release is a broad release.  It

1    does say qui tam claims.  The arguments are, however, that

2    we don't have the ability to release qui tam claims, and

3    that argument was articulated once, twice, three times.  The

4    first two times, Judge Linares said, I'm not opining on

5    that; go to the state court, because, if they can't release

6    it, you have a qui tam case pending.  If I can't release the

7    state qui tam claims, well, presumably, that's what the

8    judge will rule.

9            And Mr. Newell, who is counsel's partner, agreed

10   with that analysis.  What he said is -- the Court asked --

11   what the Court says is:

12           "This is not to indicate what, if anything, should

13   be the decision on the qui tam actions at the state court."

14           "Mr. Muchnick," counsel for Geo:  "I agree."

15           "Mr. Cecchi:  We're in agreement as well.

16           "All right, Mr. Newell," says the Court.

17           "Mr. Newell:  Yes, I think that is fine, Your

18   Honor."

19           THE COURT:  Let me ask you one more question.

20   Hypothetically, if you were to intervene, your purpose in

21   intervening would be to say, we're a party now or an

22   intervenor, and we object to the language in the release.

23   That's your point.

24           MS. RICKERT:  No, we don't actually object to the

25   language --

1          THE COURT:  I'm just trying to understand what you

2  would envision your role is if I were to grant your motion.

3          MS. RICKERT:  Sure.

4          All we would really want is an order recognizing

5  that the release language, which is limited to the power of

6  the signatories to the agreement to release qui tam claims,

7  that these signatories do not have that power, and

8  therefore, the claims are not released.

9          THE COURT:  So you want in this case -- that's all

10  you want to do.  You want to make sure there's clear

11  language that says qui tam isn't released; right?  And what

12  if -- even though you really don't have any direct interest

13  in the settlement here, right --

14          MS. RICKERT:  Well --

15          THE COURT:  I know you have a general interest

16  because money is fungible, but you don't have a direct claim

17  here.  If they agreed to that language today, and we put the

18  settlement through, you don't obtain anything as a result of

19  the settlement.

20          And if Defendants say, we're not agreeing to that

21  language, then we have to go forward with the trial because

22  you don't agree?

23          I mean, I don't even understand how it would go

24  forward.

25          MS. RICKERT:  Well --

1           THE COURT:  In other words, because, what if they

2     say, we're absolutely not agreeing to that language; we've

3     negotiated this, and we want a broad release, the language

4     is the language, and we're not settling.  So then what

5     happens?

6           MS. RICKERT:  Well, the language is the language,

7     and as I said, it does actually carve out --

8           THE COURT:  Well, listen to my point.

9           MS. RICKERT:  Sure.

10          THE COURT:  I let you in; and Defendants say,

11    we're not agreeing to that language, we want the same

12    language that we have right now.

13          What happens?

14          MS. RICKERT:  Well, then, I would say, yes, this

15    language is fine in your order approving the settlement.  I

16    would ask that you include that --

17          THE COURT:  What if they object to it and say no?

18    So, in other words, what you're really asking for,

19    ultimately -- you don't have an interest in the outcome of

20    this case.  What you have an interest in is having the Court

21    tell a state court judge how to interpret release language,

22    that no matter what the parties agreed to or don't agree to,

23    I'm going to tell them in the order approving the settlement

24    that it carves out the qui tam action for them.  That's

25    really what you want, because, if they don't agree, you're

1     saying, well, Judge, they don't have to agree, the

2     Defendants, you can just basically rewrite the release

3     language in your order approving the settlement, or make a

4     carve-out.

5             MS. RICKERT:  Right, there is a carve-out.  It's

6     the release language which they don't, you know, quote as

7     language in their brief, but the release language actually

8     says that qui tam claims are being released to the extent of

9     the power of the signatories to the agreements.  And what I

10    would want to be just an acknowledgment that they have not

11    shown that they have the authority to --

12           THE COURT:  So, in other words -- but that's my

13    point:  You want me to clarify language for really a third

14    party who has no interest in this litigation, to clarify it

15    so when you have your motion in state court:  Judge Arleo

16    has said that that's what the carve-out means, so that your

17    motion is stronger.  That's really what it is.

18          But what I'm saying is, that's really not the

19    purpose of intervention, and that's why Judge Linares --

20    you're not a party to this lawsuit.  You're coming in in an

21    unrelated lawsuit, saying, there is a carve-out for you, but

22    I want to make it crystal clear that that carve-out means

23    that I can go forward in my state court action.

24           MS. RICKERT:  Well, I think that you are the

25    appropriate judge to say what the settlement is doing and

1    what exactly is being exchanged between these parties, so I

2    think it would be -- I don't think it would be inappropriate

3    to inquire about what claims are actually being released.

4              THE COURT:  But here's what my job is:  To make

5    sure that this settlement between these parties is fair and

6    reasonable under all the circumstances.  It's not for me to

7    opine and offer judicial guidance or an advisory opinion as

8    to whether other cases that are offshoots should go forward

9    in other jurisdictions.  I'm looking at the two parties, and

10   if they negotiate a settlement -- I didn't negotiate the

11   settlement, they did, with the help of Judge Hochberg and a

12   mediator, and it was at arm's length, and no one's disputing

13   all of that.  There are no other objectors in the room but

14   you.

15             Is there one other objector?

16             MR. CECCHI:  No.

17             THE COURT:  No other objectors.

18             And so what I do is, I look at it holistically and

19   say, as my role as District Court:  Is this fair and

20   reasonable under the circumstances?  Does it protect the

21   interests of the parties?  Is it negotiated at arm's length?

22   Does it satisfy the Girsh factors?  That's what I have to

23   do.  And that doesn't mean I look to say, nor would I:

24   Well, the carve-out language has to be clearer so that

25   another judge looking at this in another jurisdiction can be

1  clear that it doesn't carve out that case.  That's what I'm

2  struggling with.  And I think that's what Judge Linares said

3  when he said in his order that Mr. McShane's motion is

4  denied because he is not a member of either the direct

5  purchaser plaintiffs or the indirect purchaser plaintiffs

6  and has no standing to intervene in this action for the

7  purpose of objecting to the settlement under Federal Rule of

8  Civil Procedure 24(a).  That's exactly what he said.

9          MS. RICKERT:  Yes.  During the hearing, he did

10  repeatedly ask them if they were actually purporting to

11  release qui tam claims, and how and why, and whether any had

12  been filed.  He was actually concerned about that.  I agree

13  that that didn't make it into his order.

14          We're in a little bit of a tough spot because

15  there is no question that they are attempting to release the

16  claims that these clients and governments controlled.

17          THE COURT:  Well, let me stop you for a minute.

18          You know, when you settle a lawsuit between

19  parties, right, Defendants always want a broad release, and

20  Plaintiff will agree to a general release, which is,

21  everything up to this point.

22          And this release actually -- and a general release

23  is, everything is gone, known or unknown up to this point.

24  That's a general release; right?

25          They made a carve-out, and it was a careful

1      carve-out, and the carve-out carves out in qui tam --

2              What's the language of the carve-out?

3              MR. CECCHI:  To the extent we have the ability to,

4      and as Your Honor articulated, it's exactly what

5      Judge Linares said the first time, that all I'm doing is

6      opining on the fairness of the settlement, I'm not making

7      any other ruling of the effect of this release for the state

8      court judge.  It's exactly what he said.

9              THE COURT:  And the carve-out says?

10             MR. CECCHI:  The qui tam claims are released as

11     counsel articulated to the extent we have the ability to do

12     so.

13             And that's my point about counsel's argument.  If

14     she's right, if counsel is right, then she wins in the state

15     court.  That's where the argument should be articulated, not

16     here, because the settlement here says what it says.  We

17     negotiated it.  And as Your Honor pointed out, this was at

18     arm's length.  None of these settlements would have gone

19     forward without a broad general release.  That's just the

20     reality of how this works.

21             THE COURT:  Anything else you want to add?

22             MS. RICKERT:  Yes.  I want to just add that, you

23     know, either they are -- the claims are actually in jeopardy

24     based on this release language, in which case, and I think

25     they would later have an interest in the right to intervene,

1   or they aren't, and if the relator has no interest in this

2   proceeding, it's because his claims cannot be affected by

3   this release.  So I would -- and in our motion, we ask in

4   the alternative that if you're going to deny the motion to

5   intervene that you do so on the basis that a later

6   intervenor, relator in these other cases, that his interests

7   are not at issue here because the settlement cannot affect

8   his cases.  I think that would be the only basis for finding

9   that he has no right to intervene.

10          And I would also want to add, and I think Judge

11   Linares understood this when my colleague was at the last

12   hearing, that it's important for us to not have the State

13   Courts get the wrong impression and believe that this Court

14   is deciding that our claims are released.  So he understood

15   that in the second hearing.  He said, you know, preserve

16   whatever you need to preserve, and I will refer back to last

17   time, even though he denied the motion to intervene the

18   first time, he was very careful to say, nothing that I do

19   here is meant to affect the claims of Mr. McShane.

20          And so our coming in again today is because we

21   need to continue to protect to Mr. McShane's rights,

22   particularly in light of the actual motions that have been

23   filed to try to dismiss his claims based on settlement in --

24   from this Court.

25          So we would ask that if you deny the motion to

1    intervene that you do include language about the lack of

2    effect on Mr. McShane's cases.

3            THE COURT:  Anything to add?

4            MR. CECCHI:  I mean, that's what Judge Linares

5    said on the record, and counsel said, the effect of the

6    release is for the state court judge, and we agreed to that,

7    and Mr. Newell agreed to that the first time around, and the

8    second time around.  And Judge Linares didn't offer an

9    advisory opinion to the state court about the effect of the

10   release on those qui tam claims.  The release says what it

11   says.  It will be for that judge to decide whether those

12   claims, Mr. McShane's purported claims are released.

13           So that's what happened, and we agree.

14           THE COURT:  All right.  I just want to look at

15   something that Judge Linares said, and I'll be back in five

16   minutes.

17           MR. SHAPIRO:  Your Honor, before you leave, I have

18   this issue, if I could raise for one second?

19           THE COURT:  Sure.

20           MR. SHAPIRO:  It's Jay Shapiro.

21           Apparently, counsel for the Delta Defendants was

22   also supposed to be part of this call, but for some reason,

23   when I was patched in, they did not make it onto the call.

24           THE COURT:  Well, they did, but they hung up.  So

25   if they want to call back in, they're more than welcome to.

1    If not, they can get a copy of the transcript.

2         MS. RICKERT:  Actually, I got a message that your

3    staff asked me to patch them in.  So I was going to do that.

4    I just wanted to let you know.

5         THE COURT:  Well, let me stop you.

6         You can patch them in.

7         They chose not to come in to court.  When a lawyer

8    chooses to participate by phone, they do it at their own

9    risk.  We have limited capability here, and if calls get

10   dropped, I'm not going to stop the hearing, and that's the

11   risk you run when you participate by phone.

12        I would ask you to extend them the courtesy of

13   patching them in, and wait patiently, and they can

14   participate and be heard if they have anything to offer when

15   we resume.

16        Thank you.

17        MR. SHAPIRO:  I will do that, Your Honor.  I'm

18   just trying to be helpful.

19      (Recess taken)

20        THE COURT CLERK:  All rise.

21        THE COURT:  Have a seat, everyone.

22        I understand we have found the lost lawyer.

23        MS. KEILTY:  We have, Your Honor.  I apologize for

24   the inconvenience.

25        This is Kayleigh Keilty from Saul Ewing Arnstein &

1    Lehr on behalf of Delta Chemical, John Besson, and Rebecca

2    Besson.

3            I appreciate the Court's patience.

4            THE COURT:  No worries.  We don't have conference

5    capability, so it's best to have one lawyer call the other

6    lawyer and we can all have it that way.  Once you

7    disconnect, we don't have a way to reconnect you.  That was

8    the problem.

9            But anyway, if you need to be heard before I make

10   my ruling, you certainly have that opportunity.

11           All right.  So where we left off was a request by

12   Mr. McShane's lawyer that, if I don't grant the motion to

13   intervene, to make some kind of language about the effect of

14   the release in this matter as it relates to the qui tam

15   matter.

16            and I'm struck by the fact that that identical

17   argument was made before Judge Linares not that long ago, in

18   November of '18, when we had one of the first settlements.

19           And this issue was addressed at length.  This was

20   not a collateral issue.  It was addressed at length, it was

21   argued at length, including by counsel for Mr. McShane, and

22   the same exact issues that are raised here were raised then,

23   and there was fulsome discussion about this precise issue

24   happening, which would be how this release would affect the

25   ability of the qui tam actions to go forward in the

1    respective jurisdictions.  They may not have addressed, used

2    the words "motion to dismiss," but certainly that was the

3    whole point of McShane's counsel making the arguments then a

4    year ago, which are the same arguments that are made now.

5              And a couple of things that Mr. Cecchi pointed

6    out, but I read a little bit further for context, and this

7    is the language we just talked about for the last 20

8    minutes.  This is exactly what Judge Linares said at page

9    38, line -- I'll go back with the question:

10             "Well, people make claims all the time.  That is

11   something else in some other court might affect me, but you

12   have the ability to make the argument, has to be real

13   controversy just by virtue of him saying it might happen.

14             "The Court:  Let me tell you this.  I am not

15   taking a position and this Court is not making a ruling

16   today, and anything that I do with regard to this judgment

17   today releases or terminates the qui tam action or affects

18   them in any way, then it is up to the other courts to decide

19   that issue.  I am not taking a position and this Court is

20   not making a ruling today that anything that I do with

21   regard to this judgment today releases or terminates the

22   qui tam action or affects them in any way."

23             That is the same language that counsel just asked

24   for, and that's exactly what Judge Linares had previously

25   said a year ago:  Nothing I do will affect them in any way.

1        MR. CECCHI:  Right.

2        THE COURT:  That's his language.

3        MR. CECCHI:  Right, and, Judge, we would agree

4    that the same situation appertains today just as it at

5    appertained then.

6        THE COURT:  It would be extraordinary for me --

7    let me just start with a little bit of the analysis.

8        So that's what Judge Linares says, and he goes on,

9    and there was even some agreement by counsel on that point.

10       And then, Mr. Newell was counsel; correct?

11       MR. CECCHI:  Yes, Judge.

12       THE COURT:  This is what Judge Linares says:

13       "I can only decide what is in front of me, and

14    what is in front of me is the fairness of the settlement and

15    the appropriateness of the settlement.  Whether or not there

16    is a decision by another court what the effect of this is,

17    it's going to be up to them, except it is going to be clear

18    from this record I am speaking that all I am doing is

19    settling the claims that are before me.

20       "Correct.

21       "Are we in agreement, Your Honor," Mr. Cecchi

22    asks.

23       "The Court:  All right, Mr. Newell?

24       "Mr. Newell:  Yeah, I think that is fine, Your

25    Honor.  I think, you know --

1      "The Court:  You will have the transcript, and you

2   can quote it in your position brief when it happens.  I

3   think that what I said on the record, because I have

4   authority to say that, but beyond that, I think most of what

5   you are trying to get me to do was really -- was, A, you

6   were straining into areas where you had no standing and

7   asking me to get involved in claims that are not before the

8   Court.  But I think based on the statements I just made on

9   the record, I think that gives you at least a comfort that

10  you need in regard to the actions that are not pending

11  before the Court.

12      "Mr. Newell:  Yes, Your Honor.

13      "The Court:  The issue is not whether or not there

14  should be a final approval of the settlement.  You sent a

15  letter to the Court last night, counsel, advising me you may

16  want to pursue this.  I don't even know if the other

17  attorneys have even had a chance to see it, but I'll deal

18  with that when you make the particular motion pertaining to

19  that.  As far as objections, it is the same objection you

20  raised before, you have done -- done by raising the

21  objection here, but the same ruling that I made last time

22  otherwise applies to here."

23      So I begin by saying that this is not a changed

24  circumstance.  This is not an extraordinary interest of

25  justice, new fact or evidence that would require a different

1    analysis from what Judge Linares has addressed twice in two

2    settlements that have already been approved by this Court

3    that were litigated by Mr. McShane's counsel, and to some

4    extent, he agreed with the language and the ruling that

5    Judge Linares had made at that time, certainly in November

6    of 2018.

7           And, while the Court has discretion in revisiting

8    issues that were resolved earlier in a litigation, there

9    really has to be some kind of extraordinary or at least some

10   kind of compelling circumstances, whether there is new

11   evidence available, a superseding law has been announced, or

12   the earlier decision was erroneous or would create manifest

13   injustice, and I am simply not satisfied that that standard

14   is met.

15          There was an opportunity to more fulsomely have

16   this reconsidered in a motion for reconsideration.  It was

17   not done.  There was no appeal to the 3rd Circuit.  And, in

18   fact, it appears that counsel agreed to the language that

19   Judge Linares stated on the record at the time that he made

20   his ruling.

21          So, I'm satisfied that there's no basis to change

22   the ruling of Judge Linares, and on that basis alone, I'm

23   going to deny the motion, with the following thought that

24   was certainly evident in Judge Linares's ruling, which is

25   that this comes before me as a motion to approve a

1    settlement between the parties.  The parties are the

2    Plaintiffs and the Defendants here.  My job is to make sure

3    that it is fair and reasonable under all the circumstances

4    and that the fee award is appropriate, not to relitigate and

5    not to carve out and change negotiated language between the

6    two parties.  That was part of Judge Linares's ruling, and

7    I'm satisfied that that is sound reasoning here today.

8         I am also not convinced, nor was Judge Linares,

9    that Mr. McShane is a proper party to intervene.  He seeks

10   intervention, but I'm not convinced that he has sufficient

11   interest in this action that is not adequately represented

12   by the existing parties to the action.  Mr. McShane is

13   asserting qui tam actions in other courts, and those

14   qui tams belong to the government entities on whom they are

15   being asserted.  He seeks to intervene in order to object to

16   the settlement, but I'm not convinced he has standing to do

17   so since he is not a class member and during the class

18   period, and that is yet another reason to find that he does

19   not have standing.

20        And to the extent that the municipalities'

21   interests are being affected here, they have notice of this

22   settlement, and they have not in any way objected to the

23   settlement before the Court.

24        So, for all those reasons, I am denying again the

25   motion to intervene, and for the reasons that were expressed

1    on the record and for the reasons expressed by Judge

2    Linares, I'm satisfied that there is no reason to come to a

3    different conclusion than he did twice, and the motions,

4    therefore, to intervene and object are both denied.

5              In terms of the alternate relief that's sought to

6    make some kind of statement about the effect, I will refer

7    any judge looking at this to look at the careful and

8    considered words of Judge Linares in his November 14th, 2018

9    transcript.  I'll rely on that.

10             All right.  Let's get to the motion to approve.

11             Mr. Cecchi, do you want to give me just a brief

12   overview of the proposed settlement?

13             MR. CECCHI:  Yes, Your Honor.

14             These, as we discussed, are the fourth, fifth, and

15   sixth settlements in this antitrust MDL.  They are all cash

16   deals, and all of these agreements and settlements are

17   fundamentally, as best we could, within the penumbra of

18   trying to get it as close to market share as we could, given

19   all of the other settlements, and given our analysis of the

20   market, the size of the sales of each of these Defendants,

21   and their relative culpabilities, we think all of the

22   settlements are appropriate, and fair, reasonable, and

23   adequate.

24             As Your Honor indicated, this litigation has been

25   long, it's been hard fought.  Millions of pages of documents

1    have been exchanged.  The settlements were negotiated under

2    the auspices of two experienced mediators, Judge Hochberg,

3    who Your Honor knows, and David Geronemus, who is an

4    experienced mediator with JAMS and clerked for Justice

5    Stewart.

6            So, given the fact that there are no objections to

7    the substance of the settlement, to the fairness of the

8    settlement, I would rely on our final papers and the fact

9    that, again, they're all essentially proportional to each

10   other based upon market share.

11           In terms of our application for fees and expenses,

12   we've set forth our arguments in the brief.  This has been a

13   long litigation.  There have been many lawyers involved.  If

14   the fee request is granted, when everything is aggregated,

15   we're still in a slightly negative multiplier position, and

16   again, no one has objected to our latest fee request, and I

17   am hopeful that Your Honor would grant it, and for that

18   reason, I have prepared a proposed form of order.

19           But other than that, if Your Honor has any

20   questions about the settlements, I'm prepared to answer

21   them, but I think that they stand on their own merits.

22           THE COURT:  Would anyone else like to be heard?

23       (No response)

24           THE COURT:  All right.  Like the similar

25   settlements before me, I am prepared to approve this

1    settlement as being fair, reasonable, and adequate under the

2    circumstances.

3              The 3rd Circuit directs us to look at the factors

4    that are formally considered under the Girsh case, and here,

5    all those factors militate in favor of approving the

6    settlement.

7              The proposed settlement was negotiated at arm's

8    length with the capable help of Judge Hochberg, and the case

9    has been ongoing for many years now.  I understand that

10   there were her efforts, the efforts of the JAMS mediator,

11   and that factor militates, again, in favor of approving the

12   settlement.

13             I'm satisfied that the methodology that the

14   parties have agreed to for distributing relief to the class,

15   including the methodology for processing their claims, are

16   also fair and reasonable, given the risks and the further

17   delay that would inevitably result if the case went forward.

18             So, I am satisfied that this is a settlement that

19   is made in good faith by strong counsel to a long and

20   hard-fought case that is finally coming to an end, at least

21   partially with respect to the overall claims in this larger

22   case, and that I'm prepared to approve it.

23             I'm also inclined to and will approve the counsel

24   fee award requested by counsel.  The fee is in an amount of

25   33 percent of the settlement proceeds made available to the

1      direct purchaser settlement class, and expenses and

2      contribution awards in the amount of $10,000 to the named

3      class representatives.

4      There are a couple of points to note here:  That

5      the result achieved, certainly one of the factors to be

6      considered in assessing the strength of the attorneys' fee

7      award, the common class fund here is over $25 million, and

8      that factor militates in favor of approval.

9      There are no objectors at all to the amount that

10      is sought.

11      It's without question that this was a complex and

12      long-fought litigation involving complex antitrust issues,

13      certainly probably the top of the food chain in terms of

14      difficulty and complexity of class actions, certainly class

15      actions or multidistrict litigations.  That factor certainly

16      militates in favor of settlement.

17      There was certainly a risk of nonpayment here,

18      given all the legal issues, and much time devoted by

19      Plaintiffs' counsel, and, finally, this award is similar to

20      awards approved in similar cases.

21      So, for those reasons, I am going to approve the

22      settlement, and I'm also going to approve the fees, the

23      out-of-pocket expenses, and the contribution awards to the

24      parties.

25      I do not have a proposed form of order.  Do you

45

1    have one?

2              MR. CECCHI:  May I approach, Judge?

3              THE COURT:  Sure.

4              All right.  Let me take a minute and look at this.

5              Is there anything further?

6              I'll take a quick look at the order off the

7    record, and then I will give you a copy, and then I will

8    electronically file it today.

9              MR. CECCHI:  Judge, there's just one housekeeping

10   item.

11             In our exuberance responding to the motion to

12   intervene and object, we did indicate that we felt that

13   perhaps there was an arguable Rule 11 issue here.  We

14   formally withdraw that on the record.  We have no intention

15   of proceeding.  We fully understand after hearing argument,

16   hearing Your Honor's ruling why counsel in good faith

17   presented the arguments that she did, so we will not be

18   pursuing that, and we withdraw it.

19             THE COURT:  Thank you, and I will terminate that

20   motion.  Okay?

21             MS. RICKERT:  Your Honor, if I may, just quickly,

22   if there is a subsequent settlement that has the same

23   language that similarly could affect Mr. McShane, is there a

24   way for us to ask you to say, once again, that your ruling

25   is in no way intended to opine on the effects of that

1    release --

2          THE COURT:  I can say that to the extent that this

3    issue is raised again that my ruling -- I don't want to give

4    an advance ruling, but you're certainly free to send in a

5    letter.  And I don't think I should be making advance

6    rulings.  I mean, what I said about referring to

7    Judge Linares's reasoning applies certainly to this case,

8    but there could be changed circumstances.  I'm not going to

9    say everything automatically applies for the rest of the

10   case.  You can certainly put in a letter.  You don't have to

11   appear; you can appear by phone.  I can just reference

12   today's hearing so the issue is preserved for you.

13         MR. CECCHI:  Judge, we're happy to meet and

14   confer.  There is only one more settlement from direct

15   purchaser class.  We're happy to meet and confer and make it

16   as soon as possible.

17         THE COURT:  Yes, you don't have to come back

18   again.  Where did you travel from?

19         MS. RICKERT:  Chicago.

20         THE COURT:  Okay.  Well, I hope you had a nice day

21   in New Jersey.

22      (Laughter)

23         THE COURT:  And so you don't have to come back

24   again, unless you want to, you know.  You can certainly

25   participate by phone or send me a letter, and I'm happy to

1     put you on the phone and say your arguments are preserved.

2                MS. RICKERT:  Okay.

3                THE COURT:  All right?  Thank you.

4                All right.  Let me take a minute with this order

5     and I will be right back.

6                MR. CECCHI:  Thank you, Your Honor.

7                THE COURT:  Thank you.

8                THE COURT CLERK:  All rise.

9           (Matter concluded)

10

11

12

13

14

15

16

17           Pursuant to Section 753, Title 28, United States

18           Code, the following transcript is certified to be

19           an accurate record as taken stenographically in

20           the above entitled proceedings.

21

22

23                                s/CHARLES P. McGUIRE, C.C.R.

24

25